

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAR 26 PM 4: 36
MAR 2 6 2001
LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JANE GALIANO and GIANNA, INC.,** | * | **CIVIL ACTION** |
| **Plaintiffs** | * | |
| | * | **No. 00-0071** |
| | * | |
| **VERSUS** | * | **Section: "E"(5)** |
| | * | |
| **HARRAH'S OPERATING CO., INC.,** | * | **Judge: Livaudais** |
| **And** | * | |
| **HARRAH'S ENTERTAINMENT, INC.,** | * | **Magistrate: Chasez** |
| **Defendants** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### HARRAH'S OPERATING COMPANY AND HARRAH'S ENTERTAINMENT, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND MOTION TO AMEND COMPLAINT TO ALLEGE SINGLE ENTERPRISE AND SPOLIATION OF THE EVIDENCE

Defendants, Harrah's Operating Company, Inc. and Harrah's Entertainment, Inc. (hereinafter, Harrah's or Defendants), oppose Plaintiffs' Motion to Compel and Motion to Amend Complaint to Allege Single Business Enterprise and Spoliation of Evidence.

Plaintiffs' claimed objections to Defendants' discovery responses can be found starting at page 27 of their brief. The preceding pages constitute a prologue of misrepresentations and baseless arguments with little or no relevance to the disputed discovery. Rather than burden this court by responding to each misstatement, Defendants here address the specific discovery disputes. Defendants' responses to the misstatement prologue are reserved for the last portion of this memorandum.

ree
Process
X Dktd
CtRmDep
Doc.No. 83

The disputed discovery requests, Defendants' responses and plaintiffs' objections to the responses are addressed individually as follows.

### Interrogatory No. 1:

For the following uniform and/or costume designs of the Uniform Costume Collection previously submitted as Annex E attached to plaintiff's Motion for Summary Judgment please identify:

1)     the location where the designs is in use or has been used,

2)     the number of uniforms and/or costumes purchased by Harrah's Operating Company for each design,

3)     and, the manufacturer who produced the design for Harrah's Operating Company:

    (a)     Design number H1008
    (b)     Design number H 1019
    ( c)    Design number H 1016
    (d)     Design number H 1040
    (e)     Design number H 1041

### Defendants Answer to Interrogatory No 1:

Defendant objects to the interrogatory as overbroad, vague, ambiguous, oppressive and burdensome, and seeking information not reasonably calculated to lead to admissible evidence.  Defendant further objects to having to collect information or documents relating to "uniform and/or costume designs" for the reason that plaintiffs have no colorable copyright claim to uniform and costume designs because such designs are not subject to copyright protection and plaintiffs' use of discovery regarding such designs is abusive and wasteful. Moreover, "design" is ambiguous and confusing and renders the interrogatory ambiguous and confusing.  Subject to the objection, and assuming that "design" means sketch, none of the enumerated designs *per se* is in use and none of the

2

designs were produced by anyone other than plaintiff, her illustrator, Jan Starnes and Connie Albright.

Further answering regarding uniforms and costumes, and out of an abundance of caution and in order to preserve defendant's rights to a fair determination of the relevant issues in this case, Sketch No. H1008 depicts a dealer vest. Defendant uses dealer vests in all of its facilities, and a dealer vest as shown in the photograph included in Annex E was ordered for Skagit Valley and is believed to have been produced by Uniform Ideas. Upon information and belief this particular dealer vest was not ordered past the opening as there were problems with this uniform, including but not limited to complaints that the vest did not fit properly on the employees or did not follow the theme of the casino. Moreover, Harrah's does not even own the Skagit Valley Casino.

Defendant objects to the interrogatory to the extent that it seeks to determine the number of dealer vests in use or used in the past because of the burdensome, oppressive and wasteful nature of the request. Subject to the objection, plaintiffs should be able to determine the number of uniforms produced from Uniform Ideas' or All Bilt's records. Plaintiffs have scheduled the depositions in New York City of several witnesses with manufacturers including Uniform Ideas, and requiring defendant to search for, collect and produce the information about manufacturers and also incur the expense and burden of attending the New York depositions would be redundant and duplicative, which renders this interrogatory further objectionable.

Sketch H1019 depicts a beverage server uniform. Defendant uses beverage servers in all of its facilities. Defendant objects to the interrogatory to the extent that it seeks to determine the number of beverage server uniforms in use or used in the past because of the burdensome, oppressive and wasteful nature of the request. It is not known at this time which if any of the above manufacturers manufactured beverage server uniforms for defendant. Plaintiffs' scheduling of depositions of manufacturers in New York renders this interrogatory redundant and duplicative and objectionable. The design depicted in this particular sketch was used as a prototype for the Skagit opening, however the actual design that was used at the opening did not contain the print illustrated on the sketch. Moreover, this particular uniform was not ordered past the opening as the uniform proved difficult to wear, and uncomfortable for the employees.

Sketch No. 1016 depicts an underwater scene. Upon information and belief All Bilt Uniforms or Uniform Ideas created prototypes of actual uniforms based on this sketch. The prototypes were used at the opening of Skagit Valley Casino on a temporary basis. This particular uniform was not well received by the employees because it was awkward to wear, uncomfortable, and did not fit in with the theme of the casino. Consequently, upon information and belief, no new orders were taken after the opening.

Sketch Nos. 1040 and 1041 depict restaurant vests. If any range vests were produced, the range restaurant vests did not look like the drawings depicted on Nos. 1040 and 1041, but rather, there were substantial changes made to the

4

designs before any prototypes were created, if any were created. If any prototypes were created, they were manufactured by either All Bilt or Uniform Ideas.

Defendant has also had uniforms manufactured by All Bilt, Angelica, Inc., Uniforms to You, Red the Uniform Tailor, Creations Galore, and Varsity Fashions.

**Defendants' Response to Plaintiffs' Objection to Answer to Interrogatory No. 1**

Defendants' response was based on information known to it at the time. That information has proven to be correct. Connie Albright who dealt with Plaintiff Jane Galiano at all pertinent times has given a deposition, as have two main uniform suppliers Uniform Ideas and All Bilt. Those depositions establish that Uniform Ideas, Inc. had a contract with plaintiff Gianna, Inc. to manufacture uniforms designed by Galiano. (See Contract with Uniform Ideas and Gianna, Inc. attached as "Exhibit 1"). Uniform Ideas' contract with Gianna, Inc. expired in June of 1996. According to Ms. Mary Beth Morgan, Uniform Ideas vice-president, Uniform Ideas' last order for Gianna designs was filled in February 1996, and Uniform Ideas paid the full amount of compensation Gianna, Inc. was owed. (See Deposition of Mary Beth Morgan, pp. 74-77, attached as "Exhibit 2").

All Bilt's John Spordone, testified that a few Gianna design uniforms were manufactured by All Bilt in the concluding months of 1995 and first half of 1996. (See Deposition of John Spordone, pp. 46-49, attached as "Exhibit 3").

Plaintiffs claim that Defendants' response is defective because it does not address the changes to the prototypes to which Connie Albright testified. Plaintiffs are wrong. Defendants' response describes the fact that prototypes were made, the problems with the

5

prototypes, and that those designs, or any other Gianna designs, were never ordered by Harrah's. There is no testimony contradictory to Harrah's original response to Interrogatory No. 1.

Plaintiffs also complain that Defendants used the words "per se" and suggest some sinister motive therefor. Plaintiffs' complaint is based on a misreading of Defendants' response. Defendants considered the term "per se" appropriate in light of the wording of Plaintiffs' Interrogatory and the ambiguities in the term "design," to which Defendant objected in the same response. Plaintiffs have asked about drawings which they identify by number. The drawings themselves may be called "designs." "Designs" may also mean "styles" depicted in the drawings. Plaintiffs have persisted since the commencement of this lawsuit in refusing to clarify in which sense  they use "design." At times they have claimed that the designs were sent to suppliers and are still in suppliers' custody and being used by suppliers to make uniforms.  Insofar as the interrogatory asks about use of those drawings, Defendants' response is accurate and specific in stating that no "designs **(sketches)** are per se in use." Insofar as the Plaintiffs might argue that the Interrogatory was intended not to address the drawings but the styles depicted therein, Defendants' response specifically addresses those as well.  Plaintiffs' complaint fails to read the entire response.  Again, as stated above, the testimony of the witnesses deposed to date supports this response.  Any designs based on Plaintiffs' sketches were not used after May 6, 1996.


### Interrogatory Number 2:

For the following uniform and/or costume designs, previously submitted as Annex E as part of plaintiffs' Motion for Summary Judgment, please identify: if the

6

design and/or a design similar to the design is in use, or has been used by Harrah's Operating Company, the location where the design is in use and/or has been used, the number of uniforms and/or costumes purchased by Harrah's Operating Company for each design, and the manufacturer who produced the design for Harrah's Operating Company.

(The request then references over one hundred sketches)

### Defendants' Answer to Interrogatory No 2:

Defendant objects to the interrogatory as overbroad, vague, ambiguous, oppressive and burdensome, and seeking information not reasonably calculated to lead to admissible evidence. Defendant further objects to having to collect information or documents relating to "uniform and/or costume designs" for the reason that plaintiffs have no colorable copyright claim to uniform and costume designs because such designs are not subject to copyright protection and plaintiffs' use of discovery regarding such designs is abusive and wasteful. Moreover, "design" is ambiguous and confusing and renders the interrogatory ambiguous and confusing. Subject to the objection, and assuming that "design" means "sketch, none of the enumerated designs (sketches) *per se* is in use and none of the designs (sketches) was produced by anyone other than plaintiff, her illustrator, Jan Starnes and Connie Albright.

At this time Defendant has no information indicating that any of clothes depicted in the sketches listed in Interrogatory No. 2 were used by defendant.

### Defendants' Response to Plaintiffs' Objection to Answer to Interrogatory No. 2:

Harrah's response to Plaintiffs' objection to its response to Interrogatory No. 1 is answered in part by its response to the first Interrogatory.

7

Plaintiffs seek to broaden discovery to encompass orders for *any* uniforms Defendants ordered even those designed by third-party.  Gianna, Inc. seeks to compel Harrah's to locate and compile information about all orders it placed with All Bilt, notwithstanding All Bilt's testimony that no uniforms based on Gianna's designs were ordered or manufactured after mid-year 1996.  It also seeks information about suppliers other than Uniform Ideas or All Bilt with whom Harrah's has placed thousands of orders over the years. There is not a scintilla of evidence or factual support for concluding such suppliers manufactured uniforms from Gianna designs.

Plaintiffs bootstrap this overbroad and wasteful discovery on the attenuated argument that All Bilt (or some other unidentified supplier) manufactured its own designs, but drew on aspects of Gianna's designs to create its own.  Plaintiffs' motion papers rely heavily on similarities they perceive between Galiano's clothing designs and uniforms designed and manufactured by All Bilt.  The alleged "similarities" between All Bilt's designs and Plaintiffs', however, do not give rise to any recourse against Harrah's and consequently do not justify compelling Harrah's to respond to further discovery.

The allegation that All Bilt drew on Gianna's designs in creating its own designs, if true, provides no recourse against Harrah's under the contract.  The contract on which plaintiffs rely does not address the use of Gianna designs by All Bilt or anyone else to create All Bilt's or someone else's designs.  The clear language of the contract contemplated that Gianna, Inc. would be compensated only for uniforms designed by Gianna, not for any influence on or similarity to designs by a third party.

The discovery to date establishes that the uniforms All Bilt sells are designed by its own design staff. Deposition of John Spordone, p. 14, lines 5-11, attached as "Exhibit

3"; deposition of Connie Albright, pp. 53-54, 86, 88, 93-94, attached as "Exhibit 4". All Bilt did not manufacture Gianna, Inc. designs after mid-year 1996. Harrah's ordered uniforms from All Bilt, and All Bilt has denied those uniforms were designed by Gianna. Consequently, Plaintiffs have no claim under the Settlement Agreement for royalties based on sales of uniforms designed by Gianna. Compelling Harrah's to compile information about uniforms designed by All Bilt is entirely unjustified.

Plaintiffs fare no better under their claim for copyright infringement. The law does not afford Plaintiffs the remedy they seek for using similar looking clothing articles. The law does not recognize a copyright in clothing designs. *Whimsicality, Inc. v. Rubie's Costume Co.,* 891 F.2d 452, 455 (2nd Cir.1989)( **"[C]lothes are not copyrightable."**); *Aldrdige v. Gap Inc.*, 866 F. Supp. 312, 313-315 (N.D. Tex. 1994)( **"[C]lothes, as useful articles, are not copyrightable."**). See also Melville B. Nimmer and David Nimmer, *Nimmer On Copyright*, v. 1, §2.08[h[[3] at 2-148 (distinguishing between "fabric designs," which can be copyrightable under a separability analysis, and clothes designs which are not). Even if the broad ranging discovery of other persons' designs should show similarities to Plaintiffs' designs, Plaintiffs cannot recover against Defendants. Discovery in this case should be limited to uniforms for which Plaintiffs have an actionable claim. They have no such claim where the uniforms were designed by anyone other than Gianna.

### Request for Production No. 4:

Any and all documents, correspondence, memorandum, payment of royalties and/or records relating to the purchase of uniforms and/or costumes by Harrah's including but not limited to any such materials which may be relevant to your answers to interrogatories 1 and 2.

9

**Response to Request for Production No. 4:**

Defendant objects to this request as overbroad, vague, ambiguous, oppressive and burdensome and seeking information not reasonably calculated to lead to admissible evidence   Subject to the objection, Defendant is making a reasonable search for documents and will update its response if it should discover documents responsive to this request.

**Response to Plaintiff's Objection to Response No. 4:**

Defendants addressed much of Plaintiffs' argument in earlier sections of this memorandum. Plaintiffs have also been given a list of invoices and explained that converting the data to hard copy from Defendants' system will not yield any graphic evidence about uniforms to which the invoices relate.  All Bilt has also sent a color catalog of the uniforms Harrah's has ordered from All Bilt. All Bilt has testified it did not produce those uniforms from Gianna's designs but designed the uniforms independently. Consequently, Plaintiffs have not made a viable case to justify requiring Defendants to search through invoices and retired data systems in the hope that there is some invoice that might lead to some drawing somewhere that contradicts All Bilt's clear testimony and evidence.

**Interrogatory No. 9:**

Please state whether Harrah's at any time paid royalties to plaintiffs for the use of designs contained in Annex E to plaintiffs' Motion for Summary Judgment.

**Defendant's Answer to Interrogatory No. 9:**

According to Accounts Payable records, Jane Galiano was issued two checks from Harrah's, one in the amount of $ 9,927.50 in January of 1996 and another in the amount of $ 7,500 in May of 1996. These payments were based on invoices submitted by plaintiffs representing that certain services had been rendered in connection with performance under a service contract with defendant.

**Defendant's Response to Plaintiff's Objection to Answer to Interrogatory No. 9.**

The payments were made pursuant to the design consulting agreement. Harrah's amends its answer to Interrogatory No. 9 to include this statement.

## MOTION TO AMEND COMPLAINT TO ALLEGE SINGLE BUSINESS ENTERPRISE AND SPOLIATION

**a.      Single business enterprise:**

Plaintiffs request an amendment of its Complaint to allege a single business enterprise. Plaintiffs have not alleged any factual support for such a claim. Plaintiffs named both Harrah's Operating Company and Harrah's Entertainment as defendants and both parties are still involved in this lawsuit. There is no need to allege a single business enterprise, nor any support in fact, law or procedure. Their only support is a letterhead and a business card. To establish a single business enterprise, a party must have substantial relevant evidence showing that two business entities are basically operated as one. That evidence must relate to a party's structure and operations. For example, the following factors have been considered in analyzing whether a group of entities constitutes a "**single business enterprise**":

11

1.    **Corporations** with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;

2.    Common directors or officers;

3.    Unified administrative control of **corporations** whose business functions are similar or supplementary;

4.    Directors and officers of one **corporation** act independently in the interest of that **corporation**;

5.    **Corporation** financing another **corporation**;

6.    Inadequate capitalization ("thin incorporation");

7     **Corporation** causing the incorporation of another affiliated **corporation**;

8.    **Corporation** paying the salaries and other expenses or losses of another **corporation**;

9.    Receiving no business other than that given to it by its affiliated **corporations**;

10.    **Corporation** using the property of another **corporation** as its own;

11.    Noncompliance with corporate formalities;

12.    Common employees;

13.    Services rendered by the employees of one **corporation** on behalf of another **corporation**;

14.     Common offices;

15.     Centralized accounting;

16.    Undocumented transfer of funds between **corporations**;

17.    Unclear allocation of profits and losses between **corporations**;  and

18.    Excessive fragmentation of a single enterprise into separate **corporations**.

*Lifemark Hospitals, Inc. v. St. Jude Hosp. of Kenner, La., Inc.*, 720 So.2d 1244, 1248 (La.App. 5 Cir. 1998).

The analysis for finding a single business enterprise is detailed and comprehensive. Merely referring to business cards and stationary is wholly inadequate. To allow plaintiffs to expand the pleadings will no doubt result in Plaintiffs undertaking harassing and oppressive discovery into Defendants' structure and operations. Plaintiffs' motion should be denied.

**b.      Spoliation of the evidence:**

Federal law does not recognize a cause of action for spoliation of evidence. The remedy for spoliation of evidence is evidentiary. Moreover, the spoliation concept is predicated solely upon bad conduct of a party, *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975); and the circumstances of the particular act complained of must manifest bad faith. Mere negligence is not enough to sustain an inference of wrongdoing. *Id.* at 737, citing McCormick, Evidence § 273 at 660-61 (1972), 31A C.J.S. Evidence § 156(2)(1964). Several Louisiana appellate courts have followed the law of this Circuit, finding that there must be an **intentional destruction** of evidence by a party for the purpose of depriving the opposing party of its use for spoliation to have occurred. *Constans v. Choctaw Transport, Inc.,* 97-0863, 97-0864, pp. 35-36 (La. App. 4 Cir. 12/23/97); 712 So. 2d 885, 902*; Randolph v. General Motors Corp.*, 93-1983, p. 12 (La. App. 1 Cir. 11/10/94); 646 So. 2d 1019, 1027; *Kammerer v. Sewerage & Water Bd.,* 93-1232 (La. App. 4 Cir. 3/15/94); 633 So. 2d 1357,1358.

In the present case, although Plaintiffs claim to be entitled to invoke the spoliation doctrine they have failed to demonstrate that any documents actually existed at one time and have since been intentionally destroyed. Rather, Plaintiffs speculate that graphics and other unspecified documentation must have existed and must have been wrongfully

13

destroyed. Plaintiffs urge that Harrah's should have maintained business records from 1995 and 1996 just in case of belated disputes with vendors. Plaintiffs' argument ignores the Settlement Agreement in May of 1996, intended to ensure that any of Plaintiffs' complaints would be resolved and any dealings between Plaintiffs and Defendants would be brought to a close. Plaintiffs did not file this lawsuit until January of 2000. Defendants are baffled as to why Plaintiffs are demanding that Harrah's could not dispose of old business records when Plaintiff herself has disposed on business records from this same time period. (See deposition of Jane Galiano, p. 22 attached as Exhibit "5"). As such, defendants have failed to state a claim upon which relief can be granted by this Court.

Rule 302 of the Federal Rules of Civil Procedure requires federal courts to apply state procedural law, rather than federal law, to determine the existence and effect of a presumption concerning a fact that is an element of a claim or defense that has its source in state law. However, the rule only applies when the presumption operates as a rule of substantive law. It does not apply to rules of law that merely allow the trier of fact to draw an inference. *Herbert v. Wal-Mart Stores, Inc.*, 911 F. 2d 1044, 1047 (5th Cir. 1990).

If Federal Rule of Evidence 302 does not require application of state law, then state law will apply to the issue of spoliation only if it is a matter of substantive law rather than procedure, under the *Erie* doctrine. Under an *Erie* analysis, spoliation is a procedural matter, hence governed by federal law. Spoliation would not affect the choice to sue in or remove an action to federal court since Plaintiffs' copyright infringement claims mandate a federal forum. Second, spoliation is not "bound up with the definition

14

of the rights and obligations of the parties" under state law so that denying the inference would result in different treatment between those parties suing in state court and those suing in federal court on the same cause of action. In fact, spoliation bears no more relation to the elements of Plaintiffs' claims or Defendants' defenses than does any other evidence in this case. The admissibility of all such evidence is governed by federal law. The federal courts have a keen interest in "control[ling] the fact-finding processes by which the rights of litigants are determined in order to preserve the 'essential character' of the federal system. Federal law governs. See, *Herbert,* 911 F.2d at 1047-1048.

## DISPUTED FACTS

The purpose of this section of this Opposition is to address the many misstatements in Plaintiffs' motion papers about how the parties have conducted this litigation. Plaintiffs have misinformed this Court about a number of collateral matters and Defendants are compelled to make the following corrections of inaccuracies found in Plaintiffs' Motion to Compel:

1.      Plaintiffs suggest that the letters from undersigned counsel notifying Plaintiffs' counsel of their intent to seek reimbursement of wasted costs associated with attending depositions were sent to harass Plaintiffs' counsel. Plaintiffs are wrong. The letters were sent anticipating that Plaintiffs would not timely subpoena some of the third-party witnesses and Defendants would have to incur the costs of depositions in New York and Memphis for some witnesses who did not appear. (See Letters written by Defendant's counsel and attached as annex A to Plaintiffs' Motion to Compel). Defendants' counsel discussed these concerns with Plaintiffs' counsel before sending the

letters, but Plaintiffs' counsel initially could not be reached and finally when reached expressed no desire to cooperate.  As feared, Howard Wechsler did not appear for a deposition in New York, and All Bilt did not produce the documents called for in Plaintiffs' untimely subpoena.  All Bilt's deposition was short and uneventful, much of the brief discussion being about how the documents would be searched for and delivered later.  See Deposition of John Sbordone, pp. 30-45, attached as "Exhibit 3".  All Bilt testified through Mr. Sbordone at the deposition in New York that it had records that would be responsive to Plaintiffs' subpoena but had not been given sufficient time to locate and produce them.  *Id.*  (Plaintiffs did not afford All Bilt the thirty days normally allowed to produce documents under Rule 34 of the Federal Rules of Civil Procedure.) As a result, All Bilt was not able to produce the documents until March 16.  As feared, the parties are now required to return to New York to question All Bilt about the depositions.

2.    Plaintiffs specifically  complain that Defendants tried to talk them out of taking the deposition of Uniform Ideas set for February 20, 2001 in New York. Plaintiffs fail to mention, however, that Uniform Ideas' counsel notified Plaintiffs that insufficient documents had been located to merit taking a deposition at that time.  (See Letter from Steve Frey to Sidney Shushan, "Exhibit 6")  Defendants' letter raised that concern with Plaintiffs' counsel, but Plaintiffs' counsel ignored the letter.

3.    Plaintiffs complain that Defendants did not timely respond to discovery. Plaintiffs fail to mention, however, that Defendants asked Plaintiffs for a one-week extension of time in which to answer Interrogatories and Request for Production of Documents, and Plaintiffs' counsel freely granted the extension.  Defendants answered

16



the discovery within that extended time. Plaintiffs are estopped from objecting to the extension and have not shown prejudice in any event. (See Exhibit "7").

4.      Plaintiffs claim that Defendants misrepresented their involvement with All Bilt by denying that All Bilt had any involvement in the manufacture of prototypes based on Gianna designs. The record shows that Defendants disclosed All Bilt's role in manufacturing prototypes of a few Gianna uniform designs. See Harrah's answer to Interrogatory No. 1. Moreover, Plaintiffs fail to mention that each of those All Bilt prototypes was constructed with Plaintiffs' permission and Plaintiffs were compensated therefor.

5.      Plaintiffs argue that Defendants are keeping documents from their own counsel. They refer to a letter from All Bilt to Jan Starnes dated December 4, 1995, which they say Defendants never provided to counsel because "Harrah's was simply unable to find that document in its vast empire." In fact, it was Plaintiffs' conduct in discovery that deprived Defendants' counsel of the opportunity to search for the letter. Despite Jane Galiano having a copy, which had been sent to her back in December 1995, Plaintiffs failed to disclose it in response to Defendants' Document Request until six weeks later on Friday afternoon on the eve of the Monday deposition of Connie Albright. Consequently, Defendants' counsel was given no opportunity to discuss it with Defendants or to inquire about it from the recipient Jan Starnes, over whom Defendants have no control since she has not been employed by Defendant since 1997. Plaintiffs' discovery misconduct precludes them from seeking sanctions or even suggesting Defendants have acted in bad faith.

17

6.    Plaintiffs misrepresent Defendants' response regarding their wide-ranging discovery of all Defendants' records pertaining to uniforms other than the few relating to Plaintiffs' uniform designs. Defendants (not Plaintiffs) called for a Rule 37.1 meeting on March 15, 2001 to discuss the scope of the request and the limited value of such search as they saw it. At the meeting, Defendants produced the voucher listings attached by Plaintiffs as "Annex O". The exhibit is a list of the hundreds of invoices that would technically be involved, each of which must be independently searched and many of which reside in digital form on obsolete platter software. Having run a sample (which Defendants' counsel also provided to Plaintiffs) Defendants' counsel learned that the hard copy print outs are of poor quality and contain only a brief oral description of the particular uniform sold, and contain no graphics that would identify the styles ordered. Counsel for Defendants also advised Plaintiffs' counsel that the task of locating even one invoice was extremely tedious and time-consuming and would yield little benefit. (Plaintiffs argue that the tediousness of this process was due to Defendants' counsel having tried to operate the system himself. Plaintiffs are well aware that Defendants' counsel did not perform the operations and that instead he personally observed Defendants' employee who had the custody and control of the system in issue. (See Affidavit of Sandra Layne, attached as Exhibit "8") )

7.    Plaintiffs also misstate Defendants' responses regarding illustrations or graphics. First, Defendants informed Plaintiffs that the information convertible from the obsolete platter system does not contain any graphic material and that the sales documents it does contain (purchase orders, invoices, and in some cases requisitions) do not have any graphic components. Plaintiffs create the false impression that at one time

18



the sales documents contained graphics which have since been destroyed. They did not. Defendants have not been able to locate any illustrations or three-dimensional renditions of Plaintiffs' uniforms and will continue to research the issue.

8.      Plaintiffs misstate the record regarding the status of so-called national uniforms. Plaintiffs allege that Harrah's ex-employee Connie Albright testified that "national" uniforms were based on Gianna designs or were "not exactly" the Gianna designs. In fact, Ms. Albright denied that any uniforms used throughout the system were based on Gianna designs. She testified in deposition that All Bilt and other manufacturers designed and provided any such uniforms. See deposition of Connie Albright, pp .53-54, 86, 93-94, attached as Exhibit 4)

9.      Plaintiffs rely on false evidence regarding use of Gianna Inc. designs in Harrah's casinos. They claim that Jane Galiano saw evidence of such use when she visited Harrah's casinos "last year". Under cross examination, however, in deposition she admitted that she has not visited a Harrah's casino other than New Orleans since 1998. (See Deposition of Jane Galiano, pp. 91-96) Moreover, Plaintiffs had represented to Judge Livaudais in their Motion for Summary Judgment and photos attached as Annex K that she had discovered that Harrah's was using uniforms based on her designs at Skagit Valley which designs she represented as "currently in use at Harrah's Skagit." See "Exhibit 9" one reference to photographs attached as Annex K that are "in use" at Skagit.). Under cross examination in her deposition, however, Ms. Galiano admitted that the photographs were taken at the Skagit Valley Casino opening in 1995 and depicted the limited order for which she had granted permission and which predated the 1996 Settlement Agreement. (Deposition of Jane Galiano, pp. 220-222.) Plaintiffs fail

to disclose that Harrah's no longer owns the Skagit Valley Casino, and that Plaintiff had not visited this Casino since December of 1995.

10.     Plaintiffs also misrepresent to this court that Defendants have opposed Plaintiffs' request for permission to photograph uniforms presently in use. The contrary is true. In fact, Defendants' counsel advised this Magistrate's Court that he did not oppose that request when it was made the subject of Plaintiffs' motion. Plaintiffs also fail to comment that Defendants' counsel pointed out to Plaintiffs' counsel at the discovery meeting on March 15 that Defendants did not oppose this request and that Plaintiffs' counsel never followed up to make arrangements for the casino visits. Plaintiffs' counsel was characteristically mum on the issue, and yet now claims Defendants are trying to prevent the photographing. The fact that Plaintiffs have not taken a single photograph so far is evidence that they are fully aware that such photographs will damage their case. They believe they will get more "mileage" from falsely portraying Defendants as being opposed to the photographing and claiming that such opposition is designed to defeat their discovery efforts. The truth is, Plaintiffs simply have not followed up.

11.     Finally, Defendants object to Plaintiffs' irrelevant and prejudicial comments relating to Harrah's bankruptcy. Plaintiffs have never alleged a claim related to the bankruptcy and were not claimants in any bankruptcy. Their accusations are merely intended to place Defendants in a bad light and confuse the issues. Such tactics are unworthy of federal court litigants and should not be allowed.

## CONCLUSION

Defendants have responded fully to Plaintiff's discovery.  Defendants provided

Plaintiffs all documents in their possession relating to this lawsuit.  Moreover, Plaintiffs'

attenuated claim for relief based on "similar designs" is not actionable and evidence

thereon will not be relevant.  Plaintiffs have failed to put forth any evidence that would

support opening this case up to discovery and litigation over the spoliation of evidence.

Finally, spoliation of evidence is only an evidentiary safeguard and not a cause of action,

and thus cannot be pled.

Respectfully submitted,

**ADAMS AND REESE LLP**

Joseph W. Looney (8773)
Melissa S. LaBauve (25745)
4500 One Shell Square
New Orleans, Louisiana  70139
Tel: (504) 581-3234
Fax: (504) 566-0210
*Attorneys for Defendants,*
*Harrah's Operating Co., Inc. and*
*Harrah's Entertainment, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served

upon all counsel of record by placing same in the United States Mail, postage pre-paid,

this 26th day of March, 2001.

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED