

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 APR 20 PM 4: 18

APR 20 2001
LORETTA G. WHYTE
CLERK

EASTERN DISTRICT OF LOUISIANA
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| | * | |
| | * | |
| | * | |
| VERSUS | * | SECTION " E " " (5) |
| | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| | * | |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE ALMA CHASEZ |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION TO DISMISS COUNTERCLAIM UNDER FRCP RULE 12(b)(6), OR ALTERNATIVELY FOR A MORE DEFINITE STATEMENT UNDER FRCP RULES 9(b) AND 12(e)

Now come plaintiffs, Jane Galiano and Gianna, Inc., who respectfully move this Court to dismiss defendants' counterclaim under FRCP Rule 12(b)(6), or alternatively for a more definite statement under FRCP Rules 9(b) and 12(e), for the reasons set forth in the Memorandum of Law annexed hereto.

New Orleans, Louisiana this 20th day of April 2001.



Respectfully submitted,

Sidney L. Shushan, # 12055
Guste, Barnett, & Shushan, L.L.P.
Attorneys for Crossclaim Defendants and Movers,
639 Loyola Avenue,    Suite 2500
New Orleans, La. 70113
Telephone: 504-529-4141
Direct Line 504-681-4519
Fax: 504-561-0326
E-mail: sshushan@bellsouth.net

EASTERN DISTRICT OF LOUISIANA
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| | * | |
| | * | |
| | * | |
| VERSUS | * | SECTION " E" " (5) |
| | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| | * | |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE ALMA CHASEZ |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS COUNTERCLAIM UNDER FRCP RULE 12(b)(6), OR
ALTERNATIVELY FOR MORE DEFINITE STATEMENT
UNDER FRCP RULES 9(b) AND 12(e)**

**MAY IT PLEASE THE COURT:**

### INTRODUCTION

Harrah's Operating Company, Inc. and Harrah's Entertainment, Inc., (Harrah's) were

recently sanctioned by Judge Alma Chasez for its questionable cooperation with discovery. Now

Harrah's seems determined to risk sanctions on the merits of the case as well.[1]

Harrah's now alleges "fraud" by plaintiffs.[2]

Defendants are well aware that "charges of fraud can do great harm to the reputation of a

---

[1] There is no Rule 11 issue before the Court at this time.

[2] This is not the first time Harrah's has used threats of alleged criminality to intimidate Plaintiffs. Obvious threats were used in Jane Galliano's deposition of March 13, 2001, in an attempt to intimidate her. (Deposition pp. 120-122). But this should be the last time Harrah's uses threats to defend this case. If it had good defenses on the merits, it would not need to resort to threats to defend itself in the first place. See attached pages.

business firm or other enterprise (or individual)".[3]   Harrah's is well aware that "unsubstantiated charges of fraud can irreparably damage a defendants' reputation". [4]

Defendants are also aware that one of their costume manufacturers, Howard Wecksler, then a representative of All-Bilt Uniform Fashion, remarked  that several of plaintiffs' designs were "quite unique".  They were so original that All-Bilt's price quotations were only "guesstimates". [5]

Defendants are certainly aware of the Federal Rules 9(b), 11, 12(b)(6), and 12(e).  Yet, Harrahs' nevertheless rushed in to allege fraud where even angels might fear to tread.  However, the "fraud"  counterclaim  does not even state a claim upon which relief can be granted.   It does not meet the basic test of Rule 12(b)(6). Even if Harrahs' claim of fraud met the basic test of Rule 12(b)(6),  the Federal Rules measure "fraud" pleadings by a higher standard.

Harrah's  "fraud" counterclaim egregiously and recklessly violates the criteria established by FRCP Rule 9(b). The Court should dismiss the counterclaim, or order a more definite statement under FRCP Rule 9(b).

## I. THE COURT SHOULD DISMISS THE COUNTERCLAIM UNDER RULE 12(b)(6) BECAUSE IT DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. The concept of "entirely original" is not a recognized yardstick of

---

[3] See e.g., Ackerman v. Northwestern Mutual Insurance Co., 172 F. 3d 467, 469 (7th Cir. 1994).

[4] Norman v. Apache Corp.,, 19 F.3d 1017, 1022( 5th Cir. 1994), Guidry v. Bank of LaPlace 954 F.2d 278(5th Cir. 1992).

[5] See letter, Wecksler to Jan Starnes of Harrah's, December 4, 1995 (copy annexed).

4

**copyright law.** The counterclaim alleges that plaintiffs committed "fraud"since Harrahs' claims their copyrighted work was not "entirely original".

> **"Entirely original" or "complete originality" is a meaningless term in copyright law. It is not a basis for a claim upon which relief can be granted.**

For example, it is black letter law that "some creative spark" can satisfy the "originality" requirement. "Originality" does not mean "novelty". [6] The question is whether the work is "devoid of creativity"; not whether the work(s) are "completely or entirely original". [7]

If "complete" or "entire originality" is not the yardstick, then failure to disclose that fact cannot possibly rise to the level of "fraud". Plaintiffs have no duty to disclose completely irrelevant information on their application.

It is black letter law that conduct which will not support a civil action for infringement cannot possibly constitute copyright "fraud". [8] It is also black letter law that "fraud" can only exists if the concealed fact is "material". "Complete originality" is not material. To be copyrightable a work need only show a minimal degree of originality.[9] For fraud to exist, both

---

[6] Feist Publications, 111 S.Ct. 1282, 1991; see e.g., Mason v. Montgomery Data, 967 F.2d 135(5th Cir. 1992); National Broadcasting Co., Inc. v. Sonneborn, 630 F.Supp. 524(D. Conn. 1985); Apple Computer, Inc. v. Microsoft Corp., 759 F.Supp. 1444(N.D. Cal. 1991);

[7] Alcatel USA Inc, 5th Cir. 1999, 166 F.3d 772; Modern Pub., a Division of Unisystems, Inc. v. Landoll, Inc.,841 F.Supp. 129( S.D.N.Y. 1994); CCC Information Services, Inc. v. Macleen Hunter Market Reports, Inc., 44 F.3d 61 (2nd Cir. 1994); O'Well Novelty Co. v. Offenbacher, Inc.225 F.3d 655 (4th Cir. 2000).

[8] See e.g., US v. Moran, 757 F.Supp. 1046 (D.Neb. 1991)

[9]  John Muller & Co., Inc., v. New York Arrows Soccer Team, Inc., 802 F.2d 989(8th Cir. 1986); Apple Computer, Inc. v. Microsoft Corp., 759 F.Supp. 1444(N.D. Cal. 1991); Fiest Publications, Inc. v. Rural Telephone Service Co., Inc.,111 S.Ct. 1282(1991) M.H. Segan, supra, citing Melville B. Nimmer & David Nimmer, "Nimmer on Copyright" § 3.01 at 3-3 (1995); Eden

5

fraudulent intent and materiality must be shown.[10]   Material facts are those that, if included, would have occasioned rejection of the copyright application.[11]

In Apple Computer, Inc. v. Microsoft Corp., the copyright registrant failed to disclose that the registered works were **based on** the pre-existing works of others. 759 F.Supp. 1444(N.D. Cal. 1991). The Court refused to deem this fraudulent, failure to reveal that one borrowed ideas does not constitute fraud.   The law does not require authors to acknowledge sources of artistic influence.  Thus,  failure to acknowledge sources of artistic influence(s) does not overcome the copyright registration's presumption of validity. *Id*

Defendants allegations that plaintiffs' works were "based on" some prior work, are not plead with sufficient particularity for plaintiffs to identify what "prior works" defendants are referring to in their counterclaim.  Nonetheless, even if defendants' contentions were true, such use of prior works as an inspiration for new artistic works does not constitute fraud. Furthermore, absent an intent to defraud and prejudice, inaccuracies in a copyright registration do

---

Toys , Inc. v. Florelee Undergarment Co., Inc. , 697 F.2d 27 (2nd Cir. 1982); US v. Taye, 540 F.2d 961 (9th Cir. 1976); Accord Litchfield v. Spielberg, 736 F.2d 1357 (9th Cir. 1984); Peter Pan Fabrics, inc. v. Rosstex Fabrics, Inc., 733 F. Supp. 174 (S.D.N.Y. 1990).

[10] M. H. Segan, Ltd., Partnership V. Hasbro, Inc., 924 F. Supp. 512 at 518(S.D.N.Y. 1996); Apple Computer, inc. v. Microsoft Corp., 759 F. Supp. 1444(N.D. Cal. 1991); Eden Toys, Inc. v. Florelee Undergarments Co., Inc. 697 F.2d 27 (2nd Cir. 1982); Pickett v. Prince, 52 F. Supp. 2d.893 (N.D. Ill. 1999); Gracen v. Bredford Exchange, 698 F.2d 300 (C.A. Ill. 1983)' Apple Computer, Inc. v. Microsoft Corp., 759 F.Supp. 1444 (N.D. Cal. 1981).

[11] N&DE Co. v. Gustings, 23 U.S.P.Q.2d 1049(E.D. La. 1992); NY Chinese TV programs, Inc. v. U.E. Enters. Inc., 1989 C.L.D. 398(S.D.N.Y. 1989); Harris v. Emus Records Corp., 734 F.2d 1329(9th Cir. 1984).

6

not bar actions for infringement.[12]

Neither the defendants nor any previously deposed witnesses provided any evidence that any person other than Jane Galiano or an employee of Gianna Inc., fixed any work contained in plaintiffs' collection in a tangible medium as required for copyright protection.  Even if defendants' employees originated the "ideas" for the costumes in plaintiffs' collection, <u>ideas are not subject to copyright protection</u>.

A. Rule 9(b) requires the defendants to include details as to who, what, when, where, and how the "fraud" was effected.[13]  To meet the particularity requirements of Rule 9(b), the defendants must allege:   (1) the precise statements, documents or misrepresentations made; (2) the time, place, and person responsible for the action; (3) the content or manner in which these statements misled the plaintiff; (4) and, what the plaintiffs gained by the alleged fraud.[14]  Defendants must identify the fraudulent statements, state the reasons why they consider the statements fraudulent, identify the source of the statements, indicated when and where the fraudulent statements were made.[15]

**B. The copyright application does not require a disclosure of "complete" or "entire originality".**

---

[12] <u>Harris v. Emus Records Corp.</u>, 734 F.2d 1329(9th Cir. 1984).

[13] <u>Hemenway v. Peabody Coal Co.</u>, 159 F.3d 255 (7th Cir. 1998); <u>Sunquest Informations Sys., Inc. v. Dean Witter Reynolds, Inc.</u> 40 F.Supp. 2d 644 (W.D. PA 1999).

[14] <u>Rhodes v. Omega Research, Inc.</u> 38 F.Supp. 2d 1353 (D.C. Fla. 1999); <u>Fonseca v. Columbia Gas System, Inc.</u>, 37 F. Supp. 2d  214 (D.C.N.Y. 1998).

[15] <u>Bayou Fleet, Inc. v. Alexander</u>, 26 F. Supp. 2d894 (E.D. LA 1998); <u>Brown v. Coleman Invs., Inc.</u>, 993 F. Supp. 416 (M..D. LA 1998).

The words, "complete or entirely original", do not appear anywhere on the copyright form. These words are not applicable in any standards in copyright law.

**C. The "derivative works" section of the copyright application does not require disclosure of whether a work is "completely or entirely original".**

It is the "spark of creativity" which gives the right to copyright a work which is "based on" the work of someone else. All works are derived to some extent from a pre-existing work(s), but a derivative work substantially borrows the expression of idea(s) from an existing work.[16]

According to the Second Circuit; "**A work is not derivative unless it has *substantially* copied from a prior work...**"[17] **This counterclaim does not allege that plaintiffs "substantially copied" from a prior work. Harrah's counterclaim does not state a claim upon which relief can be granted.**

**D. The words "based on" contained in the counterclaim do not state a claim upon which relief can be granted.**

It is black letter law that the words "based on" in Section 101 only apply if there is a "substantial similarity" between the prior work and the copyrighted work: "Not just any work

_____

[16] Apple Computer, Inc. v. Microsoft Corp., 759 F.Supp. 1444(N.D. Cal. 1991) (Citing M. Nimmer, 1 THE LAW OF COPYRIGHT Section 3.01(1990)).

[17]  John Muller & Co., Inc., v. New York Arrows Soccer Team, Inc., 802 F.2d 989(C.A. 8 1986); Apple Computer, Inc. v. Microsoft Corp., 759 F.Supp. 1444(N.D. Cal. 1991); Fiest Publications, Inc. v. Rural Telephone Service Co., Inc.,111 S.Ct. 1282(1991) M.H. Segan, supra, citing Melville B. Nimmer & David Nimmer, "Nimmer on Copyright" § 3.01 at 3-3 (1995); Eden Toys , Inc. v. Florelee Undergarment Co., Inc. , 697 F.2d 27 (2nd Cir. 1982); US v. Taye, 540 F.2d 961 (9th Cir. 1976); Accord Litchfield v. Spielberg, 736 F.2d 1357 (9th Cir. 1984); Peter Pan Fabrics, inc. v. Rosstex Fabrics, Inc., 733 F. Supp. 174 (S.D.N.Y. 1990).

that is *based on* a pre-existing work is a 'derivative' work.... A derivative work must **'borrow substantially** from existing works." [18]

  **The counterclaim does not allege "substantial similarity" with a prior work.** It does not state a claim upon which relief can be granted.

   **E. Nor does the word "misuse" state a claim upon which relief can be granted.**

  The doctrine of "misuse" as defined by the 5th Circuit in <u>Alcatel USA, Inc. v. DGI Tech. Inc.</u>, 166 F.3d 772 (5th Cir. 1999), requires that a copyright holder forbid the use of a copyright to secure an exclusive right or limited monopoly <u>not</u> granted by the [Copyright] Office, and a monopoly which it is contrary to public policy to grant.[19]    The court in <u>Lasercomb</u> specifically held that a finding of misuse <u>does not</u> invalidate plaintiff's copyright and that plaintiff was free to bring a suit for infringement once it has purged itself of the misuse. [20]

  The key cases which have recognized the claim of copyright misuse involved some type of licensing agreement required by the copyright holder which effectively precludes defendants from creating a competing product.

  Defendants have not alleged nor is there any evidence to support an allegation that plaintiffs acted to preclude defendants from independently developing costumes or uniforms for

---

[18] <u>Eden toys, inc. V. Florelee Undergarments Co., inc.</u>, 697 F.2d ( 2nd Cir. 1982); <u>Pickett v. Prince</u>, 52 F.Supp. 2d 893 (N.D.Ill. 1999); <u>Gracen v. Bredford Exchange</u>, 698 F.2d 300 ( C.A. Ill. 1983);   <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 759 F.Supp. 1444(N.D. Cal. 1991)

[19] <u>Alcatel</u> at 722 (Citing <u>Lasercomb Am., Inc. v. Reynolds</u>, 911 F.2d 970, 972, (4th Cir. 1990).

[20] <u>Lasercomb Am., Inc. v. Reynolds</u>, 911 F.2d 970, 972, (4th Cir. 1990).

its casinos.  Rather, plaintiffs seek only to prevent defendants from using Gianna's designs.  There is no evidence to support a claim that plaintiffs attempted to obtain any monopoly not granted by copyright laws.  Furthermore, defendants have not alleged misuse with sufficient particularity for plaintiffs to determine the manner in which defendants allege plaintiffs misused their copyright.

**F. Nor does the counterclaim allege whether the prior work was original or in the public domain.**  Here again, the counterclaim does not state a claim upon which relief can be granted.  The legal consequences are different.   Defendants allege that plaintiffs have committed fraud because plaintiffs' work was "based on" the prior work of a third party.  Defendants fail to identify which of plaintiffs' designs are based on so called "prior works" or who the third parties are that created these "prior works."  Defendants fail to allege that the "prior works" are copyrighted.  Thus, defendants' allegations fail to meet the test of Rule (9)(b) and therefore, defendants' claim should be dismissed.

Moreover, defendants counterclaim does not meet the usual standards of Rule 12 (b)(6) because defendants do not allege that the so called "works of a third party", are subject to copyright protection.  If the "prior work" alleged by defendants is in the public domain, then defendants have not stated  a claim upon which relief can be granted.[21]

## II. ALTERNATIVELY, THE COURT SHOULD DISMISS OR ORDER A MORE DEFINITE STATEMENT UNDER RULES 9(b) AND 12(e), FRCP.

Many cases in the Fifth Circuit and other Courts discuss and apply the Rule 9(b) standard

---

[21] Norma Ribbon & Trimming, Inc., v. Little 51 F.3d 45 (5th Cir. 1995); Lewis Galoob Toys, Inc. v. Nintendo of America, Inc., 964 F. 2d 965 (9th Cir. 1992) (Cert. Denied, 113 S.Ct. 1582).

where "fraud" is alleged. [22]  The Fifth Circuit in other cases has not hesitated to use Rule 9(b) to dismiss fraud claims. [23]  Rule 9(b)  is not just a "notice" requirement.  The pleading must give some details as to what happened.

Harrahs' counterclaim is studiously vague as to many of the essential facts of the alleged "fraud".

**1. It does not allege one single fact to identify the alleged "prior work".**

**2. It does not identify the authors of the alleged "prior work".**

**3. It does not allege any facts to identify the "third party or third parties".**

**4. It does not allege any facts as to  whether or not the third party (ies) work was in the public domain.**

**5. The copyrighted work consists of 123 designs. It does not state whether all of plaintiffs' designs were without  "entire originality" or just some of them.  If less than all of the designs are without "originality in Harrahs' opinion; Harrahs' does not allege which designs are in question.  In particular, it does not alleged whether the designs in dispute in this case - or some others in the collection not at issue here - were "based on prior work".**

---

[22] Norman v. Apache, 19 F.3d 1017;  Ackerman, 172 F.3d 467, Matter of Haber Oil, 12 F.3d 426; Shushany v. Allwaste, Inc., 992 F.2d 517 (5th Cir. 1993); Wayne Inv., Inc. V. Gulf Oil Corp., 739 F.2d 11 (1st Cir. 1984); Zerman v. Ball, 735 F.2d 15 (2nd Cir. 1984); Goren V. New Vision Int'l, Inc., 156 F3d 721 (7th Cir. 1999); Brown V. Coleman Invs., Inc, 993 F.Supp. 416 (D.C. LA 1998); Chrysler Credit Corp. v. Whitney Nat. Bank, 824 F.Supp. 605 (E.D. LA 1993); U.S. v. Crescent City, E.M.S., Inc., 151 F.R.D. 288 (E.D. LA 1993).

[23] Norman v. Apache, 19 F.3d 1017;  Ackerman, 172 F.3d 467, Matter of Haber Oil, 12 F.3d 426; Shushany v. Allwaste, Inc., 992 F.2d 517 (5th Cir. 1993); Wayne Inv., Inc. V. Gulf Oil Corp., 739 F.2d 11 (1st Cir. 1984); Zerman v. Ball, 735 F.2d 15 (2nd Cir. 1984); Goren V. New Vision Int'l, Inc., 156 F3d 721 (7th Cir. 1999): Brown V. Coleman Invs., Inc, 993 F.Supp. 416 (D.C. LA 1998); Chrysler Credit Corp. v. Whitney Nat. Bank, 824 F.Supp. 605 (E. D. LA 1993); U.S. v. Crescent City, E.M.S., Inc., 151 F.R.D. 288 (E.D. LA 1993).

6. It does not present any facts to explain when, where and how plaintiffs allegedly obtained access to the mysterious "prior work".

7. It does not produce any facts to show what it means by "based on".

8. It does not cite any facts to explain what it means by "not entirely original".

9. It does not indicate  any facts to explain why "not completely original" + "based on" = "fraud".

10. It does not bring forth any facts to explain what it means by "misuse".

11. It does not allege any facts to explain why there was a duty to disclose to the Copyright Office whether the work was "entirely original".

12. It does not specify  any present facts to explain why "misuse" is grounds for dismissal or attorney's fees.

By any yardstick established by the case law, it does not meet the test of Rule 9(b).

The cases where the Courts applied Rule 9(b) to dismiss claims involved more well pleaded facts than the cryptic counterclaim before the Court in this case.

For example, the fraud pleader must "particularize the falsity" of the alleged fraudulent statements.[24]  The Fraud Counterclaim does not begin to particularize any facts or allegations. Rule 9(b) applies if the fraud allegations "are unaccompanied by specific allegations".   The Fraud Counterclaim is anything but specific as to which designs were involved, or what the prior art was, or whose it was, or any of the facts to show why a civil infringement - much less fraud - was involved.

Pleading fraud with particularity in the 5th Circuit requires identification of the time, place,

---

[24]   Williams v. WMX Technologies, Inc., 112 F.3d 175, 180.(5th Cir. 1997)

and contents of the false representations, as well as the identity of the person making the

misrepresentation, and what that person obtained thereby.[25] Articulating the elements of fraud

with particularity requires a plaintiff to specify statements contended to be fraudulent, identify the

speaker, state when and where the statements were made, and explain <u>why</u> the statements were

fraudulent.[26]

In <u>Williams</u>, the plaintiff attached a newspaper article to the complaint to support the

allegations of fraud. The court held that plaintiff had failed to meet the standards of Rule 9 (b),

because plaintiff did not satisfy the "who, what, when, where, and how" requirement of Rule

9(b).[27]

Defendants failed to identify why plaintiffs' copyrighted work is not entirely original or

what part defendants are alleging is not original. Defendants do not identify the third party or

parties on whose work the plaintiffs' copyrighted work is "based on." Plaintiffs' work contains

123 designs. Defendants do not identify which designs it is alleging are not "entirely original".

Defendants complaint simply does not meet the particularity standard of Rule 9(b) as

applied by the 5th Circuit Court of Appeals. Defendant's complaint should be dismissed.

The Court should dismiss under Rule 12(b)(6), or 12(e), or at least order a more definite

---

[25]   <u>Williams v. WMX Technologies, Inc.</u>, citing <u>Tuchman v. DSC Communications Corp.</u>,
14 F.3d 1061, 1068 (5th Cir.1997); see also <u>Melder v. Morris</u>, 27 F.3d 1097 (5th Cir.1994);
<u>Shusbeny v. Alleraste</u>, 992 F.2d 517, 520 (5th Cir.
1993).

[26] <u>Willimas v. WMX Technologies, Inc.</u>, 112 F.3d 175, 177 (5th Cir. 1997); citing <u>Mills v.
Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2nd Cir. 1993).

[27] <u>Williams</u> at 112 f.3d 175, 179(5th Cir. 1997); citing <u>Melder v. Morris</u>, 27 F.3d 1097,
1100 (5th Cir. 1994); see also <u>D. Leo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir   )(cert.
Denied 498 U.S., 941.

statement under Rule 9(b).  It is time to call a halt to Defendants' harassing tactics.

New Orleans, Louisiana this 20th day of April.

Respectfully submitted,

Sidney L. Shushan, #12055
Guste, Barnett & Shushan, L.L.P.
Attorneys for Cross Claim Defendants and Movers
639 Loyola Avenue;   Suite 2500
New Orleans, La. 70113
504-529-4141
Direct Line 504-681-4519
Fax 504-561-0326
E-mail: sshushan@bellsouth.net

14

EASTERN DISTRICT OF LOUISIANA
UNITED STATES DISTRICT COURT

JANE GALIANO, AND GIANNA, INC.          *        CIVIL ACTION NO. 00-0071
                                        *
                                        *
                                        *
VERSUS                                  *        SECTION " E" " (5)
                                        *
                                        *        JUDGE MARCEL LIVAUDAIS, JR.
                                        *
HARRAH'S OPERATING CO., INC.,           *
            AND                         *
HARRAH'S ENTERTAINMENT, INC.            *        MAGISTRATE ALMA CHASEZ
                                        *
* * * * * * * * * * * * * * * * * * * * * * *

## ORDER

Considering the plaintiffs' Motion to Dismiss the Counterclaim Under FRCP Rule

12(b)(6), or alternatively for a More Definite Statement Under FRCP Rules 9(b) and 12 (e),

Memorandum of Law, filed by Jane Galiano and Gianna, Inc.,

IT IS ORDERED by this Court that the Motion  to Dismiss the Counterclaim Under FRCP

Rule 12(b)(6), or alternatively for a More Definite Statement Under FRCP Rules 9(b) and 12 (e),

by Jane Galiano and Gianna, Inc., be and is hereby granted  on Wednesday, 30th day  of  May,

2001, at 10:00.o'clock A. M. New Orleans this 20th  day of April 2001.

_____

UNITED STATES DISTRICT JUDGE

15

EASTERN DISTRICT OF LOUISIANA
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| | * | |
| | * | |
| | * | |
| VERSUS | * | SECTION " E" " (5) |
| | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| | * | |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| | * | |
| | * | MAGISTRATE ALMA CHASEZ |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF HEARING

You are hereby notified that the Motion to Dismiss the Counterclaim Under FRCP Rule

12(b)(6), or alternatively for a More Definite Statement Under FRCP Rules 9(b) and 12 (e),

by Jane Galiano and Gianna, Inc. will be heard on Wednesday, the 30th day of May , at 10:00 A.

M., at the United States District Court for the Eastern District of Louisiana, 501 Magazine Street,

New Orleans, Louisiana 70130.

New Orleans, Louisiana, the 20th day of April, 2001.

Respectfully submitted,

SIDNEY L. SHUSHAN, #12055
Guste, Barnett & Shushan & L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana  70113
Telephone:  (504) 529-4141
Attorney for Counterclaim Defendants/Movers
Jane Galiano and Gianna, Inc.

16

EASTERN DISTRICT OF LOUISIANA
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| | * | |
| | * | |
| | * | |
| VERSUS | * | SECTION " E" " (5) |
| | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| | * | |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE ALMA CHASEZ |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 20th day of April  2001  served a copy of

the foregoing pleading on counsel for all parties to this proceeding

Mr. Joseph W. Looney, T.A.
Ms. Melissa S. LaBauve
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Attorney for Defendants,
Harrah's Operating Co., Inc. and
Harrah's Entertainment, Inc.

by hand delivery.

SIDNEY L. SHUSHAN

12

**ALL·BILT**
UNIFORM FASHION

December 4, 1995

Ms. Jan Starnes
Director of Costuming & Marketing
Harrah's
1023 Cherry Road
Memphis, TN  38117

Dear Jan:

All-Bilt Uniform Fashion is pleased to present its price proposal for the uniform costumes, designed by Gianna, for the Harrah's Casino in New Orleans.

The prices listed below are predicated upon the designs submitted by Gianna. Fabrics and trimmings have been determined by All-Bilt in concert with Gianna. As you know, several of the design concepts are quite unique. Therefore, the pricing submitted must be considered as guesstimates. Once samples have been produced, submitted and approvals given, final pricing will be presented.

Finally, we have submitted our prices based upon the quantities and par levels originally presented with the informational pockets distributed on July 17th. Where we are unsure of quantity and par levels, we have submitted our pricing in unit quantity categories.

<u>We have not priced all of the designs presented by Gianna.</u> With the announcement of the bankruptcy and temporary closure of the New Orleans property, we did not proceed with these final items. If Harrah's still desires pricing for these items, All-Bilt will comply accordingly.

With the above stated, All-Bilt is pleased to present its "ball park" pricing for the Harrah's New Orleans project.

### Cocktail

| Item | Fabrication | | Price |
|---|---|---|---|
| Basic Cocktail Dress | Body: | Crepe Back Satin, 100% Poly | $108.80 ✓ |
| | Harlequin Print: 100% Polyester | | |
| Cocktail Bustle | Body: | Silky Moire' Taffeta, 100% Poly | $ 24.25 ✓ |
| | Trim: | Seville Satin, 100% Poly | |

| Court Of The Mansions Choker | Body:<br>Trim: | Silky Moire' Taffeta, 100% Poly<br>Mini Harlequin Print, 100% Poly | $31.00 |

**Jazz Court**

| Hat | Body:<br>Trim: | Wool Felt<br>Mini Harlequin Print, 100% Poly | $ 37.95 |
| Cummerbund | | Mini Harlequin Print, 100% Poly | $ 15.30 |
| Bow Tie | | Mini Harlequin Print, 100% Poly | $ 6.25 |
| Dickie | | Sabre Cord, 65% Poly/35% Cotton | $ 8.00 |
| French Cuffs | | Sabre Cord, 65% Poly/35% Cotton | $ 5.50 |

**Smugglers Cove**

| Wrap Vest w/o Screen Print | | 100% Polyester Suede Cloth | $ 16.50 |
| Head Bandera | | Mini Harlequin Print, 100% Poly | $ 15.00 |

**Court of Good Fortune**

| Hat | Body:<br>Trim: | Wool Felt<br>Mini Harlequin Print, 100% Poly | $ 37.95 |
| Ascot Tie (tie tac not included) | | Gold Charmeuse, 100% Poly | $ 13.80 |
| Vest | Body:<br>Trim: | Crepe Back Satin, Red 100% Poly<br>Eloise Satin, Black 100% Poly | $ 50.00 |

**Mardi Gras**

| Vest | | Seville Satin - Black/Gold - 100% Poly | $ 50.25 |
| Jester Hat | | To Follow | |
| Jester Collar | | To Follow | |

## Retail

| | Crepe Back Satin - 100% Poly | | |
|---|---|---|---|
| Jacket - Screen Print Not Included | Unit Quantity | 1-10 | $ 97.95 |
| | | 11-50 | $ 81.95 |
| | | 51-100 | $ 64.70 |

| | Crepe Back Satin - 100% Poly | | |
|---|---|---|---|
| Skirt | Unit Quantity | 1-10 | $ 43.60 |
| | | 11-50 | $ 41.55 |
| | | 51-100 | $ 39.95 |

| | | | |
|---|---|---|---|
| Body Suit | Cotton/Lycra (Scoop Neck Tank Style) | | $ 19.40 |

## Baccarat

| | 2-Ply Tropical - 55% Poly/45% Wool | | |
|---|---|---|---|
| Female Eton Jacket | Unit Quantity | 1-10 | $134.85 |
| | | 11-50 | $114.95 |
| | | 51-100 | $ 99.40 |

| | 2-Ply Tropical - 55% Poly/45% Wool | | |
|---|---|---|---|
| Female Pants | Unit Quantity | 1-10 | $ 60.90 |
| | | 11-50 | $ 56.85 |
| | | 51-100 | $ 53.95 |

| | Body: | 2-Ply Trop - 55% Poly/45% Wool | |
|---|---|---|---|
| Male Vest | Trim: | Large Harlequin Print, 100% Poly | |
| | | Unit Quantity    1-10 | $ 86.85 |
| | | 11-50 | $ 73.10 |
| | | 51-100 | $ 59.80 |

| | 2-Ply Trop - 55% Poly/45% Wool | | |
|---|---|---|---|
| Male Pants | Unit Quantity | 1-10 | $ 81.65 |
| | | 11-50 | $ 77.60 |
| | | 51-100 | $ 14.75 |

| | | |
|---|---|---|
| Tuxedo Shirt | Wing Collar 1/4" Pleated Front 65% Poly/35% Cotton | $ 14.75 |

| | | |
|---|---|---|
| Ascot Male & Female | Mini Harlequin Print, 100% Poly | $ 13.80 |

| Female Cut-Away Coat | 2-Ply Trop - 55% Poly/45% Wool | | | |
| | Trim: | Large Harlequin Print, 100% Poly | | |
| | | Unit Quantity | 1-10 | $201.90 |
| | | | 11-50 | $164.90 |
| | | | 51-100 | $138.70 |

| Male Cut-Away Coat | 2-Ply Trop - 55% Poly/45% Wool | | | |
| | Trim: | Large Harlequin Print, 100% Poly | | |
| | | Unit Quantity | 1-10 | $248.25 |
| | | | 11-50 | $232.30 |
| | | | 51-100 | $220.05 |

## Cigarette Host/Hostess

| ✓ | Hat - Host/ Hostess | 3-Ply Trop - Red 55% Poly/45% Wool | | | $ 43.80 |

| ✓ | Female Eton Jacket | 3-Ply Trop - Red 55% Poly/45% Wool | | | |
| | | Trim: | 3-Ply Trop Black | | |
| | | | Unit Quantity | 1-10 | $175.45 |
| | | | | 11-50 | $157.85 |
| | | | | 51-100 | $138.90 |

| ✓ | Skirt Double Tiered | Crepe Back Satin, 100% Poly | | | |
| | | Unit Quantity | 1-10 | $ 46.15 |
| | | | 11-50 | $ 44.00 |
| | | | 51-100 | $ 42.30 |

| ✓ | Male Eton Jacket | 3-Ply Trop - Red 55% Poly/45% Wool | | | |
| | | Trim: | 3-Ply Trop Black, 55% Poly/45% Wool | | |
| | | | Unit Quantity | 1-10 | $184.05 |
| | | | | 11-50 | $166.45 |
| | | | | 51-100 | $147.55 |

| ✓ | Male & Female Shoulder Boards | With Gold Fringe | | | $ 53.30 |

| ✓ | Male Pants w/Black & Gold Stripe | 3-Ply Trop - Black 55% Poly/45% Wool | | | |
| | | Unit Quantity | 1-10 | $ 82.65 |
| | | | 11-50 | $ 78.60 |
| | | | 51-100 | $ 75.65 |

## Valet Parking

| | | | |
|---|---|---|---|
| Hat | Multi Colored Front Panels 65% Polyester/35% Cotton | | $ 8.50 |
| Unisex Shirt | Multi Colored Front 65% Polyester/35% Cotton | | |
| | Unit Quantity | 51-100 | $ 42.10 |
| | | 101-200 | $ 40.30 |
| | | 201-300 | $ 36.50 |
| Jacket | Multi Colored Front Panels 65% Polyester/35% Cotton | | $126.85 |
| Jacket - Liner | 100% Quilted Poly Fill | | $ 28.25 |
| Shorts | 65% Poly/35% Cotton - Black | | $ 21.00 |
| Pleated Pants | 65% Poly/35% Cotton - Black | | $ 22.65 |

## Dealer Shirts

| | | |
|---|---|---|
| Male | Multi Colored 65% Poly/35% Cotton | $ 35.00 ✓ |
| Female | Multi Colored 65% Poly/35% Cotton | $ 34.00 ✓ |

## Slot Department Shirts

| | | |
|---|---|---|
| Male Slot Attendant Shirt 4-Star Bursts | 65% Poly/35% Cotton w/Applique Star Bursts & Embroidered Stars | $ 39.25 ✓ |
| Female Slot Attendant Shirt 4-Star Bursts | 65% Poly/35% Cotton w/Applique Star Bursts & Embroidered Stars | $ 37.50 ✓ |
| Male Change Shirt 6-Star Bursts | 65% Poly/35% Cotton w/Applique Star Bursts & Embroidered Stars | $ 42.50 ✓ |
| F/M Change Shirt 6-Star Bursts | 65% Poly/35% Cotton w/Applique Star Bursts & Embroidered Stars | $ 40.80 ✓ |

| | | |
|---|---|---|
| Unisex Slot<br>Attendant Apron | 65% Poly/35% Cotton<br>w/Applique Star Bursts & Embroidered Stars | $ 18.00 |

**Gold Card**

| | | |
|---|---|---|
| Female Blouse | 65% Poly/35% Cotton | $ 52.80 |

We trust we have supplied you with the information you requested. If you have any questions or require additional information, please do not hesitate to contact us. We look forward to hearing from you in this regard.

Sincerely,

Howard P. Wecksler
President

cc: Connie Albright
    Gianna
    F. Turker
    W. Schwab
    L. Gunnerson

**Page 1**

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF LOUISIANA
 3
 4
 5
 6
 7   * * * * * * * * * * * * *
 8   JANE GALIANO            *  CIVIL ACTION
 9   VERSUS                  *  NUMBER 00-0071
10   HARRAH'S OPERATING CO., *  SECTION "E"
     INC. and HARRAH'S       *  MAG. NO. 5
11   ENTERTAINMENT, INC.     *
12   * * * * * * * * * * * * *
13
14
```

## COMPLIMENTARY

```
18          Deposition of JANE G. GALIANO, taken
19   on Tuesday, March 13, 2001, commencing at 9:00
20   a.m., in the offices of Guste, Barnett &
21   Shushan, Attorneys at Law, 639 Loyola Avenue,
22   Suite 2500, New Orleans, Louisiana, 70113.
23
24
25
```

**Page 2**

```
 1              I N D E X
 2
 3
 4                                        Page
 5
 6
 7   Caption                               1
 8   List of Exhibits                      3
 9   Appearances                           4
10   Agreement of Counsel                  5
11
12   Examination
13
14     JOSEPH W. LOONEY, ESQ.              6
15
16              * * * * *
17
18   Witness' Certificate                  244
19   Certificate                           245
20
21
22
23
24
25
```

**Page 3**

```
 1              LIST OF EXHIBITS
 2
 3   Number                                Page
 4     1 Sketch of "The Smugglers Court"    29
 5     2 Article in Harrah's People         66
 6     3 Unisex dealer shirt                69
 7     4 Skagit Valley vest                 69
 8     5 Descrip. List and Doc. 226 thru 267 91
 9     6 Green doubloon necklace            111
10     7 Notes and sketch of casino visit   119
11     8 Copyright registration certificate 119
12     9 Gold card jacket sketches Tunica   149
13    10 Gold card jacket sketches in color 160
14    11 Gold card jacket Sketch H1051      165
15    12 Settlement Agreement 5/6/96        202
16
17   REPORTER'S NOTE:
18        Exhibits 3 and 4 retained by Counsel
19   for Plaintiff.
20        Digital Photos referenced on Page 9,
21   are placed with blank tab before numbered
22   exhibits.
23
24
25
```

**Page 4**

```
 1   APPEARANCES:
 2
 3   Representing the Plaintiff:
 4     GUSTE, BARNETT & SHUSHAN
       Attorneys at Law
 5     639 Loyola Avenue, Suite 2500
       New Orleans, Louisiana 70113
 6
 7     BY: SIDNEY L. SHUSHAN, ESQ.
           BRIAN GLORIOSO, ESQ.
 8
 9   Representing the Defendant:
10     ADAMS AND REESE
       Attorneys at Law
11     4500 One Shell Square
       New Orleans, Louisiana 70139
12
       BY: JOSEPH W. LOONEY, ESQ.
13         MELISSA S. LaBAUVE, ESQ.
14
15   Reported by:
                   KAY E. DONNELLY
16                 Certified Court Reporter
                   State of Louisiana
17
```

**Page 5**

```
 1              S T I P U L A T I O N
 2
 3        It is stipulated and agreed by and
 4   between counsel that the deposition of JANE G.
 5   GALIANO is hereby being taken under the
 6   Federal Rules of Civil Procedure in accordance
 7   with the Rules.
 8        The formalities of sealing and
 9   certification are hereby waived.  The witness
10   reserves the right to read and sign the
11   deposition.  The party responsible for service
12   of the discovery material shall retain the
13   original.
14        All objections are to be made in
15   accordance with the Federal Rules of
16   Procedure.
17              * * * * *
18        KAY E. DONNELLY, Certified Court
19   Reporter, in and for the State  of Louisiana,
20   officiated in administering the oath to the
21   witness
22
23
24
25
```

**Page 6**

```
 1        JANE G. GALIANO, 5527 Camp Street, New
 2   Orleans, Louisiana, 70115, after having been
 3   first duly sworn, testified on her oath as
 4   follows:
 5        MR. LOONEY:
 6             This deposition is being taken
 7   pursuant to Notice under the Federal Rules.
 8             Counsel has agreed to reserve all
 9   objections except as to the form of the
10   question and the responsiveness of the answer.
11             Counsel also, I am sure, has
12   talked to the witness about whether she will
13   reserve or waive the right to read and sign.
14        MR. SHUSHAN:
15             She will read and sign.
16             When the witness is sworn, I am
17   going to state that certain documents have
18   been recently produced.
19             The witness will be made
20   available for further questioning if necessary
21   as to any documents you haven't had a chance
22   to study, and I will make a short statement on
23   the Record about the document production.
24        (Witness sworn).
25        MR. SHUSHAN:
```

Page 115

```
 1  drawing?
 2      A. Pardon me?
 3      Q. The H.C. Designs, Inc. booklet
 4  drawing that you are referring to, which you
 5  brought today with you and which I think we
 6  have marked the particular drawing as Galiano
 7  Number 1, does that look like what is in the
 8  New Orleans Casino?
 9      A. Reversed. And I am going to tell you
10  there are things on there that I cannot
11  identify.
12      Q. But your answer is, yes, but it is
13  reversed?
14      A. It is reversed and you can't see --
15  it is not well-defined enough to be able to
16  give you a proper description of it.
17        I am telling you that in my head I
18  know where there are certain things on that
19  ship that I saw at New Orleans property that
20  is not here.
21        And this is not the true, actual
22  picture of what is over in the New Orleans
23  property. There are things that are modified.
24      Q. Before we break, are there any other
25  items at New Orleans besides the gold card,
```

Page 116

```
 1  the dealer shirts, housekeeper, doubloons, and
 2  Smugglers Cove that you are claiming --
 3      A. Connie Albright had asked me to --
 4  has asked Shane and I to come up with almost
 5  like a second-lining scene around the border
 6  at the top of the casino.
 7        And what we did in pencil, and my
 8  attorneys have it, is that we came up with a
 9  second-lining scene all about what New Orleans
10  is as a border to go around.
11        I cannot attest to the fact that is
12  exactly like what I have, but there is
13  something like that in the New Orleans
14  property, and I did bring that to the
15  attention of my attorneys.
16      Q. Which sketch contains that
17  second-lining scene?
18      A. I don't believe it is included in
19  this group.
20      MR. SHUSHAN:
21        If we can locate it, we will
22  provide it, or identify it.
23  EXAMINATION BY MR. LOONEY:
24      Q. Is there anything else before we
25  break?
```

Page 117

```
 1      A. No.
 2      Q. Are there any other properties
 3  besides the ones you have told us about that
 4  you personally have seen or have heard that
 5  anybody else saw, uniforms or other things,
 6  based on your designs?
 7      A. Let me just tell you that all of the
 8  properties are also carrying my dealer
 9  shirts. So, I don't know. I can't recall if
10  I mentioned that or not. I have mentioned so
11  much at this point. But I do not want to
12  leave that out.
13      Q. All right. We are going to be asking
14  you about the following things after we break
15  for lunch: the gold card jacket, the dealer
16  shirt, Fresh Market jacket?
17      MR. SHUSHAN:
18        Gold card jacket?
19      MR. LOONEY:
20        Dealer shirt, Fresh Market
21  design, maternity garments, housekeeper
22  outfit. I guess that is it. That is what you
23  have identified for us.
24        But the second-line scene, maybe
25  we will ask about that if we see some other
```

Page 118

```
 1  drawing that contains it sometime today.
 2        So let's try to meet again at
 3  2:00.
 4      MR. SHUSHAN:
 5        Okay.
 6      (Recess held.)
 7      MR. SHUSHAN:
 8        During the noon recess, we found
 9  two pages of notes about a casino visit that
10  were omitted from the previous discussion of
11  her casino visits.
12        If you wish to ask her a question
13  about that, go ahead. Those are additional
14  notes which she made and which she can
15  explain.
16  EXAMINATION BY MR. LOONEY:
17      Q. What your Counsel has just given us,
18  Ms. Galiano, apparently relates to notes you
19  took about your visit to Tunica, is that
20  correct?
21      A. That is correct.
22      Q. And what it purports to show is what
23  you said before, which was the hotel
24  receptionist was wearing something that you
25  claim was based on one of your designs?
```

Page 119

```
 1      A. That is correct.
 2      Q. Also there is reference to a shirt
 3  which looks like it says cage cashier shirt,
 4  which I think you mentioned before?
 5      A. That is correct.
 6      Q. But this is actually a drawing or a
 7  rendition by you of what you saw in the Tunica
 8  casino, is that right?
 9      A. That is correct.
10      Q. Then there is also a mention of a
11  Fresh Market buffet, and then the last
12  statement is, "Everyone had a shirt that
13  resembles my overall concepts," is that right?
14      A. Correct.
15      MR. LOONEY:
16        I would like to attach this as
17  Exhibit 7.
18        I would like for the court
19  reporter to mark another document for me.
20  This is Exhibit 8.
21        What has been marked as Exhibit 8
22  is a copy of the copyright registration
23  certificate that was attached to the
24  plaintiff's Motion for Partial Summary
25  Judgment, Annex G, two sides of one page.
```

Page 120

```
 1      THE WITNESS:
 2        Yes.
 3  EXAMINATION BY MR. LOONEY:
 4      Q. Can you identify that for me,
 5  please?
 6      MR. SHUSHAN:
 7        Let's see if she has ever seen it
 8  before. I am sure we sent a copy of it.
 9      THE WITNESS:
10        Yes, I have a copy of this.
11  EXAMINATION BY MR. LOONEY:
12      Q. Does it have your signature on it?
13      A. Yes, two different places.
14      Q. There is a statement at the bottom.
15  It says 17 USC, Section 506 E.
16        "Any person who knowingly makes a
17  false representation of the material fact in
18  the application for copyright registration
19  provided for by Section 409 or in any written
20  statement filed in connection with the
21  application shall be fined not more than
22  $2,500."
23        Was that statement on the form when
24  you signed it?
25      A. Yes, sir.
```

Page 121

```
 1       MR. SHUSHAN:
 2       Is there any particular false
 3  representation to which you call her attention
 4  at this time?
 5       If not, your question is
 6  inappropriate and abusive.
 7       MR. LOONEY:
 8       At this time, I don't.  I think I
 9  am entitled to ask what was on the form at the
10  time the witness signed it.
11       MR. SHUSHAN:
12       I think the form speaks for
13  itself, and I think the purpose of the
14  question was to intimidate the witness, and I
15  object to it vigorously.
16       MR. LOONEY:
17       Objection noted.
18  EXAMINATION BY MR. LOONEY:
19       Q. In the top left-hand corner, there is
20  an asterisk that says, "Amended by the CO,"
21  and then it says author, and there is a hole
22  where there was a hole stamped in it, per
23  phone call with Brian Glorioso, authorized
24  agent of Gianna, Inc., on 11/3/99."
25       Was Brian Glorioso the authorized
```

Page 122

```
 1  agent of Gianna, Inc., on 11/3/99?
 2       A. I can't answer that.
 3       Q. Do you know what this statement means
 4  at the top of the form, top of the second
 5  page?
 6       A. Registered agent, I have heard that
 7  term before when I was going through the
 8  corporation's documents, my documents when I
 9  first incorporated my company.
10       Q. Okay.  This registration certificate
11  purports to cover artwork for wearing apparel,
12  does it not?
13       A. Yes, sir.
14       Q. How was the application first
15  submitted?  What was the nature of the work
16  described as initially filed?
17       A. It was all of my illustrations.  It
18  was the visual construction patterns, my
19  artwork.
20       Q. It was your visual construction
21  patterns --
22       A. Patterns, which is my artwork.
23       Q. You are saying that the patterns of
24  all of these garments --
25       A. Visual construction --
```

Page 123

```
 1       MR. SHUSHAN:
 2       Objection.  That is not what she
 3  said.  You have selected one word from it.
 4  The question is misleading.
 5  EXAMINATION BY MR. LOONEY:
 6       Q. Was there ever a form filed that had
 7  a different description under Section 1
 8  relating to the nature of this work?
 9       A. Not to my knowledge.  All work for
10  wearing apparel.
11       Q. So it always said artwork for wearing
12  apparel?
13       A. Yes, from what I recall.
14       Q. And what you intended to cover in
15  terms of that artwork was what?
16       A. I don't understand your question.
17       Q. When you said artwork for wearing
18  apparel here, did you intend to cover, for
19  example, only drawings that went on the
20  garment, such as a mermaid drawing or some
21  shells?
22       A. It is all of my artwork.
23       Q. That is what I am asking.  What is
24  the artwork?
25       A. It is all of my artwork.
```

Page 124

```
 1       Q. What is the artwork?
 2       A. These (indicating).
 3       MR. SHUSHAN:
 4       I object to the question.  It is
 5  a very simple-sounding question and can be
 6  interpreted in various ways.
 7       MR. LOONEY:
 8       Let me ask you not to coach the
 9  witness on this, Counsel.
10       MR. SHUSHAN:
11       I am objecting to the form of
12  your question.  I am not coaching her.  There
13  are various ways to interpret what you just
14  asked her.
15       The question is deceptively
16  simple.  This whole line of questioning calls
17  for legal interpretations, to which I make a
18  continuing objection.  She can certainly tell
19  you her understanding.
20       Please answer the question, as
21  best you can.
22       THE WITNESS:
23       Visual construction pattern is my
24  artwork.  It is the sketches of what I create
25  on these boards.  That is what was
```

Page 125

```
 1  copyrighted.  That is what was presented to
 2  Harrah's Casino.
 3  EXAMINATION BY MR. LOONEY:
 4       Q. So if you have a board that has a
 5  sketch of a male figure wearing a shirt, is
 6  the male figure considered part of your
 7  artwork?
 8       A. This whole thing is my artwork.
 9       Q. Including the male figure, including
10  the face?
11       A. Everything on there is, yes.
12       Q. All right.  That is all I am asking.
13       A. Yes.
14       Q. It is not a trick question.  It is
15  not deceptively simple.  It is a question;
16  that is all.
17       A. That is okay.
18       Q. Okay.  Have you at any time had
19  anyone file or have you filed any additional
20  copyright registrations besides what we have
21  marked as Exhibit Number 8?
22       A. I believe that is what we filed.
23       Q. That is the only one?
24       A. From what I recall.
25       Q. Is that the only one you have ever
```

Page 126

```
 1  signed?
 2       A. I recall signing that, yes.
 3       Q. Just this one?
 4       A. Yes.
 5       Q. The design you identified before the
 6  lunch break at Tunica of the gold card jacket
 7  you say is based on one of your designs.
 8       Which design number or which sketch
 9  number contains the design which you say the
10  gold card jacket at Tunica was based on?
11       A. Design Number H1053.
12       Q. Design H1053, what I have is just an
13  ink sketch with no coloring on it.  Is that
14  right?  Is that what you have?
15       A. Actually, sir, I believe it is a
16  pencil sketch.
17       Q. All right.
18       A. It is strictly a preliminary item,
19  item sketch.
20       Q. Okay.  And it is called a
21  black-and-white working sketch.  Is that what
22  is written on there?
23       A. That is exactly right.
24       Q. Do you have a copy of what I have
25  here, which has a block on it that has your
```