EASTERN DISTRICT OF LOUISIANA
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| | * | |
| | * | |
| | * | |
| VERSUS | * | SECTION " E" " (5) |
| | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| | * | |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE ALMA CHASEZ |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REVISED MOTION TO COMPEL DISCOVERY

Now come plaintiffs, Jane Galiano and Gianna, Inc., who withdraw their previous motion

to compel filed on March 15, 2001 and substitute this revised Motion to Compel which will bring

the court up-to-date as to the previous weeks depositions.

Plaintiffs respectfully move this Court to compel discovery, and impose sanctions and

discovery cutoff dates, as follows,  for the reasons set forth in the memorandum of law annexed

hereto:

1. To compel production of records called for by plaintiffs' request for production of

documents, including the correspondence, memos, graphics, purchase orders, and invoices

used to manufacture and produce the "national designs" put into production during and

after the breakup between plaintiffs and defendants, and

2. Without limitation of the foregoing, to compel production of  All-Bilt Uniform Fashion,

Uniform Ideas and other manufacturer's invoices at the costs of defendants; including, if

-9-



necessary, the costs of litigation in New York to compel the production of Harrah's

purchase invoices and invoices of re-orders from vendor(s) listed above, be they in

physical/paper form or electronic form, which Harrah's allegedly cannot locate or refuses

to produce,

3. And for other appropriate relief and sanctions.

New Orleans, Louisiana 21st day of March 2001.

Respectfully submitted,

SIDNEY L. SHUSHAN, # 12055
CLAUDE A. SCHLESINGER, # 15042
JONATHAN M. SHUSHAN, #29177
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone: (504) 529-4141
Facsimile: (504) 561-0326
Attorneys for Plaintiffs and Movers,
Jane Galiano and Gianna, Inc.

EASTERN DISTRICT OF LOUISIANA
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| | * | |
| | * | |
| | * | |
| VERSUS | * | SECTION " E" " (5) |
| | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| | * | |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE CHASEZ |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF
## REVISED MOTION TO COMPEL DISCOVERY

MAY IT PLEASE THE COURT:

This case is at a turning point. The recent discovery provided a breakthrough. It is finally moving towards a posture which will give the Court and the jury the opportunity to do substantial justice between the parties - whatever the outcome. But time before trial is very short. All discovery is set to be complete by March 31, 2001

### THE FACTS

**1. Prior to the New York depositions, the record will show that defendants steadily tried to avoid or delay any meaningful discovery by plaintiffs.**

The documents speak for themselves.[1]

Defendants wrote letters to delay depositions. (Annex A).

---

[1] Harrah's has a well known and well deserved reputation in this community for playing "hardball" with its suppliers. Counsel will not burden the Court with a recital of facts which are well known, including two bankruptcies of subsidiaries. Plaintiff is very fortunate that all of her dealings were with the two parent corporations.

-11-

Defendants interposed a barrage of objections to plaintiffs' interrogatories and requests for production. They refused to produce documents timely within 30 days.(Annex B).

Defendants wrote letters threatening sanctions at every step along the way (Annex A).

Finally, Defendants tried to prevent the New York depositions, alleging that there were no documents or so few that they would stipulate to the few provided by Uniform Ideas. Fortunately, the defendants were wrong. Fortunately, the depositions took place.

**2. The New York deposition transcripts, plus the statements of counsel at those depositions, shed some light for the first time on the what happened in this case. They reveal that Harrah's will not or cannot find the documents which plaintiffs need to prove their case.**

**The All-Bilt depositions produced a promise of production of key documents and a refusal to produce others. ( Annex C, pp. 34, 43)** At those depositions, Mr. Sbordone, Vice President of operations for All-Bilt Uniform Fashion (All-Bilt), admitted it dealt with plaintiffs in connection with the Harrah's costume/uniform project. Sbordone admitted that the December 4, 1995 letter written by Howard Wecksler, then president of All-Bilt, to Jan Starnes of Harrah's indicated that Harrah's received plaintiffs' design collection. (Annex C; pp. 18-20).

Counsel for All-Bilt agreed to produce prototypes, sketches, designs and patterns relating to orders by Harrah's and designs supplied by Harrah's. (Annex C, pp. 42,43). Plaintiffs finally received several photographs of designs produced by All-Bilt as well as a disk which purports to contain more uniform designs produced by All-Bilt for Harrah's.

Plaintiff has not yet been able to translate the disk into a viewable format. **The designs on the disks will permit the experts, the Court, and the jury to make a side by side comparison of those designs with the design collection produced by plaintiffs and the designs Harrah's**

**put into production.** Plaintiffs need time to retrieve the information on the disk and to have the information examined by plaintiffs' expert. Plaintiffs' expert, Dr. Belleau urgently needs the sketches and patterns forwarded from All-Bilt Uniform Fashion to evaluate the extent of copyright infringement by this one manufacturer. [2] Plaintiffs will need at least a telephone deposition to lay a foundation for the introduction of those documents into evidence. All-Bilt's key witness, its in house designer Linda Gunnerson, should be deposed to review the All-Bilt materials and to compare them with the Plaintiffs' design collection. Counsel have obtained a New York address for Wecksler, the ex-employee who is a key witness and are in the process of issuing a subpoena to depose him.

Even a ninety-six (96) hour extension of the discovery deadline would be a tremendous help to plaintiffs, and would not prejudice defendants. Plaintiffs have cleared a date for the New York depositions several days after the expiration of the discovery deadline.

### 3. The New York depositions produced an admission by defendants' counsel that Harrah's allegedly has not been able to find key documents, including at least one key document between defendants and All-Bilt Uniform Ideas. A document which defendants have not forwarded to their counsel.

At the All-Bilt deposition, plaintiffs' produced the annexed letter dated December 4, 1995, letter from Howard Wecksler, president of All-Bilt to Jan Starnes of Harrah's. It proves that Harrah's provided a copy of Gianna Inc.'s, designs to All-Bilt Uniform Fashions. It shows that Harrah's asked All-Bilt for a costs proposal for the various designs. (Annex D). It shows the connection between plaintiffs' designs and the costumes manufactured in great volume by All-Bilt.

---

[2] She cannot evaluate the extent of infringement by the other manufacturers unless the Court continues the trial, or severs liability and damages. Time and funding do not permit a nationwide odyssey to depose every costume manufacturer identified by defendants.

It also shows how defendants tried to avoid paying royalties to plaintiffs by dealing directly with the manufacturer.

**At this point in the depositions, Counsel for defendants admitted he was unaware of the document; obviously, Harrah's never forwarded the document to him. Defendants' counsel stated that Harrah's was simply unable to find that document in its vast empire. (Annex E).** Counsel for plaintiffs has every reason to believe that defense counsel never saw the document. But there is absolutely no reason to believe that Harrah's in good faith - by some strange coincidence - *has not been able to find any of its business correspondence!*

**3. The purchase invoices from this one manufacturer, All-Bilt Uniform Ideas, to Harrah's are so numerous that both Harrah's and the New York manufacturer have refused to produce them. The Court should order Harrah's to do so without delay.**

All-Bilt refused to produce its Harrah's invoices because they are so voluminous. (Annex C, pp.32-35) **Harrah's has also refused to produce those invoices, or any records of its dealings with the New York manufacturers, All-Bilt and Uniform Ideas** (Annex B).

**That is exactly the point on the damages side of this case - that the copyright infringement and/or breach of contract and/or unjust enrichment has been voluminous - and requires additional time to develop by nationwide depositions of all of Harrah's costume manufacturers.**

**4. Plaintiffs' annexes hereto as Annex H an "ACCOUNTS PAYABLE VOUCHER". It shows an obvious computer link to the documents defendants say they cannot find or will not produce.** It identifies All-Bilt as the Vendor. It has a Vendor number, "182626". The Accounts Payable document, annexed hereto as Annex I, has the same Vendor Number. You do not have to be a computer expert to realize that this number is a key to finding quickly and easily

the documents defendants say they cannot find or will not produce.

The Court should consider an order requiring electronic discovery to trace the full extent of the infringement and/or breach of contract and/or unjust enrichment. You do not have to be a computer expert to understand that **each of the costume vendors identified by Defendants' in their discovery will have a vendor number to use to track the costume/uniform purchases by Defendants' after Plaintiffs submitted their designs to Harrah's.**

**Each costume has an identifying number, such as "A-1 Nat - 1Gold Card Jacket Male". If Defendants or All-Bilt produce even one sample of the "A-1 Gold Card Jacket", the trier of fact can easily determine whether it is similar to plaintiffs' design for that costume/uniform.**

**The number will lead  to a search of the computer records for all sales of that design, to every Harrah's casino everywhere. The technology provides an easy way to access the real damages Harrah's should pay.**

Plaintiffs and this Court are entitled to a reasonable opportunity to find out the truth about defendants' use of plaintiffs' designs. Defendants have some serious explaining to do to this Court.

**5. The annexed "Uniform Projections for Canal St. Casino" (Annex G) also is a clue to the importance and the dollar magnitude of the documents defendants say they cannot or will not produce.** It refers to the computer source of the projections: "**(see c:/lyates, canalunf.xis or disc". You do not have to be a computer expert to realize that "c:/" means Harrah's had information stored on a "c" (hard) drive. You do not have to be an expert to**

realize "lyates" is a file or folder name.[3] You do not have to be a computer expert to realize

that "disc" refers to storage of this information on a floppy disk. Here again, there are clues

to the location of the information defendants cannot or will not produce. Here again, Defendants

have a great deal of explaining to do to the Court.

**6. Even before the deposition of Galiano, the depositions and the documents laid**

**more than enough  foundation to tie plaintiffs' designs into the massive costume/uniform**

**manufacturing by All-Bilt for Harrah's.**

The December 4, 1995, letter from Howard Wecksler, president of All-Bilt, to Jan Starnes

of Harrah's is direct evidence that All-Bilt was or is in possession of a collection of Gianna Inc.,

designs. (Annex D)  Mr. Wecksler states, "All-Bilt Uniform Fashion is pleased to present its price

proposal for the uniform costumes, designed by Gianna, for the Harrah's Casino in New Orleans."

(Annex D)  The letter then proceeds to list numerous Gianna Inc., designs and proposed prices for

production. (Annex D)

Mr. Sbordone, in his deposition, admits that All-Bilt manufactures uniforms for Harrah's

and that Mr. Wecksler obviously had in his possession a collection of designs from which he

based his proposal. (Annex C, p.20)

Plaintiffs also have a limited amount of purchase orders detailing orders of Gianna Inc.,

designs by Harrah's from All-Bilt.  (Annex J)  Both Harrah's and All-Bilt claim that the amount of

invoices and/or purchase orders are so voluminous that it is over burdensome for them to produce

the documents.  The limited number of purchase orders in plaintiffs' possession are probably the

---

[3] Probably the name of Linda Yates, Ellen Dixon's secretary.  That points to other
computer folders - named for the employees who created the filed - which defendants should
produce.

tip of the iceberg compared to the massive total number of orders

The documents and the trial testimony will show that plaintiffs' Design Collection was supposed to be the basis for a **"national"** design production. These orders were to have been projected over a five year time period involving ALL Harrah's locations–it was to be a national campaign to provide signature designs and signature costumes that was distinctive and unique to Harrah's. Given the number of projected costumes/uniforms on the few documents in plaintiffs possession (Harrah's own documents), it is clear that Harrah's has used or is using a large number of uniforms/costumes based upon the designs of Gianna Inc. **It is clear that the scope of the infringement and/or breach of contract and/or unjust enrichment was probably national.**

**8. The Galiano deposition provided additional reasons why the Court should grant relief and compel discovery.**

**A. Harrah's is still in bad faith because it has not produced one piece of business correspondence or a single memo or piece of paper concerning the national designs which it put into production shortly after the breakup with plaintiffs.**

Counsel has still offered no explanation for why Harrah's could not retrieve and produce the key letter from All-Bilt to Harrah's quoting prices for putting the Gianna collection into production (the "smoking gun letter" discussed above).

Counsel has so far offered no explanation for why **defendants have not produced one single piece of paper concerning their dealings with All-Bilt following the "smoking gun" letter!**

**B. Harrah's is still in bad faith for failing to cooperate in good faith with discovery in this Court because it has not produced the graphics for the national designs which were put into production shortly after the "Settlement Agreement".**

-17-

At the Jane Galiano deposition, after counsel for defendants received a courtesy copy of an earlier draft of this motion, counsel for defendants changed Harrah's story on why it has completely failed to cooperate with discovery in this case as graphics of the designs of the "national designs" which went into production during and after the breakup with plaintiffs. [4]

In its discovery responses, it claimed that it did not have to produce designs because the designs Harrah's put into production had changed or modified the Gianna designs. (See above argument on that issue).

Now counsel claims they have no graphics of the designs. [5] It is impossible to believe that Harrah's put a national design collection into production without having graphics to show what All- Bilt and the other manufacturers were going to produce. Without graphics, they could not do business. They could not check the accuracy of the shipments from the manufacturers. Counsel claimed they could just compare the old costumes with the new ones. That is also completely unrealistic. Any long term relationship between purchaser and supplier can produce disputes concerning minor modifications introduced by the manufacturers - whether the product is uniforms or widgets. Without the original graphics and specifications, Harrah's would be helpless. [6]

Harrah's will next claim it has thrown everything away!

---

[4] Except for producing a witness - Connie Albright - a long term employee, who said in her deposition that there was a "national design" production shortly after the Gianna Settlement Agreement, and that the national designs were "not exactly" the Gianna designs!

[5] (So far he has not disclosed an affidavit of any kind to put into the record in this case.)

[6] It is difficult to imagine a helpless Harrah's!

-18-

But Jane Galiano's summary judgment affidavit [7] long ago identified certain adaptations of her designs which she saw with her own eyes last year in the several Harrah's casinos she visited.

On March 13th, 2001, in her 8 hour partial deposition, she amplified that testimony. In particular **she identified some of her sketches and designs which were intended for a national design collection.** [8] Plaintiff identified as intended "national designs" designs relating to the "gold card jacket" (her drawings number H1051, H1052, and H1053 from her Design Collection -discussed at length in the deposition and in the Summary Judgment material), and the cuff and collar designs. The 8 hour deposition was not an exhaustive list of plaintiffs' national designs.[9]

Based on that testimony alone, it is reasonable to conclude for discovery purposes that **Harrah's was using the national design collection based on plaintiffs' designs as late as last year!** If the graphics have been disposed of, they have been disposed of because of this lawsuit - which is spoliation of evidence.[10]

### C. Harrah's is still in bad faith as to the production of the invoices for the national designs which it put into production shortly after its breakup with plaintiffs.

**The invoices will show the extent of the use of plaintiffs designs, and the damages.**

The invoices are also not the key at this point. They do not include any graphics to show

---

[7] See the affidavit and charts annexed to the motion for summary judgment. (Exhibit E)

[8] Deposition testimony not yet available from defendants' court reporter.

[9] The deposition was adjourned until Friday 2/16/01 but continuance of deposition did not occur. No follow-up date was suggested.

[10] The motions before the District Judge raise the spoliation issue.

what the national designs looked like.  They are invaluable for damages, but not for the liability issues.[11]

**As to the invoices, Harrah's also changed its story on March 12, 2001, after counsel received a courtesy copy of an earlier draft of this motion.**

Counsel showed to undersigned counsel a list of All-Bilt invoices, and a sample of one invoice and one purchase order.  Counsel now claimed that it took him a long time to generate one of them because it was in an obsolete computer system.  The fact that it took counsel a long time to generate data on a unfamiliar computer system is totally irrelevant.  There is someone at Harrah's who can retrieve the data faster than he can.  Further using an attorney to shield the Harrah's witnesses from this Court is not a good faith response to discovery either.

Under the circumstances of this case, the burden should be on Harrah's to produce: evidence of the graphics,  business correspondence and memos, and the invoices.  It would be unconscionable to put the burden of dealing with an obsolete computer system on plaintiffs. Somewhere in the Harrah's empire, there is someone who can manipulate that system efficiently. Somewhere in the empire, there is someone who can find the graphics for the designs of the "national collection" which went into production during and after the breakup with plaintiffs.

It is time and past time for Harrah's to begin to take this case and this Court seriously. This Court should compel the production, at Harrah's expense.

The District Court should grant the relief prayed for in that motion, either striking Harrah's answer, or granting alternative relief, to give the process a reasonable time to do justice.

---

[11]A motion to sever liability and damages for trial is now pending before the District Court.

-20-

**9. THE MACKEY AND BUHRER DEPOSITIONS AND THE ALL-BILT
PARTIAL DOCUMENT PRODUCTION ON FRIDAY, March 16th, 2001,
FURTHER CLARIFIED HARRAH'S USE OF PLAINTIFFS' DESIGNS AND
HARRAH'S REFUSAL TO PRODUCE DOCUMENTS.**

**A. The recent evidence disclosures strengthened the link between plaintiffs' Design
Collection and the National Designs put into production by defendants.**

On March 15, 2001, both plaintiffs and defendants received a packet containing

photographs of designs manufactured for Harrah's and  several disks containing art work for

designs produced by All-Bilt for Harrah's. (Annex K)  The parties are attempting to view the

information on the disk.  The color photographs were of use immediately at the depositions on

Friday.

Shane Mackey, an artist who worked for Gianna Inc. when Gianna was designing for

Harrah's, viewed the photographs produced by All-Bilt prior to referring to the collection of

Gianna Inc.'s designs.  Mr. Mackey immediately recognized many similarities between the All-Bilt

designs and the designs he completed  for Gianna, Inc.  The similarities between the designs were

obvious to him **even though he had not reviewed the Gianna Inc.'s, collection of designs in**

**over 4 years.**

Later Mr. Mackey reviewed the Gianna's collection of designs in conjunction with the All-

Bilt designs.(Attached to Motion for Summary Judgment as Annex   )  Mr. Mackey matched

specific designs  in the Gianna collection to similar designs produced by All-Bilt. He matched

Gianna's design numbers H1051 and H1053 with  All-Bilt design identified as A, B, C, and D.

(Annex K & L) Mr. Mackey stated that All-Bilt "D"  was the "same design" as Gianna Inc.,

H1053.  Furthermore, he noted that All-Bilt appeared to combine elements of Gianna's design

-21-

numbers H1051 and H1053 in creating All-Bilt A, B, C, and D. (Annex K & L)

Strong similarities existed, in Mackey's opinion, between Gianna's design numbers H1039 and H1070, and All-Bilt QQ and RR. Likewise, there were similarities between Gianna's design number H1056 and All-Bilt MM, and Gianna's design numbers H1084, H1052, and H1044 and All-Bilt H. (Annex K & L)

Mr. Mackey's testimony clarified the fact that Harrah's has used or is using designs that are at the least similar to plaintiffs' designs. Harrah's must be compelled to produce their purchase orders, photographs of the uniforms that are currently in use, as well as sketches, photographs, or prototypes of any designs which have been used since 1995.

**Mr. Mackey has not yet seen the All-Bilt production designs on the disks, or any of the designs put into production by Harrah's by Harrah's other manufacturers.**

**B. The recent evidence plainly shows why Harrah's must make complete disclosure of the designs and invoices for its "national designs" put into production shortly after the breakup with plaintiffs.**

The recent evidence from two key witnesses, and a partial disclosure from one manufacturer, show why Harrah's must make full disclosure as to its "National Design Collection" put into production shortly after the breakup with plaintiffs. **Most of the key evidence, that will show the full extent of the damage done by Harrah's, is still locked up in Harrah's files, and the files of the manufacturers it used for its "National Design" production.** That evidence includes **but is not limited to:**

1. The Floppy Discs we have not been able to open, which may show additional designs which All-Bilt used from Plaintiffs' Design Collection. (Annex M);

2. The All-Bilt Invoices, which All-Bilt and Harrah's still refuse to produce. They are

-22-

probably available in computer form.  Plaintiffs have a few Harrah's purchase orders received

prior to this litigation from the manufacturers.  These purchase orders clearly indicate that

Harrah's has its purchase orders in computer files which should be easy to copy for plaintiffs.

(Annex J);

 3. The designs used by all of the other manufacturers, and their invoices. It is illogical to

assume that Defendants used Plaintiffs' designs only with one or two of the six manufacturers it

used.  Plaintiffs have limited number of purchase orders and invoices which evidence orders from

Uniform Ideas, Angelica Image Apparel of Nevada, Creations Galore Ad Specialty, Red the

Uniform Tailor Inc., Varsity Spirit, Uniforms to You, as well as All-Bilt. (Annex O);

 4. Prototypes, photographs, patterns or sketches of the designs used by Harrah's since

1995.

 Plaintiff and other witnesses, have seen plaintiffs' designs in use at Harrah's facilities as

late as 1999.  Plaintiff, Jane Galiano, in her sworn affidavit listed specific Gianna Inc., designs that

she witnessed in use by Harrah's and listed where each design was used.  (Annex P)   Other

individuals including plaintiffs' Counsel and his wife have witnessed Gianna Inc., designs in use at

Harrah's casino in Cherokee.

 Yet to date, defendants have not even produced photographs of the uniforms which were

in use in its facilities in 1999 that are currently in use at defendants' facilities.  If it is as defendants

allege-- they are not using plaintiffs designs-- why have they not been forth coming with

discovery?  Why have they not produced photographs or sketches of the designs that they are

currently using?  Why have they not responded to plaintiffs' request for entry upon land?  If they

are not using plaintiffs' designs they should have provided plaintiffs an opportunity to inspect their

facilities as requested.

The evidence of defendants use of plaintiffs' designs, especially in light of the photographs produced by All-Bilt and the "Harrah's People Magazine" produced by defendants, is clear and overwhelming.

The black letter law as well as the spirit of the discovery rules require that the defendants produce all **requested documents if they are reasonably calculated to lead discoverable information**. Fed. Rule Civ. Pro. 26(b).

**Every piece of evidence produced so far shows similarities between plaintiffs' work and Harrah's "national" designs.** The record so far shows that plaintiffs request for all purchase orders and designs of uniforms since 1995, is reasonably calculated to lead to discoverable evidence. Yet, Plaintiffs have been forced to prove their case before defendants have produced evidence in conformity with the Federal Rules of Civil Procedure. The evidence now before the court is more than sufficient to justify this court to compel defendants to immediately produce all records of the design, purchase and production of uniforms by defendants since 1995.

The defendants must be compelled to produce the records of the designs they are using and have used since 1995. Plaintiffs will need time to review the designs and have plaintiffs' experts review the designs to determine if the designs used by Harrah's are the designs of Gianna Inc.

## THE LAW

### I. THE COURT SHOULD ORDER HARRAH'S TO RESPOND TO THE REQUESTS FOR PRODUCTION AND INTERROGATORIES ALREADY PROPOUNDED.

So far HARRAH'S Operating Company, Inc. and HARRAH"S Entertainment, Inc. have

-24-

produced no documentation of significance which is not already in plaintiffs' possession[12].  This is statistically impossible considering the number of casinos where plaintiffs have themselves seen plaintiffs' designs in use since 1995.   In discussion with counsel for defendants, opposing counsel promised to produce documents "before depositions".  The documents requested and the documents delivered do not begin to address even the minimum time period of one year when the defendants agreed they purchased and paid royalties to plaintiffs on some items.

The following paragraph is typical of defendants' approach to discovery in this case:

" We cannot be compelled to produce documents, in New Orleans under a subpoena or otherwise.  In accordance with the Federal Rules of Civil Procedure relating to a party's obligation to produce documents, we are permitted to make documents in the location where they are presently kept. However, it is impossible for us to determine whether we have any responsive documents because of the vagueness of your requests...and that we will not produce documents in New Orleans unless the documents are kept here. If you provide us a description of documents with the reasonable specificity ..., we will determine whether we have any such documents and advise you where they may be located...." (Annex C)

Plaintiffs' requests were specific, clear and unambiguous.  Plaintiffs detailed exactly which designs were the subject of the requests and additionally referred defendants to the specific sketches of each designs for which documentation was requested.

**If they were not clear enough before, they are certainly clear enough after the depositions and the documents summarized above.**

Even if plaintiffs' request was vague or over broad ( which it was not) defendants have a duty to produce those documents relevant to the limited scope of this litigation.[13]  Even if

---

[12] Except for several photographs, and the computer printouts which first appeared at the Galiano deposition yesterday.

[13] Westhemeco Ltd. v. New Hampshire Ins. Co., 82 F.R.D. 702(S.D. N.Y. 1979).

-25-

defendants have an unwieldy record keeping system which would require heavy expenditures of time and effort to produce requested documents, that would not be sufficient reason to prevent disclosure of otherwise discoverable material.[14]

Harrah's own documents provide clear evidence that Harrah's has a computerized system for the purchase of uniforms. Harrah's has easy access to provide copies of purchase orders or provide computer files on disks of its purchasing history in reference to its individual vendors by year, date and by production item.

At this point in the case, the defendants' contention that the plaintiffs' requests are vague or over broad is nothing less than a bad faith refusal to participate in discovery and to obstruct plaintiffs' ability to receive complete adjudication of the issues. The Court should compel immediate production of the requested documents and set a short deadline for defendants' compliance.

The requests for document production asks HARRAH's to produce records of costumes/uniforms with similar designs without asking HARRAH's to pass judgment on what is "similar". HARRAH's own interrogatory answers very helpfully point us to what should be produced. It would be possible for plaintiff to rephrase its interrogatories slightly to avoid the phrases used by HARRAH' to avoid full disclosure of the designs in use, and whether they were similar to the ones plaintiffs designed. But the Interrogatories plus the Requests are broad enough and clear enough as they are to tell HARRAH's what to produce - and the time frame for discovery is desperately short.

_____

[14] Snowden By and Through Victor v. Connaught Laboratories, Inc., 137 F.R.D. 325(D.Kan.,1991); Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A

### A. Interrogatory No. 1 (Annex B - complete text of discovery)

For the following uniform and/or costume designs of the Uniform and Costume Collection previously submitted as Annex E attached to plaintiff's Motion for Summary Judgment please identify:        1)  the location where the design is in use or has been used,

2)  the number of uniforms and/or costumes purchased by HARRAH's Operating Company for each design,

3)  and, the manufacturer who produced the design for HARRAH's Operating Company:        (a) Design Number H1008

(b) Design Number H1019

(c) Design Number H1016

(d) Design Number H1040

(e) Design Number H1041

HARRAH's answered the interrogatory by answering that "**none of the enumerated designs *per se* is in use**"!   HARRAH's has used the words "per se" to cloak an admission that Plaintiffs' designs were in fact used as modified.  The issue before the Court will be whether the modifications as a matter of law or fact excuse HARRAH's from liability to plaintiffs under the first or second contracts between the parties or under unjust enrichment.

HARRAH's further answered the interrogatory by admitting that "**changes were made to the designs before any prototypes were created, if any were created.**"  HARRAH's does not describe what the changes were. Its answers hide behind the statement that "changes were made". From the context of the answer, HARRAH's is referring to Plaintiffs' designs when it refers to "**the designs" to which changes were made!**  It is not for defendants to judge whether the

-27-

"changes" defeat the copyright and/or contract and/or unjust enrichment remedies.

If HARRAH's answered in good faith when it said "changes were made", Plaintiffs are entitled to **HARRAH's records of what the designs looked like after the changes!**

Request for Production No. 4 specifically asks for "Any and all documents...relating to the purchase of uniforms and/or costumes...**WHICH MAY BE RELEVANT TO YOUR ANSWERS TO INTERROGATORIES NOS. 1 AND 2.**"

**It does not require an in depth legal analysis to determine that the designs and documents hidden behind the words "per se" are "RELEVANT"TO" HARRAH's answers and responses by any legal yardstick. Those documents and designs go the heart of this case.** Nor does it require in depth legal research to determine that the documents and designs hidden behind the words "changes were made" are highly **"relevant"** to HARRAH's response to the interrogatory and the request for production.

The Court should immediately compel the production of the designs and documents which show what was in use before and after the **"changes", and the design and documents which show why the designs in use were not "per se" plaintiff's designs.**

The Requests use the word "relevant" for a reason.

**As a practical matter, plaintiff cannot describe clearly and accurately HARRAH's modifications of all of her designs - except through the visual sketches of what she saw in the few casinos we was able to visit last year. - unless HARRAH's discloses what were the "changes" and the designs which were not "per se" Plaintiffs' designs.**

**HARRAH's answers to the interrogatories very helpfully show us what is "relevant" enough for HARRAH's to refer to in those answers.  That should be "relevant" enough to**

compel production under Request No. 4.

The interrogatory answers to No. 1 plus the Requests for documents annexed to the Summary Judgment and annexed hereto (Annexes B) clearly state what HARRAH's should produce.

**Under the new Rule 26, this material would have been produced long ago, and this Court would not have to waste time forcing Harrah's to produce documents.**

**B. The same chain of reasoning applies to Interrogatory No. 2 and Request for Production No. 4.**

Interrogatory 2 asks the following:

For the following uniform and/or costume designs, previously submitted as Annex E as part of plaintiffs' Motion for Summary Judgment, please identify: if the design and/or a design similar to the design is in use, or has been used by HARRAH's Operating Company and HARRAH's Entertainment, Inc., the location where the design is in use and/or has been used, the number of uniforms and/or costumes purchased by HARRAH's Operating Company and HARRAH's Entertainment, Inc., for each design, and the manufacturer who produced the design for HARRAH's Operating Company and HARRAH's Entertainment, Inc. (Previous Annex E to plaintiffs' MSJ)

The answer to the interrogatory above uses the same words as the answer to no. 1. It says that. **"NONE OF THE ENUMERATED DESIGNS (SKETCHES) *PER SE* IS IN USE."** Again, that implies that something **which is not the enumerated designs "per se" was in use. "Per se" is a good way to describe designs which HARRAH's has used and changed. That is what this lawsuit is all about. If they were changed, the question is how far they were**

-29-

changed, and whether they were "substantially similar".

If HARRAH's used only "part" of plaintiffs' designs, the evidence of those parts will go far to provide answers to the copyright defenses which HARRAH's has raised in this case.

Without them, we will never know whether the aspects of the designs which HARRAH's used would be an abstract design, rather than a completed costume/uniform, and therefore clearly protected by plaintiff's copyright under applicable case law and legislation! Harrah's may have changed only the parts or aspects of plaintiffs' designs which it argues (incorrectly) are <u>not</u> copyright protected. We are really here at the central issue of this case–whether the design is"similar" to plaintiffs' and thus protected by copyright law.

Here again, Request No. 4 asks for what is "**relevant" to Harrah's answers to Interrogatory No. 2.** By any test of "relevancy", the designs and documents which were used but not "per se" are relevant to Harrah's answer to No. 2, and called for by No. 4.

Here again, the documents plaintiffs need are Harrah's records which show when, where, and how plaintiffs' designs were changed - if indeed they were changed at all.

Plaintiff cannot describe, except by means of her sketches, what she witnessed in use. She is one but one person. Plaintiff cannot visit every HARRAH's casino in an effort to discover if the same designs she saw in three (3) or four (4) casinos were in use in other HARRAH's properties in the various states.

The Court should order immediate production of all documents prior to the deadline of plaintiffs' experts reports if not on paper, then in electronic and/or on computer disks. **It is**

-30-

essential in HARRAH's type of business operations, considering its vastness and its complexity, to have accurate and up-to-date records via computer programs.

### There is no reason for a delay in discovery.

### C. The Court should order clarification of the "service contract" referred to in the answer to Interrogatory No. 9, and Production of the records under Request No. 6.

The Court denied plaintiffs' Motion for Summary Judgment because of various issues of fact related to the intent of the parties. One of the issues raised by the Summary Judgment and the Court's decisions, related to payments made by Harrah's and accepted by plaintiff after the execution of the "Settlement Agreement"-- the second contract between the parties.

Interrogatory No. 9 says that payments were made by Harrah's in January of 1996 and May of 1996 under a "service agreement". It does not say which one - the settlement agreement or the prior contract. The answer will be highly relevant to the issues raised by the summary judgment

Request No. 6 is broad enough to cover the documents - checks and covering letters - under which the checks were tendered. The Court should order immediate production. HARRAH's must have those documents ion hand or it could not have answered Interrogatory no. 9 as it did.

### II. THE COURT SHOULD ORDER RESPONSES TO DISCOVERY BY HARRAH'S ENTERTAINMENT, INC.

HARRAH's Entertainment Inc. has not responded to any discovery requests. Counsel for defendants advises that HARRAH's Entertainment, Inc. played no role in this case. Yet, HARRAH's Entertainment, Inc.'s name appears on numerous documents concerning negotiations of contracts and even on the "Settlement Agreement " (Annex F) HARRAH's Entertainment Inc

-31-

needs to explain to this Court why its name appears on that key document if it played no role in this case.

Even the business card of a key witness in this case lists her as an employee of Harrah's Entertainment"!  (Annex Q)

Many of the key documents clearly have the names of both "Operations" and "Entertainment".  (Annex R)  In fact, the May 6, 1996 Settlement Agreement is written on Harrah's Entertainment, Inc.'s letterhead and lists Harrah's Operating Company, Inc. in the signature block. (Annex F)

The Court should order "Entertainment" to respond to discovery - or strike its answer.

**III. At a minimum, the Court should order Harrah's to produce within a short time to be set by the Court, its missing records of dealings with plaintiffs and the New York manufacturers, and all of the manufacturers listed in its discovery responses .**
The Court should order Defendants to produce its records for accounts payable and receivable for Vendor 182626. - All Bilt Uniform Fashion.

The Court should order Defendants to produce a sample of design "HA-NAT-1 GOLD CARD JACKET MALE", AND EVERY OTHER DESIGN IDENTIFIED BY NAME FOR VENDOR 182626.

The Court also should order Harrah's to do the same for all of the designs ordered by defendants and manufactured by the manufacturers on the list produced by defendants.

**IV.  IF HARRAH'S DOES NOT PRODUCE ITS MISSING RECORDS WITHOUT DELAY, THE COURT SHOULD ORDER HARRAH'S TO PAY THE COSTS OF OBTAINING THOSE RECORDS FROM THE NEW YORK AND OTHER MANUFACTURERS, INCLUDING ATTORNEY'S FEES.**

Enough delay is enough.  The Court should order Harrah's to produce the All-Bilt documents (purchase orders, invoices, costume designs).

-32-

There can be no question that orders by Harrah's from manufacturers of uniforms/costumes are relevant to plaintiffs' case. The deposition of Mr. Sbordone along with the December 4, 1995 letter from Mr. Wecksler to Harrah's and the purchase orders in plaintiffs' possession, leave no doubt as to the fact that Harrah's has in its possession, custody, or control, volumes of purchase orders and/or invoices detailing the purchase of uniforms/costumes since 1995. (Annexes C & D)

Defendants are obligated under Rule 34 to designate a time and place for plaintiffs inspection and copying of the requested records, if defendants did not intent to provide copies to plaintiffs.[15] Defendant should be ordered to produce the requested documents and materials in its possession at one location, if production is not made in New Orleans, rather than requiring plaintiffs to ferret out those documents and records from various locations all over country.[16] The advances in technology through computerization of records make moot the claim and/or issue that those documents are voluminous. Years of documents can be downloaded and delivered via computer disks to an appropriate location or e-mailed within a period of time.

If Harrah's insists that it cannot find its records, the Court should order defendants to pay the costs of tracking those documents down from All-Bilt and the other costume manufacturers it used.

**The Court should also order Harrah's to** answer the interrogatories and requests for production as originally propounded.

---

[15] Stiller v. Arnold, 167 F.R.D. 68(N.D. Ind. 1996).

[16] Snowden By and Through Victor v. Connaught Laboratories, Inc., 137 F.R.D. 325(D.Kan.,1991); Fed.Rules Civ.Proc.Rule 26(c), 28 U.S C.A.

New Orleans, Louisiana this 21st day of March 2001.

Respectfully submitted,

SIDNEY L. SHUSHAN, # 12055
CLAUDE A. SCHLESINGER, # 15042
JONATHAN M. SHUSHAN, #29177
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana  70113-7103
Telephone:  (504) 529-4141
Facsimile:   (504) 561-0326
Attorneys for Plaintiffs and Movers,
Jane Galiano and Gianna, Inc.

EASTERN DISTRICT OF LOUISIANA
UNITED STATES DISTRICT COURT

JANE GALIANO, AND GIANNA, INC.     *     CIVIL ACTION NO. 00-0071
                                   *
                                   *
                                   *
VERSUS                             *     SECTION " E" " (5)
                                   *
                                   *     JUDGE MARCEL LIVAUDAIS, JR.
                                   *
HARRAH'S OPERATING CO., INC.,      *
          AND                      *
HARRAH'S ENTERTAINMENT, INC.       *     MAGISTRATE JUDGE ALMA CHASEZ
                                   *

* * * * * * * * * * * * * * * * * * * * * * * *

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 12th day of March, 2001 served a copy of the

foregoing Consolidated Motion to Compel on Counsel,

Joseph W. Looney, T.A.
Melissa S. LaBauve
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana 70139

for all parties to this proceeding by hand delivery.

_____
SIDNEY L. SHUSHAN

-35-

EASTERN DISTRICT OF LOUISIANA
UNITED STATES DISTRICT COURT

JANE GALIANO, AND GIANNA, INC.   *    CIVIL ACTION NO. 00-0071
       *
       *
       *
VERSUS       *    SECTION " E " " (5)
       *
       *    JUDGE MARCEL LIVAUDAIS, JR.
       *
HARRAH'S OPERATING CO., INC.,   *
     AND    *
HARRAH'S ENTERTAINMENT, INC.   *    MAGISTRATE JUDGE CHASEZ
* * * * * * * * * * * * * * * * * * * * * * *

## LOCAL RULE 7.6E CERTIFICATE

I hereby certify that counsel for plaintiffs, Jane Galiano and Gianna, Inc.., contacted Joseph Looney, Esq., counsel for defendants, by telephone on March 20, 2001, and both Counsels met personally on March 13, 16, 19 and that defendants have refused to consent to the filing and granting of this Motion for an Expedited Hearing on the Motion to Compel Discovery .

New Orleans, Louisiana this 21st day of March 2001.

Respectfully submitted,

SIDNEY L. SHUSHAN, #12055
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone: (504) 529-4141; Fax (504) 561-0326
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

EASTERN DISTRICT OF LOUISIANA
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| | * | |
| | * | |
| | * | |
| VERSUS | * | SECTION " E" " (5) |
| | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| | * | |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * *

## LOCAL RULE 37.1 CERTIFICATE

I hereby certify that Counsel for plaintiffs, Jane Galiano and Gianna, Inc. , contacted

Joseph Looney, Esq., counsel for defendants, by telephone on numerous occasions the last call

made on March 20, 2001, and both Counsels met personally on March 13, 2001 for the purpose of

amicably resolving the issues of discovery.  Defendants have refused to amicably resolve the issues

involved.  Plaintiffs' counsel has exhausted all means of resolving the discovery issues.

New Orleans, Louisiana this 21st day of March 2001.

Respectfully submitted,

SIDNEY L. SHUSHAN, #12055
JONATHAN M. SHUSHAN, # 21977
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone: (504) 529-4141
Facsimile: (504) 561-0326
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

EASTERN DISTRICT OF LOUISIANA
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| | * | |
| | * | |
| | * | |
| VERSUS | * | SECTION " E" " (5) |
| | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| | * | |
| HARRAH'S OPERATING CO , INC., | * | |
| AND | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE ALMA CHASEZ |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **NOTICE OF HEARING**

You are hereby notified that the Motion for Expedited Hearing on the Motion to Compel filed by Jane Galiano and Gianna, Inc., by Jane Galiano and Gianna, Inc. will be heard on _____, the _____ day of _____, 2001, at _____ M. , at the United States District Court for the Eastern District of Louisiana, 501 Magazine Street, New Orleans, Louisiana 70130

New Orleans, Louisiana, this 21st day of March 2001

6

Respectfully submitted,

SIDNEY L. SHUSHAN, # 12055
CLAUDE A. SCHLESINGER, # 15042
JONATHAN M. SHUSHAN, #29177
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana  70113-7103
Telephone:  (504) 529-4141
Facsimile:   (504) 561-0326
Attorneys for Plaintiffs and Movers,
Jane Galiano and Gianna, Inc.

7

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**