FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 APR 10 PM 2:18

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JANE GALIANO and GIANNA, INC.                CIVIL ACTION

versus                                        No. 00-0071

HARRAH'S OPERATING CO., INC. and              SECTION: E/5
HARRAH'S ENTERTAINMENT, INC.

### RULING ON MOTIONS

Plaintiffs' and defendants' cross motions for partial summary judgment came before the Court for oral argument on April 9, 2002. R.D.# 132 and 160. The Court considered the complaint, the record and the parties' briefs and arguments. For the reasons that follow, plaintiffs' motion for partial summary judgment is DENIED, and defendants' motion for partial summary judgment is GRANTED.

### BACKGROUND

Plaintiff Gianna, Inc., and defendant Harrah's entered into a "Design Consultation Agreement" (the "Agreement") pursuant to which plaintiff was to provide design services to Harrah's for uniforms for employees of various casinos. Gianna, Inc. invoiced Harrah's monthly for the consulting services rendered under the Agreement. Plaintiff Jane Galiano is president of Gianna, Inc. The Agreement was to expire by its own terms on December 31,

DATE OF ENTRY
APR 1 0 2002

1995. By that time, several disputes had arisen between the parties and negotiations for an extension of the Agreement, or a new one, failed. Harrah's withheld the payment of $7,500.00 due December 1995 under the terms of the Agreement.

Ultimately, on May 6, 1996, the parties entered into a written settlement agreement (the "Settlement") which is the subject of these cross motions for summary judgment. The Settlement was signed on behalf of Gianna, Inc., by Scott Buhrer, ("Buhrer") a vice president and director of Gianna, Inc., after Ms. Galiano left the negotiating meeting. Within three weeks, Ms. Galiano wrote a letter to Harrah's repudiating the settlement agreement because Buhrer did not have authority to sign it. Meanwhile, Harrah's sent Gianna a check for $7,500.00 which Gianna cashed on May 20, 1996.[1]  In a second letter from Gianna's counsel to Harrah's counsel, Gianna again repudiated the Settlement negotiated on May 6, and made demand for a payment of $500,000.00 to settle her disputes with Harrah's. At that time, Harrah's adamantly claimed that the Settlement was valid and refused to negotiate further. In the end, the parties exchanged

---

[1] The payment was one of the agreed conditions of the Settlement. Harrah's claims that it was all that Harrah's owed Gianna under the Settlement; Gianna claims is was not consideration for the Settlement but a payment already due on an outstanding invoice.

positions, with Gianna filing suit to enforce the Settlement, and Harrah's defending by claiming the Settlement is invalid.

Plaintiffs argue the Settlement is valid and enforceable as a compromise pursuant to La. Civ. Code art. 3071, because it has the "authority of things adjudged" as provided in La. Civ. Code art. 3078 and cannot simply be repudiated by one of the parties. Alternatively, plaintiffs argue that Buhrer had a putative mandate pursuant to La. Civ. Code art. 3021, or that filing the lawsuit to enforce the Settlement constitutes ratification of the Settlement.

Defendants argue that La. Civ. Code art. 2997 is controlling. That article requires express authority for a mandatary to compromise a matter on behalf of the principal. Defendants also argue that Gianna expressly repudiated the Settlement and violated its terms by making a new settlement demand.

### Undisputed Material Facts

1. Ms. Galiano participated in the settlement negotiations at the meeting on May 6, 1996, but left before the Settlement was finalized and reduced to writing.

2. Scott Buhrer, a Gianna director and vice president, signed the Settlement on behalf of Gianna, Inc. on May 6, 1996.

3.  Neither the articles of incorporation nor the by-laws of Gianna, Inc., expressly authorize Buhrer, in either of his capacities, to sign a compromise settlement of a corporate claim, and he was not authorized to do so by any resolution of the directors.

4.  On May 20, 1996, Gianna negotiated a $7,500.00 check from Harrah's.

5.  On June 4, 1996, by letter to Phil Satre, President of Harrah's Entertainment, by certified mail, Galiano repudiated the settlement agreement based on Buhrer's lack of authority to sign it.

6.  On June 25, 1996, Harrah's counsel, Mr. DeYoung, responded by letter to Gianna's counsel, Mr. Hudson, that Harrah's considered the settlement agreement valid because Ms. Galiano agreed to the terms and "shook hands" and later cashed the check.

7.  On Sept. 18, 1996, by letter from Mr. Hudson to Mr. DeYoung, Gianna reiterated its repudiation of the settlement agreement and made a new settlement demand of $500,000.00.

8.  On Sept. 25, 1996, by letter from Mr. DeYoung to Mr. Hudson, Harrah's reiterated its position that the settlement agreement was valid, and refused to respond to the new settlement demand.

**LAW AND ANALYSIS**

The Louisiana Civil Code of 1996 applies here. Generally, articles of the Civil Code on the same subject matter must be read and interpreted in reference to each other. La. Civ. Code art. 13; <u>Youngblood v. Burke</u>, 43 So. 2d 695, 699 (La. App. 2nd Cir. 1950) (The rule is that all articles of the Code must be read and applied in conjunction with each to give a reasonable meaning and a sensible interpretation to the Code.) The Code defines a contract simply as "an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. The Code lists several different species of contract, both nominate and innominate. <u>See</u> articles 1907-1913. While all contracts are generally subject to the rules of the Title "Conventional Obligations and Contracts", article 1915, "[n]ominate contracts are subject to the special rules of the respective titles when those rules modify, complement, or depart from the rules of this title." La. Civ. Code art. 1916.

Article 3071 governs transaction and compromise, defined as an agreement between two or more persons for preventing or putting an end to a lawsuit, who adjust their differences by mutual consent. Article 3072 states that in order to enter into a transaction, a party "must have the capacity to dispose of the

things included in the transaction."

A "mandate" is an act by which one person gives power to another to transact certain affairs for him in his name. La. Civ. Code art. 2985. Article 2996 states that "[a] mandate conceived in general terms, confers only a power of administration. If it be necessary to alienate or give a mortgage, or do any other act of ownership, the power must be express." That is immediately followed by article 2997 which specifies: "Thus the power must be express for the following purposes: ... (6) to compromise or refer a matter to arbitration."

As defined in article 1843, ratification is when a person consents to or adopts an obligation or act done on his behalf by a person without authority to bind the principal. Ratification may be express, or tacit as when a person with knowledge of an obligation incurred on his behalf by another accepts the benefit of that obligation. <u>Id.</u> Revision Comment (b) to Art. 1843 states: "the jurisprudential rule has been that stated in this Article; 'Ratification will occur when the principal, knowing of the contract, **does not repudiate it** but accepts its benefits.' <u>Bamber Contractors, Inc. v. Morrison Engineering and Contraction Co., Inc.</u>, 385 So.2d 327, 331 (La. App. 1st Cir. 1980)."

(Emphasis added.)

Reading the applicable codal articles in conjunction with each other, a mandatary must have express authority to bind his principal to a compromise agreement that purports to settle claims the principal has against another. Buhrer did not have express authority to enter into a compromise agreement on behalf of Gianna, Inc. Article 3021 cited by plaintiffs in support of their alternative argument that he had putative authority did not exist in the 1996 Civil Code.[2] The closest comparable article the Court found in the La. Civ. Code of 1996 is article 3000 which states: "Powers granted to persons, who exercise a profession, or fulfill certain functions, or doing any business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandataries exercise." However, that article cannot logically be read to overrule the specific requirement of prior article 2997 that a mandatary's authority to compromise must be express. Such an interpretation would render article 2997 irrelevant and mere surplusage.

---

[2] Article 3021 became effective January 1, 1998. The Revision Comment notes that the article is new, and is based on Article 2163 of the Quebec Civil Code.

Plaintiffs cite <u>Frazier v. Harper</u>, 600 So.2d 59 (La. 1992) as support for the argument that by filing this lawsuit to enforce the Settlement, Gianna has tacitly ratified the Settlement. That case is distinguishable on its facts. The plaintiff never repudiated the act of her former husband when he purported to terminate her co-ownership (which flowed from her former community interest) of his prior retirement benefit plan by terminating the old and accepting a new pension plan offered by the same employer. Gianna quickly, repeatedly and emphatically repudiated the Settlement as not binding, refused to abide by its terms, and made additional settlement demands. There was clearly no meeting of the minds as between Gianna and Harrah's necessary for a valid transaction and compromise. Moreover, Buhrer did not have express authority to bind Gianna, Inc., to a compromise settlement agreement and Ms. Galiano quickly repudiated Buhrer's act of signing the Settlement on Gianna's behalf. She cannot now claim to tacitly ratify the Settlement by filing a lawsuit four years later to "accept the benefit" of that repudiated obligation.

Accordingly,

**IT IS ORDERED** that plaintiffs' motion for partial summary judgment to enforce the settlement agreement be and is hereby

**DENIED;** and

**IT IS ORDERED** that defendants' motion for partial summary judgment dismissing plaintiffs' claim for breach of the May 6th Settlement Agreement be and is hereby **GRANTED.**

New Orleans, Louisiana, April 10, 2002.

*[signature]*
MARCEL LIVAUDAIS, JR.
United States District Judge