

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 APR 10 P 3:47

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| *Plaintiffs* | * | |
| | * | NO. 00-0071 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| | * | |
| HARRAH'S OPERATING CO., INC. | * | JUDGE MARCEL LIVAUDAIS, JR. |
| and | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE ALMA CHASEZ |
| *Defendants* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### REPLY TO LAST MINUTE REPLY BRIEF FILED BY DEFENDANTS

MAY IT PLEASE THE COURT:

**1. THE COURT SHOULD GRANT PLAINTIFFS' MOTION [AND DENY DEFENDANTS'] BECAUSE DEFENDANTS THE UNDISPUTED FACTS SHOW THAT DEFENDANTS DID IN FACT "USE" PLAINTIFFS' DESIGNS BOTH BEFORE AND AFTER THE MAY 6 SETTLEMENT AGREEMENT.**

Harrah's argues that there is no proof of its involvement in "using" Plaintiffs' designs.

The undisputed facts prove it did - <u>both before and after it signed the Settlement Agreement in bad faith.</u>

On February 14, 1996 Harrah's letter lists and annexes 13 designs by Plaintiffs and offers to pay royalties on them. (Annex 46, Plaintiffs' Opposition to Defendants' Motion for Partial

Summary Judgment, March 26, 2002). Harrah's has never denied that Plaintiffs drew all of the sketches annexed to that letter. That letter is an outline of the conspiracy and breach of contract which soon followed.

On March 8, 1996 Harrah's ordered Plaintiffs' Range Vests. (Annexes 50, 51, 52, Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, March 26, 2002). They are <u>literal copies</u> of Plaintiffs designs! Harrah's never advised Plaintiffs it was using her designs. Harrah's has never paid a cent of royalties for these designs. Harrah's order proves Harrah's involvement if any proof is needed.

On March 12, 1996 Harrah's began the long series of orders of Gold Card Jackets which used substantial elements of Plaintiffs' Gold Card Jacket design. (Annexes 53, 54, 55, 56, Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, March 26, 2002). The Harrah's letter of February 14 even annexes copies of Plaintiffs' sketches which Harrah's wanted to use! On February 14, 1996, Harrah's said specifically which designs it was going to use. Then it went ahead and used them, for years, even after the filing of this lawsuit. That is proof of Harrah's involvement out of Harrah's own mouth - if any proof is needed.

On April 12, 1996, All-Bilt admitted by letter that Plaintiff might be entitled to royalties on designs Harrah's had told it to use. (Annex 59, Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, March 26, 2002 ).

The conspiracy continued in full swing after the signing of the Settlement Agreement.

On June 11, 1996 Harrah's submitted another order which is a literal copy of Plaintiffs' designs. (Annex 65, Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, March 26, 2002 ). Harrah's asks the Court to assume that Harrah's had nothing to do

with - or never even noticed - a literal copy of Plaintiffs' designs by All-Bilt. Harrah's and Jane Galliano had worked together for months before the breakup - as every Harrah's brief filed in this case reflects! Even without the February 14 letter - the "smoking gun" - Harrah's breached the contract because it said nothing and did nothing to pay the royalties due. "Nonperformance" is enough. Louisiana Civil Code Article 1994.

It is Harrah's which should come forward with some evidence to exculpate itself. Any fact finder can and will infer that Harrah's played a role in literal copies of Plaintiffs' designs by Harrah's manufacturers. Even if Harrah's did not direct the copy in the first place, it breached the Settlement Agreement by failing to pay the royalties for the copy.

**2. THE COURT SHOULD GRANT PLAINTIFFS' MOTION BECAUSE HARRAH'S ALLEGATION THAT PLAINTIFFS' CONTRACTED TO PROVIDE UNIFORMS IN THE FIRST CONTRACT IS IRRELEVANT.**

The issue before the Court on these motions is Harrah's undisputed "use" of Jane Galliano's designs per the Settlement Agreement. <u>An alleged breach of the first contract - even if true - would not justify a breach of the second one.</u>

IT IS ALSO CONTRARY TO THE PLAIN LANGUAGE OF THE FIRST CONTRACT. The first contract does not obligate Plaintiffs to produce finished costumes. It obligates Plaintiff to work with Harrah's and the manufacturers.

**3. MS. GUNNERSON'S TESTIMONY IS ANYTHING BUT UNDISPUTED. IT IS BOTH DISPUTED (BY HER EX-BOSS WECKSLER AMONG OTHERS) AND IRRELEVANT TO THE BREACH OF THE SETTLEMENT AGREEMENT.**

She testified that she created many details of the designs she put into production. Her

testimony is irrelevant as to the designs she copied literally. The Court should recall that when she was deposed, <u>Plaintiffs did not yet have the detailed documents which prove what she used, step by step and designs by design.</u> That is why she got away with broad argumentative testimony. Her own documents undercut her testimony. (Annexes 53-56, 65, etc., Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, March 26, 2002 ). Harrah's own letter of February 14 undercuts her testimony. (Annex 46, Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, March 26, 2002 ). Wecksler's deposition undercuts her testimony. (Annex, 22, Plaintiffs' Motion for Summary Judgment, Motion for Partial Summary Judgment, and Motions in Limine, February 7, 2002).

Her testimony is irrelevant as to the others because the Settlement Agreement bars any "use" of Plaintiffs' designs. "Use" includes "to put into action or service, to employ". (Webster's Unabridged).

<u>If she changed 5 aspects of Plaintiffs' design, but "used" 5 others, she and Harrah's breached the Settlement Agreement.</u> The Belleau report and the side by sides show clearly enough which elements she "used" and which she changed. (Annexes, 54, and 73, Plaintiffs' Opposition to Defendants' Motion for Summary Judgement).

Plaintiffs' reply to the February 14 letter shows very clearly that Plaintiffs' wanted compensation for "use" of Jane Galiano's designs to create other designs: "<u>It is not permissible to take a stock item and modify it to represent one of my concepts in-part or in full. At any time than an original concept is UTILIZED [i.e. "USED" as in paragraph 5 of the subsequent Settlement Agreement] to re-create another concept, royalties must be paid.</u>" (Annex 60, Plaintiffs' Opposition to Defendants' Motion for Partial Summary

Judgement, March 26, 2002).

Harrah's signed the Settlement Agreement without any restrictive definition of "use". If Harrah's wanted to restrict "use" to a literal and complete copy, the Settlement Agreement should have said so!

## 4. THE COURT SHOULD GRANT PLAINTIFFS' MOTION BECAUSE FRCP 60(B) SHOWS WHY LOUISIANA CIVIL CODE ARTICLE 3078 REQUIRES A LAWSUIT TO SET ASIDE THE SETTLEMENT AGREEMENT.

FRCP 60(B) shows why it is Harrah's which seeks to undermine statutory as well as case law and public policy in this Court. Rule 60(b) requires a step at the court house to set aside a consent judgment.

FRCP 60(B) makes no sense if the parties can simply repudiate a Settlement Agreement.

Louisiana Civil Code Article 3078 says a Settlement Agreement is like a consent judgment because it has the force of the thing adjudged.

Louisiana Courts like this Court take consent judgments very seriously.

It is Defendants' interpretation of the law which is "extraordinary". That is why Louisiana courts hold that a Settlement Agreement cannot be attacked indirectly because it has the force of the "thing adjudged". See Headnote III of Plaintiffs' Opposition to Defendants' Motion and cases cited.[1]

That is why Louisiana Code of Civil Procedure Article 2001, like FRCP 60B, requires judicial intervention to modify or set aside a settlement agreement. CCP Article 2001 provides

---

[1] Chris Cormier v. Ellender's Portable Bldg., 781 So.2d 776, (La. App.3rd Cir. 2002). See also: Allen v Noble Drilling, Inc., 637 So. 2d 1298, (La. App. 4th Cir. 1994) and Wholesale Distributing v. Warren, 84 So.2d 250, (La. App. 2nd Cir. 1955).

very limited grounds for a suit to set aside a judgment.

The same rule applies to Settlement Agreements.

It is Harrah's argument which would undermine a significant section of the structure of our law. It is Harrah's argument which ignores the plain meaning of the words "thing adjudge" (res judicata). Because those words are in English and not in Latin does not change their meaning.

## 5. THE COURT SHOULD GRANT PLAINTIFFS' MOTION BECAUSE DEFENDANTS' CASE CITATIONS AND COMMON SENSE SHOW THAT A PARTY CANNOT SIMPLY "REPUDIATE" A SETTLEMENT AGREEMENT WHICH HAS THE FORCE OF THE "THING ADJUDGED".

Harrah's cases show that there is no such thing as an anticipatory breach of a Settlement Agreement. Harrah's brief, with all respect to its able counsel, does not accurately represent the facts or the holdings of those cases.

Some of Harrah's cases are cited for pure dictum. The holdings of those cases actually respect and enforce the Settlement Agreements at issue in those cases. Parich v. State Farm Mutual Automobile Ins. Co., 5th Cir. 1990, 89-4636, 919 F.2d 906; Salling Wiping Cloth, Inc. v. Sewell, Inc., 2d Cir.1982, 419 So.2d 112.

Harrah's other case citations all involve a very different kind of Settlement Agreement from the one in this case. None of them involve an "anticipatory breach" by a mere verbal "repudiation" of the Settlement Agreement. They all involved a Settlement Agreement which required the party asserting the validity of the Agreement to do something in order to put the Settlement Agreement into effect.

This Settlement Agreement required Plaintiffs to do absolutely nothing except to accept a check for royalties for millions of dollars of costumes which used Jane Galliano's sketches as part or all of their design. Louisiana Civil Code Article 1756 provides that an obligation may consist of "giving, doing, or not doing something".

In all of Harrah's cases, the Court held that there was an implied condition on the part of the obligor, which made the other party's obligation to perform a conditional obligation. That did not exist in this case, which is an alleged "anticipatory breach" of a Settlement Agreement by verbal "repudiation". That was not an issue in any of Harrah's cases.

<u>Smith Const. Co. v. Brechtel</u>, Orl. App. 1951, 51 So.2d 643 held that the Settlement Agreement was conditional on payment in a given period of time. There was no alleged "anticipatory breach" by verbal "repudiation" of a Settlement Agreement.

If Harrah's failed to pay timely (which it did), Plaintiffs could of course seek to set aside the Settlement Agreement judicially. But Plaintiffs have filed this suit to enforce it, which they have every right to do! The law does not give Harrah's the option of withdrawing from a Settlement Agreement by self-help based on a mere anticipatory "verbal" repudiation of that Settlement Agreement!

<u>Midlo & Lehman v. Katz</u>, 4th Cir 1967, 4th Cir. 1967 195 So.2d 383, also holds that timely payment was a condition to the enforcement of the Settlement Agreement. It is Plaintiffs, not Harrah's, would have had that option in this case.

<u>Wall v. Hardwood Mfg., Co.</u>, La. 1911, 127 La. 959, 54 So. 300, also held that the plaintiff failed to perform a condition which required timely delivery of lumber. There was no condition which required Plaintiffs to do anything except accept the royalty check for royalties on

millions of dollars of costumes.

Harrah's did not have to put Plaintiffs in default by tendering a check for the royalties. Louisiana Civil Code Article 1989, 1990 and Revision Comments 1984.

But Plaintiffs certainly had the right to file this lawsuit to enforce the Settlement Agreement in spite of their mere words to the contrary. "An obligee who has not put his debtor in default before filing suit is deemed to do so at the moment of filing." Revision Comments 1984 to LCC 1989.

Harrah's had the right to sue to set aside the Settlement Agreement. It did not do so. It could have tendered a real check for real royalties for orders placed before and after the signing of the Settlement Agreement. It did not do so. If it chooses to rely on mere words by Plaintiff, it breaches the Settlement Agreement at its peril. FRCP 60B, La. CCP 2001 and the case law cited in Plaintiffs' Briefs. Harrah's could and should have known that mere words do not set aside a Settlement Agreement which is res judicata.

There is very strong public policy behind these rules of law. If Harrah's had ever tendered a check for the royalties on the millions of dollars of costumes it bought using plaintiff's designs, Plaintiff would have accepted it.

Those policy reasons fit this case like a glove. Harrah's had no intention of abiding by the Settlement Agreement if it requred Harrah's to pay any substantial royalties.

Nor does Harrah's argument that the Settlement Agreement must be clear tip the scales against Plaintiffs' motion. The language of the Civil Code is very clear: "Where the words of a contract are clear and explicit, and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent". LCC Art. 2046.

If the Court did make such a search, it would lead directly to Harrah's letter of Feburary 14, and Plaintiffs' angry reply. If Harrah's meant "literal copying of a complete design" when it said "use", it should have said so in the Settlement Agreement.

## 6. ALTERNATIVELY THE COURT SHOULD GRANT PLAINTIFFS' MOTION BECAUSE PLAINTIFFS HAD THE RIGHT TO RETRACT THEIR REPUDIATION.

Plaintiffs had the right to retract their repudiation because Harrah's did not change its position in reliance on the repudiation. (See Headnote IV of Plaintiffs' Opposition, Comment 50 Tul. L. Rev. at 945 and authorities cited).

Harrah's did not change its position in reliance on the repudiation <u>because the undisputed facts show Harrah's had begun secretly ordering literal copies of Plaintiffs.' designs even before it signed the Settlement Agreement!</u> (See argument above and Undisputed Facts Nos. 23, 24, 25, 28, Supplemental Rule 56.1 Statement of Undisputed Facts Based on Newly Discovered Evidence, March 26, 2002, cited above.).

Harrah's did not change its position in reliance on the repudiation <u>because even before the Settlement Agreement Harrah's had begun secretly ordering designs which incorporated elements of Plaintiffs' designs - per its letter of February 14, and the undisputed facts cited above.</u> (See Facts Nos. 23, 24, 25, 28, Supplemental Rule 56.1 Statement of Undisputed Facts Based on Newly Discovered Evidence, March 26, 2002, cited above).

Respectfully submitted,

_____
**SIDNEY L. SHUSHAN, #12055**
**JONATHAN M. SHUSHAN, #21977**
**BRIAN L. GLORIOSO, #27226**
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone: (504) 529-4141
Facsimile:  (504) 561-0326
Sidney L. Shushan Direct Line: (504) 681-4519
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

EASTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. *<br>*Plaintiffs* *<br>*<br>* | | CIVIL ACTION NO. 00-0071 |
| VERSUS * | | SECTION " E " (5) |
| * | | |
| * | | JUDGE MARCEL LIVAUDAIS, JR. |
| * | | |
| HARRAH'S OPERATING CO., INC., *<br>AND *<br>HARRAH'S ENTERTAINMENT, INC. *<br>*Defendants* *<br>* | | MAGISTRATE: JUDGE ALMA CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon:

Mr. Joseph W. Looney, T.A.
Kristen P. Biever
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Attorney for Defendants,
Harrah's Operating Co., Inc. and
Harrah's Entertainment, Inc.

by hand delivery of a copy of same on the 9th day of April, 2002.

_____
JONATHAN M. SHUSHAN