

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. *<br>*Plaintiffs*  * | | CIVIL ACTION NO. 00-0071 |
| * | | |
| VERSUS  * | | SECTION " E " " (5) |
| * | | |
| * | | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., *<br>AND  *<br>HARRAH'S ENTERTAINMENT, INC. *<br>*Defendants*  * | | MAGISTRATE: JUDGE ALMA CHASEZ |

**REPLY BRIEF IN SUPPORT OF MOTION FOR ORDER PERMITTING APPEAL OF INTERLOCUTORY ORDER AND MOTION FOR SUPPLEMENTAL ORDER DETERMINATION UNDER RULE 54(b)**

MAY IT PLEASE THE COURT:

This case is appropriate for certification under 28 U.S.C.A. Section 1292(b), because it involves several controlling questions of law as to which there is substantial grounds for difference of opinion, and an immediate appeal from the order would materially advance the ultimate termination of the litigation.

1

This matter involves the following controlling issues of law:

**1. Must a mandatary have express authority to bind a principal to a settlement agreement under Louisiana law?**

This Court ruled that Scott Buhrer did not have express authority pursuant to Louisiana Code Article 2997, and thus he could not bind Gianna Inc. to the settlement agreement.

Plaintiffs have asserted that Mr. Buhrer had apparent authority to settle the claim as he was the vice president and a member of the board of directors of the corporation, he had negotiated and signed most if not all of the previous agreements of the corporation, and he was left in charge of the settlement conference by the president of the corporation.

There is a controlling issue of law as to whether Louisiana Code Article 2997 controls over Louisiana Code Article 3021.

Louisiana Code Article 3021, as it read in 1996, stated that the principal is bound to execute the engagements contracted by the attorney, conformably to the power confided to him. Applying LA Code Art. 3021, the Fifth Circuit held that a corporation will be liable to a third party even for unauthorized acts of its agents under the doctrine of apparent authority if the corporation manifest the agent's authority to the third party and the third party reasonably relies on the agent's purported authority. First International Bank of Texas, N.A. v. First Bank of Jefferson, 928 F.2d 153 (5th Cir. 1991).

Pursuant to LA Code Article 3021, in effect in 1996, even absent express authority, the principal would be bound by the mandatary where the principal clothes the mandatary with apparent authority. Miller v. Hammond Motors, 40 So. 2d 29 (La. App. 1949).

Thus there is a controlling issues of law concerning the relationship between Louisiana

Code Articles 2997 and 3021, and the ability of a mandatary to bind a principal to a settlement agreement absent express authority.

The Fifth Circuit as well as other Courts have applied the Louisiana law of mandatary to cases involving settlement agreements, and have held that a mandatary could bind a principal to a settlement agreement where the mandatary lacked express authority but was "clothed" with apparent authority. Smedley v. Temple Drilling Co., 782 F.2d 1357 (5th Cir. 1986). See also Mid South Towing Co. v. Harwin, Inc., 733 F.2d 386(5th Cir. 1984); Volz v.Hertz Rent-A-Car, et al, 552 So.2d 1311 (La. App. 5th Cir. 1989); First Interstate Bank of Texas v. First National Bank of Jefferson, 928 F.2d 153(5th Cir. 1991).

In First Bank of Texas, the Court specifically addressed both Louisiana Code Article 2997 and the doctrine of apparent authority and held that even where the action of the agent under Article 2997 required express authority, the principal could be liable for the action of the agent under a theory of apparent authority. First Interstate Bank of Texas v. First National Bank of Jefferson, 928 F.2d 153(5th Cir. 1991).

Thus these cases demonstrate that there are substantial grounds for a difference of opinion concerning this Court's ruling that a mandatary must have express authority under Article 2997 to bind a principal to a settlement agreement.

**2. If Buhrer did not have authority to bind Gianna Inc., to the settlement agreement, did Gianna Inc., subsequently ratify the agreement by cashing a settlement check from Harrah's, on or about May 20, 1996?**

The undisputed facts as presented in the Court's order establish that on or about May 15, 1996, Gianna Inc. received a settlement check in the amount of $7,500.00 from Harrah's and that

the check was cashed/deposited by Gianna Inc. on or about May 20, 1996. Further the undisputed facts clearly establish that Gianna Inc. did not attempt to disavow the settlement agreement until June 4, 1996.

Thus even if Scott Buhrer did not have authority to bind Gianna Inc. to the settlement agreement, Gianna Inc. ratified the agreement on or about May 20, 1996, by cashing the settlement check.

Louisiana case law clearly supports a finding that cashing of a settlement check equates to acceptance of the settlement. Felder v. Georgia Pacific Corporation, 405 So. 2d 521 (La. 1981); Ingraham Concrete Structures Inc. v. Champion Shipyards Inc., 423 So. 2d 752 (La. App. 4th Cir. 1982); Culverhouse v. Marx, 2 So. 607(La. 1887). Gianna Inc.'s cashing of the settlement check constituted tacit ratification pursuant to Louisiana Civil Code Article 1843, because Gianna Inc., availed itself of the benefits of the settlement agreement by negotiating the settlement check.

Plaintiffs' have asserted that even if Buhrer did not have authority at the time the settlement agreement was signed, the subsequent cashing of the settlement check constituted a ratification of the agreement.

Harrah's own attorney made this same argument in a letter of June 25, 1996. Attached hereto as Annex A, and previously attached to Plaintiffs' Motion for Partial Summary Judgment as Annex F.

This Court held that because of Gianna Inc.'s "repudiation" of the settlement agreement, that tacit ratification could not occur.

However Gianna Inc. cashed the settlement check on or about May 20, 1996, before the first letter repudiating the agreement on June 4, 1996. Plaintiffs have argued that once the

agreement was ratified by the cashing of the check it could not be repudiated because as a compromise it had the force of the thing adjudged.

There is a controlling issue of law as to whether the act of cashing the check on or about May 20, 1996, constituted tacit ratification of the agreement and if so whether a subsequent "repudiation" of the agreement would have any effect.

Plaintiffs have argued that a settlement agreement can not be repudiated.

Thus there is a question of law as to whether a ratified settlement agreement can be repudiated. Plaintiffs contend that once the settlement agreement was ratified by the cashing of the settlement check, that it had the force of a thing adjudged pursuant to LA C.C. Art. 3078 and corresponding cases previously cited by plaintiffs, and thus could not be repudiated by either party.

**3. Assuming that Buhrer did not have authority, and that the cashing of the settlement agreement did not constitute tacit ratification, Harrah's should be estoped from arguing that the settlement agreement is invalid because Gianna Inc., reasonably relied on Harrah's continued assetion that the settlement agreement was valid.**

The undisputed facts establish that up until the filing of this suit Harrah's attorneys insisted that the settlement agreement was valid. Harrah's even argued that even if Buhrer did not have authority the agreement was ratified by the cashing of the settlement agreement.

Gianna Inc. is entitled to and did rely on that assertion by filing suit against Harrah's for the enforcement of the settlement agreement. Only when the evidence clearly established that Harrah's had breached the settlement agreement, did Harrah's argue that the settlement agreement was invalid.

Equitable estoppel is defined as, "the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct." Morris v. Friedman, 663 So. 2d 19 (La. 1995); see also John Bailey Contractor, Inc. v. State Department of Transportation & Development, 439 So. 2d. 1055 (La. 1983).

This case presents a textbook equitable estoppel claim. A settlement agreement was signed, Gianna Inc., cashed a check issued pursuant to the settlement agreement, subsequently Gianna Inc. claimed the settlement agreement was not valid, Harrah's then insisted upon the validity of the agreement, even pointing out that if Buhrer did not have authority the fact that Gianna Inc. cashed the check constituted acceptance of the settlement agreement, subsequently Gianna Inc. relied on the assertion by Harrah's that the agreement was valid and brought suit against Harrah's to enforce the terms of the agreement, now Harrah's has repudiated its assertion and claims that the settlement agreement is not valid. This repudiation as injured plaintiff by precluding plaintiff to enforce the terms of the settlement agreement and recover monies owed pursuant to the settlement agreement.

Harrah's should be estopped from now arguing that the agreement is invalid. That is the entire purpose of equitable estoppel. The doctrine of equitable estoppel is founded upon good faith. The doctrine is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, or representations. American Bank and Trust Company v. Trinity Universal Insurance Company, 205 So. 2d 35 (La. 1967); citing, Montague v. Weil & Bro., 30 La. Ann. 50; Shirley v. Campell, 151 So. 2d 557 (La. App.).

Harrah's should be estopped from denying the validity of the settlement agreement

because Gianna Inc. reasonably relied on Harrah's assertion that the agreement was valid by the filing of this suit. Allowing Harrah's to change its position only after Gianna Inc., has uncovered direct evidence of Harrah's breach of the settlement agreement is the exact type of injustice the doctrine of equitable estoppel is designed to prevent.

The Court did not specifically address this issue in the Order.

However there is a controlling issue of law as to whether Harrah's should be estopped from asserting that the settlement agreement is invalid when they previously asserted that it was valid and Gianna Inc., relied on that assertion to it's detriment.

**4. An immediate appeal from the interlocutory order may materially advance the ultimate termination of the litigation, and avoid the expense of protracted litigation.**

An immediate appeal from this interlocutory order will eliminate the possibility of the parties having to try this case twice.

This case involves complex issues of fact and law. Many witnesses reside outside of the state of Louisiana. There is a substantial number of business records and visual exhibits which both parties will present to the jury at the trial of this matter.

Further the elimination of plaintiffs' claim for breach of the settlement agreement will have an effect on plaintiffs' theories of recovery under the Louisiana Unfair Trade Practices Act. Evidence of the breach of the settlement agreement is closely tied to plaintiffs' Louisiana Unfair Trade Practices Act, following the jurisprudence of <u>Chemical Distributors, Inc. v. Exxon Corp.</u>, 1 F. 3d 1478 (5th Cir. 1993). In that case the court ruled that the bad faith breach of contract on part of the defendant was an element of the plaintiff's claim under the Louisiana Unfair Trade Practices Act. Thus the Court's ruling will effect other claims which are still pending, and an

immediate appeal will eliminate the possibility that the parties will be forced to litigate the same issues a second time.

In the event that the Court of Appeals should reverse the decision of this Court o the issue of the validity of the May 6, 1996, settlement agreement, the parties would bear the great expense of a second trial.

In the interest of judicial efficiency and substantial justice this Court should certify the April 10, 2002, Order, and allow plaintiffs to take an immediate appeal.

                                              Respectfully submitted,

                                              SIDNEY L. SHUSHAN, #12055
                                              JONATHAN M. SHUSHAN, #21977
                                              BRIAN L. GLORIOSO, #27226
                                              Guste, Barnett & Shushan, L.L.P.
                                              639 Loyola Avenue Suite 2500
                                              New Orleans, Louisiana 70113
                                              Telephone: (504) 529-4141
                                              Facsimile:   (504) 561-0326
                                              Attorneys for plaintiffs,
                                              Jane Galiano and Gianna, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. *<br>*Plaintiffs* * <br> * <br> * | | CIVIL ACTION NO. 00-0071 |
| VERSUS * <br> * <br> * <br> * | | SECTION " E " " (5) <br><br> JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., *<br>AND *<br>HARRAH'S ENTERTAINMENT, INC. *<br>*Defendants* * <br> * | | MAGISTRATE: JUDGE ALMA CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * *

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading, has been served upon:

Joseph W. Looney, T.A.
Kristen P. Biever
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Attorney for Defendants,
Harrah's Operating Co., Inc. and
Harrah's Entertainment, Inc.

by facsimile and hand delivery of a copy of same on the 13th day of May, 2002.

_____
BRIAN L. GLORIOSO



Law Department

HARRAH'S ENTERTAINMENT, INC.
The Premier Name in Casino Entertainment

Telephone
901-762-8600
Fax
901-762-8735

June 25, 1996

Rickey Hudson, Esq.
Pugh & Associates
4917 St. Charles Avenue
New Orleans, LA 70015

PUGH/ASSOCIATES
*[handwritten date]*, 1996
RECEIVED

Re: Gianna, Inc.

Dear Mr. Hudson:

This letter follows our telephone conversation of June 18 and is in response to Ms. Gianna Galiano's letter dated June 4, 1996 to Mr. Phil Satre.

The Settlement Agreement dated May 6, 1996 was negotiated in good faith. Ms. Galiano, Mr. Bennett Wolff, who I believe is a Vice President of Gianna, Inc., and Scott Buhrer, also Vice President of Gianna, Inc., all were present when the agreement was negotiated. Ms. Galiano agreed to its terms. Everyone shook hands. It was further agreed by all those present at the meeting, including Ms. Galiano, that the agreement would be reduced to writing and signed that day. She did not say or suggest to us in any way that it would not be valid unless she personally signed it. To the contrary, it was understood that Scott Buhrer would sign for Gianna, Inc. as Ms. Galiano had to leave after the meeting and would not be available the rest of the day.

The agreement represents what was agreed to by Ms. Galiano at the meeting. Whether she personally signed it or not, she agreed to its terms. Mr. Buhrer signed on behalf of Gianna, Inc. He was an officer of Gianna, Inc., also acting as its attorney, and Harrah's had been dealing with him for several months concerning all business matters with Gianna, Inc. including the various issues and disagreements among the parties. He signed the original proposal dated August 28, 1995, on behalf of Gianna, Inc. and also signed the offer for a new proposal dated December 10, 1996. Therefore, along with Ms. Galiano's agreement to the terms of the Settlement Agreement at the meeting, it was very apparent that Scott Buhrer had authority to sign for Gianna, Inc.

ANNEX "A"

Motion for Partial Summary Judgment
ANNEX F
Harrah's Letter of 6/25/96 Affirming the Validity of the
Settlement Agreement of 5/6/96

1023 Cherry Road, Memphis, TN 38117-5423

Rickey Hudson, Esq.
June 25, 1996
Page 2

The $7,500 payment was paid per the settlement agreement and it was accepted and cashed on or about May 20, 1996. By acceptance of the settlement check, Gianna, Inc. confirmed the settlement agreement well before Ms. Galiano's letter of June 4, 1996.

Based on the above, we are at a loss to understand your position or why this matter is being pursued as it is.

Sincerely,

Vincent G. De Young
Associate General Counsel

VDY:jem

cc: Jan Starnes
    Connie Albright
    Phil Satre

q:\eereis\deyoung\gianna\hudson.ltr