```
                    FILED
              U.S. DISTRICT COURT
            EASTERN DISTRICT OF LA

              2003 DEC 22  PM 4:53

                LORETTA G. WHYTE
                     CLERK
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E " " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' MOTION IN LIMINE TO ADMIT**
**EVIDENCE OF SALES TO SUBSIDIARIES OF DEFENDANTS**

Now come plaintiffs, through undersigned counsel, and respectfully move this Honorable Court to allow plaintiffs to admit evidence of sales to subsidiaries of defendants as an element of damages for the reasons set forth in the Memorandum of Law annexed hereto.



Respectfully submitted,

*[signature]*

SIDNEY L. SHUSHAN, #12055
JONATHAN M. SHUSHAN, #21977
BRIAN L. GLORIOSO, #27226
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone: (504) 529-4141
Facsimile: (504) 561-0326
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E " " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

IT IS ORDERED by the Court that Plaintiffs' Motion in Limine to Admit Evidence of Sales to Subsidiaries of Defendants be filed into the record of the above captioned matter.

New Orleans, Louisiana, this_____ day of December, 2003

_____
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E " " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |

* * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF HEARING

TO:  Mr. Joseph W. Looney, Attorney of record for Harrah's Entertainment, and Harrah's Operating Co., Inc., 4500 One Shell Square, New Orleans, Louisiana 70139

You are hereby notified that Plaintiffs' Motion in Limine to Admit Evidence of Sales to Subsidiaries of Defendants will be heard on the 7th day of January, 2004, at 10:00, at the United States District Courthouse, 500 Camp Street, New Orleans, Louisiana, before the Honorable Marcel Livaudais, Jr.

Respectfully submitted,

_____
SIDNEY L. SHUSHAN, #12055
JONATHAN M. SHUSHAN, #21977
BRIAN L. GLORIOSO, #27226
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone: (504) 529-4141
Facsimile:  (504) 561-0326
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E" " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION IN LIMINE TO
<u>ADMIT EVIDENCE OF SALES TO SUBSIDIARIES OF DEFENDANTS</u>**

**MAY IT PLEASE THE COURT:**

At the trial, plaintiffs will offer evidence of sales of All-Bilt costumes to individual Harrah's casinos to prove damages and loss of profits to plaintiffs, unjust enrichment of defendants, and unfair trade practices.

The history of this case and the deposition testimony justifies admitting this evidence as against defendants.

It is undisputed that defendants entered into a contract with plaintiffs to design costumes for individual Harrah's casinos.[1] Then they signed a Settlement Agreement to terminate their ongoing relationship with plaintiffs, in which they agreed to pay royalties for the use of certain costumes at certain casinos. (Settlement Agreement of May 6, 1996, Annex 4)

---

[1] See first contract by exchange of letters dated August 28, 1995, September 14, 1995, Annex 5.

5

From the beginning, defendants spoke for and controlled the individual casinos. Defendants had to approve all designs and set the prices which they would pay for each costume. **"[I]t is understood that Harrah's must approve in advance all prices it will pay for garments."**[2]

Defendants - not their subsidiaries - from the beginning guaranteed the payment of plaintiffs' royalties **"on all garments purchased by Harrah's or its subsidiaries"**.[3]

The Settlement Agreement (Annex 4 ) entered into by defendants specifies which individual casinos could use the designs which defendants were permitted to use (some with and some without payment of royalties, paragraphs 2 and 3).

Immediately after the Settlement Agreement, defendants moved quickly to cut off any direct communications between plaintiffs and the individual casinos.[4]

Later, in response to discovery requests for defendants' records of costume sales, defendants produced computer records of defendants showing sales of uniforms to individual casinos. The records included shipments to many individual casinos. (For a sample, see Annex 20) These records were in the custody of defendants. If these were not defendants' business records, they should have advised the Court and counsel of that fact long ago.

Defendants' key employee and manager Connie Albright testified in her deposition that she and defendants put in place a national costume program for all Harrah's casinos. (Albright

---

[2] (Letter of September 14,1995, part of the original contract by exchange of letters., Annex 5).

[3] See the first contract by exchange of letters, Annex 5.

[4] See letter of May 15, 1996 enclosing the $7,500 check, Annex 5.

deposition, pp. 54, Annex 14). She was an employee of Entertainment. (See her business card, Annex 15). She testified as to her decisions as to which costumes would be ordered for individual casinos.

All-Bilt witnesses Gunnarson and Wecksler testified they dealt directly with defendants' employees Connie Albright and Jan Starnes to work out the details of uniforms to be shipped to the individual casinos. (See Wecksler Depo, pp. 35-36, Annex 22; Gunnarson Depo. I, pp. 26-27, Annex 21.) All-Bilt's records show shipments to many individual casinos of the costumes specified by Albright and Starnes. (See Annex 27 for an example).

Obviously defendants controlled and managed and did the purchasing for the individual casinos thru employees such as Albright and Starnes.

From all of that evidence, any jury can infer that the costume shipments to the individual casinos benefitted defendants, and that the shipments to the individual casinos directly from the manufacturers violated the Settlement Agreement if defendants "used" plaintiffs' designs (more or less literally) without her permission.

Courts do not permit corporate shell games to avoid responsibility. Courts look to the operative facts when assessing which entities should be brought before the bar of the Court. This is true in a jurisdictional situation.[5] This is also applies in a liability context. If a parent

---

[5] See, e.g., Howard v. Everex Systems, Inc., 228 F.3d 1057, 1069 n.17 (9th Cir. 2000) ("Although jurisdiction over a subsidiary does not automatically provide jurisdiction over a parent . . . where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well."); Minnesota Mining & Mfg. Co. v. Eco Chem Inc., 757 F.2d 1256, 1265 (Fed. Cir. 1985) (finding that the exercise of personal jurisdiction over a successor corporation with no ties to the forum state was appropriate when the successor corporation was a "mere continuation" of the predecessor corporation and exercise of personal jurisdiction would have been appropriate over the predecessor); Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 903 (2d Cir. 1981) (finding

corporation takes action for the benefit of a subsidiary, then the parent can be held liable. <u>Bujol v. Entergy Services, Inc.</u>, 883 So.2d 947, (La. App. 1st Cir. 2002). The parent company is liable when a parent and subsidiary act in concert. <u>Louisiana Power and Light Co. v. United Gas Pipeline Co.</u>, 493 So.2d 1149, (La. 1986). The situation is simple.

      Defendant controlled what costumes were purchased. Defendant controlled what designs were built. Defendant controlled the price paid. Defendant entered into a contractual relationship, of a disputed nature, with plaintiff. Defendant had complete control of the costume operations at all Harrah's casinos. It is irrelevant which corporate entity defendant chose to use for the actual financial transaction. Defendant had effective control over the costumes at each of the allegedly distinct sub-corporations who allegedly actually wrote the checks. This Court should not permit defendant to play shell games with corporate entities all of whom are ultimately controlled by the same board of directors. If Gianna's rights were violated, the proper party is before the Court.

      Throughout the long process of this lawsuit, defendants have never sought to hide behind

---

that the fiduciary shield doctrine, which prevents courts from imputing the jurisdictional contacts of corporations to their stockholders, is inapplicable when the corporation is a "mere shell" for the individual stockholder); <u>Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.</u>, 519 F.2d 634, 637-38 (8th Cir. 1975) (finding that the chief executive officer of a corporation was subject to in personam jurisdiction based on the corporation's activities in the forum state when the evidence indicated that the corporation was merely the alter ego of the chief executive officer); <u>Huth v. Hillsboro Ins. Mgmt., Inc.</u>, 72 F. Supp. 2d 506, 510 (E.D. Pa. 1999) (holding that the acts of a predecessor corporation may be attributed to its successor for purposes of determining whether jurisdiction over the successor is proper); <u>Kinetic Instruments, Inc. v. Lares</u>, 802 F. Supp. 976, 985 (S.D.N.Y. 1992) ("It is clear that if a court has jurisdiction over a corporation, it may obtain jurisdiction over a corporate officer or shareholder by disregarding the corporate entity.").<u>Patin v. Thoroughbred Power Boats Inc.</u>, 294 F.3d 640, 653 (U.S. App., 2002)

their subsidiaries. It is too late for them to start now.

Defendants cannot manage the costume business of the individual casinos, and hire and fire designers for the individual casinos - whatever their legal status - and then distance themselves from the individual casinos. They cannot have it both ways. The law of Louisiana and of other states implies a promise of good faith in all contracts. <u>Badalamenti v. Jefferson Guar. Bank</u>, 759 So.2d 274, 278 (La. App. 5 Cir. 2000); <u>Sutton's Steel & Supply, Inc. v. Bell South Mobility, Inc.</u>, 776 So.2d 589, 594 (La. App. 3 Cir. 2000).

Respectfully submitted,

_____
SIDNEY L. SHUSHAN, #12055
JONATHAN M. SHUSHAN, #21977
BRIAN L. GLORIOSO, #27226
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone: (504) 529-4141
Facsimile: (504) 561-0326
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E " " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Plaintiff's Motion in Limine to Admit Evidence of Sales to Subsidiaries of Defendants has been served upon:

Mr. Joseph W. Looney, T.A.
Ms. Melissa S. LaBauve
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Attorney for Defendants,
Harrah's Operating Co., Inc. and
Harrah's Entertainment, Inc.

by hand delivery of a copy of same this _22_ day of December, 2003.

_____
BRIAN L. GLORIOSO



# GIANNA, INC.

600 Loyola Avenue, Suite 300
New Orleans, Louisiana 70113

*tel: (504) 738-0557*                                                              *fax: (504) 527-0071*

August 28, 1995

Ms. Connie Albright
Corporate Director
Strategic Alliances/Business Travel
The Promus Companies Incorporated
1023 Cherry Road
Memphis, Tennessee 38117

RE:   Design Consulting Agreement               **BY TELEFACSIMILE**

Dear Connie:

I enjoyed meeting with you again this past week while you were in New Orleans and appreciated the opportunity to discuss Harrah's interest in retaining the services of Gianna to assist in wardrobe design at your various existing and future properties. In furtherance of our discussions and based on our understanding of Harrah's needs and our own company requirements, I would like to propose the following basis for an ongoing consulting arrangement.

   1. Gianna, Inc. will provide the services of its designer (Gianna), its commercial artists, equipment and staff to Harrah's for a minimum of ten (10) days per month on a priority basis during the duration of the contract term. At Harrah's direction, these services will include, but not necessarily be limited to, meetings with company personnel, on-site inspections, development of preliminary and final designs, materials sourcing and acquisition, sourcing of production, supervision of production and assistance in wardrobing of employees at location.

   2. Gianna, Inc. will receive a monthly fee of $7500.00 payable in advance in consideration of the services provided by Gianna hereunder. Gianna, Inc. will receive additional compensation of $85.00 per hour for each hour of services provided in excess of ten (10) hours per twenty-four hour period and/or the minimum ten (10) days per month agreed to herein. All Federal Express or other overnight or express delivery charges will be reimbursed by Harrah's. Payment terms are net thirty (30).

# GIANNA, INC.

Correspondence to Ms. Connie Albright
August 28, 1995
Page 2.

    3. All travel expenses of Gianna and a commercial artist, if necessary, will be paid and/ reimbursed by Harrah's. These travel expenses will include airfare, ground transportation, hotels and meals as well as any other expenses reasonably incurred in the performance of out-of-state activities pursuant to this agreement.

    3. The term of the contract will be through December 31, 1995, with Harrah's having the right to terminate the agreement at any time upon thirty (30) days advance written notice to Gianna, Inc.

    4. Harrah's will have the exclusive right to utilize Gianna, Inc.'s designs created on its behalf pursuant to this agreement, however, the designs themselves and all working patterns will remain the sole property of Gianna, Inc.. Harrah's agrees that Gianna, Inc.'s own label will be displayed either alone or concurrently with Harrah's own labelling on the inside of each garment in no less prominent a location as Harrah's labelling.

    5. Harrah's agrees that on original or repeat manufacturing orders of Gianna-designed garments, Harrah's will guarantee that Gianna, Inc. receives a minimum design royalty of 5% of the gross purchase order price of the garments, not including shipping, sales taxes or alteration fees, payable either directly from Harrah's or as a required component of any production bid. This design consulting agreement will in no manner limit or restrict Gianna, Inc. from producing and/or manufacturing its own designs for Harrah's or negotiating royalties in excess of the 5% provided herein from prospective initial or repeat manufacturers of the designs created for Harrah's under this agreement.

I hope that the foregoing can serve as the basis for an agreement between our two companies. Again, nothing herein is "cast in stone" and we would be pleased to discuss any changes and/or modifications which you deem appropriate. Gianna is very excited about working with you and your staff and I'm certain that she will make a very positive contribution to your company.

I have also taken the liberty of enclosing a copy of our bill for services rendered through August 25, 1995. Should you have any questions or problems with the bill please let me know. Otherwise, we would appreciate anything you could do to expedite payment.

I hope that your return to Memphis was uneventful and that you have a smooth recovery from your surgery. Please give me a call as soon as you feel up to it to discuss this proposal.



# GIANNA, INC.

Correspondence to Ms. Connie Albright
August 28, 1995
Page 3.

Sincerely,

R. SCOTT BUHRER
Vice President of Marketing and Sales

RSB/jb



Connie Albright
Corporate Director,
Strategic Alliances and
Corporate Business Travel

HARRAH'S ENTERTAINMENT, INC.
The Premier Name in Casino Entertainment

Telephone
901 762-8778
Fax
901-537-3300

September 14, 1995

Gianna, Inc.
600 Loyola Avenue
Suite 300
New Orleans, LA 70113

Attn: Mr. R. Scott Buhrer

RE:  Design Consulting Agreement

Dear Scott:

Thank you for your letter of August 28, 1995 outlining the terms of the proposed Design Consulting Agreement.

I am happy to let you know that the terms you have outlined are acceptable with the following modifications:

1. The Design Consulting Agreement will be with Harrah's Operating Company, Inc. Because of this, the references to "Harrah's" means Harrah's Operating Company, Inc.

2. We require that Gianna, Inc. sign a Confidentiality Agreement (attached).

3. Travel expenses will be supported by receipts as may reasonably be requested by Harrah's.

4. Harrah's exclusive rights to utilize Gianna, Inc.'s designs which are created for Harrah's (as described in paragraph 4 of the August 28, 1995, letter) will be perpetual and will continue after the Agreement is terminated. Gianna, Inc. covenants not to provide designs similar to the Gianna designs used by Harrah's to Harrah's competitors (other casinos in markets where there is a casino operated by Harrah's or its subsidiaries) and this covenant will continue after our Agreement terminates.

5. The design royalty of 5% will only be due and guaranteed by Harrah's on garments purchased by Harrah's or its subsidiaries that are manufactured according to Gianna, Inc.'s visual constructive patterns exclusively created for Harrah's under this Agreement. The royalty obligation will continue for such purchases after this Agreement is terminated if the visual constructive pattern of the purchased garment was designed by

Gianna, Inc.
September 14, 1995
Page 2

Gianna, Inc. exclusively for Harrah's under this Agreement. However, it is agreed no royalty will be payable or guaranteed by Harrah's on any stock or catalog items or on any items not designed by Gianna, Inc. for Harrah's under this Agreement. It also is agreed the royalty obligation will terminate if Gianna, Inc. breaches this Agreement.

6   To satisfy the royalty, Harrah's may direct the manufacturer in the garment purchase order or production bid to include the royalty in the bid or purchase price of the garment and to pay the royalty to Gianna, Inc. from the price paid by Harrah's to the manufacturer. If this direction is given, Harrah's will not be responsible if the manufacturer fails to pay the royalty.

7. Any royalty in excess of 5% will be between the manufacturer and Gianna, Inc. However, it is understood Harrah's must approve in advance all prices it will pay for garments.

8. Gianna, Inc. is an independent contractor. All purchases of garments will require the written approval of Harrah's (Connie Albright or another person designated by Harrah's to approve purchases). Harrah's will not be liable for any injuries to employees or agents of Gianna, Inc. incurred in connection with performing this Agreement. This Agreement cannot be assigned by either party (except to affiliated companies) without the written consent of the other party. Gianna, Inc. agrees that all designs it creates for Harrah's are or will be original creations of Gianna, Inc. or entirely owned by Gianna, Inc.

9. Gianna, Inc. agrees to obtain any necessary licenses or approvals required to perform its services.

If you agree to these modifications, please indicate your agreement by signing below. Our Agreement will then be comprised of your letter of August 28, 1995 as modified by this letter.

Sincerely,


Connie Albright

Agreed:                                   Agreed:

GIANNA, INC.                              HARRAH'S OPERATING COMPANY, INC.

By: _____                By: _____

Title: _____               Title: _____



May 6, 1996

Gianna, Inc.
600 Loyola Avenue
Suite 300
New Orleans, LA 70113

Attn: Mr. R. Scott Buhrer

Dear Scott:

                              Settlement Agreement

This letter represents the settlement agreement reached today regarding the Design Consulting Agreement between Harrah's Operating Company (Harrah's) and Gianna, Inc. (Gianna).

It is agreed as follows:

1. Harrah's agrees to pay Gianna $7,500 on or before May 20, 1996.

2. Gianna waives past or future royalties on the following garments now in use at Harrah's Skagit:
    Valet jacket
    Bingo apron
    Fresh Market Buffet apron
    Fresh Market Display Chef Jacket
    Chambray shirt for Fresh Market

3. Harrah's agrees that Gianna will continue to be entitled to the royalty that Gianna is currently receiving from the manufacturer for Harrah's purchases of the following garments now in use at Harrah's Skagit:
    Male dealer vest
    Female dealer vest
    Winning streak beverage server uniform
    Casino beverage server uniform

Harrah's agrees that Gianna is entitled to a 5% royalty for Harrah's purchases of the following Range Restaurant vests now in use at Harrah's Joliet:
Range vest with 3 buckles for women servers
Range vest with 1 buckle for men servers

Harrah's will determine the number of these vests previously purchased by Harrah's based on purchase orders and will pay the 5% royalty on these purchases on or before May 20, 1996. Royalties on future purchases of these vests will be paid within 30 days of receipt of the invoice for the purchases.

It is agreed that if a major change occurs in the design of any of the above garments on which Harrah's is agreeing to pay a royalty, no royalty will be due or payable on purchases of the changed garment. Harrah's will advise Gianna contemporaneously of any such design change(s).

4. Each party agrees not to refer to each other's specific name in their respective marketing communications to third parties without the other party's prior written consent. However, it is agreed that Gianna may refer to Harrah's as a former client in Gianna's marketing communications.

5. Harrah's agrees not to use any designs of Gianna other than those mentioned in this Settlement Agreement. The parties agree that their Design Consulting Agreement is terminated and this Settlement Agreement represents the only agreement among the parties. Each party releases the other party and their respective affiliates, subsidiaries, officers and directors from any and all past or future claims whatsoever arising under the Design Consulting Agreement.

If this Settlement Agreement is acceptable, please sign in the space provided below:

Agreed:

Gianna, Inc.
By: *[signature]*
Title *Vice President*

Sincerely,

Harrah's Operating Company, Inc.
By: *[signature]*
Connie Albright
Corporate Director

Connie Albright
Corporate Director,
Strategic Alliances and
Corporate Business Travel



HARRAH'S ENTERTAINMENT, INC
The Premier Name in Casino Entertainment

Telephone
901-762-8778
Fax
901-537-3300

May 15, 1996

*VIA FACSIMILE*

Mr. R. Scott Buhrer
Gianna, Inc.
600 Loyola Avenue
Suite 300
New Orleans, Louisiana 70113

    Re: Settlement Agreement dated May 6, 1996

Dear Scott:

    Per our conversation today, it was agreed that royalties for past or future purchases of Range Restaurant vests now in use at Harrah's Joliet designed by Gianna for women and men servers will be paid directly to Gianna by the manufacturer, All Bilt, per an agreement or arrangement between All Bilt and Gianna. This is instead of Harrah's paying any royalty on such purchases. Also, Harrah's agreed that Gianna may receive royalties direct from All Bilt on Fresh Market Buffet hats designed by Gianna purchased for use at Joliet and Skagit.

    If you agree to this amendment to the Settlement Agreement, please sign below and return by fax.

                                 Sincerely,

                                 Connie Albright
                                 Corporate Director

Agreed:

Gianna, Inc.

By:

Title:

cls\deyoung\gianna\buhrer2.ltr         1023 Cherry Road, Memphis, TN 38117

DATE 5/14/96  HARRAH'S OPERATING COMPANY, INC.  No. 001293495
VENDOR 180661

| VOUCHER NO. | LOCATION NAME | INVOICE NUMBER | DATE MO/DAY | INVOICE AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|
| 2419960500008 | UNIFORMS | CONSULTING SERVICES | 05 06 | 7,500.00 | .00 | 7,500.00 |
| S  N TO CONNIE ALBRIGHT | | | | | | |
| 70 | | TOTAL | | 7,500.00 | .00 | 7,500.00 |

DETACH BEFORE DEPOSITING

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

Harrah's
The Premier Name in Casino Entertainment

HARRAH'S OPERATING COMPANY, INC.
1023 Cherry Road
Memphis, Tennessee 38117-5423

64-1327/611

No. 001293495

| MO | DAY | YEAR | | | | CHECK AMOUNT |
|---|---|---|---|---|---|---|
| 05 | 14 | 96 | PAY | 7,500 DOLLARS AND 00 CENTS | | *********7,500.00 |

Void if Amount Greater Than $50,000

TO THE ORDER OF:
GIANNA INC
600 LAYOLA AVENUE, SUITE 300
NEW ORLEANS    LA    70113

HARRAH'S OPERATING COMPANY, INC
By:
Vice President, Treasurer
Sr. Vice President

Wachovia Bank of Georgia, N.A.
Augusta, Georgia