FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 DEC 22  PM 4: 51

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| *Plaintiff* | * | |
| | * | NO. 00-0071 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| | * | |
| HARRAH'S OPERATING CO., INC. | * | JUDGE: MARCEL LIVAUDAIS, JR. |
| and | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE: |
| *Defendants* | * | ALMA CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFFS' MOTION IN LIMINE: TO ADMIT
### EVIDENCE OF MARKUP AS A MEASURE OF LOST PROFITS

Now come plaintiffs, through undersigned counsel, and respectfully move this Honorable

Court to allow plaintiffs to admit evidence of markup as a measure of lost profits as an element of

damages for the reasons set forth in the Memorandum of Law annexed hereto.

Respectfully submitted,

SIDNEY L. SHUSHAN, #12055
BRIAN L. GLORIOSO, #27226
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, LA  70113
Telephone:  504-529-4141
Facsimile:  504-561-0326
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

Fee_____
Process____
X  Dktd_____
__ CtRmDep___
__ Doc. No.____
233

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| *Plaintiff* | * | |
| | * | NO. 00-0071 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| | * | |
| HARRAH'S OPERATING CO., INC. | * | JUDGE: MARCEL LIVAUDAIS, JR. |
| and | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE: |
| *Defendants* | * | ALMA CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * *

## ORDER

IT IS ORDERED by the Court that Plaintiffs' Motion in Limine: To Admit Evidence of

Markup as a Measure of Lost Profits be filed into the record of the above captioned matter.

New Orleans, Louisiana, this _____ day of December, 2003.


_____

**UNITED STATES DISTRICT JUDGE**


2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| *Plaintiff* | * | |
| | * | NO. 00-0071 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| | * | |
| HARRAH'S OPERATING CO., INC. | * | JUDGE: MARCEL LIVAUDAIS, JR. |
| and | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE: |
| *Defendants* | * | ALMA CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF HEARING

TO:    Mr. Joseph W. Looney, Attorney of record for Harrah's Entertainment, and Harrah's Operating Co., Inc., 4500 One Shell Square, New Orleans, Louisiana 70139

You are hereby notified that Plaintiffs' Motion in Limine: To Admit Evidence of Markup as a Measure of Lost Profits will be heard on Wednesday, the 7th day of January , 2004, at 10:00 A.M., at the United States District Courthouse, 500 Camp Street, New Orleans, Louisiana, before the Honorable Marcel Livaudais, Jr.

Respectfully submitted,

SIDNEY L. SHUSHAN, #12055
BRIAN L. GLORIOSO, #27226
GUSTE, BARNETT & SHUSHAN, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, LA   70113
Telephone:  504-529-4141
Facsimile:   504-561-0326
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| *Plaintiff* | * | |
| | * | NO. 00-0071 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| | * | |
| HARRAH'S OPERATING CO., INC. | * | JUDGE: MARCEL LIVAUDAIS, JR. |
| and | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE: |
| *Defendants* | * | ALMA CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION IN LIMINE: TO ADMIT EVIDENCE
OF MARKUP AS A MEASURE OF LOST PROFITS.**

MAY IT PLEASE THE COURT:

Plaintiffs' expert submitted a report which uses two yardsticks to measure damages for loss of profits to plaintiffs: royalties and loss of a markup. The markup would have come from the sale of the costumes by plaintiffs to defendants. Plaintiffs would have ordered the costumes from defendants' hand-picked manufacturers and would have resold them at a profit. Her report defines and establishes the business practice of using either markup or royalties in the costume and clothing

4

industry.[1]

The first contract by exchange of letters between plaintiffs and defendants left the door open for plaintiffs to negotiate directly with the manufacturers and sell the costumes to Harrah's herself. Plaintiffs specifically reserved the right to negotiate with the manufacturers and sell the costumes to defendants: "This design consulting agreement will in no manner limit or restrict Gianna, Inc. from produced and/or manufacturing its own designs for Harrah's or negotiating royalties in excess of the 5% provided herein...." (Letter of August 28, 1995, Annex 5). Harrah's reply confirmed plaintiffs' right to negotiate directly with the manufacturers and resell to Harrah's. It specifically provided that Harrah's retained the right to approve the purchase price of any costumes manufactured by plaintiffs for defendants: "Any royalty in excess of 5% will be between the manufacturer and Gianna, Inc. **However, it is understood Harrah's must approve in advance all prices it will pay for garments.**" (Letter of September 14, 1995, Annex 5.) There would have been no reason to reserve the right to approve its own purchase prices if plaintiffs did not have the right to control the manufacturing and resell to Harrah's.

Following the first contract between plaintiffs and defendants, plaintiffs actually entered into a contract with one of defendants' manufacturers.[2] Plaintiff proposed such a contract to All-Bilt, [which ultimately used plaintiffs' designs (more or less literally) to produce millions of dollars in costumes for defendants.[3] All-Bilt did not sign the contract because it was already in direct contact

---

[1] See Report, Annex 28, pp. 19. A Supplemental Report is in preparation based on the late discovery of All-Bilt's detailed records.

[2] See the Contract between Plaintiffs and Uniform Ideas, Annex 29.

[3] See letter and proposed contract, Annex 30.

with Harrah's to cut plaintiffs out of the loop.[4]

The markup evidence is admissible to prove bad faith breach of contract damages under Louisiana Civil Code Article 1997. Defendants were in bad faith when they worked directly with All-Bilt and refused to pay plaintiffs even royalties under the Settlement Agreement. In fact, defendants tried desperately to amend the Settlement Agreement to eliminate their liability and transfer it to the manufacturers.[5] When plaintiffs refused to amend it, they simply ignored it, and denied that they were "using" plaintiffs' designs (as they have in this lawsuit) in spite of the detailed evidence in All-Bilt's records to show that was not true. (See the documents which show an almost literal copying of certain of plaintiffs' designs by defendants and All-Bilt, annexed to the pending Summary Judgment.) (Annexes 9 and 10).

LCC 1997 makes defendants liable for "all of the damages, foreseeable or not, that are a direct consequence of his [the obligor's] failure to perform". The Courts give that test a liberal interpretation.[6]

In this case, the Settlement Agreement included an unlimited, unconditional promise not to "use" plaintiffs' designs - period. (Settlement Agreement, Annex 4.)

The facts of this case would meet even the foreseeability test for good faith breach of contract damages under Louisiana Civil Code Article 1996. If defendants had asked plaintiff for permission to "use" her designs (more or less literally, as All-Bilt did) it is **foreseeable** that plaintiffs would

---

[4] See Wecksler deposition, pp. 16-18, Annex 22; See Gunnarson Depositions, Annex 21. See letters, Annex 31.

[5] See letter from Connie Albright to plaintiffs, Annex 32.

[6] Tanner v. Eagle Bag Corporation, 82 So. 682, (La. 1919). The result under Tennessee law would be the same. See Moore Const. Co. v. Clarksville Dept. of Electricity, 707 S.W.2d 1, (Tenn. App. 1985) and Bush v. Cathy, 598 S.W.2d 777, 783 (Tenn. App. 1979).

have asked for the markup, a much higher profit, instead of the royalty[7]. Plaintiff had no incentive to give her designs away.

The test for damages under the Unfair Trade Practices Act[8] or unjust enrichment[9], would be the same. Federal Courts applying Louisiana law have specifically admitted "markup" as a measure of damages. Specifically, "A plaintiff establishes a prima facie right to recover overhead and profit if he proves the amount of overhead allocated to the project and if he establishes what his markup or profit margin [**29] reasonably should be." McCarty Corp. v. Pullman-Kellogg, Div. of Pullam, Inc., 751 F.2d 750, 761 (5th Cir., 1985). Additionally, the value of lost business can be directly established by calculating what a sales markup would be and thus what the lost profits are. Royal Drug Co. v. Group Life and Health Ins. Co., 737 F.2d 1433, (5th Cir. 1984). Louisiana courts use the same test for loss of profit cases. Burdette v. Drushell, 837 So.2d 54, (La. App.1st Cir. 2002).

Accepting that it was forseeable to Harrah's that plaintiff might purchase the uniforms herself and resell them to Harrah's, the amount of lost profit is relevant. The best evidence of that is how much money plaintiff would have made on this basis. As seen above, it is routine to admit evidence of "markup" in commercial litigation cases. This is such a case. Both sets of damages evidence should go to the jury. It is up to the jury to decide which loss of profits numbers to accept. It would be prejudicial to for the Court, not the trier of fact, to decide which method plaintiff would have used if Harrah's had honored the contract.

---

[7] Angelo and Son, Inc. v. Rapides Bank and Trust Co. in Alexandria, 671 So.2d 1283, (La. App. 3rd Cir. 1996), writ denied, 675 So.2d 1083, (La. 1996). The results under Tennessee law would be the same. Wilson v. Dealy, 222 Tenn. 196, 434 S.W.2d 835, (Tenn. 1968).

[8] L.R.S. 51: 1401 et seq.

[9] L.C.C. Art. 2298 et seq.

The Court should admit the evidence of loss of profit from a markup on a re-sale from the plaintiff.

Respectfully submitted,

SIDNEY L. SHUSHAN, #12055
BRIAN L. GLORIOSO, #27226
GUSTE, BARNETT & SHUSHAN, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, LA   70113
Telephone:  504-529-4141
Facsimile:   504-561-0326
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| *Plaintiff* | * | |
| | * | NO. 00-0071 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| | * | |
| HARRAH'S OPERATING CO., INC. | * | JUDGE: MARCEL LIVAUDAIS, JR. |
| and | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE: |
| *Defendants* | * | ALMA CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * *

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Plaintiffs' Motion in Limine: To

Admit Evidence of Markup as a Measure of Lost Profits, Notice of Hearing and Memorandum of

Law in Support of Plaintiffs' Sixth Motion in Limine: To Admit Evidence of Markup as a Measure

of Lost Profits has been served upon:

Mr. Joseph W. Looney, T.A.
Ms. Melissa S. LaBauve
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Attorney for Defendants,
Harrah's Operating Co., Inc. and
Harrah's Entertainment, Inc.

by hand delivery of a copy of same this 22nd day of December, 2003.

_____
BRIAN L. GLORIOSO

9



of the requirements and specifications and feedback from the client and put those into an acceptable form for the client, i.e. the finished sketch.

When a design collection is copyrighted, "a designer owns the copyright unless the designer is a salaried employee of a company; then the design copyright is held by the employer. If a .....design is copyrighted, any unauthorized reproduction of the design is considered copyright infringement and the copyright holder can take the infringer to court. " (Burns, L. & Bryant, N., 1997. *The Business of Fashion*. New York: Fairchild Publications, pp. 52).

Royalty payments stipulated in a contract are generally based on a percentage of the wholesale price of the product. The industry standard for royalties is six to eight percent of the wholesale price. If a contract stipulates payment based on markup (which is not the industry standard, although it may be used) payment to the designer is generated by adding some amount to the wholesale price. The payment to the designer is then calculated by taking the additional amount added to the wholesale price and multiplying by units sold.

Based on review of documents from AllBuilt , it appears that the cost of production of each design is listed on the top left of the purchase orders, while the wholesale price is listed on the right. While the format of this purchase order is not necessarily standard (each company has their own format for purchase orders), it seems reasonable to assume that the figures on the sheet represent the cost and wholesale price. The above mentioned documents indicated that orders were placed and invoices were paid. Therefore, the designer would be due a portion of the difference between cost and wholesale price, if the contract stipulated that type of payment, in lieu of royalties.

In the case of Ms. Galiano, she designed and developed a collection based on the needs and desires of her customer, Harrah's Operating Company, Inc. It is quite common for

PLAINTIFF'S
EXHIBIT
28



TM

**More Than Just Uniform...Ideas!** ℠

4 Westchester Plaza • Elmsford, NY 10523 • (914) 347-3400 • Fax (914) 347-2773
1220 Biscayne Blvd. • Miami, FL 33132 • (305) 358-8330 • Fax (305) 358-8332

# AGREEMENT BETWEEN
# UNIFORM IDEAS, INC.
# AND
# GIANNA, INC.

1. Term -- September 1, 1995 - August 31, 1996, to be automatically renewed annually unless one party gives written notice to terminate prior to March 1st of each year.

2. During the period of time when the agreement is in effect, Gianna agrees to actively promote the production of its uniform designs by Uniform Ideas. Furthermore, Gianna agrees that it will not enter into any commission arrangements with any other uniform companies for any project unless Uniform Ideas has first been rejected to manufacture the designs for that project. Gianna will, however, be free to negotiate commissions with other uniform manufacturers on production of its designs for a particular project if Uniform Ideas has notified Gianna in writing that it cannot or will not manufacture a particular Harrah's uniform design.

3. Uniform Ideas agrees that within three (3) working days of the submission to it of any Gianna-created uniform design for Harrah's, it will advise Gianna, in writing and by telefacsimile transmission, if it is unable or unwilling to manufacture that particular design. Uniform Ideas agrees to exercise its best efforts to arrange for the manufacture of all Gianna-created Harrah's uniform designs submitted to it and to conform with all Harrah's imposed deadlines.

4. Uniform Ideas will affix to each Gianna designed uniform item, a label "Uniform Ideas by Gianna". The letters spelling Uniform Ideas and Gianna will be the same height.

5. Uniform Ideas agrees not to reproduce the Gianna designs in any fashion, except as stated in this agreement, without the prior written consent of Gianna.

PLAINTIFF'S EXHIBIT 29

6. For all of Harrah's locations, except those located in the state of Louisiana, Uniform Ideas will invoice Harrah's for the price of the uniforms and pay Gianna a design commission of 10% of net sales for Gianna designed uniforms. Net sales are defined as gross sales less freight charges, taxes, credits and alteration charges, if any. Credits will only be applied if the credits are for Gianna designed uniforms. Design commissions will be paid on the 20th of the month for all sales made in the previous month.

7. Gianna, Inc. will invoice Harrah's for all uniforms supplied or manufactured by Uniform Ideas in the state of Louisiana except under the conditions as outlined in Paragraph 20 of this agreement.

8. For uniform items not designed by Gianna, Uniform Ideas will invoice Gianna on the shipping date for 97% of the selling price to Harrah's for the cost of the uniforms plus 100% of the freight cost to ship the uniforms to Harrah's in Louisiana and any other costs to be billed to Harrah's.

9. For uniform items designed by Gianna, Uniform Ideas will invoice Gianna on the shipping date for 87% of the selling price of the uniforms plus the freight cost to ship the uniforms to Harrah's in Louisiana and any other costs to be billed to Harrah's.

10. Upon receipt of Uniform Ideas' invoice, Gianna will invoice Harrah's in Louisiana at the selling price, plus freight and any other costs to be billed to Harrah's. Whenever necessary, Gianna will invoice Harrah's for and remit any sales tax.

11. Gianna will fax to Uniform Ideas' credit manager, within one working day, a copy of all invoices to Harrah's for uniforms supplied or manufactured by Uniform Ideas.

12. Gianna will fax to Uniform Ideas' credit manager within one working day, a copy of all checks from Harrah's for uniforms supplied or manufactured by Uniform Ideas.

13. Checks from Harrah's issued to Gianna will be deposited in a separate New Orleans bank account. Checks written from this account will require the signature of both a Uniform Ideas officer and a Gianna officer.

14. Within 3 working days of deposit of Harrah's checks in the special checking account controlled by Gianna and Uniform Ideas, Gianna will make out a check to Uniform Ideas for the uniforms supplied by Uniform Ideas, sign the check and send the check via overnight U.P.S. to Uniform Ideas. Uniform Ideas will co-sign the check, mark the invoice as paid with the check number, send a copy of the invoice marked paid to Gianna, and deposit the check in Uniform Ideas' checking account.

15. When Gianna wishes to withdraw monies from the special checking account for monies due Gianna, Gianna will make out a check to Gianna and send the check to Uniform Ideas via overnite U.P.S. Uniform Ideas will co-sign the check within one working day and return the signed check to Gianna via overnite U.P.S.

16. All charges for overnite U.P.S. will be charged to Uniform Ideas account.

17. Gianna will send Uniform Ideas, within 3 working days of its receipt, a copy of the monthly bank statement for the special account. Uniform Ideas will reimburse Gianna on October 31 and April 30 for all bank charges for this account.

18. Uniform Ideas will be responsible for credit approval and collections of invoices. Invoices not paid due to Harrah's financial condition will be Uniform Ideas' financial responsibility.

19. Uniform Ideas will be responsible for developing all pricing to Harrah's. Terms will be Net 30, F.O.B., Miami, Florida or Elmsford, New York. Copies of prices submitted by Uniform Ideas for Harrah's will be faxed to Gianna within one working day of the date of submission.

20. Uniform Ideas will be responsible for all sales calls, sales/service calls, and quality of the uniforms.

21. Gianna certifies that it is a company that is 51% owned and controlled by a female or other minority and that Gianna, Inc. has applied for certification to the state of Louisiana as a minority vendor. If, during the term of this agreement, Gianna cannot qualify in Louisiana as a minority vendor, or, if Uniform Ideas is notified in writing by Harrah's that Uniform Ideas must select another minority vendor to be affiliated with, Gianna will not invoice Harrah's in Louisiana. In this case, Gianna will not receive compensation for Uniform Ideas' designed products and Uniform Ideas will pay Gianna a design commission of 10% of the selling price to the minority vendor for Harrah's uniforms that were designed by Gianna.

22. During the term of this agreement, on any re-orders received by Uniform Ideas outside the state of Louisiana for Harrah's uniforms designed by Gianna, Uniform Ideas will pay Gianna a design commission of 10% of the sell price, if the sell price is equal to or greater than the previous selling price. If the selling price is reduced at any time from the previous sell price, for every 1% reduction in Uniform Ideas' sell price, Gianna's design commission will be reduced by one-half of 1%. In any event, the minimum design commission paid to Gianna will be 5% for any sales of Gianna designed uniforms for Harrah's outside the state of Louisiana.

23. During the term of this agreement, on any re-orders received by Gianna from Harrah's in Louisiana for uniforms manufactured or supplied by Uniform Ideas, if, at any time, the selling price is reduced from the previous price, Uniform Ideas will invoice Gianna an additional one-half of 1% for the cost of the product for each 1% decrease from the previous price. In the case of uniforms not designed by Gianna, the maximum cost invoiced to Gianna for the uniforms will be 98%. In the case of uniforms designed by Gianna, the maximum cost invoiced to Gianna by Uniform Ideas for the uniforms will be 93%.

24. During the term of this agreement, if Gianna does not invoice Harrah's in Louisiana, and the selling price to the minority vendor invoicing Harrah's is reduced from the previous selling price, for every 1% reduction in Uniform Ideas' sell price, Gianna's design commission will be reduced by one-half of 1%. In any event, under these circumstances, the minimum design commission paid to Gianna will be 5% for sales of Gianna designed Harrah's uniforms to the minority vendor.

25. Any changes to this agreement must be approved in writing by Uniform Ideas, Inc. and Gianna, Inc.

Agreed To For
Gianna, Inc.

Agreed To For
Uniform Ideas, Inc.

_____  Date
Jane Galiano
President

_____  Date
Tom Michaelman
President

*This was never finalized w/ all-bilt.*

# AGREEMENT BETWEEN
# GIANNA, INC.
# AND
# ALL-BILT

1.  Parties -- This Agreement is entered into by and between
    Gianna, Inc. (hereinafter "Gianna") and ALL-BILT
    (hereinafter "ALL-BILT").

2.  Purpose -- The purpose of this Agreement is to establish the
    terms and conditions under which ALL-BILT will undertake to
    manufacture garments designed by Gianna on behalf·of
    Harrah's Entertainment, Inc. (hereinafter "Harrah's") and/or
    any of its affiliated companies and shall encompass both
    those instances where Gianna contracts ~~ALL-BILT~~ directly
    with Harrah's to provide the garments and instances where
    contracts for the manufacture of Gianna designed garments
    are issued directly to ALL-BILT by Harrah's.

3.  Term -- October 15, 1995 - ~~September 30~~ *April 15*, 1996, to be
    automatically renewed ~~annually~~ unless one party gives
    written notice to terminate ~~prior to March 1st of each year.~~ *at least one month prior to the expiration date.*

4.  ALL-BILT agrees that within three (3) working days of  the
    submission to it of any Gianna-created ~~uniform~~ *garment* design, ~~for~~
    ~~Harrah's~~. it will advise Gianna, in writing and by
    telefacsimile transmission, if it is unable or unwilling to
    manufacture that particular design. ALL-BILT agrees to
    exercise its best efforts to arrange for the manufacture of
    all Gianna-created garment designs submitted to it and to
    conform with all Harrah's imposed deadlines.

5.  ALL-BILT will affix to each Gianna designed garment, a label
    identifying the garment as designed by Gianna and located in

PLAINTIFF'S
EXHIBIT
30

Page 2

at least as conspicuous a position as its own label. All
labelling shall be pre-approved by Gianna.

6.    ALL-BILT agrees not to reproduce any Gianna designs in any
      fashion except as stated in this agreement, without prior
      written consent of Gianna.

7.    For all of Harrah's locations, except those located in the
      State of Louisiana, ALL-BILT will invoice Harrah's for the
      price of the garments and pay Gianna a design commission of
      15% of net sales for Gianna-designed garments. Net sales are
      defined as gross sales less freight charges, taxes, and
      alteration charges, if any. Design commissions will be paid
      within thirty (30) days of the invoice being issued to
      Harrah's. The design commission of 15% of net sales shall
      also apply to any re-orders of Gianna designed garments
      received by ALL-BILT either during the term of this
      agreement or at anytime thereafter. ALL-BILT shall within
      three (3) days of any re-orders of Gianna-designed goods by
      Harrah's provide Gianna with a copy of such re-orders.

8.    Gianna, Inc. will invoice Harrah's for all Gianna-designed
      garments supplied or manufactured by ALL-BILT for sale in
      the State of Louisiana. For these items, ALL-BILT will
      invoice Gianna on the shipping date for 85% of the selling
      price of the garments plus the freight cost to ship the
      uniforms to Harrah's in Louisiana and any other costs to be
      billed to Harrah's.

9.    Upon receipt of ALL-BILT'S invoice, Gianna will invoice
      Harrah's in Louisiana at the selling price, plus freight and
      any other costs to be billed to Harrah's. Whenever
      necessary, Gianna will invoice Harrah's for and remit any
      sales tax.

Page 3

10. Gianna will fax to ALL-BILT'S credit manager, within one
working day, a copy of the invoice to Harrah's for Gianna
designed garments supplied or manufactured by ALL-BILT for
sale in the State of Louisiana.

11. Gianna will fax to ALL-BILT'S credit manager, within one
working day, a copy of all checks from Harrah's for Gianna
designed garments supplied or manufactured by ALL-BILT for
sale in the State of Louisiana.

12. Checks from Harrah's issued to Gianna as payment for Gianna
designed garments supplied or manufactured by ALL-BILT for
the sale in the State of Louisiana will be deposited in a
separate New Orleans bank account. Checks written from this
account will require signature of both an ALL-BILT officer
and a Gianna officer.

13. Within 3 working days of deposit of Harrah's checks in the
special checking account controlled by Gianna and ALL-BILT,
Gianna will make out a check to ALL-BILT for the garments
supplied by ALL-BILT, sign the check and send the check via
overnight delivery to ALL-BILT. ALL-BILT will co-sign  the
check, mark the invoice as paid with the check number and
send a copy of the invoice marked paid to Gianna.

14. When Gianna wishes to withdraw monies from the special
checking account for monies due Gianna, Gianna will make out
a check to Gianna and send the check to ALL-BILT via
overnight delivery. ALL-BILT will co-sign the check within
one working day and return the signed check to Gianna via
overnight delivery.

15. All charges for overnight delivery will be charged to ALL-
BILT'S various accounts.

Page 4

16. Gianna will send ALL-BILT, within 3 working days of its
    receipt, a copy of the monthly bank statement for the
    special account. ALL-BILT will reimburse Gianna for all bank
    charges associated with the maintenance of this account.

17. ALL-BILT will be responsible for credit approval and
    collections of invoices. Invoices not paid due to Harrah's
    financial condition will be ALL-BILT'S financial
    responsibility. Non-payment or late payment by Harrah's of
    invoices for Gianna designed garments shall not affect the
    timely payment of design commissions owed Gianna.

18. ALL-BILT will be responsible for developing all pricing to
    Harrah's other than pricing for sales in the State of
    Louisiana. Terms will be Net 30, F.O.B. Copies of prices
    submitted by ALL-BILT to Harrah's will be faxed to Gianna
    within one working day of the date of submission.

19. ALL-BILT will be responsible for all sale calls,
    sales/service calls, the quality of garments and the timely
    delivery of garments and agrees to indemnify, defend and
    hold harmless Gianna for and against any claims brought by
    Harrah's against Gianna due to deficient quality and/or
    untimely delivery.

20. Any changes to this agreement must be approved in writing by
    ALL-BILT and Gianna.

21. ALL-BILT and Gianna agree that any disputes  that arise
    under this agreement will not be litigated but will be
    submitted to binding arbitration with each party being
    obliged to cooperate and participate in the arbitration
    process. Any arbitration proceeding hereunder will be
    conducted by the American Arbitration Association and  will

Page 5

be conducted in New Orleans, Louisiana.

22. ALL-BILT, its employees, agents and representatives agree not to disclose any of the terms or conditions of this Agreement to any other persons or companies without the prior written permission of an authorized representative of Gianna. Violation of this particular provision shall serve as the basis for immediate termination of this Agreement.

23. ALL-BILT agrees that it will make no alterations to Gianna designed garments without advising Gianna in advance and receiving express permission for such alterations.

24. ALL-BILT will provide Gianna open access at all times to its manufacturing support resources for assistances in the design and initial prototype preparation of garments created for Harrah's.


Agreed to For                    Agreed To For
Gianna, Inc.                       ALL-BILT


_____          _____

18

1                               Gunnerson

2    saw a variation of it?

3          A.     I believe something similar, just with

4    the slot machine.

5          Q.     In production or in some other casino?

6          A.     No, in a drawing like this.

7          Q.     Do you recall where you saw it, under

8    what circumstances?

9          A.     No, I don't really.  It looks familiar

10   to me.

11                MR. SHUSHAN:  Okay.  Please keep going.

12         Q.     I will also ask the question "Have you

13   seen any of those before?" so you can say, "Yes, I

14   have seen that specific design before."

15         A.     I think this may be the one that

16   reminds me of the front one (indicating).

17         Q.     That's number?

18         A.     H 1042.  Again, in a drawing form.

19                I'm not sure about this one

20   (indicating).

21         Q.     What is the number?

22         A.     H 1051.

23                This one somewhat looks familiar.  It's

24   number H 1076.  Again, in a sketch form.

25                This one is a matching kind of set so



PLAINTIFF'S
EXHIBIT
22

1                          Gunnerson

2   of the six piles as identified by a previous

3   witness, as sorted by a previous witness.

4              What I want you to do is look through

5   one stack at a time.  Look through them and I will

6   ask you the general question:  Have you seen any

7   of these before?  And if so, were any of them

8   designs sent by Gianna to All-Bilt?

9              (Witness reviewed documents.)

10             MR. SHUSHAN:  For the record, the

11        witness is looking through the rear left-hand

12        pile from the previous deposition.

13             THE WITNESS:  None of these really look

14        familiar to me.

15        Q.    I will now show you the left-hand pile,

16   the left-hand front pile, and see if any of those

17   look familiar to you.

18             (Witness reviewed documents.)

19             MR. SHUSHAN:  If you see one that looks

20        familiar to you, just tell us what the number

21        is.  Every one of those should have a number.

22        Some are in color and some are not.

23        A.    I have seen a variation on this one but

24   not this particular one.  H 1000.

25        Q.    Do you recall in what connection you

                          Gunnerson

1

2        needs time to go through all these documents,

3        we should give her a little time before

4        answering.

5               MR. SHUSHAN:  Sure.

6               Please do.

7               (Witness looked through documents.)

8        A.    To the best of my knowledge I have been

9   involved in these, yes.

10       Q.    Is it possible there are some other

11  designs you did which were put into production for

12  Harrah's which are not in that particular

13  collection of papers?

14       A.    Is it possible, yes.  I don't recall

15  any specific ones.

16       Q.    I believe you said earlier you had

17  already seen some designs sent to All-Bilt by

18  Gianna.  Is that correct?

19       A.    Some time ago, yes.

20               MR. SHUSHAN:  Off the record a second.

21               (Discussion off the record.)

22       Q.    There are six piles of designs over

23  here from a previous deposition and we have to

24  enter them into the record so you will know we are

25  not playing tricks on you which designs are which

# A L L · B I L T
## U N I F O R M   F A S H I O N

December 4, 1995

Ms. Jan Starnes
Director of Costuming & Marketing
Harrah's
1023 Cherry Road
Memphis, TN  38117

Dear Jan:

All-Bilt Uniform Fashion is pleased to present its price proposal for the uniform costumes, designed by Gianna, for the Harrah's Casino in New Orleans.

The prices listed below are predicated upon the designs submitted by Gianna. Fabrics and trimmings have been determined by All-Bilt in concert with Gianna. As you know, several of the design concepts are quite unique. Therefore, the pricing submitted must be considered as guesstimates. Once samples have been produced, submitted and approvals given, final pricing will be presented.

Finally, we have submitted our prices based upon the quantities and par levels originally presented with the informational pockets distributed on July 17th. Where we are unsure of quantity and par levels, we have submitted our pricing in unit quantity categories.

We have not priced all of the designs presented by Gianna. With the announcement of the bankruptcy and temporary closure of the New Orleans property, we did not proceed with these final items. If Harrah's still desires pricing for these items, All-Bilt will comply accordingly.

With the above stated, All-Bilt is pleased to present its "ball park" pricing for the Harrah's New Orleans project.

## Cocktail

| Item | Fabrication | | Price |
|---|---|---|---|
| Basic Cocktail Dress | Body: | Crepe Back Satin, 100% Poly | $108.80 ✓ |
| | Harlequin Print: 100% Polyester | | |
| Cocktail Bustle | Body: | Silky Moire' Taffeta, 100% Poly | $ 24.25 ✓ |
| | Trim: | Seville Satin, 100% Poly | |

PLAINTIFF'S
EXHIBIT
31

| Court Of The Mansions Choker | Body:<br>Trim: | Silky Moire' Taffeta, 100% Poly<br>Mini Harlequin Print, 100% Poly | $31.00 |
|---|---|---|---|

### Jazz Court

| Hat | Body:<br>Trim: | Wool Felt<br>Mini Harlequin Print, 100% Poly | $ 37.95 |
|---|---|---|---|
| Cummerbund | | Mini Harlequin Print, 100% Poly | $ 15.30 |
| Bow Tie | | Mini Harlequin Print, 100% Poly | $ 6.25 |
| Dickie | | Sabre Cord, 65% Poly/35% Cotton | $ 8.00 |
| French Cuffs | | Sabre Cord, 65% Poly/35% Cotton | $ 5.50 |

### Smugglers Cove

| Wrap Vest w/o Screen Print | 100% Polyester Suede Cloth | $ 16.50 |
|---|---|---|
| Head Bandera | Mini Harlequin Print, 100% Poly | $ 15.00 |

### Court of Good Fortune

| Hat | Body:<br>Trim: | Wool Felt<br>Mini Harlequin Print, 100% Poly | $ 37.95 |
|---|---|---|---|
| Ascot Tie (tie tac not included) | | Gold Charmeuse, 100% Poly | $ 13.80 |
| Vest | Body:<br>Trim: | Crepe Back Satin, Red 100% Poly<br>Eloise Satin, Black 100% Poly | $ 50.00 |

### Mardi Gras

| Vest | Seville Satin - Black/Gold - 100% Poly | $ 50.25 |
|---|---|---|
| Jester Hat | To Follow | |
| Jester Collar | To Follow | |

## Retail

| | | | |
|---|---|---|---|
| Jacket - Screen Print Not Included | Crepe Back Satin - 100% Poly | | |
| | Unit Quantity | 1-10 | $ 97.95 |
| | | 11-50 | $ 81.95 |
| | | 51-100 | $ 64.70 |
| Skirt | Crepe Back Satin - 100% Poly | | |
| | Unit Quantity | 1-10 | $ 43.60 |
| | | 11-50 | $ 41.55 |
| | | 51-100 | $ 39.95 |
| Body Suit | Cotton/Lycra (Scoop Neck Tank Style) | | $ 19.40 |

## Baccarat

| | | | |
|---|---|---|---|
| Female Eton Jacket | 2-Ply Tropical - 55% Poly/45% Wool | | |
| | Unit Quantity | 1-10 | $134.85 |
| | | 11-50 | $114.95 |
| | | 51-100 | $ 99.40 |
| Female Pants | 2-Ply Tropical - 55% Poly/45% Wool | | |
| | Unit Quantity | 1-10 | $ 60.90 |
| | | 11-50 | $ 56.85 |
| | | 51-100 | $ 53.95 |
| Male Vest | Body: 2-Ply Trop - 55% Poly/45% Wool | | |
| | Trim: Large Harlequin Print, 100% Poly | | |
| | Unit Quantity | 1-10 | $ 86.85 |
| | | 11-50 | $ 73.10 |
| | | 51-100 | $ 59.80 |
| Male Pants | 2-Ply Trop - 55% Poly/45% Wool | | |
| | Unit Quantity | 1-10 | $ 81.65 |
| | | 11-50 | $ 77.60 |
| | | 51-100 | $ 14.75 |
| Tuxedo Shirt | Wing Collar 1/4" Pleated Front 65% Poly/35% Cotton | | $ 14.75 |
| Ascot Male & Female | Mini Harlequin Print, 100% Poly | | $ 13.80 |

| Female Cut-Away Coat | 2-Ply Trop - 55% Poly/45% Wool | | |
|---|---|---|---|
| | Trim:  Large Harlequin Print, 100% Poly | | |
| | Unit Quantity | 1-10 | $201.90 |
| | | 11-50 | $164.90 |
| | | 51-100 | $138.70 |

| Male Cut-Away Coat | 2-Ply Trop - 55% Poly/45% Wool | | |
|---|---|---|---|
| | Trim:  Large Harlequin Print, 100% Poly | | |
| | Unit Quantity | 1-10 | $248.25 |
| | | 11-50 | $232.30 |
| | | 51-100 | $220.05 |

### Cigarette Host/Hostess

| ✓ | Hat - Host/ Hostess | 3-Ply Trop - Red 55% Poly/45% Wool | | $ 43.80 |
|---|---|---|---|---|

| ✓ | Female Eton Jacket | 3-Ply Trop - Red 55% Poly/45% Wool | | |
|---|---|---|---|---|
| | | Trim:  3-Ply Trop Black | | |
| | | Unit Quantity | 1-10 | $175.45 |
| | | | 11-50 | $157.85 |
| | | | 51-100 | $138.90 |

| ✓ | Skirt Double Tiered | Crepe Back Satin, 100% Poly | | |
|---|---|---|---|---|
| | | Unit Quantity | 1-10 | $ 46.15 |
| | | | 11-50 | $ 44.00 |
| | | | 51-100 | $ 42.30 |

| ✓ | Male Eton Jacket | 3-Ply Trop - Red 55% Poly/45% Wool | | |
|---|---|---|---|---|
| | | Trim:  3-Ply Trop Black, 55% Poly/45% Wool | | |
| | | Unit Quantity | 1-10 | $184.05 |
| | | | 11-50 | $166.45 |
| | | | 51-100 | $147.55 |

| ✓ | Male & Female Shoulder Boards | With Gold Fringe | | $ 53.30 |
|---|---|---|---|---|

| ✓ | Male Pants w/Black & Gold Stripe | 3-Ply Trop - Black 55% Poly/45% Wool | | |
|---|---|---|---|---|
| | | Unit Quantity | 1-10 | $ 82.65 |
| | | | 11-50 | $ 78.60 |
| | | | 51-100 | $ 75.65 |

## Valet Parking

| | | |
|---|---|---|
| Hat | Multi Colored Front Panels 65% Polyester/35% Cotton | $ 8.50 |
| Unisex Shirt | Multi Colored Front 65% Polyester/35% Cotton | |
| | Unit Quantity    51-100 | $ 42.10 |
| | 101-200 | $ 40.30 |
| | 201-300 | $ 36.50 |
| Jacket | Multi Colored Front Panels 65% Polyester/35% Cotton | $126.85 |
| Jacket - Liner | 100% Quilted Poly Fill | $ 28.25 |
| Shorts | 65% Poly/35% Cotton - Black | $ 21.00 |
| Pleated Pants | 65% Poly/35% Cotton - Black | $ 22.65 |

## Dealer Shirts

| | | |
|---|---|---|
| Male | Multi Colored 65% Poly/35% Cotton | $ 35.00 ✓ |
| Female | Multi Colored 65% Poly/35% Cotton | $ 34.00 ✓ |

## Slot Department Shirts

| | | |
|---|---|---|
| Male Slot Attendant Shirt 4-Star Bursts | 65% Poly/35% Cotton w/Applique Star Bursts & Embroidered Stars | $ 39.25 ✓ |
| Female Slot Attendant Shirt 4-Star Bursts | 65% Poly/35% Cotton w/Applique Star Bursts & Embroidered Stars | $ 37.50 ✓ |
| Male Change Shirt 6-Star Bursts | 65% Poly/35% Cotton w/Applique Star Bursts & Embroidered Stars | $ 42.50 ✓ |
| F/M Change Shirt 6-Star Bursts | 65% Poly/35% Cotton w/Applique Star Bursts & Embroidered Stars | $ 40.80 ✓ |

| | | |
|---|---|---|
| Unisex Slot<br>Attendant Apron | 65% Poly/35% Cotton<br>w/Applique Star Bursts & Embroidered Stars | $ 18.00 |

**Gold Card**

| | | |
|---|---|---|
| Female Blouse | 65% Poly/35% Cotton | $ 52.80 |

We trust we have supplied you with the information you requested. If you have any questions or require additional information, please do not hesitate to contact us. We look forward to hearing from you in this regard.

Sincerely,

Howard P. Wecksler
President

cc:  Connie Albright
     Gianna
     F. Turker
     W. Schwab
     L. Gunnerson



Connie Albright
Corporate Director,
Strategic Alliances and
Corporate Business Travel

**HARRAH'S ENTERTAINMENT, INC**
The Premier Name in Casino Entertainment

Telephone
901-762-8778
Fax
901-537-3300

May 15, 1996

*VIA FACSIMILE*

Mr. R. Scott Buhrer
Gianna, Inc.
600 Loyola Avenue
Suite 300
New Orleans, Louisiana 70113

     Re: Settlement Agreement dated May 6, 1996

Dear Scott:

     Per our conversation today, it was agreed that royalties for past or future purchases of Range Restaurant vests now in use at Harrah's Joliet designed by Gianna for women and men servers will be paid directly to Gianna by the manufacturer, All Bilt, per an agreement or arrangement between All Bilt and Gianna. This is instead of Harrah's paying any royalty on such purchases. Also, Harrah's agreed that Gianna may receive royalties direct from All Bilt on Fresh Market Buffet hats designed by Gianna purchased for use at Joliet and Skagit.

     If you agree to this amendment to the Settlement Agreement, please sign below and return by fax.

               Sincerely,

               Connie Albright
               Corporate Director

Agreed:

Gianna, Inc.

By:

Title:

PLAINTIFF'S
EXHIBIT
32