FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 DEC 22 PM 4:49

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| *Plaintiff* | * | |
| | * | NO. 00-0071 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| | * | |
| HARRAH'S OPERATING CO., INC. | * | JUDGE: MARCEL LIVAUDAIS, JR. |
| and | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE: |
| *Defendants* | * | ALMA CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * *

## MOTION FOR SANCTIONS UNDER F.R.C.P. RULE 37B

Now come Plaintiffs and respectfully move the Court for Sanctions against Defendants under Rule 37B for failure to carry out the Court's discoveries orders dated March 29th, 2001 and November 27, 2001, for the reasons set forth in the annexed Memorandum of Law.

Respectfully submitted,

/s/ 

SIDNEY L. SHUSHAN, # 12055
BRAIN L. GLORIOSO, # 27226
GUSTE, BARNETT, & SHUSHAN, L.L.P.
Attorneys for Plaintiffs
639 Loyola Avenue, Suite 2500
New Orleans, La. 70113
Telephone: 504-529-4141
Facsimile: 504-561-0326
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

___ Fee
___ Process
_X_ Dktd
___ CtRmDep
___ Doc. No. 234

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| *Plaintiff* | * | |
| | * | NO. 00-0071 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| | * | |
| HARRAH'S OPERATING CO., INC. | * | JUDGE: MARCEL LIVAUDAIS, JR. |
| and | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE: |
| *Defendants* | * | ALMA CHASEZ |

* * * * * * * * * * * * * * * * * * * * * * * *

## ORDER

IT IS ORDERED by the Court that Plaintiffs' Motion for Sanctions Under F.R.C.P. Rule 37B be hereby granted in the above captioned matter.

New Orleans, Louisiana, December_____, 2003.

_____
**UNITED STATES DISTRICT JUDGE**

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| *Plaintiff* | * | |
| | * | NO. 00-0071 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| | * | |
| HARRAH'S OPERATING CO., INC. | * | JUDGE: MARCEL LIVAUDAIS, JR. |
| and | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE: |
| *Defendants* | * | ALMA CHASEZ |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SANCTIONS UNDER F.R.C.P. RULE 37B**

MAY IT PLEASE THE COURT:

I. THE FACTS SHOW THAT DEFENDANTS' CONDUCT AFTER THIS COURT ORDERED THEM TO OBTAIN DOCUMENTS FROM ALL BILT WAS NOT GOOD FAITH COMPLIANCE.

Defendants did not make a good faith effort to comply with this Court's order of March 29, 2001. This Court ordered them to:

"Limited to the gold card jacket, dealer shirt , and fresh market designs, Harrah's is

3

to contact the six uniform manufacturers that it has utilized and is to make every effort to obtain the documents sought in plaintiff's Request for Production of documents No. 1, as well as those that were identified on pages 73 and 74 of the Albright deposition, within the next thirty days. Harrah's is also to obtain affidavits from the appropriate manufacturers' representatives attesting to the completeness and accuracy of the documents that will be produced. If that effort proves to be usatisfactory and/or if few than all manufacturers cooperate in the process, the Court is to be notified so that deposition possibilities can be discussed. Plaintiffs are granted leave to re-urge their request for documents pertaining to other designs as the need arises. ". [Annex A]

Defendants not only failed to make a good faith effort, they were actively obstructionary. The undisputed facts are as follows:

1. Plaintiffs propounded interrogatories and request for production of documents to defendants on December 14th, 2000.

2. On January 22nd, 2001 defendants finally responded to plaintiffs' discovery request with a broad array of objections challenging the merits of the claims.

3. Plaintiffs filed their original motion to compel discovery on March 15, 2001 and an amended version on March 21, 2001.

4. Oral argument on the first Motion to Compel was heard on March 29, 2001, wherein this Court ordered Harrah's to contact the six uniform manufacturers it utilizes to produce their uniforms, and obtain the documents sought in plaintiffs' Request for Production of Documents No. 1 (Annex B), as well as those identified on pages 73 and 74 of Connie

Albright's deposition. (Annex C). These documents included: "All documents, invoices, bills records of royalty payments relating to the purchase of costumes and/or uniforms by Harrah's from 1994 to present, in particular but not limited to any documents which may be relevant to your answers to Interrogatories Nos. 1 and 2.";[1] as well as "records for the corporate uniform program" which included the "complete changeovers or new makes at Las Vegas, Tunica, Cherokee and Topeka" and "complete lists of who designed it, who supplied it, who they built it from, how much they spent" and "purchase orders, the names of the designers, the names of companies, how many they bought from each..."[2]

This order was limited to the gold card jacket (Annex D), dealer shirt (Annex E), and fresh market designs. (Annex F) Harrah's was also ordered to obtain affidavits from the appropriate manufacturer's representatives attesting to the completeness and accuracy of the documents that were to be produced.

5. Following the hearing Harrah's issued subpoenas to Uniforms to You & Co., on April 4, 2001, to Varsity Spirit Fashions & Supplies, Inc., on April 4, 2001, to All Bilt Uniform Fashions, on April 4, 2001, to Creations Galore, Convention & Ad Specialty Items, Inc., on April 6, 2001, to Red the Uniform Tailor, Inc., on April 9, 2001, and to Uniform Ideas on April 9, 2001.

6. On or about May 7th, 2001 Harrah's provided documents from Uniform Ideas along with an affidavit attesting to the completeness of the response.

7. On April 17th, 2001 Harrah's provided documents from Red the Uniform Tailor along

---

[1] Plaintiff's Request for Production No. 1.

[2] Deposition of Connie Albright pages 73-74.

with an affidavit attesting to the completeness of the response.

8. On or about May 1st, 2001 Harrah's provided documents from Varsity Spirits along with an affidavit attesting to the completeness of the response.

9. On or about May 4th 2001, Harrah's provided documents from Uniforms to You & Co. along with an affidavit attesting to the completeness of the response.

10. On or about May 7th, 2001 Harrah's provided documents from Creations Galore along with an affidavit attesting to the completeness of the response.

11. On June 21, 2001 Harrah's provided documents from All-Bilt Uniform Fashion, consisting of specifications sheets. However, no affidavit of completeness was provided.

12. On November 28th, 2001 plaintiffs noticed the Deposition of All-Bilt Uniform Fashion in New York.

13. On December 13, 2001 plaintiffs traveled to New York and conducted the depositions of Linda Gunnerson, All-Bilt's lead designer, John Sbordone, All-Bilt's president, and Howard Wecksler, the former president of All-Bilt. No new documents were produced at those depositions.

14. On June 21st, 2001 counsel for All-Bilt provided documents consisting of All-Bilt specification sheets, which included All-Bilt Sketches and photocopies of Gianna Inc., designs on All-Bilt specification sheets.

15. On June 22, 2001, Harrah's sent plaintiffs documents produced by All-Bilt labeled AB-00001 through AB-00100. The documents are invoices without any sketches of the designs or a key defining the style numbers listed on the invoices. There is no way to extrapolate useful data from them.

16. On or about March of 2001, plaintiffs received a disk from All-Bilt which supposedly contained patterns for All-Bilt designs. The disk is in a format which is only readable by a specialized computer program. Plaintiffs expert is consulted to extrapolate the information from the disk. The information on this disk is in the form of sewing patterns which do not show what a completed garment would look like. (Annex G)

17. On March 14th 2001, Harrah's provides additional documents Bates Nos. H00097 through H00178. The documents consist of All Bilt invoices. However there is no key with the invoices for us to extrapolate any data that will be meaningful for the discovery we need.

18. On March 16, 2001, produced color photographs of All-Bilt designs.

19. On November 2, 2001, plaintiffs filed Renewed Motion to Compel discovery.

20. On November 27, 2001, a hearing was held on plaintiffs' Renewed Motion to Compel at which time the Court ordered, Harrah's to stipulate that the style numbers on the All-Bilt invoices pertain to uniforms provided to Harrah's and that Harrah's paid the invoices on the same; that plaintiffs may take the depositions of the six manufacturers; that Harrah's is to obtain from All-Bilt and to produce to plaintiffs all information on the Fresh Market design; and that plaintiffs were to take the deposition of Harrah's to determine the retrievablity of written purchase orders.

21. On February 2, 2001 plaintiffs issued subpoenas to All-Bilt for inspection of business records and for depositions of All Bilt representatives.

22. On December 12, 2001, Counsel for plaintiffs, personally inspected the business records of All Bilt as there were customarily stored. Counsel discovered that All Bilt has simple filling cabinets separated by year and client. Thus for each year All Bilt had folders

organized by client containing all of the orders place by the client and filled by All Bilt.

23. These All Bilt folders contain documents identified by All Bilt as charge packets, which contained an initial order form (charge sheet), purchase orders from Harrah's, specifications sheets containing a sketch of what the complete garment should look like, shipping orders, and invoices. Each packet represented a single order.

24. The All Bilt files only went back approximately 1997 as All Bilt indicated that older files had been recently purged.

25. These All Bilt documents were easily accessible and plaintiffs' counsel was able to select the documents which satisfied the discovery request within a short period of time.

26. Plaintiffs selected close to 8000 documents for copying.

27. On December 13, 2001, plaintiffs took the deposition of Linda Gunnerson, the lead designer for All Bilt. However because so many new documents were discovered in the All Bilt files, plaintiffs did not have a reasonable opportunity to prepare deposition questions for the All Bilt witnesses relating to all of the designs in the documents.

28. With the discovery of the charge packets plaintiffs for the first time were able to determine what design was ordered based on the invoices. Further the documents clearly identified the style numbers, pattern numbers, and provided a visual sketch to show the reader what the final design would look like.

29. Subsequently Counsel for All Bilt arranged for copies of the volumes of documents to be bates stamped and sent to counsel for both plaintiffs and defendants, along with an affidavit of the person who copied the documents attesting to their authenticity.

30. Some of the charge packets discovered at the inspection contained literal copies of

Gianna Inc., designs which had simply been photocopied into the All Bilt records.

31. Once the copies provided by All Bilt, arrived in New Orleans, plaintiffs began the task on reviewing each order and comparing each All Bilt design to the plaintiffs designs.

32. Subsequently plaintiffs had to make yet another trip to New York to depose the All Bilt designer regarding the designs which were produced following the December 12, 2001 production, and All Bilt's vice president of operations regarding the authenticity of certain documents.

II. F.R.C.P. 37B JUSTIFIES AND MANDATES SANCTIONS ON THE UNDISPUTED FACTS OF THIS CASE.

Rule 37b applies. The Court issued the discovery order under a Rule 37a Motion to Compel. ( Annex H ).

There was clearly prejudice to Plaintiffs: expense and delay. That expense has continued throughout discovery in this case.

The following depositions have involved these documents, and the authenticity of these documents which Defendants failed to obtain from All Bilt;

Linda Gunnerson, All Bilt's lead designer, was deposed on December 13, 2001. Ms. Gunnerson was questioned regarding a few of close to 8000 documents discovered on December 12, 2001.

John Sbordone, All Bilt's Vice President of Operations, was deposed on February 21, 2001. Mr. Sbordone was questioned regarding the authenticity of the All Bilt records as well as the business relationship between Harrah's and All Bilt.

Danielle Thompson, an All Bilt employee responsible for the Harrah's account and with

familiarity with the All Bilt records, was deposed on December 13, 2001. Ms. Thompson was questioned regarding the limited number of the 8000 documents we were able to review before the deposition. Ms. Thompson also testified as to the authenticity of the records.

Howard Wecksler, the former president of All Bilt, was deposed on April 23, 2001. At that time plaintiffs had not yet discovered the 8000 some odd records that Harrah's failed to produce. Mr. Wecksler was questioned only with regard to the small amount of documents which Harrah's had produced and with regard to plaintiffs' designs.

Linda Gunnerson, was again deposed on December 5, 2003. This time plaintiffs had the benefit of the review and analysis of the close to 8000 documents previously produced and also had a new production of several hundred documents evidencing orders since the 2001 production.

John Sbordone, was again deposed on December 5, 2003. This time plaintiffs had the benefit of the review and analysis of the close to 8000 documents previously produced and also had a new production of several hundred documents evidencing orders since the 2001 production.

Howard Wecksler, was again deposed on December 10, 2003. This time plaintiffs had the benefit of the review and analysis of the close to 8000 documents previously produced and also had a new production of several hundred documents evidencing orders since the 2001 production.

At the recent New York depositions Defendants still refused to admit the authenticity of the documents which Plaintiffs finally retrieved from All Bilt at great expense. John T. Sbordone Deposition, pp. 41 through 55, ( Annex I ).

Another deposition on that subject was taken on December 19, 2003.

None of this would have been necessary if Defendants had obeyed this Court's order.

Their delay and obstructionary tactics in making useless incomplete productions caused

Plaintiffs' counsel valuable time and out of pocket costs.

There is obviously prejudice to Plaintiffs, delay, attorneys' fees, and out of pocket costs to recover the documents in a useful format and to establish their authenticity.

The Fifth Circuit case law justifies and mandates sanctions under Rule 37b on the facts of this case. Per the 5th Circuit cases, the factors which the Court considers under a Rule 37b motion are as follows:

(a)    The federal courts are vested with the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." [ Link v. Wabash R. Co., 370 U.S. 626, 630, 82 S. Ct. 1386, 1388, 1389, 8 L. Ed. 2d 734 (1962).] This [**12] power is necessarily incident to the judicial power granted under Article III of the Constitution. [ Natural Gas Pipeline, 2 F.3d at 1406.] This includes the power of the court to control its docket by dismissing a case as a sanction for a party's failure to obey court orders. [ In re United Markets Int'l, Inc., 24 F.3d 650, 654 (5th Cir.) cert. denied, 513 U.S. 946, 115 S. Ct. 356, 130 L. Ed. 2d 310 (1994).] However, when these inherent powers are invoked, they must be exercised with "restraint and discretion." [ Chambers, 501 U.S. at 44, 111 S. Ct. at 2132.] Dismissing a case with prejudice is a harsh sanction, but we will uphold an involuntary dismissal unless the district court has abused its discretion. [ Id. at 54-56, 111 S. Ct. at 2138.] This Court has held that such sanctions should be confined to instances of "bad faith or willful abuse of the judicial process." [ United Markets, 24 F.3d at 654 (quoting Pressey v. Patterson, 898 F.2d 1018, 1021 (5th Cir.1990)).]Gonzalez v. Trinity Marine Group, 117 F.3d 894, 898 (U.S. App., 1997)

(b)    Rule 37(b)(2)(B) authorizes the district court to impose sanctions on a disobedient party by refusing to allow that party to introduce designated matters into evidence. Fed.R.Civ.P. 37(b)(2)(B). When a district court excludes expert testimony as a sanction for a violation of a discovery order, we determine whether the court's action is an abuse of discretion by examining four factors:

(1) the explanation, if any, for the party's failure to comply with the discovery order;

(2) the prejudice to the opposing party of allowing the witnesses to testify;

(3) the possibility of curing such prejudice by granting a continuance; and

(4) the importance of the witnesses' testimony.

Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc., 73 F.3d 546, 572 (5th Cir.1996),

11

Barrett v. Atlantic Richfield Co., 95 F.3d 375, 380 (5th Cir. , 1996)

We are quite aware that striking pleadings, which is specifically authorized in cases of extreme discovery abuse in Fed.R.Civ.P. 37(b)(2), is a draconian remedy of last resort. See, e.g., Sciambra v. Graham News Co., 841 F.2d 651, 655 (5th Cir.), cert. denied, 488 U.S. 855, 109 S. Ct. 143, 102 L. Ed. 2d 115 (1988); Batson v. Neal Spelce Assoc., 765 F.2d 511, 516 (5th Cir.1985). In the end, however, the question is whether the district court abused its discretion. See Lamar Fin. Corp., 918 F.2d at 567. We have thoroughly reviewed the proceedings below and are satisfied that the lower court's actions were appropriate. If subject to any fault, it is that the remedy was tardily applied. Frame v. S-H, Inc., 967 F.2d 194, 203 (5th Cir., 1992)

The decisions of the Federal Courts justify and mandate sanctions under Rule 37b. When a party "willfully" obstructs discovery, sanctions are appropriate. Chmieloski v. New York State Dept. of Economic Development, 149 F.R.D. 42, (S.D. N.Y. 1993). If a party claims "confusion" or "lack of knowledge" of what was required, sanctions are appropriate when that party should have known. Lee v. Walters, 172 F.R.D. 421, (D. Or. 1997). If a party knows that documents may be relevant and fails to produce them, sanctions are appropriate. Vandervest v. Wisconsin Cent. Ltd., 172 F.R.D. 401, (E.D. Wis. 1997). If a party is "negligent" or "careless" in responding to discovery, sanctions are appropriate. Petroleum Ins. Agency, Inc. v. Hartford Acc. and Indem. Co., 106 F.R.D. 59, (D. Mass. 1985).

III. THE COURT SHOULD DEEM ADMITTED THE FACTS CONTAINED IN THE ALL BILT DOCUMENTS WHICH PLAINTIFFS RETRIEVED FROM ALL BILT AFTER MUCH EXPENSE AND DELAY, AND/'OR AWARD ATTORNEY'S FEES AND COSTS.

The facts of this case justify an order deeming the All Bilt documents authenticated, and barring any objections by Harrah's to their relevance under all four of the legal theories of liability (the first contract, unfair trade practices, copyright infringement, and unjust enrichment). Finance Inc. v. Raikes, 27 B.R. 969, (D. N.J. 1983).

The facts of this case also justify an order awarding appropriate attorney's fees and costs. Carlucci v. Piper Aircraft Corp., 775 F.2d 1440, (11th Cir. 1985);

If the Court agrees, the Court should order a separate hearing as to the dollar amount of any monetary sanctions.

                Respectfully submitted,

                _____
                SIDNEY L. SHUSHAN, #12055
                BRIAN L. GLORIOSO, #27226
                GUSTE, BARNETT & SHUSHAN, L.L.P.
                639 Loyola Avenue, Suite 2500
                New Orleans, LA  70113
                Telephone:  504-529-4141
                Facsimile:  504-561-0326
                Attorneys for Plaintiffs,
                Jane Galiano and Gianna, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E " " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

### NOTICE OF HEARING

TO: Mr. Joseph W. Looney, Attorney of record for Harrah's Entertainment, and Harrah's Operating Co., Inc., 4500 One Shell Square, New Orleans, Louisiana 70139

You are hereby notified that Plaintiffs' **MOTION FOR SANCTIONS UNDER F.R.C.P. RULE 37B**, will be heard on the 7th day of January, 2004, at 10:00 a.m., at the United States District Courthouse, 500 Camp Street, New Orleans, Louisiana, before the Honorable Marcel Livaudais, Jr.

Respectfully submitted,

_____
SIDNEY L. SHUSHAN, #12055
JONATHAN M. SHUSHAN, #21977
BRIAN L. GLORIOSO, #27226
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone: (504) 529-4141
Facsimile: (504) 561-0326
Attorneys for Plaintiffs, Jane Galiano and Gianna, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| *Plaintiff* | * | |
| | * | NO. 00-0071 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| | * | |
| HARRAH'S OPERATING CO., INC. | * | JUDGE: MARCEL LIVAUDAIS, JR. |
| and | * | |
| HARRAH'S ENTERTAINMENT, INC. | * | MAGISTRATE JUDGE: |
| *Defendants* | * | ALMA CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Motion for Sanctions Under F.R.C.P. Rule 37B and Memorandum of Law in Support of Motion for Sanctions Under F.R.C.P. Rule 37B has been served upon:

> Mr. Joseph W. Looney, T.A.
> Ms. Melissa S. LaBauve
> Adams and Reese LLP
> 4500 One Shell Square
> New Orleans, Louisiana 70139
> Attorney for Defendants,
> Harrah's Operating Co., Inc. and
> Harrah's Entertainment, Inc.

by hand delivery of a copy of same this 22nd day of December, 2003.

_____
BRIAN L. GLORIOSO

14

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED