

**U.S. DISTRICT COURT**
EASTERN DISTRICT OF LOUISIANA

FILED    DEC 2 3 2003

**LORETTA G. WHYTE**
CLERK

### UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E " " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MOTION IN LIMINE TO ADMIT THE INVALID SECOND CONTRACT AS EVIDENCE RELEVANT TO THE CLAIMS UNDER THE FIRST CONTRACT, THE COPYRIGHT LAW, UNFAIR TRADE PRACTICES, AND UNJUST ENRICHMENT

Now come Plaintiffs, and respectfully move the Court to admit the invalid second contract between the parties as evidence relevant to all four of the claims before the Court, including the claim under the first contract, the copyright claim, the Unfair Trade Practices claim, and the unjust enrichment claim, for the reasons set forth in the Memorandum of Law annexed hereto.

Respectfully submitted,

SIDNEY L. SHUSHAN, #12055
JONATHAN M. SHUSHAN, #21977
BRIAN L. GLORIOSO, #27226
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500

Fee_____
Process_____
X  Dktd_____
✓  CtRmDep___
Doc. No.____

New Orleans, Louisiana  70113-7103
Telephone:  (504) 529-4141
Facsimile:   (504) 561-0326
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E " " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * *

## ORDER

IT IS ORDERED by the Court that Plaintiffs' Motion in Limine to Admit the Invalid

Second Contract as Evidence Relevant to the Claims under the First Contract, the Copyright Law,

Unfair Trade Practices, and Unjust Enrichment be filed into the record of the above captioned

matter.

New Orleans, Louisiana, this _____ day of December, 2003.


_____

UNITED STATES DISTRICT JUDGE

Page -3-

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E " " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO ADMIT THE INVALID SECOND CONTRACT AS EVIDENCE RELEVANT TO THE CLAIMS UNDER THE FIRST CONTRACT, THE COPYRIGHT LAW, UNFAIR TRADE PRACTICES, AND UNJUST ENRICHMENT

MAY IT PLEASE THE COURT:

The U.S. Court of Appeals for the Fifth Circuit has held that the 1996 Settlement Agreement between the parties is unenforceable.

Nevertheless, that 1996 Settlement Agreement is admissible evidence as to all four of the other claims before the Court, the claim under the 1995 contract, the copyright claim, the unfair trade practices claim, and the unjust enrichment claim.

It is black letter law that a document which is inadmissible for one purpose may be admissible for other purposes. Basha v. Mitsubishi Motor Credit of America, Inc., 336 F.3d 451(5th Cir. 2003); Coakley & Williams Const., Inc. v. Structural Concrete Equipment, Inc., 973 F.2d 349(4th Cir. 1992).

A document is admissible under the broad standard of F.R.Ev. 401 if it has probative value to prove any fact of consequence to any cause of action. *U.S. v. Hall*, 5th Cir. 1981, 653

Page -4-

F.2d 1002, 1005.

It is also black letter law that a document which is invalid as an enforceable contract may still be admissible for other purposes.  Basha v. Mitsubishi Motor Credit of America, Inc., 336 F.3d 451(5th Cir. 2003); Carney v. American University, C.A.D.C.1998, 151 F.3d 1090; Breuer Elec. Mfg. Co. v. Toronado Systems of America, Inc., C.A.7 (Ill.) 1982, 687 F.2d 182, 217 U.S.P.Q. 24.

**1. The invalid Settlement agreement has probative value to the claim under the 1995 first contract because it shows that Jane Galiano believed that contract was still in effect in 1996.**
 The 1995 first contract expressly says that its provisions as to ownership of the designs, and the duty to pay royalties, survived the end of the first contract. (See paragraph 4 of August 28, 1995 letter, "the designs themselves and all working patterns will remain the sole property of Gianna, Inc.", and paragraph 5 of the September 14, 1995 letter,"the royalty obligation will continue for such purchases after this agreement is terminated if the visual constuctive pattern for the purchased garment was designed by Gianna, Inc.")(Annex 1 First Contract).   Jane Galiano's correspondence following the Settlement Agreement shows that she repudiated that Agreement *because she believed she still had claims against Harrah's under the 1995 First Contract.* [See letters by Jane and her counsel, (Annex 2)   Her position was exactly the opposite of an abandonment or repudiation of the 1995 First Contract.

A document is often admissible to show the intention of the parties under some other document. Southwest Nurseries, LLC v. Florists Mut. Ins., Inc., D.Colo.2003, 266 F.Supp.2d 1253.

The Court should admit the Settlement Agreement to show Jane Galiano believed she still

had rights under the 1995 First Contract.

The Settlement Agreement is also admissible to show that Harrah's also believed that Plaintiffs had rights under the First Contract. Otherwise they would never have entered into the Settlement Agreement.

**2. The Invalid Settlement Agreement and Harrah's letters insisting it was valid are also admissible to show Harrah's intentionally violated Plaintiffs' copyright when they used her designs to produce costumes thru AllBilt.**

Harrah's admission in the May 6, 1996, agreement, of Gianna Inc.'s, ownership of the subject designs and Harrah's clear understanding of their obligation to pay Gianna Inc., for the use of the designs, is evidence of actionable copyright infringement. Harrah's intent in preparing the settlement agreement was to address its on going obligation to pay for the use of plaintiffs' designs. As such the settlement agreement is admissible to prove Harrah's knowledge of and admission to the continuning obligations to pay Gianna Inc., for the use of the designs.

The letters of Harrah's counsel after the Settlement Agreement insisted that it was valid to the very end. However at the same time Harrah's insisted the settlement agreement was valid, Harrah's was secretly working with All Bilt to prodcue plaintiffs' designs in violation of the settlement agreement, the continuing obligations under the first contract, and plaintiffs' copyrights. Thus the settlement agreement is admissible to prove Harrah's intent to violate its obligations under both contracts, and to violate plaintiffs' copyright in the designs.

Together with other facts, that certainly will prove to any jury that Harrah's "intended" to violate the copyright which each of Plaintiffs' designs referred to on the face of the design.

The Invalid Settlement Agreement is also relevant to show that Harrah's regarded and

admitted that Jane had submitted original and valid works of art in the Harrah's Design

Collection. Otherwise it would never have promises to pay royalties for some designs, and

promised not to use any of the others. It is relevant to show that Harrah's position then as to

Plaintiffs' ownership and rights is 180 degrees different from its position now before this Court.

It is also relevant to show that Harrah's admitted Plaintiffs' ownership and rights *with*

*advice of counsel*. Harrah's counsel attended the Settlement Conference, drafted the Agreement,

and wrote the letters insisting it was valid.

### 3. The Invalid Settlement Agreement and Harrah's letters insisting it was valid is also admissible to prove unfair trade practices by Harrah's.

Harrah's letters following the Settlement Agreement insisted the Agreement was valid.

[Annex 3]. That Agreement obligated Harrah's to pay royalties for certain of Plaintiffs' designs,

and obligated Harrah's not to use all of the others.[1] Any fact finder can infer that it was an unfair

trade practice for Harrah's to insist that the Settlement Agreement was valid *at the same time it*

*was using the prohibited designs for millions of dollars of its national Allbilt costumes.*

Any fact finder can also infer that it was an unfair trade practice for Harrah's to use

designs for which Jane Galliano insisted she was entitled to compensation under the 1995 First

Agreement between the parties.

The fact that Harrah's attempted to amend the Settlement Agreement the day after it was

signed to put all of the responsibility onto the manufacturer is admissible to show that Harrah's

was worried from the beginning that its ongoing direct involvement with the costume

manufacturers would open the door to later claims by Plaintiffs.

---

[1] Except for a very few which Harrah's could use without payment of any royalty.

The fact that the controversy over the Settlement Agreement was going on at the same time as the Allbilt orders from Harrah's using Jane's designs is also relevant to show unfair trade practices.

**4. The Invalid Settlement Agreement is also admissible to show unjust enrichment of Harrah's at Plaintiffs' expense.**

That Agreement obligates Harrah's to pay royalties for certain costumes, and promises not to use almost all of the others. It shows that Harrah's admitted Plaintiffs were entitled to royalties on the designs used to make costumes. Any fact finder can conclude that Harrah's was unjustly enriched because it did not have to pay the royalties.

For all of these reasons, the Court should rule that the 1996 Settlement Agreement and related correspondence are admissible in this case to prove Harrah's knew that the designs in question were the intellectual and business property of Gianna Inc., that Harrah's had no right to produce Gianna Inc.'s designs without paying royalties to Gianna Inc., and that Harrah's was using Gianna Inc.'s designs at the time they drafted the agreement.

Respectfully submitted,

SIDNEY L. SHUSHAN, #12055
JONATHAN M. SHUSHAN, #21977
BRIAN L. GLORIOSO, #27226
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone: (504) 529-4141
Facsimile: (504) 561-0326
Attorneys for Plaintiffs,
Jane Galiano and Gianna, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E" " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |

* * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF HEARING

TO:    Mr. Joseph W. Looney, Attorney of record for Harrah's Entertainment, and Harrah's Operating Co., Inc., 4500 One Shell Square, New Orleans, Louisiana 70139

You are hereby notified that, Plaintiffs' Motion in Limine to Admit the Invalid Second Contract as Evidence Relevant to the Claims under the First Contract, the Copyright Law, Unfair Trade Practices, and Unjust Enrichment will be heard on the 7th day of January, 2004, at 10:00 a.m., at the United States District Courthouse, 500 Camp Street, New Orleans, Louisiana, before the Honorable Marcel Livaudais, Jr.

Respectfully submitted,

SIDNEY L. SHUSHAN, #12055
JONATHAN M. SHUSHAN, #21977
BRIAN L. GLORIOSO, #27226
Guste, Barnett & Shushan, L.L.P.
639 Loyola Avenue, Suite 2500
New Orleans, Louisiana 70113-7103
Telephone: (504) 529-4141
Facsimile: (504) 561-0326
Attorneys for Plaintiffs, Jane Galiano and Gianna, Inc.

Page -9-

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E" " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Plaintiff's Seventh Motion in

Limine to Admit Plaintiffs' Own Testimony as to the use of her Designs by Defendants and

Albright, and the Substantial Similarity of her Designs to the Harrah's/All-Bilt Designs, has been

served upon:

Mr. Joseph W. Looney, T.A.
Ms. Melissa S. LaBauve
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Attorney for Defendants,
Harrah's Operating Co., Inc. and
Harrah's Entertainment, Inc.

by hand delivery of a copy of same this 23rd day of December, 2003

_____
BRIAN L. GLORIOSO

Page -10-



Connie Albright
Corporate Director,
Strategic Alliances and
Corporate Business Travel

**HARRAH'S ENTERTAINMENT, INC.**
The Premier Name in Casino Entertainment

Telephone
901 762-8778
Fax
901-537-3300

September 14, 1995

Gianna, Inc.
600 Loyola Avenue
Suite 300
New Orleans, LA 70113

Attn: Mr. R. Scott Buhrer

RE:    Design Consulting Agreement

Dear Scott:

Thank you for your letter of August 28, 1995 outlining the terms of the proposed Design Consulting Agreement.

I am happy to let you know that the terms you have outlined are acceptable with the following modifications:

1. The Design Consulting Agreement will be with Harrah's Operating Company, Inc. Because of this, the references to "Harrah's" means Harrah's Operating Company, Inc.

2. We require that Gianna, Inc. sign a Confidentiality Agreement (attached).

3. Travel expenses will be supported by receipts as may reasonably be requested by Harrah's.

4. Harrah's exclusive rights to utilize Gianna, Inc.'s designs which are created for Harrah's (as described in paragraph 4 of the August 28, 1995, letter) will be perpetual and will continue after the Agreement is terminated. Gianna, Inc. covenants not to provide designs similar to the Gianna designs used by Harrah's to Harrah's competitors (other casinos in markets where there is a casino operated by Harrah's or its subsidiaries) and this covenant will continue after our Agreement terminates.

5. The design royalty of 5% will only be due and guaranteed by Harrah's on garments purchased by Harrah's or its subsidiaries that are manufactured according to Gianna, Inc.'s visual constructive patterns exclusively created for Harrah's under this Agreement. The royalty obligation will continue for such purchases after this Agreement is terminated if the visual constructive pattern of the purchased garment was designed by

1023 Cherry Road, Memphis, TN 38117



PLAINTIFF'S
EXHIBIT

Gianna, Inc.
September 14, 1995
Page 2

Gianna, Inc. exclusively for Harrah's under this Agreement. However, it is agreed no royalty will be payable or guaranteed by Harrah's on any stock or catalog items or on any items not designed by Gianna, Inc. for Harrah's under this Agreement. It also is agreed the royalty obligation will terminate if Gianna, Inc. breaches this Agreement.

6    To satisfy the royalty, Harrah's may direct the manufacturer in the garment purchase order or production bid to include the royalty in the bid or purchase price of the garment and to pay the royalty to Gianna, Inc. from the price paid by Harrah's to the manufacturer. If this direction is given, Harrah's will not be responsible if the manufacturer fails to pay the royalty.

7. Any royalty in excess of 5% will be between the manufacturer and Gianna, Inc. However, it is understood Harrah's must approve in advance all prices it will pay for garments.

8. Gianna, Inc. is an independent contractor. All purchases of garments will require the written approval of Harrah's (Connie Albright or another person designated by Harrah's to approve purchases). Harrah's will not be liable for any injuries to employees or agents of Gianna, Inc. incurred in connection with performing this Agreement. This Agreement cannot be assigned by either party (except to affiliated companies) without the written consent of the other party. Gianna, Inc. agrees that all designs it creates for Harrah's are or will be original creations of Gianna, Inc. or entirely owned by Gianna, Inc.

9. Gianna, Inc. agrees to obtain any necessary licenses or approvals required to perform its services.

If you agree to these modifications, please indicate your agreement by signing below. Our Agreement will then be comprised of your letter of August 28, 1995 as modified by this letter.

Sincerely,


Connie Albright

Agreed:                                    Agreed:

GIANNA, INC.                               HARRAH'S OPERATING COMPANY, INC.


By: _____ _____                 By: _____ _____

Title: _____ _____                Title: _____ _____

Confidentiality Agreement


September 14, 1995
        (Date)


Gianna, Inc.
600 Loyola Avenue
Suite 300
New Orleans, LA 70113


You have received or may be receiving certain information from Harrah's Operating
Company, Inc. and/or its affiliates and its subsidiaries ("Harrah's") in connection with your
performing certain services for Harrah's. As a condition to our furnishing such information
to you, we are requesting that you agree, as set forth below, to treat confidentially all
information we or our agents furnish you (collectively, the "Information").

You agree that the Information will be used solely for the purpose of performing your
services for Harrah's, and that such Information will be kept confidential by you and your
representatives and agents; provided, however, that any such Information may be
disclosed to your representative or agents who need to know such Information for the
purpose of performing your services for Harrah's (it being understood that such
representatives and agents shall be informed by you of the confidential nature of such
Information, and shall be directed by you to treat such Information confidentially). You
agree to be responsible for any breach of this Agreement by your representatives or
agents.

The obligations not to use or disclose the Information shall not apply to Information which
(a) has been made previously available to the public by Harrah's; (b) is or becomes
generally available to the public, unless the Information being made available to the public
results in a breach of this Agreement; (c) prior to disclosure to you or your representatives
or agents, was already rightfully in any such person's possession; or (d) is obtained by you
or your representatives or agents from a third party who is lawfully in possession of such
Information, and not in violation of any contractual, legal or fiduciary obligation to
Harrah's, with respect to such Information and who does not require you to refrain from
disclosing such Information to others.

You agree not to make any public disclosure that you are having or have had discussions
with Harrah's except with Harrah's written consent. You understand and acknowledge
that any and all information contained in the Information is being provided without any
representation or warranty, express or implied, as to the accuracy or completeness of the
Information, on the part of Harrah's.

You acknowledge and agree that a violation of the terms of this Agreement would cause irreparable harm to Harrah's, and that Harrah's remedy at law for any such violation would be inadequate. In recognition of the foregoing, you agree that, in addition to any other relief afforded by law, including damages sustained by a breach of this Agreement and without any necessity of proof of actual damage, Harrah's shall have the right to enforce this Agreement by specific remedies, which shall include, among other things, temporary and permanent injunctions, it being the understanding of the undersigned parties hereto that both damages and injunctions shall be proper modes of relief and are not being considered as alternative remedies.

This Agreement is for the benefit of Harrah's and shall be governed and construed in accordance with the laws of the State of Tennessee.

If you are in agreement with the foregoing, please sign and return one copy of this letter which will constitute our agreement with respect to the subject matter of this letter.

Very truly yours,

HARRAH'S OPERATING COMPANY, INC.

By: _____ .

Its: _____

Read and agreed to this _____ day of _____, 1995

GIANNA, INC. _____ _____ .


_____
Signature of Officer


_____
Printed Name and Title

PATENT & TRADEMARK ATTORNEYS
C. EMMETT PUGH

RICKEY R. HUDSON
(NOT A MEMBER OF PATENT BAR)

OF COUNSEL
GREGORY M. FRIEDLANDER
STANLEY RENNEKER

NATIONAL LAW OFFICES
OF
PUGH/ASSOCIATES
PATENT & TRADEMARK ATTORNEYS

4917 ST. CHARLES AVENUE
NEW ORLEANS, LA 70115-4927

TELEPHONE 504/587-0000
TELECOPIER 504/ 899-5360

NEW ENGLAND OFFICE
82 N. MAIN STREET
SUFFIELD, CT 06076

TELEX NO. 880696

CABLE ADDRESS
PAT. PEND. NEW ORLEANS

September 18, 1996

**Via Fax and First Class U.S. Mail**

Vincent G. De Young, Esq.
Associate General Counsel
Harrah's Entertainment, Inc.
1023 Cherry Road
Memphis, Tn. 38117-5423

> *Re*:  August 28, 1995/September 14, 1995 Design Consulting
> Agreement executed by Gianna, Inc. and Harrah's Operating
> Company

Dear Mr. De Young:

This letter contains Gianna, Inc.'s response to your correspondence addressed to me and dated June 25, 1996.

Before communicating to you my client's proposed offers to settle and compromise the above mentioned contractual dispute, I will briefly set forth what I view as the most fundamental and fatal flaws in Harrah's position, as stated in your letter written to me and dated June 25, 1996.

Although Ms. Galiano, along with Messrs. Buhrer and Wolff, did attend part of a meeting with Harrah's representatives, that was held in New Orleans on or about May 6, 1996, **only Ms. Galiano** had the requisite authority necessary to legally bind Gianna, Inc., to any agreement such as Harrah's asserted, self-styled May 6, 1996 "Settlement Agreement." She neither signed the document nor acquiesced to it; and indeed she was against such an agreement when the terms were later told to her days after she had left the May 6, 1996 meeting.

Thus, not only did Ms. Galiano **not** sign Harrah's legally non-effectual asserted May 6, 1996 settlement agreement document, but she also did not grant either Mr. Wolff or Mr. Buhrer the express authority to bind Gianna, Inc. to Harrah's asserted May 6, 1996 settlement agreement document; and such express authority is legally required pursuant to Louisiana law in order for any alleged agreement such as the one at issue, to be legally effective.

Harrah's hopes and assumptions concerning the scope of Mr. Buhrer's authority to legally bind Gianna, Inc. to Harrah's asserted May 6, 1996 agreement are simply incorrect. In his

PLAINTIFF'S
EXHIBIT
2

Letter to Vincent G. De Young, Esq.                    Re: Gianna, Inc.
September 18, 1996                                              Page 2

capacity as a vice-president for Gianna, Inc., and without Ms. Galiano's express authority to execute Harrah's asserted May 6, 1996 settlement agreement on behalf of the corporation, Mr. Buhrer had no more lawful capacity to legally bind Gianna, Inc. to the asserted May 6, 1996 settlement agreement document than you would probably now have (in similar circumstances under the controlling local law, i.e., lacking the same express authority) to unilaterally accept our enclosed proposed settlement agreement and thereby legally bind Harrah's to one of our enclosed proposals. The law in Louisiana is most clear and contrary to the position that Harrah's has assumed with respect to this most fundamental issue of state contract law.

To this date, Harrah's has failed to provide a reasonable explanation as to why the May 6, 1996 asserted settlement agreement document was not presented to Ms. Galiano for her signature as she is the President of the corporation and Gianna, Inc.'s signatory to the previous agreement document, and why Harrah's instead chose to solicit and accept the signature of Mr. Buhrer, an individual who was so clearly unauthorized to legally bind Gianna, Inc. to the proposed agreement.

Harrah's stated exigent circumstances excuse in no way exculpates Harrah's or explains why Ms. Galiano was not contacted, was not allowed to read the proposed agreement document in its final form, and was not allowed to specifically reject or accept and sign the document on behalf of Gianna, Inc. Quite to the contrary, it appears that an "end-run" around Ms. Galiano was intended and completed by the individuals executing the asserted May 6, 1996 settlement agreement document.

Gianna, Inc. clearly performed all of its obligations owed to Harrah's pursuant to the existing August 28, 1995/September 14, 1995 Design Consulting Agreement, and Harrah's clearly correlatively owed Gianna, Inc. the monthly $7,500.00 retainer payment for the month of December, 1995, as required under the terms of the contract.

Harrah's suggestion that Gianna, Inc. and/or Ms. Galiano accepted an alleged settlement agreement, wherein Harrah's merely offered to pay Gianna, Inc. the nominal sum of $7,500.00 that without question, Harrah's was already liable to pay to Gianna, Inc. and without any additional consideration, Gianna, Inc. agreed to forfeit its right to seek legal redress for the substantial royalty payments that are still due and owing to Gianna, Inc., as a result of the terms and provisions of the above referenced design consulting contract, truly merits our most incredulous response.

Harrah's failure to pay, in a timely fashion, either the overdue $7,500.00 December, 1995 retainer payment or the royalties due under the terms of the 1995 design consulting contract, represents clear and flagrant breaches of the design consulting agreement. Harrah's specious suggestion that Ms. Galiano and/or Gianna, Inc. "negotiated away (forfeited)" their right to collect the substantial royalties owed them in exchange for Harrah's agreement merely to pay that small fraction of the overall debt clearly owed Gianna, Inc., *i.e.*, the nominal but equally just debt of $7,500.00 (the December, 1995 retainer payment) is truly insupportable.

Harrah's continued, thinly-veiled references to a possible defense of this claim based on an assertion that Mr. Buhrer was vested with apparent authority are not only factually inaccurate, they are, more importantly, legally irrelevant. Because under Louisiana law, without specific and express authority, there was absolutely no way that Mr. Buhrer was capable of legally binding Gianna, Inc. in the manner that is asserted in Harrah's stated position concerning the disputed May 6, 1996 alleged settlement agreement document.

The monthly $7,500.00 retainer payment for the month of December, 1995 was still due and owing to Gianna, Inc., when the May 14, 1996 check was tendered to Gianna, Inc. Notwithstanding Harrah's self-serving assertions that the May 14, 1996 check in the amount of $7,500.00 was received by Gianna, Inc. in supposed full compromise and settlement of all outstanding claims by Gianna, Inc. against Harrah's arising under the design consulting agreement, the **fact** remains that the notation written (and indeed written by Harrah's) on the check stub/receipt reads "<u>CONSULTING SERVICES</u>," just like all of the other stubs for Harrah's checks generated as payment for Gianna, Inc.'s monthly billing, rather than "final settlement", or some like notation evidencing the alleged final settlement agreement. (See the attached copy of Harrah's May 14, 1996 check stub, which is marked as Exhibit "A.")

The memo written by Harrah's on the May 14, 1996 check stub/receipt contradicts Harrah's contention that Gianna, Inc. may have, nonetheless, subsequently ratified Harrah's asserted May 6, 1996 settlement document. Additionally, the check was tendered without any additional type of formal release or settlement document.

This notation, written by Harrah's on its own check stub, not only factually destroys Harrah's contention that Gianna, Inc. subsequently accepted Harrah's asserted May 6, 1996 settlement agreement by negotiating the May 14, 1996 check, but it also casts general suspicion on Harrah's assertions including, *inter alia*,

Letter to Vincent G. De Young, Esq.                    Re: Gianna, Inc.
September 18, 1996                                              Page 4

that Harrah's acted in good-faith in attempting to resolve a **genuine dispute** between the parties. Pursuant to the unambiguous terms of the design consulting agreement, Harrah's was obliged to pay Gianna, Inc. the $7,500.00 for the month of December, 1995.

Harrah's position that a valid and enforceable settlement agreement was reached by the respective parties is untenable and not supported by either the controlling law or the relevant, undisputable facts of this case.

In order for the parties to have any reasonable hope of amicably resolving this contractual dispute, it is imperative that Harrah's first assume a more reasonable and realistic negotiating position.

In the spirit of compromise and settlement and in an attempt to avoid the normal cost and unpleasant aspects of litigation, Gianna, Inc. is now tendering two proposals for settlement of all claims by Gianna, Inc. against Harrah's arising from the August 28, 1995/September 14, 1995 Design Consulting Agreement executed by Gianna, Inc. and Harrah's Operating Company. If Harrah's is truly acting in good faith, it will evaluate these sincere and fair settlement proposals and communicate a meaningful reply to Gianna, Inc. forthwith.

As Gianna, Inc. is tendering these two settlement offers in the spirit of cooperation and compromise, the amounts being sought as settlement for the substantial damages that Gianna, Inc. has sustained as a direct result of Harrah's breach of the August 28, 1995/September 14, 1995 Design Consulting Agreement are very conservative. In the event that Harrah's does not accept either of Gianna, Inc.'s settlement offers in a timely fashion, or this contractual dispute is not otherwise amicably resolved, Gianna, Inc. would then insist upon full enforcement of all of the terms of the design consulting agreement, and Gianna, Inc. would also seek to recover the maximum damages allowed by law. In other words, Gianna, Inc.'s conciliatory settlement offers would be rescinded.

As you are well aware, Gianna, Inc.'s remuneration for professional services rendered under the design consulting contract was stated as follows:

Letter to Vincent G. De Young, Esq.                    Re: Gianna, Inc.
September 18, 1996                                              Page 5

    (1)  Harrah's would pay a monthly fee of **$7,500.00** **PAYABLE IN ADVANCE**[1] for Gianna, Inc.'s professional services for a minimum of ten days a month on a priority basis;
    (2)  Harrah's would also pay an additional hourly rate of $85.00/hr. for each and all hours of services provided by Gianna, Inc. in excess of 10 hours in any given 24 hour period and/or in excess of the agreed to minimum of the monthly ten priority days;
    (3)  Harrah's would also pay a minimum royalty payment of 5% of the gross purchase order price of the garments excluding taxes, shipping charges, and/or alteration fees;
    (4)  Harrah's would reimburse Gianna, Inc. for all Federal Express/overnight delivery charges within 30 days; and
    (5)  Harrah's would pay or reimburse Ms. Galiano and a commercial artist (when needed) for travel expenses in the performance of out-of state activities pursuant to the design consulting contract.

    In the original design consulting agreement, Gianna, Inc. agreed to accept a substantially reduced hourly rate ($85.00) for its professional services as consideration for Harrah's promise to pay the agreed-to **guaranteed royalty payments** under the contract and the **$7,500.00 monthly retainer payment in advance.**

    For no apparent good cause, Harrah's was extremely reluctant to make good on its obligation to pay ("in advance") the December, 1995 retainer payment (see attached Exhibit "A", the check stub for the December, 1995 monthly retainer fee, dated May 14, 1996) and has flagrantly breached its contractual obligation to make the guaranteed royalty payments as set forth in the design consulting contract.

    Consequently, Gianna, Inc. sincerely believes that it has been aggrieved by Harrah's serious breach of the August 28, 1995/September 14, 1995 Design Consulting Agreement. However, Gianna, Inc. is now prepared to waive its right to seek legal redress for Harrah's breach of the contract, *i.e.*, its failure to pay past and future royalties, in exchange for Harrah's agreement to **immediately** tender payment for each and all hours of profes-

---

    1.  This particular provision of the design consulting agreement clearly sets forth Harrah's obligation to pay Gianna, Inc. (in advance) the monthly $7,500.00 retainer fee for each and every month of the contract, including December, 1995. Based on Harrah's feigned "doubt/concern" regarding the legitimacy of the $7,500.00 debt and their unjust reluctance to pay said debt, Gianna, Inc. can only reasonably conclude that Harrah's never acted in good faith when dealing with Gianna, Inc. regarding this matter.

Letter to Vincent G. De Young, Esq.                Re: Gianna, Inc.
September 18, 1996                                           Page 6

sional services that Gianna, Inc. has provided to Harrah's pursuant to the design consulting contract, at a revised hourly rate that is more commensurate with the industry norm[2], *i.e.* $300.00/hr., reduced to $150.00/hr. for the hours representing travel time, plus travel expenses and overnight delivery charges. Naturally, Gianna, Inc. would credit Harrah's for all monies already paid to Gianna, Inc. for professional services rendered pursuant to the design consulting agreement.

Many of these records and invoices have already been submitted to Harrah's during the normal course of billing. However, Gianna, Inc. would be amenable to providing Harrah's with the documentation necessary to verify any claims that it might have for billing charges/reimbursement claims made against Harrah's at the higher rate.

Gianna, Inc. has prepared a preliminary billing invoice for all of the hourly professional services and expenses/costs that Gianna, Inc. has incurred on behalf of Harrah's, in performance of its contractual obligations.

The billable hours statement generated by Gianna, Inc. reflects full charges for **all** professional services hours worked by Gianna, Inc., including the hours for which Mr. Buhrer previously gratuitously and unilaterally invoiced Harrah's as "no charge."

Gianna, Inc. is now claiming full payment for those hours as well, because the consideration that prompted Gianna, Inc. to offer the discount in the first instance, *i.e.*, the promise made to Gianna, Inc. by Harrah's of the substantial, guaranteed royalties and a beneficial, long-term business relationship between Gianna, Inc. and Harrah's has not been fulfilled by Harrah's.

Additionally, a number of adjustments have been made to prior invoices sent to Harrah's correcting previous, inadvertent billing errors, a portion of which are in each parties' respective favor.

The total for professional services and expenses of this revised invoice is in the amount of **$479,837.50** (Four Hundred and Seventy-Nine Thousand, Eight Hundred and Thirty-Seven Dollars and

---

2.  The revised hourly rate reflects the industry norm for such contracts in agreements where the design consultant is only paid a "straight hourly fee" without any additional or supplemental compensation in the form of royalty payments.

Letter to Vincent G. De Young, Esq.                    Re: Gianna, Inc.
September 18, 1996                                              Page 7

Fifty Cents)[3]. Gianna, Inc., would accept this sum as a reasonable settlement of all of its outstanding claims against Harrah's arising under the 1995 design consulting contract.

Gianna, Inc.'s second proposed settlement offer is based on a detailed accounting of the royalty payments owed to Gianna, Inc. under the 1995 design consulting contract. The particulars and logistics of this proposed detailed accounting need to be discussed further, as both Harrah's and the manufacturers of the various garments have deliberately and successfully diverted substantially all of the relevant purchase order information from Gianna, Inc. Consequently, at present, Gianna, Inc. has no method for independently and reliably calculating the actual amount of the royalties owed by Harrah's under the 1995 design consulting contract.

However, Gianna, Inc. is now prepared to settle all of its claims for past due royalties under the 1995 design consulting contract, in exchange for an immediate payment to Gianna, Inc. from Harrah's in the amount of $500,000.00. Gianna, Inc. calculated this very conservative figure based on its current best information concerning Harrah's past orders and projected future orders of garments designed by Gianna, Inc., pursuant to the 1995 design consulting agreement[4].

Gianna, Inc.'s estimates of royalties are based on the industry norm that the garments with Gianna, Inc.'s design concepts would be used by Harrah's for 5 years (the estimated life span of the design concept) and an estimate of the number of units of each garment that Harrah's has/is likely to use at each of Harrah's casino properties during the estimated design concept life span, for each individual design concept.

Using the formula set forth above, Gianna, Inc. currently estimates that it is entitled to the above mentioned royalty payment in the amount of $500,000.00 (Five Hundred Thousand Dollars). If Harrah's is amenable to immediately tendering payment in this amount, then Gianna, Inc. is again willing to release and

---

3.    The total amount billed to Harrah's for professional services performed by Gianna, Inc. at the revised $300.00/hour rate, i.e., $479,837.50 is an adjusted sum reflecting Harrah's earned credit for all of the partial payments previously made by Harrah's to Gianna, Inc. pursuant to the design consulting agreement, including the May 14, 1996 payment of $7,500.00.

4.    Gianna, Inc., also added a nominal charge to the balance due, as consideration for Harrah's lengthy, unjustified and undue delay in satisfying this true and just obligation.

Letter to Vincent G. De Young, Esq.                    Re: Gianna, Inc.
September 18, 1996                                                Page 8

forever hold Harrah's harmless for any claims and charges due
pursuant to the design consulting agreement.

In your letter of June 25, 1996 to me, you failed to respond
in any manner to the issue raised in Ms. Galiano's letter of
June 5, 1996 and our telephone conference of June 18, 1996,
concerning the at least 25,000 plastic "Coca-Cola" drinking cups
that infringed upon Ms. Galiano's copyright in the design featured
on the cups, which design was usurped, used, and distributed with
neither Ms. Galiano's knowledge nor consent at *inter alia*, Harrah's
Skagit Valley property. I continue to await Harrah's response to
this most troubling matter concerning Harrah's and Coca-Cola's
apparent copyright infringement upon Ms. Galiano's design concept.

As it has been some well over three and one half months since
this copyright infringement matter was brought to Harrah's
attention, I feel quite justified in requesting an immediate,
substantive response to our inquiries.

Mr. De Young, I would greatly appreciate your prompt response
to the issues raised in this letter, because in the past, Harrah's
has somewhat high-handedly "stone-walled" my client and only
provided Gianna, Inc. with "replies" consisting of ineffectual and
perfunctory denials. If Harrah's is not seriously interested in
pursuing either of Gianna, Inc.'s settlement proposals, Gianna,
Inc. will entertain and evaluate any of Harrah's reasonable
counteroffers; as we remain hopeful that the parties might still
amicably resolve this issue.

The settlement offers contained in this correspondence, if not
accepted by the Harrah's legally authorized representative, will
expire at **5 p.m. on Thursday, October 3, 1996.**

In advance I wish to thank you for your anticipated coopera-
tion and prompt attention in this matter.

Very sincerely yours,

*Rickey R. Hudson*
Rickey R. Hudson
RRH/dmm
Encls.

HARRAH'S OPERATING COMPANY, INC.    NO.    001293495    105573

| DATE 5/14/96 VENDOR 180661 | | | DATE | | INVOICE AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|---|
| VOUCHER NO | LOCATION NAME | INVOICE NUMBER | MO. | DAY | | | |
| D24199605000008 UNIFORMS RETURN TO CONNIE ALBRIGHT | | CONSULTING SERVICES | 05 | 06 | 7,500.00 | .00 | 7,500.00 |
| 70 | | | | | | | |
| TOTAL | | | | | 7,500.00 | .00 | 7,500.00 |

DETACH BEFORE DEPOSITING

Ex "I"

Page 10.