

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED     DEC 2 3 2003

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| **Plaintiff** | * | |
| | * | No. 00-0071 |
| versus | * | |
| | * | SECTION "E"(5) |
| HARRAH'S OPERATING CO., INC. | * | |
| And | * | Judge Livaudais, Jr. |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| **Defendant** | * | Mag. Chasez |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes Defendant, Harrah's Entertainment, Inc., and moves the Court for an Order granting it partial summary judgment for the reasons more fully set forth in the attached memorandum.

Respectfully submitted,

**ADAMS AND REESE LLP**

Joseph W. Looney, T.A. (8773)
4500 One Shell Square
New Orleans, LA 70139
Tel: (504) 581-3234
Fax: (504) 566-0210
***Attorneys for Defendant,***
***Harrah's Entertainment, Inc.***

Fee_____
Process_____
X  Dktd_____
CtRmDep_____
Doc. No._____

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of December 2003, I have served a copy of the foregoing pleading on counsel for plaintiffs by Hand Delivery.

Joseph W. Looney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| **Plaintiffs** | * | |
| | * | No. 00-0071 |
| versus | * | |
| | * | SECTION "E"(5) |
| HARRAH'S OPERATING CO., INC. | * | |
| and HARRAH'S ENTERTAINMENT, | * | Judge Livaudais, Jr. |
| INC. | * | |
| **Defendants** | * | Magistrate Chasez |
| | * | |

**************************************

## MEMORANDUM OF HARRAH'S OPERATING CO., INC. IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

This suit is brought by Jane Galiano, a resident of Louisiana and of this district, and her company Gianna, Inc. (Gianna"). Gianna is a minority (female)-owned company that Galiano created in order to seek work from Harrah's when the latter opened its New Orleans casino.

Harrah's Operating Co., Inc. ("Harrah's") is a Tennessee corporation that operates the New Orleans casino. Harrah's Entertainment, Inc. is an affiliated company organized and existing under Delaware law. Both were named defendants in this lawsuit.

The lawsuit arises out of the following facts. Plaintiffs had undertaken to provide design consulting to Harrah's for the New Orleans casino. They also sought to obtain work on a national corporate program that Harrah's was contemplating putting in place for casino uniforms

1

in 1995. Plaintiffs submitted sketches of fashions including pants, shirts, vests, jackets, aprons and other garments. Lacking any production and manufacturing capability, they then undertook to find a company who could manufacture garments that Harrah's might select from among their designs. On September 1, 1995 Plaintiff Gianna signed a contract with Uniform Ideas, Inc. (a division of Angelica, Inc.) to construct and manufacture certain uniforms, namely, the cocktail server leotard and sarong outfits. Contract, marked "Exhibit 1.") Plaintiffs also approached All Bilt about constructing and manufacturing other uniforms. Deposition of Howard Wexler, dated April 23, 2001 ("1 Wexler") marked "Exhibit 2," p. 14 line 17 through p. 15 line 10, p. 20 lines 13-24; deposition of Jane Galiano, taken March 13, 2000, (1 Galiano dep.") p. 54 lines 4-11, marked Exhibit 3. All Bilt made prototypes of a few uniforms, namely so-called Range vest and Fresh Market chef outfits. Deposition of Linda Gunnerson, ("1 Gunnerson") dated April 23, 2001, marked Exhibit 4, p. 20 lines 7 –24, p. 23 line 2 through p. 24 line 12.

On December 31, 1995, Plaintiffs' contract with Uniform Ideas expired, and Uniform Ideas did not renew. According to its Vice President Mary Beth Morgan, Uniform Ideas only produced a few garments and made prototypes of a few others. Mary Beth Morgan deposition, taken Feb. 21, 1001, marked "Exhibit 5." No sales of Gianna-designed garments were made to Harrah's after February of 1996. Id. Uniform Ideas paid all Gianna all the royalties Gianna was due. Royalty statements marked "Exhibit 6." .

As for the All Bilt production, Plaintiff Galiano went to New York and met with Linda Gunnerson, All-Bilt's designer. Exhibit 4, p 80 lines 12-25. The two of them tried to come up with trim and fabrics and other details for the construction of fashions shown in the sketches. . Ultimately, All Bilt was able to come up with a couple of prototype garments that went into

limited production. Harrah's only bought a few of those garments, however, because according to Wexler they didn't work. Exhibit 2, p. 44 line 25 through 45 line 20.

All Bilt continued to sell various uniforms to Harrah's, and Plaintiffs demanded more royalties from All Bilt on the presumption that it was continuing to sell the garments produced from Plaintiffs' designs. Wexler letter, April 12, 1996, Exhibit 8. All Bilt explained that it was not, and advised her that all royalties for those designs had been paid. Wexler letter to Galiano, dated June 28, 1996, Exhibit 9; Exhibit 2, p. 43 line 10 through p. 44 line 8.

Plaintiffs filed this lawsuit in January 2000, claiming that the Harrah's Companies had infringed their copyright in a clothing design collection and alleging breach of contract. In connection with the suit, Plaintiffs filed an application for copyright of the design collection.

Plaintiffs thereafter filed a Motion For Partial Summary Judgment, seeking judgment of copyrightability and infringement. Harrah's opposed the motion and the court denied it in Reasons for Judgment, dated November 1, 2000, marked "Exhibit 10."

Harrah's subsequently filed a motion for partial summary judgment on the breach of contract claim. The court granted Harrah's motion, and Plaintiffs were granted leave to appeal under Fed. R. Civ. P. 54(b). The United States Court of Appeal for the Fifth Circuit affirmed this Court's decision.

Discovery had taken three years but is now complete. Harrah's brings this motion for partial summary judgment to dismiss Plaintiffs' copyright infringement claim.

A.   **Summary Judgment Standard**

Summary judgment must be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c); *Celotex v. Catrett,* 477 U.S. 317, 322-23 (1986).

The Motion for Summary Judgment may be directed toward all or part of a claim and it may be made on the basis of the pleadings, or it may be supported by affidavits and a variety of outside material. Parties need not wait until a case is fully tried, but may seek a final adjudication of an action by a motion under Rule 56. *Koch Indus., Inc. v. United Gas Pipeline Co.,* 700 F.Supp. 865, 867 (M.D.La. 1988). In adjudicating such non-issues, parties may be accorded expeditious justice and some of the pressure on court dockets may be alleviated. *Wright & Miller, Federal Practice and Procedure,* §2712, p.563. The use of summary judgment to this end is favored in the Fifth Circuit. *Barker v. Norman,* 651 F.2d 1107, 1123 (5th Cir. 1981).

Summary judgment can be used to dispose of cases where the plaintiff will be unable to put on evidence to support some element of this case at trial. The movant for summary judgment "does not need to negate the elements of claims on which the non-moving parties would bear the burden of proof at trial." *Stultz v. Conoco Oil Co.,* 76 F.3d 651 (5th Cir. 1996). The movant's only burden is to "point out the absence of evidence supporting the non-moving party's case." *Id.; Skotak v. Tenaco Resins, Inc.,* 953 F.2d 909, 912 (5th Cir.) (quoting *Latimer v. Smith Kline & French Laboratories,* 919 F.2d 301, 303 (5th Cir. 1990). Thus, once the moving party has satisfied the initial responsibility of explaining the basis for its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and omissions which it believes demonstrates the absence of a genuine issue of material fact, then the non-movant must "identify specific evidence in the record, and articulate the precise manner in which that evidence supports its claims." *Stultz, supra; Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert denied,* 513 U.S. 871, 115 S.Ct. 195,

130 L.Ed. 2d 127 (1994). He may not rest on unsupported allegations or simple denials of the movant's pleadings. *LTV Educational Systems, Inc. v. Bell*, 862 F.2d 1168, 1172 (5th Cir. 1989).

Discovery is now complete and Plaintiff has no evidence of genuine issues that require resolution at trial. Thus, summary judgment in favor of Harrah's is appropriate and will save valuable public and private resources that will otherwise be expended in a needless trial of this case. This motion, then, presents a case where a plaintiff lacks the evidence necessary to support her case of infringement against Harrah's.

**B.     Plaintiffs' Infringement Claim Should Be Dismissed Because Plaintiffs Cannot Prove Infringement On The Part Of Defendant Harrah's.**

To prove infringement, Plaintiffs must show (1) ownership of a valid copyright, and (2) actionable copying, which is the copying of constituent elements of plaintiffs' work that are copyrightable. *Bridgmon v. Array Systems Corp.*, 325 F.3d 572 *(5th Cir. 2003); Fergusson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir. 1978); Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*, v.3, §13.01 (1992 ed.) *("Nimmer"* preceded by volume number). Summary judgment may be granted where the plaintiff fails to meet its summary judgment burden on either element. Where the plaintiff fails to demonstrate proof of copyright ownership a Defendant is entitled to summary judgment. *Geoscan, Inc. v. Geotrace Tech, Inc.*, 226 F.3d 387, 392-393 (5th cir. 2000). The issue of copyrightability is one for the court, not the trier of fact. *Nimmer*, §12[10][B][3]; *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972 (2d Cir), *cert denied*, 449 U.S. 841 (1980). Similarly, where the plaintiff fails to put on sufficient evidence of copying, summary judgment on this basis is allowed. *Creations Unlimited v. McCain*, 112 F.3d 834 (5th Cir. 1991).

1.    **Plaintiffs have no evidence that Harrah's personally made any copies of their work, and Harrah's is not responsible for any acts or omissions of All-Bilt.**

Plaintiffs want to try this case by showing the existence of casino uniforms they claim bear substantial similarity to their copyrighted works. They claim to have identified numerous examples of offending garments in use in Harrah's casinos. Every one of Plaintiffs' examples, however, involves a garment that was manufactured by someone other than Harrah's. They have no evidence that Harrah's ever manufactured such a garment.

For the past three years Plaintiffs have been taking depositions in which their counsel ask witnesses to make comparisons between some of their sketches and photos or sketches of other garments. Linda Gunnerson, All Bilt's designer, testified that she designed all the shirts sold to Harrah's, which make up the bulk of Plaintiffs' claim. Deposition of Gunnerson, dated December 13, 2001, page 103 lines 12-24.

At her third deposition, on December 5, 2003, Ms. Gunnerson testified that she did most of the designing of styles for garments purchased by Harrah's. Deposition of Linda Gunnerson, taken December 5, 2003, ("3 Gunnerson dep."), marked "Exhibit 11," p.10 lines 5-10. Ms. Gunnerson admitted that she also did virtually all of the fabric resourcing, buttons, trims and the like. (3 Gunnerson dep., p.16 line 24 through p.17 line 6; p.18 lines 4-7.) Ms. Gunnerson identified the allegedly offending clothing design sketches as her own, and the sheets on which they appeared as All-Bilt records. (3 Gunnerson dep., p.35 line18 through p.36 line 16). She testified that she personally authored the sketches. (3 Gunnerson dep., p.36 line 17 through p. 37 line 6; p.38 lines 3-9; p. 38 line 15 through p. 39 line 2.)

6

Thus, for all of the exhibits Plaintiffs intend to introduce at trial for side-by-side comparison, in each case Ms. Gunnerson was responsible for drawing the sketch of the allegedly offending clothing design, and All-Bilt was responsible for manufacturing it.[1]

In all cases, Gunnerson identified herself as the author of the sketches on the All-Bilt records.

> **a.**     **Plaintiffs' assertion that Harrah's used the All-Bilt garments does not amount to a claim for infringement for which relief <u>can be granted</u>.**

Plaintiffs continue to argue before this court that Harrah's infringed upon plaintiffs by "using" the garments that All-Bilt manufactured.[2]

There is no relief available under the Copyright Act for "use." Section 501 of the Copyright Act provides the remedy for infringement stating:

> Anyone who violates any of the exclusive rights of the copyright owner as provided by Sections 106 through 122, or the author has provided in Section 106A(a) or who imports copies or phonorecords into the United States in violation of Section 602, is an infringer of the copyright or right of the author, as the case may be.

17 U.S.C.§501. Section 106 enumerates the "exclusive rights" as follows:

> (1)     To **reproduce** the copyrighted work in copies or phonorecords;

---

[1] Until this last round of depositions, Plaintiffs have focused on clothes that All-Bilt made to sell to Harrah's. At those depositions, however, Plaintiffs expanded the inquiry to sketches that All-Bilt produced for Trump casinos. Plaintiffs' counsel explained:
> We're going to be comparing the sketches she did for Harrah's with the sketches she did for Trump with Gianna's sketches. We're going to compare both of those to show that Gianna's sketches engendered or caused or formed a part of certain designs which she did for Trump * * *.

3 Gunnerson dep., p.42 lines 12-19. Trump is another third party unrelated to Harrah's. In fact, it is a competitor.

[2] For example, in the motion for partial summary judgment on copyrightability and infringement Plaintiffs filed two years ago, they did not identify the acts of infringement they attributed to Harrah's other than general "use." See Motion and Memorandum, docket entry No. --.

7

(2)    To **prepare derivative works** based upon the copyrighted work;

(3)    To **distribute** copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership * * * ;

(4)    In the case of literary, musical, dramatic and choreographic works, pantomimes, and motion pictures * * * to **perform** the copyrighted work publicly;

(5)    In the case of literary, musical, dramatic and choreographic works, pantomimes, and pictorial, graphic, or sculptural works * * * to **display** the copyrighted work publicly; and

(6)    In the case of sound recordings, to **perform a** copyrighted work publicly **by means of a digital audio transmission**.

17 U.S.C. §106.[3] (Emphasis added.)

"Uses of copyrighted works that do not violate any of the rights granted in Section 106 and 106A are not prohibited by the Copyright Act." Patry, *Copyright Law and Practice,* v. 1, p.525 *("Patry"* preceded by number of volume). The United States Supreme Court has consistently held that infringement can only be based on one of the rights enumerated in §106 or §106A. Thus, in *Fortnightly Corp. v. United Artists Television, Inc.,* 392 U.S. 390, 394 (1986), the Supreme Court held, "If a person, without authorization from the copyright holder, puts a copyrighted work to a use within the scope of one of these 'exclusive rights,' he infringes a copyright. If he puts the work to a use not enumerated in Section 1, he does not infringe." Moreover, "[u]se of copyrighted material not in conflict with a right secured by Section 1 . . . no matter how widespread, is not copyright infringement." *Teleprompter Corp. v. Columbia*

---

[3] Section 106A pertains to the author's right to attribution and integrity. 17 U.S.C.A. §106A. The remaining sections of Chapter 1, "Subject Matter and Scope of Copyright," through §122 address the scope of the exclusive rights set forth in §106 and limitations on those rights.

*Broadcasting System,* 415 U.S. 394, 398 n. 2 (1974); *see, also, Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 463 (1984) (J. Blackmun, dissent) ("If the work is put to some use not enumerated in Sec. 106, the use is not an infringement.").

Thus, Plaintiffs' assertion of infringement based on some generalized use that is not specifically enumerated as one of the "exclusive rights" in §106 does not state a claim for which relief can be granted.

        **b.**    **Plaintiffs have no evidence to support their alleged claims of reproduction and preparing derivative works.**

Plaintiffs have not alleged a violation of the distribution right of §106(3). To do so would involve evidence that Harrah's distributed copies of their work "by sale or other transfer of ownership, or by rental, lease or lending * * * ." There is no such evidence.

Similarly, Plaintiffs do not allege infringement of any §106(4) performance right or §106(6) digital audio performance right; nor could they since none exists for pictorial works. Neither is there a display right for pictorial works portraying useful objects. Section 113(b) provides that pictorial works that portray useful objects are subject to the law in effect on December 31, 1977, the day before the 1976 Act took effect. 2 *Patry*, *supra*, p. 1016. There was no display right (now covered in section 106[5]) under the earlier law. 2 *Nimmer*, §8.20[A], p. 8-282.

Thus, the only rights that Plaintiffs allege, or could allege, Harrah's to have infringed are the reproduction right set forth in §106(1) and the right to prepare derivative works in §106(2).

        **i.**    **Harrah's did not reproduce Plaintiffs' work.**

It is the act of copying that is essential to and constitutes the very essence of all copyright infringement. Nimmer, §8.02 at 8-27. "Absent copying, there can be no infringement of

copyright." *Mazer v. Stern, supra,* 347 U.S. at 218. To avoid summary judgment Plaintiff must present sufficient evidence that establishes that a jury question as to defendant's unauthorized copying. *Infodek, Inc. v. Meredithy–Webb Printing Co., Inc.,* 830 F.Supp. 614, 623 (N.D.Ga. 1993). Where Plaintiff cannot establish actual copying, the suit must be dismissed.

Plaintiffs alleged that Harrah's "did infringe Plaintiffs' copyright by activities proscribed under 17 U.S.C. §106 by the following non-exclusive particulars to wit: A. Defendants did reproduce the copyright [sic] work in copies; B. Defendants did prepare derivative works based upon the copyrighted work . . ." Complaint For Copyright Infringement And Breach Of Contract, Demand For Jury Trial, para. 9. As previously noted, §106(1) grants a copyright owner the right to "reproduce the copyrighted work in copies." "Copies" are defined in §101 as "material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced . . . [and] includes the material object, other than a phonorecord, in which the work is first fixed."

Plaintiffs cannot prove an infringement of the right of reproduction because there is no evidence of any kind that Harrah's reproduced any of their works in material objects. Out of more than eight thousand records that Plaintiffs collected from All-Bilt and other suppliers around the country there is no evidence that Harrah's ever produced a sketch, garment or any other material object that copied any of Plaintiffs' uniform design collection. Out of the hundreds of pages of depositions taken of the suppliers and their employees, a clear picture has emerged that it was the suppliers' employees who manufactured garments and sold some to Harrah's. Harrah's never copied or manufactured anything.

Plaintiffs have no evidence that Harrah's reproduced their clothing designs. Nor have they offered any evidence, or alleged any legal theory, that would render Harrah's responsible

for the acts or omissions, if any, of All-Bilt or Uniform Ideas. All-Bilt is an unrelated third party. Deposition of John Spordone, taken December 19, 2003, page 31 line 15 through p. 32 line 22, marked "Exhibit 12."

Plaintiffs' claim stated in paragraph 9A of the Complaint must be dismissed for lack of any supporting evidence.

### ii.    Harrah's did not prepare derivative works.

As previously noted, Plaintiffs' Complaint also alleged that Harrah's "did prepare derivative works based upon the copyrighted work . . ." Complaint, page 3.

Derivative works are defined in Section 101 as "a work based upon one or more pre-existing works." 17 U.S.C. §101. Plaintiffs' case for derivative work infringement hinges on the proposition that the unauthorized manufacturer of a 3-dimensional garment from a 2-dimensional clothing design sketch is an infringement by making a derivative work based on the sketch. As discussed below, the law is to the contrary: Where the sketch portrays useful articles like clothes, the copyright on drawings of clothing designs will not protect against another embodying the designs in competitive garments. *Nimmer,* §2.08[H][3] at p.2-149. Even if Plaintiffs' derivative work theory were legally sound, however, summary judgment would nevertheless be mandated because they cannot introduce evidence that Harrah's manufactured any of the offending clothes. The illustration exhibits Plaintiffs have used to confront witnesses during the past several weeks and want to introduce at trial consist of All Bilt invoices and sales documents and All Bilt's production documents. All of the garments to which the evidence relates were produced and manufactured by All Bilt, not Harrah's. There is no evidence that Harrah's ever manufactured a single garment.

Even if the manufacture of garments constituted an infringement of a clothing design sketch, therefore, which it does not, Plaintiffs have no evidence of such infringement on the part of Harrah's. And as Mr. Spordone's testimony indicates, Harrah's is independent of and is not responsible for the acts or omissions of All Bilt, and cannot be liable therefore.

> **2.    Plaintiffs Have Established Neither (a) The Nature Of Their Copyright In Clothing, Nor (b) Copying Of Constituent Elements Of A Work That Is Protectible.**

Plaintiffs' copyright claim is based on a set of clothing design sketches identified as a collection of uniforms and costumes. Clothes, however, are not copyrightable. Reasons for Judgment, Exhibit 10; *Knitwaves, Inc. v. Lollytogs, Ltd. [Inc.],* 71 F.3d 996, 1002 (2d Cir. 1995)"); *Whimsicality, Inc. v. Rubie's Costume Co, Inc.,* 891 F.2d 452, 455 (2d Cir. 1989); *Fashion Originators Guild v. FTC,* 114 F.2d 80, 84 (2d Cir. 1940) (L. Hand, J.), *aff'd,* 312 U.S. 457, 61 S.Ct. 703, 45 L.Ed. 949 (1941); see also *1 Nimmer,* §2.08[H] at 2-138. The evidence shows not only that Harrah's made no copies or garments, but also that All-Bilt's and Uniform Ideas' creations do not give rise to infringement claims.

> **a.    Plaintiffs' copyright, if any, is limited to "artwork."**

The plaintiff always bears the initial burden of persuasion with respect to the validity of his copyright. *In Re: Capital City ABC, Inc.,* 918 F.2d 140 at footnote 2 (11th Cir. 1990). Copyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities. *Engineering Dynamics, Inc. v. Structural Software Systems, Inc.,* 26 F.3d 1335, 1340 (5th Cir. 1994). The issue of copyright ownership is reserved for the judge.

In many cases, the existence of a valid copyright can be established by the introduction into evidence of the certificate of registration. *Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905

(2d Cir. 1980). Section 410 affords the copyright owner a rebuttable presumption of validity of the copyright based on the certificate. 17 U.S.C.A. §410(b). It is only a rebuttable presumption, however. *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45 (5th Cir. 1993). Indeed, the presumption is a light one. *Patry*, p.456. To rebut it a defendant need not introduce evidence, but need only show that the Copyright Office erroneously applied the law. *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663 (3d Cir. 1990). Even the Copyright Office's determination of susceptibility to copyright is rebuttable. *Infodek, supra*, 830 F.Supp. 614.

The Copyright Office can only register works where "the material deposited constitutes copyrightable subject matter." 17 U.S.C. §410(a). The Office is obligated to refuse registration for material that does not constitute copyrightable subject matter, and notify the applicant in writing of the reasons for that refusal. 17 U.S.C. §410(b). Thus, the validity of Plaintiffs' copyright starts with Plaintiffs' application and deposit of material.

The only registration certificate issued in this case was for sketches of clothing designs referred to as "Uniform and Costume Collection submitted to Harrah's Operating Company, Inc." See Registration Certificate No. VAu 456-437, issued October 28, 1999, marked as "Exhibit 13." Registration was afforded the work under §102(5) as a "pictorial, graphic or sculptural work." However, the Copyright Office could not and did not certify a copyright in Plaintiffs' clothing designs *per se*. It only recognized a copyright in "Artwork for Wearing Apparel." See "Nature of Work," id., §1(b).

"Artwork for Wearing Apparel" is a term of art of the Copyright Office. See Copyright Office Circular No. 40a, "Deposit Requirements for Registration of Claims to Copyright in Visual Arts Material," issued, marked as "Exhibit 14." Circular 40a lists "artwork for wearing apparel" as one of the accepted types of two-dimensional works. See Chart, "Two-Dimensional

13

Works, Nature of work, id., p. 3 of 7. It is used to distinguish artwork affixed to clothes, which is susceptible of copyright, from designs for clothing itself, which are not copyrightable. Id. Indeed, had Plaintiffs described the work as "Artwork for Wearing Apparel," the Copyright Office would have been forced by law to reject Plaintiffs' application as seeking a copyright in uncopyrightable clothing designs. See *Beaudin v. Ben & Jerry's Homemade, Inc.,* 896 F.Supp. 356, 357 (D.Vt. 1995) (Copyright Office initially rejected registration for hats as "fabric designs" but allowed the claimant to apply for a copyright for "Artwork on Hats.") See, also, *Knitwaves* and *Peter Pan,* where the courts found registration was valid because of the wording "artwork on wearing apparel").

### b. All Bilt's garments are not copies of constituent elements of Plaintiffs' work that are copyrightable

Besides establishing the requisite ownership of a valid copyright, Plaintiffs must next prove that the defendant "copied constituent elements of the plaintiff's work that are copyrightable." *Engineering Dynamic*; *Peel and Co.* Plaintiffs' proof fails this test, first as previously shown, because there is no evidence that Harrah's copied anything, and second, because Plaintiffs have not shown that the third-party suppliers such as All-Bilt copied any "artwork" in which Plaintiffs have a valid copyright.

To determine whether any All Bilt or Uniform Idea styles infringe any protected "artwork for wearing apparel," the scope of Plaintiffs' copyright protection must first be determined. *Celebration, Intern'l, Inc. v. Chosun Int'l, Inc.*, 234 F.Supp.2d 905, 915 (S.D. Ind. 2002) ("The fact that a work is copyrightable says very little about the scope of the scope of protection.") More than three years ago, this Court questioned the scope and validity of Plaintiffs' copyright, noting that the certificate classified the work as "2-dimensional artwork" and the nature of the work as "artwork on wearing apparel." The court stated there was an issue of fact whether the

14

sketches themselves were actually copied. The court also noted that whether the clothing was the subject of a derivative work was problematic. Reasons for Judgment, Exhibit 10, p. 11.

> ### i.     Plaintiffs only copyright is in their two-dimensional sketches.

Plaintiffs seek to have their copyright reach beyond the drawings. Plaintiff Galiano's testimony suggests in the same breath that the copyright is *in* the sketches and that it is in everything *portrayed in* the sketches. She testified about the registration certificate as follows:

> Q.     When you said "artwork for wearing apparel" here, did you intend to cover for example only drawings that went on the garments such as a mermaid drawing or some shells?
>
> A.     It is all of my artwork.
>
> B.     That is what I am asking.  What is the artwork?
>
> A.     It is all of my artwork.
>
> Q.     What is the artwork?
>
> A.     These (indicating).
>
> Mr. Shushan: [Objection omitted]. Please answer the question as best you can.
>
> A.     Visual construction pattern is my artwork.  It is the sketches of what I create on these boards.  That is what was copyrighted.  That is what was presented to Harrah's Casino.
> Q.     So if you have a board that has a sketch of a male figure wearing a shirt, is the male figure considered part of your artwork?
>
> A.     This whole thing is my artwork.
>
> Q.     Including the male figure, including the face?
>
> A.     Everything on there is, yes.

1 Galiano dep., Exhibit 3, page 123 lines 17 through 125 line 11.

Plaintiffs' claim of copyright in clothing designs portrayed in the sketches is untenable under copyright law. Copyrights in pictorial, graphic and sculptural works are subject to two major statutory limitations. First, as with works of all kinds, the copyright does not "extend to any idea, procedure, process, system, method of operation, concept, principal of discovery, regardless of the form in which it is described, explained, illustrated or embodied in such work." 17 U.S.C. §102(b). Second, the copyright in a pictorial, graphic or sculptural work does not extend to any portion of the work that portrays a "useful article." Such works by definition include:

> 2-dimensional and 3-dimensional works of fine, graphic and applied art * * *. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. §101.

The Copyright Act itself similarly qualifies infringement of the copyright in pictorial, graphic and structural works that depict useful articles. Section 113(b) provides:

> This title does not afford, to the owner of a copyright in a work that portrays a useful article as such, any greater or lesser rights with respect to the making, distribution, or display of the useful article so portrayed than those afforded to such works under the law, whether Title 17 or the common law or statutes of a State in effect on December 31, 1977, as held applicable and construed by a court in an action brought under this title.

17 U.S.C. §113(b).

In the course of enacting §113 of the 1976 Act Congress had reviewed a report of the Registrar of Copyrights from 1961 stating that judicial precedent had established a copyright in a pictorial, graphic or sculptural work that portrayed a useful article as such did not extend to the

16

manufacturer of the useful article itself. House Report, 94th Congress, Second Section, 1976 Acts No. 1476. The Registrar of Copyrights had recommended specifically that "the distinction drawn in this area by existing court decisions" not be altered in the new act. Congress responded as follows:

> Section 113(b) [subsection (b) of this section] reflects the Register's conclusion that "the real need is to make clear that there is no intention to change the present law with respect to the scope of protection in a work portraying a useful article as such."

*Id.* Thus, by statute, the copyright on drawings of clothing designs, consistently held to be useful articles, will not protect against another's embodying the designs in competitive garments. *Nimmer*, §2.08[H][3] at 2-149, citing *Beaudin v. Ben & Jerry's Homemade Inc., supra; Russell v. Trimfit, Inc.,* 428 F.Supp. 91 (E.D.Pa. 1977); *Russell v. Trimfit, Inc.,* 428 F. Supp. 91 (E.D. Pa. 1977), *aff'd mem.,* 568 F. 2d 770 (3d Cir. 1978); *Jack Adelman, Inc. v. Sonner & Gordon, Inc.,* 112 F. Supp. 187 (S.D.N.Y. 1934).

If as Plaintiff Galiano testified the certificate language "artwork for wearing apparel" is intended to cover the clothing designs portrayed in the sketches, the certificate is not only *not prima facie* evidence of validity; it is invalid. See *Spectrum Creations, Inc. v. Catalina Lighting, Inc.,* 2001 WL 1910566 (W.D. Tex. 2001) (the court held that, were it to construe application for "graphic design in stained glass" to be for the lamp shade design and form itself, it would have to invalidate the registration.); *Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.,* 243 F. Supp. 244, -- (N.D.N.C. 2003) (registration certificate could only be *prima facie* evidence of validity because the work was described as "3-dimensional sculpted features" pertaining to sculpted leaf adornments, and because plaintiffs stated they were not seeking to claim copyright in the furniture itself); *Celebration Int. 'l, Inc. v. Chosun Int'l, Inc.,* 234 F.Supp. 2d 905, 914-915 (S. D. Ind. 2002) (certificate of registration referring to a "3-dimensional sculpture" submitted

with accompanying photographs of a tiger costume could only be valid if limited to the
sculptural aspects and could not extend to the "garment portion.") As the court held in *Jack
Adelman, supra:*

> [T]he Copyright Office's action must be construed as [not]
> covering * * * useful or artistic articles portrayed therein.
>
> To give an author or designer an exclusive right to manufacture the
> art described in the certificate of copyright registration, when no
> official examination of its novelty has ever been made, would
> unjustly create a monopoly and moreover would usurp the
> functions of letters-patent.

112 F. Supp. at 188, 190.

Plaintiffs are clearly precluded from obtaining a monopoly in the clothes portrayed in the
drawing. As this Court observed in the Reasons for Judgment, the certificate evidences
Plaintiffs' copyright to cover only the sketches themselves as two-dimensional art drawings.
Plaintiffs' work is identified in Section 2 of the certificate as "2-dimensional drawings" rather
than 3-dimensional objects portrayed in the drawings. See also Circular 40a, Exhibit 14, (the
Copyright Office treats "Two-dimensional Works" and "Three-dimensional Works" differently
for deposit purposes.) This court was correct that protected drawings could be infringed only by
unauthorized copying of the drawings themselves.

Plaintiffs' claim of infringement of the derivative work right is also precluded insofar as
they claim the derivative work is a three-dimensional manufactured article based on a 2-
dimensional sketch. No infringement of the right to prepare derivative works based on a design
drawing occurs where another makes the article shown in the drawing. The result is the same
whether the manufacture is viewed as a reproduction *or* a derivative work: Protection lies *only*
for the drawing itself, and a remedy would lie only for wrongful duplication of *the sketches*. In
*Jack Adelman, supra,* the claimant filed a drawing of a dress for registration. The court held:

"The dress itself [shown in the drawing] could hardly be classed as work of art and filed in the

Register's office."

> All a plaintiff could accomplish under this section was to register its drawing, and unless we read into the statute something which is not there plaintiff secured no exclusive monopoly in the dress shown in the drawing. This seems clear if it be kept in mind that it is the drawing which is assumed to be a work of art and not the dress. It follows that plaintiff's copyright gives it the exclusive right to make copies or reprints of the drawing only, and that it gives the copyright owner no monopoly of the article illustrated.

The court also relied on *Nimmer*, which states:

> Statutory copyright protection is largely unavailing for dress designs by reasons of a doctrine * * * under which copyright for works of utility will protect only against copying for purposes of explanation but will not prohibit copying for purposes of use. The copyright in a dress design may protect against the duplication of such design on a paper to be used as an instructional sheet for an unauthorized designer, but it will not protect against the embodying of the design in competitive garments.

1 *Nimmer*, *supra*, §2.08[H][3] at 2-149.

Where 2-dimensional artwork shows only unprotectible useful articles, the only features

of the work that can be protected are the specific pictorial features such as perspective, angle,

etc., contained in the sketch *per se*. *Nimmer*, §8.01[d], at p.8-19. One who creates 3-

dimensional objects such as clothes by copying from the sketch "has copied only the non-

copyrightable elements * * * and hence, has made a non-infringing copy." *Id.* at 8-20. See

*Kashins v. Light Makers, Inc.,* 155 F. Supp. 202 (S.D.N.Y. 1956).

Plaintiffs have failed to show any unauthorized copying of their drawings *by anyone*. The

only evidence of any copying is the inclusion of a few of Plaintiffs' sketches in All-Bilt's

specification sheets. The evidence indicates this was done with Plaintiffs' collaboration and

consent. All-Bilt had undertaken to produce prototypes of that apparel and needed sketches for

the production sheets.  Galiano consented that All-Bilt could produce the documents.  By implication if not expressly, Plaintiffs consented to All-Bilt's copying of those sketches.

In the Reasons for Judgment, this court observed that "courts have extended copyright protection to the separable artistic, non-useful elements of apparel" in some cases.  The particular cases cited by the court, however, for the most part do not deal with the separability test. Many of the cited decisions involved fabric designs, to which the separability analysis is not relevant.[4] This is a crucial distinction in copyright law.  See *Knitwaves, Inc. v. Lollytogs, Ltd., Inc., supra,* 71 F.3d 996; *compare* 1 Nimmer, §2.08 [H][2] with §2.08 [H][3] at p.2-144; *see, also, Key West Hand Print Fabrics, Inc. v. Serbin, Inc.,* 244 F.Supp. 287, 292 (S.D.Fla. 1965), *aff'd per curiam,* 381 F.2d 735 (5th Cir. 1967).  In only two of the cited cases, *Animal Fare, Inc. v. Amfesco Industries, Inc.,* 620 F.Supp. 175, 187 (D. Minn.1985), and *National Theme Productions, Inc. v. Jerry B. Beck, Inc.,* 696 F. Supp. 1348 (S.D. Cal. 1988), did the courts actually conduct the separability analysis.  What is of greater significant to this case, however, is that both courts proceeded to hold that copyright protection was only available for *the particular artistic expression used* in the works, and would not have been available for the ideas of the design features. See, *e.g.,* 620 F. Supp. at 187. Thus, though separable, apparel features are unprotectible

---

[4] The *Segrets* case mentioned by the Court did not involve the separability test and the court did not raise the issue that the sweater design patterns in issue portrayed a useful article. Instead it appeared to treat the sweater designs as fabric designs. *Segrets, Inc. v. Gilman Knitwear,* 207 F. 3d 56 (1st Cir. 2000)(found similarity in "intricate geometrical patterns and juxtaposition" and "stitching"). *Knitwaves* was also a fabric design case, not a clothing design case, and thus did not involve the separability test. See 71 F.3d at 1004 ("Clothes are not copyrightable. . . In contrast, fabric designs, such as the artwork on Knitwaves' sweaters, are . . . protectible.") *Folio Impressions, Inc. v. Byer California, Inc.,* 937 F.2d 759 (2d Cir. 1991), was another fabric design case, and did not involve the separability test. ("Fabric designs are distinguished from "dress designs," which as useful articles under 17 U.S.C. § 101, are not typically copyrightable.") In *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F. 3d 502 (7th Cir. 1994), the parties both agreed they were dealing only with artistic elements and not the useful article of the duffle bag itself. See Footnote 3. The issue in *Wildlife Express* was whether the claimed protected elements were ideas or expression. *Eve of Milady v. Impression Bridal, Inc.,* 957 F.Supp. 484 (S.D.N.Y. 1997) addressed five lace fabric designs that were numbered and incorporated into plaintiff's dress styles. The dress styles themselves were not the subject of the copyright.

if they consist of ideas, *viz.*, Mandarin collars, inverted pleats and decorated plackets-- rather than protectible particularized expression or if their expression merges with ideas.

### ii. Plaintiffs have not identified separable and particular artistic expression that is protectible.

Faced with imminent dismissal of their copyright claim, Plaintiffs may argue that they should still be allowed to try a separability case. This court should deny Plaintiffs' request. The court held in November of 2000 that the record was insufficient to support a determination that separable, artistic elements were present in the design and were protected. Exhibit 10, p. 11. Since then Plaintiffs have engaged in wide-ranging and exhaustive discovery, yet the record is still insufficient to support such a determination.

First, the certificate of registration states that their copyright ownership is limited to the sketches, with no indication that separable artwork of clothing designs is being claimed. On the certificate's face no separable elements are described. Neither do Plaintiffs' sketches identify separable artistic elements. Plaintiffs were under a duty imposed by Rule 26 to disclose the material they deposited with the Copyright Office for their design collection copyright. To date, they have disclosed only a set of sketches that makes no indication of separable elements. If the disclosed sketches are identical to the material Plaintiffs deposited with their application to the Copyright Office, then no separation was made between artistic and useful elements.

The failure to describe the separable elements would appear to contravene §505.02 of Compendium II of the Copyright Office (1984), which requires that a registration that relates to clothing designs describe the separable elements. *Whimsicality, supra,* ("the useful articles standing alone may never be registered. The registration must describe the separable elements."). Neither the Copyright Office's response to Harrah's Freedom of Information Act

request[5] nor Plaintiffs response to Harrah's discovery indicates the separability determination was ever made. The Copyright Office's omission is justified, however, if the mention of artwork in certificate is read relate to the sketches themselves rather than in the clothing designs portrayed.

In any case, the registration certificate is *prima facie* evidence only of the validity of the copyright *and of the facts stated in the certificate.* 17 U.S.C.A. §410(c). Since no description of separable elements is stated in the certificate, no presumption arises as to any copyrightable artistic elements.

Even if the court were to conduct a separability analysis at this late date, Plaintiffs still could not show the requisite copying of constituent elements of their work that is protectible. As shown by the cases this Court cited in the Reasons for Judgment, artistic elements must not merely be separable from the useful article; they must also be susceptible of copyright on their own. Ideas for clothes are not protectible; only particular expression might be. *See Mazer v. Stern,* 347 U.S. 201, 218 (1954). Indeed, section 102(b) specifically states that copyright protection for an original work of authorship does not in any case "extend to any idea * * * [or] concept . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. §102(b).

In its Reasons for Judgment this Court noted that the garments presented on Plaintiffs' motion contained certain color schemes and contrasting borders. See Exhibit 10. The court noted then that Plaintiffs had "failed to demonstrate that these are separable elements of artwork." *Id.* That failure persists to this day. Plaintiffs have declined to show that the use of ribbed borders or color schemes is protectible expression. In fact Plaintiffs have never claimed

---

[5] Harrah's Freedom of Information Act request and the Copyright Office's response are marked *in globo* as Exhibit - -.

that the graphic artistic decorations and trims in Linda Gunnerson's sketches were copied from their own clothing designs. Plaintiffs cannot monopolize the use of ribbed borders or other fashion ideas.

Having thus failed to perform a separability analysis, and instead relying only on fashion concepts or ideas, plaintiffs have failed to establish copying of protectible elements in the All Bilt garments.

## CONCLUSION

Plaintiffs' copyright infringement claim against Harrah's should be dismissed.

Respectfully submitted,

ADAMS AND REESE, LLP

Joseph W. Looney (La. Bar #8773)
**Adams and Reese LLP**
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: 504-581-3234
Facsimile: 504-566-0210
*Attorneys for Defendant, Harrah's*
*Entertainment, Inc.*

23

**CERTIFICATE OF SERVICE**

I certify that on December 23, 2003, I served a copy of the foregoing to the following:

Sidney Shushan, Esq.
Brian Glorioso, Esq.
Guste, Barnette & Shushan, LLP
639 Loyola Avenue, Suite 2500
New Orleans, LA 70113-7103

via Hand Delivery.

Joseph W. Looney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| **Plaintiffs** | * | |
| | * | No. 00-0071 |
| versus | * | |
| | * | SECTION "E"(5) |
| HARRAH'S OPERATING CO., INC. | * | |
| and HARRAH'S ENTERTAINMENT, | * | Judge Livaudais, Jr. |
| INC. | * | |
| **Defendants** | * | Magistrate Chasez |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## LIST OF UNCONTESTED FACTS

NOW COME Harrah's Operating Co Inc. and Harrah's Entertainment, Inc. ("The Harrah's Companies"), and files this List of Uncontested Facts in support of its Motion for Partial Summary Judgment in accordance with Fed.R.Civ.P. 56 and Local Rule 56.1.

### Uncontested Facts

1.      Plaintiff Gianna Inc. is a Louisiana Corporation that was formed by its principals in 1995 as a minority contractor, based on female ownership, to do business with Harrah's.

2.      Plaintiff Gianna Inc. Jane Galiano is a principle of Gianna, Inc., and is a resident of the State of Louisiana.

1

3.      Harrah's Operating Co. Inc. is a Tennessee corporation licensed to do business in the State of Louisiana and in this district.

4.      Harrah's Entertainment, Inc. is a Delaware corporation licensed to do business in Louisiana and in this district.

5.      All-Bilt Uniform Fashion Corp. is a corporation organized and existing under the laws of the State of New Jersey and is a wholly owned subsidiary of Fechheimer Brothers.

6.      Uniform Ideas, Inc. is currently a division of Angelica, Inc. and has no affiliation with either defendant herein.

7.      All-Bilt has never been affiliated with either of the Harrah's companies. Deposition of John Spordone, taken December 19, 2003, marked "Exhibit 12," p. 31 lines 14 through p. 32 line 9.

8.      All Bilt was never a division of Harrah's. *Id.*, p.32 lines10-11.

9.      All Bilt was never in a joint venture with Harrah's. *Id.*, p.32 lines 12-14.

10.     All Bilt was never in a partnership with Harrah's. *Id.*, p.32 lines 15-17.

11.     All Bilt was a supplier of casino uniforms, and Harrah's purchased casino uniforms from All Bilt. *Id.*, lines 18-22.

12      Plaintiff Jane Galiano submitted sketches of uniform designs to Connie Albright, an employee of Harrah's, in the summer or fall of 1995.

13.     Plaintiff Galiano met with Mary Beth Morgan of Uniform Ideas in an effort to arrange to have uniforms manufactured so they could be sold to Harrah's through Galiano's minority contractor company Gianna Inc.

14.    Gianna, Inc. and Uniform Ideas signed a contract dated September 1, 1995, whereby Uniform Ideas was to manufacture uniforms and would in turn pay Gianna Inc. a royalty for their design. The contract is attached as Exhibit 1.

15.    Gianna, Inc.'s contract with Uniform Ideas expired on December 31, 1995 and was not renewed.

16.    Uniform Ideas paid Gianna, Inc. royalties for uniforms that it manufactured and sold to Harrah's. Copies of royalty statements are attached as Exhibit 6.

17.    Uniform Ideas only manufactured a few garments from Gianna designs. (Deposition of Mary Beth Morgan, taken February 21, Exhibit 5)

18.    Plaintiff Galiano also met with the president of All Bilt, Howard Wecksler.

19.    Plaintiff Galiano attempted to negotiate a contract with All Bilt whereby All Bilt would manufacture garments based on her designs and sell them to Harrah's.

20.    Gianna, Inc. and All Bilt corresponded with each other about pricing of uniforms that they would attempt to manufacture based on Gianna, Inc.'s fashion designs.

21.    Gianna, Inc. sent All Bilt a contract setting forth the terms whereby All Bilt would manufacture fashion designs of Gianna, Inc. and Gianna Inc. would be compensated therefore, but the contract was never signed.

22.    With the consent of plaintiff Galiano, All Bilt manufactured prototypes of certain uniforms.

23.    All Bilt produced uniforms based on some of the prototypes it had manufactured from Gianna, Inc. designs.

24.    All Bilt ceased to produce the uniforms based on the prototypes in the Spring of 1996.

3

25.    All Bilt paid royalties to Gianna Inc. based on some of her fashion designs for the so-called Range garments and Fresh market garments. See Deposition of Howard Wecksler, taken December 10, 2003, Exhibit 2.

26.    Neither Harrah's Operating Co., Inc. nor Harrah's Entertainment Inc. has ever copied Plaintiffs' sketches.

27.    Neither Harrah's Operating Co., Inc. nor Harrah's Entertainment Inc. has ever manufactured garments based on Plaintiffs' sketches.

28.    Garments that All Bilt sold to Harrah's were in all cases manufactured by All Bilt.

29.    Garments that All Bilt sold to Harrah's were in all cases manufactured from specifications created by All Bilt designers and pattern makers.

30.    Plaintiffs attempted to get the Harrah's companies to enter into a contract for fashion design services, but were unsuccessful.

31.    Plaintiffs then brought a lawsuit against Harrah's Operating Co., Inc. and Harrah's Entertainment Inc., which is the suit in the premises.

32.    In connection with the commencement of this lawsuit, plaintiffs filed an application for copyright on form VAu for sketches of clothing designs referred to as "Uniform and Costume Collections submitted to Harrah's Operating Company, Inc." Exhibit 13.

33.    The application identified the nature of the work as "Artwork for Wearing Apparel." Exhibit 13, section 1. It further referred to the work in section 2 as "2-dimensional artwork." 28, 1999, Registration Certificate No. VAu 456-437 was issued by the Copyright Office to Plaintiffs based on their application.

34.    The nature of the work as stated to be protected on the copyright registration certificate has never been amended.

4

35.    The Copyright Office treats 2-dimensional artwork different from 3-dimensional artwork under its internal procedures. Circular 40a, marked Exhibit 14.

36.    Artwork for wearing apparel, according to the Copyright Office, is the characterization given for 2-dimensional sketches of wearing apparel.

37.    Plaintiff Jane Galiano has testified that the "artwork for wearing apparel" referred to in the certificate is the sketches themselves.

38.    Plaintiff Galiano has also testified that the artwork includes everything in the sketches, including the human forms shown therein.  Galiano Dep., March 13, 2001, marked Exhibit 3, pp. 123-125.

Respectfully submitted,

**ADAMS AND REESE, LLP**

Joseph W. Looney, T.A. (#8773)
Melissa S. LaBauve (#25745)
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone:  (504) 581-3234
Attorneys for Defendants

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served on all counsel of record by hand delivery, this 23rd day of December 2003.

Joseph W. Looney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| **Plaintiff** | * | |
| | * | No. 00-0071 |
| versus | * | |
| | * | SECTION "E"(5) |
| HARRAH'S OPERATING CO., INC. | * | |
| And | * | Judge Livaudais, Jr. |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| **Defendant** | * | Mag. Chasez |
| | * | |

**************************************

## NOTICE OF HEARING

To:    Sidney Shushan, Esq.
       Brian Glorioso, Esq.
       Guste, Barnette & Shushan, LLP
       639 Loyola Avenue, Suite 2500
       New Orleans, LA 70113-7103

Please take notice that Harrah's Entertainment, Inc., through undersigned counsel, will

bring the foregoing Motion For Partial Summary Judgment on for hearing before the Honorable

Judge Marcel Livaudais, United States District Court, Eastern District of Louisiana, on the 7th

day of January 2004, at 10:00 a.m. or as soon thereafter as counsel can be heard.

Joseph W. Looney (La. Bar #8773)
**Adams and Reese LLP**
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone:  504-581-3234
Facsimile:  504-566-0210
*Attorneys for Defendant, Harrah's
Entertainment, Inc.*

## CERTIFICATE OF SERVICE

I certify that on December 23, 2003, I served a copy of the foregoing to the following:

Sidney Shushan, Esq.
Brian Glorioso, Esq.
Guste, Barnette & Shushan, LLP
639 Loyola Avenue, Suite 2500
New Orleans, LA  70113-7103

via Hand Delivery.

Joseph W. Looney

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**