

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 JAN -7 PM 12: 23

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC.<br>　　Plaintiffs | * | CIVIL ACTION |
| | * | |
| | * | No. 00-0071 |
| versus | * | |
| | * | SECTION "E"(5) |
| HARRAH'S OPERATING CO., INC.<br>and | * | |
| | * | JUDGE LIVAUDAIS |
| HARRAH'S ENTERTAINMENT, INC.<br>　　Defendants | * | |
| | * | MAGISTRATE CHASEZ |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## HARRAH'S OPERATING CO., INC.'S REPLY TO PLAINTIFFS' OPPOSITION MEMORANDUM TO MOTION FOR PARTIAL SUMMARY JUDGMENT

Harrah's Operating Co., Inc., made defendant herein ("Harrah's"), files this brief in connection with its Motion for Partial Summary Judgment set for hearing for January 7, 2004.

Plaintiffs' Gianna, Inc. and Jane Galiano filed an opposition brief ("Plaintiffs' Opposition") raising several issues for the first time. Harrah's sought leave of court to address these issues. Plaintiffs' Opposition fails to satisfy their burden of responding to Harrah's Motion for Summary Judgment on ownership of valid copyright, and copying of copyrightable constituent elements. Plaintiffs belatedly seek to change the infringement claims against Harrah's from the direct infringement claims in their pleadings to derivative liability claims of

1

contributory negligence and vicarious liability. This fundamental re-alignment of the case comes too late.

Plaintiffs also seek copyright over general design concepts, principally Mandarin collars, piping, jacquard trim and color-blocking under the "separability test" and the wholly inapplicable "ordinary observer" test. Plaintiffs fail to make the required showing of any particular colors, shapes and ornamentation contained in the designs that might be considered protectable artistic expression and not ideas or mere general types. Of equal importance, Plaintiffs offer no justification for seeking protection of three-dimensional garments when their copyright was for two-dimensional artwork applied to wearing apparel, or even more restrictively, for two-dimensional sketches only. Harrah's Motion for Summary Judgment dismissing the copyright infringement claim should be granted.

1. **Plaintiffs' arguments about contributory infringement and vicarious liability have never been pled, and no further amendment should be allowed.**

Plaintiffs have no evidence of copyright infringement by Harrah's. After three years of discovery, Plaintiffs collected more than 8,000 records and hundreds of pages of deposition testimony, only to establish that the casino garments of which they complain were produced in every case by All-Bilt Uniform Fashion Corp ("All-Bilt"). All-Bilt is a division of Fechheimer Brothers, which in turn is owned by Berkshire Hathaway, Inc. and has no relation to Defendants. Plaintiffs have never sued All-Bilt or its parent or ultimate parent Berkshire Hathaway.

Harrah's has also pointed out that there is no generalized infringement for "use," and that Plaintiffs fail to show any violation of specific rights under the Copyright Act. Plaintiffs' Opposition does not address these issues, but instead for the first time raises the issues of contributory infringement and vicarious liability.

Plaintiffs should not be allowed to raise these new theories at this late date. Plaintiffs have alleged only direct infringement on Harrah's part. See Plaintiffs' Complaint for Copyright Infringement and Breach of Contract, Demand for Jury Trial, paragraph 9. They make no mention of either contributory infringement or vicarious liability. Furthermore, their complaint is insufficient to raise these theories as a matter of law because it lacks factual allegations to support them. *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F.Supp. 1361 (N. D. Cal. 1995).

Plaintiffs' effort to inject new issues constitutes an impermissible attempt to amend their complaint by filing a brief. *Sansom Committee v. Lynn,* 366 F.Supp. 1271 (D. C. Pa. 1973); *Chanbliss v. Coca Cola Bottling Co.,* 414 F.2d 256, *cert denied,* 397 U.S. 916 (1967). Plaintiffs have resorted to this back-door approach because the Court's Order of April 10, 2002, states that "time for amendments to pleadings has expired," and that the cutoff "WILL NOT BE REOPENED." See April 10, 2002 Minute entry attached, page 2.

Even without the order, to allow Plaintiffs to amend at this point would be untimely, prejudicial and unfair. Harrah's motion alerted Plaintiffs' counsel to the deficiencies of their case as pled. *See Eiben v. A. Epstein & Sons Intern., Inc.,* 57 F. Supp. 2d 607, 612 (N. D. Ill. 1999) (Plaintiffs' attempt to raise vicarious liability and contributory infringement after motions were filed and discovery was closed rejected as taking "unfair advantage now by seeking to cure any deficiencies in its preparation to which his adversaries' motions in limine have alerted his counsel.") Harrah's based its motion for partial summary judgment on the pleadings on file, and the court should not allow material amendments to defeat the motion. See, *Quintanilla v. Texas Television, Inc.,* 139 F.3d 494, 499 (5th Cir. 1998).

Plaintiffs erroneously suggest that they can seek amendment to conform to the evidence under Fed. R. Civ. P. 15. Such amendment is not permitted, however, where the other party does not give its express or implied consent. *Cf. Blue Ribbon Pet Products, Inc. v. Rolf C. Hagen [U.S.A.] Corp.*, 66 F.Supp.2d 454 (E. D. N. Y.1999) (Court stated that the pleadings would be deemed amended to assert a claim for contributory infringement given the evidence of contributory infringement introduced at trial by express or implied consent of the defendant. *Id.*, footnote 2.) Harrah's objects to trial of either issue.

Finally, amendment at this juncture would be futile. Plaintiffs lack facts sufficient to defeat a motion for summary judgment on contributory infringement or vicarious liability. Plaintiffs' mantra-like statements that "Harrah's directed" All-Bilt purport to be based on testimony of All-Bilt's designer Linda Gunnerson. However, none of the references to her testimony support Plaintiffs' claim that Harrah's directed All-Bilt to produce copies of the alleged infringed designs. Nor did she testify that "Harrah's provided Plaintiffs' designs to All-Bilt," as Plaintiffs now represent to this court.

Plaintiffs had abundant opportunities over the years to assert other allegations against Harrah's. They chose to fashion their copyright claim, however, as one for direct infringement, and not to allege anything about All-Bilt despite the mounting and incontrovertible evidence that All-Bilt manufactured all the alleged offending garments. Plaintiffs' failure to allege infringement on All-Bilt's or some other party's part should preclude them from asserting contributory infringement against Harrah's after Harrah's has filed its summary judgment based on the established record in this case.

Plaintiffs assert that they were not required to name All-Bilt a defendant. Plaintiffs confuse their leeway in naming defendants, however, with their duty to plead the requisite

4

elements of their case. To establish contributory infringement, a plaintiff must prove direct infringement. There can be no secondary liability without primary infringement. *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 434, 104 S. Ct. 774, 78 L.Ed.2d 574 (1984). To plead infringement a plaintiff must allege acts by defendant(s) that violate plaintiff's rights. *Kelly v. L.L Cool J.,* 145 F.R.D. 32, 36 (S. D. N. Y. 1992). Plaintiffs must establish an act of direct infringement. *Polygram Intern'l, Inc., v. Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1320-23 (D. Mass. 1994)(dismissing contributory infringement claim on defendant's arguments that plaintiff had to show a third party violated a copyright and lacked authorization from the plaintiff). Since Plaintiffs' claim against Harrah's under this new theory would not be based on direct infringement, Plaintiffs were required to allege some other direct infringement in order to support a claim for derivative liability. The omission of any such allegation from their pleadings is fatally defective.

### 2. Plaintiffs still have failed to show they own a valid copyright that has been infringed.

Plaintiffs have not addressed Harrah's argument that they impermissably assert ownership in clothing designs, although their copyright application (and consequent registration) was only for two-dimensional sketches. Instead, Plaintiffs present a confused discussion of the ordinary observer test, the separability test, substantial similarity, and various other copyright concepts that have little if any bearing on the issue Harrah's raised—that their copyright registration is for two-dimensional sketches, while the copying of which they complain is the manufacture of three-dimensional garments.

Harrah's reiterates that Plaintiffs are bound by their copyright that afforded protection only for the sketches themselves. Moreover, if the Copyright Office were to

read their application as seeking protection not only for the sketches but for the fashions portrayed in the sketches, the registration would have been invalid.

        3.    **Plaintiffs' copying claim is based on unprotectable fashion ideas and concepts.**

Plaintiffs argue that their designs are unique and were used by All-Bilt in making their designs. Plaintiffs argue, too, that Mandarin collars, piping, jacquard strips on plackets hiding buttons, and color-blocked tailored jackets are protectable, and that All-Bilt's garments are infringing because they use similar design conventions. They fail to discuss the fact that the *Segrets* case and others on which they continue to rely dealt with fabric designs, not clothing designs.

The authorities cited by Plaintiffs are also distinguishable because they involved particular graphic patterns and pictorial ornamentation. Plaintiffs' Opposition only discusses fashion concepts and parts of garment. A Mandarin collar, for example is a type of collar; jacquard strips are strips containing any variety of embroidery known as "jacquard;" and color-blocking is a type of patterning of colors. None of those terms conveys a particular color or particular graphic presentation. Plaintiffs, in fact, have failed to describe even one particular embroidery design, color-blocking pattern or collar of particular colors and dimensions.

Plaintiffs also fail to cite their own experts' treatment of these elements. Dr. Belleau's testimony supports the conclusion that none of the elements discussed is copyrightable. She testified:

        Q.    Did you understand what the work was that the copyright was being claimed for?

        A.    The collection of designs.

        Q.    The entire collection?

> A.    I think so. Yes. I think each individual sketch was stamped, I think.
>
> Q.    Everything on that sketch?
>
> A.    I would assume so, yes.
>
> * * * *
>
> Q.    Let me ask you about specific things. Are fashion designers free to use the idea of the Mandarin collar?
>
> A.    Yes.
>
> Q.    Are fashion designers free to use the idea of the Mandarin collar with a notch in the center?
>
> A.    Yes.

Deposition of Bonnie Belleau, page 125 lines 1-8, lines 13-20, attached.

> Q.    . . . I'm asking you about the idea of the jacquard strip down the front of a shirt possibly to hide the buttons or fasteners.
>
> Is that something that designers are free to use?
>
> A.    Yes.
>
> Q.    Are designers generally free to put a design on that strip?
>
> A.    Yes.
>
> Q.    Do you know what color blocking is?
>
> A.    Yes.
>
> Q.    Are designers generally free to use color blocking in garment design?
>
> A.    Yes.

Belleau dep., page 127 lines 10-23, attached.

> Q.    In general are they free to use piping on the top of a collar?

> A. In general, yes.
>
> Q. On the top of a Mandarin collar?
>
> A. In general, yes.
>
> Q. How about on the edges of the cuff?
>
> A. In general, yes.
>
> Q. In general, are designers free to use princess lines on jackets?
>
> A. Yes.
>
> * * * *
>
> Q. ... let's put it in terms of an inverted back pleat.
>
> A. Yes.
>
> Q. They are free to use that?
>
> A. Yes.

Belleau dep., page 130 lines 4-13, 22-25, page 131 line 1, attached.

Thus, according to their own expert, Plaintiffs are now attempting to monopolize fashion conventions that all designers are admittedly free to use. Plaintiffs' claim simply is not within the protection of copyright.

### 4. The Coca Cola cups claim is defeated by Harrah's license and estoppel defenses.

Harrah's also plead defenses of express or implied license (Seventeenth Defense) and estoppel (Fourth Defense). Plaintiffs' claim that issuing complimentary cups at the Skaget Valley opening constitutes infringement is defeated by these defenses.

First, Plaintiffs acquiesced in the distribution of the cups at the Skaget Valley opening. Whether or not Plaintiffs specifically authorized the use, Plaintiff Galiano was present at the

opening where the cups were allegedly offered to visitors. Plaintiffs' failure to take any action to prevent the use of the designs amounts to conduct that can only be deemed a license. See *Lulirama Ltd. v. Axcess Broadcast Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) (stating that, under federal copyright law, a non-exclusive license may be granted orally or implied from conduct).

Moreover, Plaintiffs have failed to show that that the cups were used at any time after the Skagit opening. Even if they were, however, Plaintiffs are estopped from complaining about later use. Even if they claim a breach or other acts or omissions on Harrah's part subsequent to the license, such acts cannot result in liability on Harrah's part for infringement if the distribution made was under a valid license at the time. Plaintiffs are estopped by their conduct from alleging infringing use of the cups. In *Carson v. Dynegy, Inc.*, 344 F.3d 446 (5th Cir. 2003), the defense of estoppel to infringement was recognized in this circuit where the following four factors are met:

1. The plaintiff knows the facts of an infringement;

2. so  The plaintiff intended its conduct should be acted upon or acts that the defendant has a right to believe that it is so intended;

3. Defendant is ignorant of the true facts; and

4. The defendant relies on the plaintiff's conduct to its injury.

*Id.* at 453. The court also recognized that "[e]stoppel may be accomplished by a plaintiff's silence or inaction." *Id.*

Plaintiffs are estopped from claiming Harrah's infringed the cup design because Plaintiffs knew Harrah's was looking for designs and in fact was paying Plaintiffs precisely for design services. Plaintiffs intended for Harrah's to act on their designs or at least so acted when they

9

invoiced Harrah's and accepted payment, and stood by without complaint at the Skagit Opening. Harrah's believed the designs were being created for its use and that Plaintiffs were being compensated for such use. And Plaintiffs' conduct resulted in Harrah's injury by now being subjected to their claim. Moreover, Plaintiffs' silence and inaction at the Skagit Opening may by themselves constitute estoppel.

Furthermore, considering the work as a whole, the use of the cup design is *deminimus*. Plaintiffs submitted some one hundred designs as their collection. The single beach drawing does not satisfy the substantiality requirement under copyright law to support an infringement action.

## CONCLUSION

Harrah's Operating Co., Inc.'s Motion for Partial Summary Judgment on Infringement of Copyright should be denied.

Respectfully submitted,

ADAMS AND REESE LLP

Joseph W. Looney, T.A. (8773)
4500 One Shell Square
New Orleans, Louisiana 70139
Tel: (504) 581-3234
*Attorneys for Defendant,*
*Harrah's Operating Co., Inc.*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 6th day of January 2004, I have served a copy of the foregoing pleading on counsel for all parties to this proceeding by placing a copy of same in the U.S. Mail, properly addressed, first-class, postage prepaid.

                                                Joseph W. Looney

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 APR 10 PM 2:18

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JANE GALLIANO and GIANNA, INC.                CIVIL ACTION

versus                                         NO. 00-0071

HARRAH'S OPERATING CO., INC., ET AL            SECTION: E/5

O R D E R

Pursuant to the March 15, 2002 Order issued by the Court, (Record Document 158), immediately following oral argument on the cross motions for summary judgment, a conference was held to discuss the present posture of the above captioned civil action regarding assignment of cut-off, final pre-trial and trial dates. Participating were:

> SIDNEY L. SHUSHAN, ESQ.
> BRIAN L. GLORIOSO, ESQ.
> JOSEPH W. LOONEY, ESQ.
> KRISTEN P. BIEVER, ESQ.

IT IS ORDERED that counsel for the parties shall confer with plaintiff's physician concerning her medical condition/prognosis and availability for trial. Counsel shall then JOINTLY advise the Court, via written report.

IT IS FURTHER ORDERED that counsel for the parties shall confer with each other and determine which of the currently pending nine motions in limine may be maintained. Counsel shall JOINTLY advise the Court, via written report.

DATE OF ENTRY
APR 1 0 2002

Fee_____
Process____
X Dktd____
CtRmDep____
Doc.No.____

The time for amendments to pleadings, third party actions, cross-claims and counter-claims has expired. These cut-off dates WILL NOT BE REOPENED.

Finally, during the conference counsel for defendants acknowledged that should judgment of liability be entered against defendant, Harrah's Operating Company, Inc. said Company will accept responsibility for satisfying said judgment. Counsel for plaintiff and defendant shall confer to reach a joint Stipulation to be submitted to the Court.

The preliminary conference to assign trial dates will not be scheduled until the Court is in receipt of the reports hereinabove stated.

The Clerk is DIRECTED to provide a copy of this Order to United States Magistrate Judge Alma L. Chasez.

New Orleans, Louisiana, April 10, 2002.

_____
MARCEL LIVAUDAIS, JR.
Senior United States District Judge

2

```
                                                              1

 1                UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF LOUISIANA

 3

 4   * * * * * * * * * * * * * *
                                *
 5   JANE GALIANO AND           *    NO. 00-0071
     GIANNA, INC.               *
 6           Plaintiffs         *
                                *
 7   VERSUS                     *    SECTION "E"(5)
                                *
 8   HARRAH'S OPERATING CO.,    *    JUDGE LIVAUDAIS
     INC. AND HARRAH'S          *
 9   ENTERTAINMENT, INC.        *    MAGISTRATE CHASEZ
             Defendants         *
10   * * * * * * * * * * * * * *

11
                                 ORIGINAL
12

13

14

15

16

17

18

19

20             Deposition of BONNIE DEAN

21   BELLEAU, PH.D., taken on Wednesday, July 16,

22   2003, commencing at 9:30 a.m., at the law

23   offices of Guste, Barnett & Shushan, 639

24   Loyola Avenue, Suite 2500, New Orleans,

25   Louisiana 70113-7103.
```

1    Q.    Did you understand what the work was
2 that the copyright was being claimed for?
3    A.    The collection of designs.
4    Q.    The entire collection?
5    A.    I think so.  Yes.  I think each
6 individual sketch was stamped, I think.
7    Q.    Everything on that sketch?
8    A.    I would assume so, yes.
9    Q.    Okay.  Do you remember seeing a
10 description of what was being copyrighted, as
11 artwork?
12    A.    I don't remember.  It's been a while.
13    Q.    Let me ask you about specific things.
14 Are fashion designers free to use the idea of
15 the Mandarin collar?
16    A.    Yes.
17    Q.    Are fashion designers free to use the
18 idea of the Mandarin collar with a notch in
19 the center?
20    A.    Yes.
21    Q.    Are fashion designers free to use a
22 jacquard strip down the front of a shirt, with
23 a colorful design on the jacquard strip?
24         MR. SHUSHAN:
25              Object to the form of these

127

1  needs to be.  All right?  Speaking objections
2  are not allowed anymore.
3          MR. SHUSHAN:
4              I'm not making speaking
5  objections.
6          MR. LOONEY:
7              All right.
8  EXAMINATION BY MR. LOONEY:
9      Q.   Let me go back and ask the question
10 again.  I'm asking you about the idea of a
11 jacquard strip down the front of a shirt,
12 possibly to hide the buttons or fasteners.
13          Is that something that designers are
14 generally free to use?
15     A.   Yes.
16     Q.   Are designers generally free to put a
17 design on that strip?
18     A.   Yes.
19     Q.   Do you know what color blocking is?
20     A.   Yes.
21     Q.   Are designers generally free to use
22 color blocking in garment design?
23     A.   Yes.
24         MR. SHUSHAN:
25              To use color blocking in what

129

```
 1  color blocking is in the fashion industry?
 2       A.   It's a general definition.
 3       Q.   All right.  Is color blocking, as I
 4  said, something that designers, the idea of
 5  color blocking, something designers are free
 6  to use?
 7       A.   In combination with other details, or
 8  just the color blocking?
 9       Q.   The idea.  Not a particular color,
10  not a particular place, just the idea of color
11  blocking.
12       A.   In general?
13       Q.   Yes.
14       A.   Yes.
15       Q.   All right.  By the way, this states,
16  when does this state that color blocking was
17  introduced?
18       A.   It says the early 1980s.
19       Q.   All right.  Do you have any
20  independent recollection of whether that is an
21  accurate statement or not?
22       A.   I would have to look it up to see if
23  that's the exact time period.  It sounds like
24  it's about the right time period.
25       Q.   Okay.  Are designers generally free
```

1   to use the idea of piping around the edges of
2   the garment?
3        A.    In general, yes.
4        Q.    In general, are they free to use
5   piping on the top of a collar?
6        A.    In general, yes.
7        Q.    On the top of a Mandarin collar?
8        A.    In general, yes.
9        Q.    How about on the edges of the cuff?
10       A.    In general, yes.
11       Q.    In general, are designers free to use
12  princess lines on jackets?
13       A.    Yes.
14       Q.    In general, are designers free to use
15  back slits on shirts?
16       A.    A back slit?
17       Q.    Yes.
18       A.    I'm sorry.  I'm not --
19       Q.    I'm sorry?
20       A.    I don't know exactly what you're
21  referring to.
22       Q.    Say, let's put it in terms of an
23  inverted back pleat.
24       A.    Yes.
25       Q.    They are free to use that?