

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |

**PLAINTIFFS' REPLY BRIEF TO DEFENDANT'S OPPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

**MAY IT PLEASE THE COURT:**

INTRODUCTION

It was with great regret that counsel for Plaintiffs filed this motion. In the best of all possible worlds, such motions would never be necessary. This is the second one undersigned counsel has filed in 37 years of practice at the Bar of this Court. Counsel takes no pleasure in filing such motions.

Unfortunately, counsel's duty to Plaintiffs and to the Court mandates this one.

The undisputed facts show there was deliberate delay with and a deliberate refusal to

Page -1-



comply with the orders of the Magistrate Judge. Incomprehensible parts of packets of documents relating to costume orders were produced - repeatedly - instead of simply producing all of the All Bilt packet relating to each order. Each packet included the pattern number and specifications, a drawing of the pattern, and the quantities and price of the costumes.

Without the entire packet - including the pattern specifications, the drawing of the pattern, and the order itself - the documents produced were useless.

Unfortunately, the undisputed facts involve the role of defense counsel in the problem. Undisputed deposition testimony puts defense counsel squarely in the middle of the process which took place.

Unfortunately, the undisputed facts show that the delay in producing evidence as ordered by the Magistrate Judge caused great harm to Plaintiffs' case because key early documents from 1996 were destroyed by All Bilt before a personal inspection of the records by Plaintiffs' counsel revealed what had been done - and how easy it would have been to comply with the Magistrate Judge's order in the first place.

**Plaintiffs' Motion for Sanctions is supported by the facts and the law. Harrah's conduct clearly warrants sanctions.**

Once again Harrah's misrepresents the history of their deliberate attempts to prevent plaintiffs from discovering the volumes of orders placed by Harrah's through All Bilt.

The record is clear and unavoidable.

Harrah's refused to produce any records of orders of uniforms or costumes.

Subsequently plaintiffs issued a subpoena to All Bilt for records which resulted in the production of the computerized patterns. These patterns did not show the completed designs but

rather when printed appeared as paper cut outs. They did not show the pictorial sketches which Plaintiffs' counsel later discovered in nice neat packets in All Bilt's files. They were useless for identifying which designs were copied, much less the extent of the copying.

**Deposition testimony of All Bilt unfortunately proves the involvement of Defendant's counsel in the process of failing to comply fully and forthrightly with the Magistrate Judge's order.**

In April of 2001 plaintiffs deposed for the first time All Bilt's designer, Linda Gunnerson. In her deposition Ms. Gunnerson testified that Mr. Looney travel to All Bilt to assist her in responding to plaintiffs' subpoena. (See Annex A, Gunnerson Depo p. 28)

Following Ms. Gunnerson's deposition, All Bilt produced a series of specification sheets, included in which were literal copies of plaintiffs' designs. These specification sheets were not accompanied by any invoices and were not in the original charge packets as they were kept by All Bilt. They were essential for identifying which designs were copied. They were useless for determining the extent of the copying and the damages.

As we have previous explained to the Court, when Plaintiffs were finally were forced to go to New York and personally inspect All Bilt's files, plaintiffs discovered that the files were kept in simple file cabinets separated by year and for each year there was a folder for each Harrah's property containing all of the orders from Harrah's. Each order was contained in "Charge Packet". As explained by All Bilt the "Charge Packet" contained the initial ordering information on the cover page, the specification sheet (including a picture of what the finished design would look like), a purchase order from Harrah's, shipping forms, and an invoice.

Mr. Looney asks this Court to believe that he was unaware of the simple filing system, and

the fact that each order contained a picture of the design that was ordered.

But the deposition testimony proves he was present when the decisions were made to produce partial documents which were useless in themselves because they were less than the complete charge packet for each order.

**Following Mr. Looney's visit to All Bilt, plaintiffs filed a Motion to Compel against Harrah's seeking copies of the purchase orders and pictures of the designs that were ordered. The Court at that time ordered Harrah's to get the information from its manufacturers.** Harrah's then sent subpoenas to the manufactures. All manufacturers except All Bilt signed affidavits to the completeness of their responses. In response to the subpoena All Bilt produced only invoices without the charge packet or the specification sheet showing what the design looked like.

Mr. Looney asks the Court to believe it was a coincidence All Bilt did not sign an affidavit.

Mr. Looney ask the Court to believe he was unaware of the simple filing system and unaware the orders as stored by All Bilt contained pictures of the garments. Mr. Looney asks the Court to believe he went to New York to consult with All Bilt and did not bother to look at a single packet, or a single file in which the packets were kept. If so, he certainly did not comply with the order of the Magistrate Judge to get the necessary records from Harrah's customers and produce them.

Had All Bilt simply produced the documents as they were kept in the ordinary course of business plaintiffs would have only traveled to New York on one occasion for depositions. All Bilt with the help of Mr. Looney decided to provide incomplete responses to prevent plaintiffs

from seeing the true picture of Harrah's orders. Ms. Gunnerson admits Mr. Looney was there to assist in the response to plaintiffs' subpoena. (See Annex A, Dep. April 23, 2001. p.28)

**There was good reason for someone to try to prevent plaintiffs from discovering the truth.** When plaintiffs finally went to New York and personally reviewed the All Bilt records plaintiffs discovered three of its designs literally copied into the All Bilt specification sheets. Other All Bilt specification sheets contained copies of plaintiffs designs which are strikingly similar. Plaintiffs recovered nearly 8000 documents evidencing over $3,000,000 of Harrah's orders.

**Unfortunately by the time plaintiffs got to see the All Bilt files, All Bilt had conveniently disposed of most of the orders for 1996 under its alleged record retention policy.** Plaintiffs can only assume how many more literal copies of plaintiffs' designs were in All Bilt's records before they destroyed the orders from 1996.

**And the 1996 documents were vitally important to the time frame of this case on all of the causes of action asserted by Plaintiffs.**

The First Contract between the parties expired early in 1996. (See Annex C).

Harrah's offered in February 1996 to pay royalties (under impossible conditions and in ridiculous amounts) to Plaintiffs on many of the designs which it now claims were in the public domain. (See Annex D)

Harrah's again in the invalid Settlement Agreement in May 1996 offered to pay royalties to Plaintiffs on many of the designs which are now in dispute. (Annex E).

The documents recovered by Plaintiffs' counsel *include few if any of the 1996 orders for any of the documents in dispute! Without them, the Court and the jury will never know for sure*

*what orders had been place for which costumes involving which disputed designs, and when the conspiracy between All Bilt and Harrah's began!* The jury can and will infer that the conspiracy began during the 1996 negotiations, and the missing orders were concealed from Plaintiffs. But the missing documents would have proved it beyond a reasonable doubt.

That missing 1996 evidence would have been very relevant to the issue of the validity of the Settlement Agreement.

It would have been very relevant to the interpretation and enforcement of the First Contract which is now before the Court and the jury to know whether Harrah's was ordering copies of Plaintiffs' designs at the same time it was negotiating with Plaintiffs and making offers to pay royalties in minimal amounts on impossible terms.

It would have been very relevant to the claim for unfair trade practices. By any yardstick it is "unfair" to borrow and copy designs from a compeditor *and conceal it from that compeditor while you are offering absurdly unfair terms to that compeditor during negotiations.*

It would have been very relevant to the claim for unjust enrichment. It is certainly "unjust" to borrow and copy designs from a compeditor *and conceal it from that compeditor while you are offering absurdly unfair terms to that compeditor during negotiations.*

It would have been very relevant to the claim for copyright infringement. It would certainly have helped to prove what the jury will probably conclude anyway - that Harrah's was a contributory infringer and a wilful infringer from the very beginning in 1996.

**Harrah's contentions that plaintiffs waived the affidavit are absurd and unsupported by any evidence.** Harrah's contention that plaintiffs worked out the discovery details with All

Bilt are also absurd. Plaintiffs were forced to go to New York and personally inspect the All Bilt records because Harrah's refused to have the records produced pursuant to this Court's Order. Harrah's counsel was aware of the records which All Bilt had, Harrah's counsel knew how those records were stored, Harrah's counsel knew the invoices were part of a package for each order which contained a specification sheet with a picture of the design, yet Harrah's did not attempt to have the charge packets produced. Rather Harrah's choose to allow All Bilt to produce separated documents knowing full well that without the complete packets plaintiffs could not put the pieces together. Essentially Harrah's had the entire puzzle in completed form and decided to produce on certain pieces in order to prevent plaintiffs from seeing the extent of their orders. That is why plaintiffs are seeking sanctions. That is why this Court should grant the Motion for Sanctions, and consider whether substantial sanctions in addition to attorney's fees are justified.

The facts only lead to one conclusion, Harrah's assisted All Bilt in providing incomplete responses in order to prevent plaintiffs from discovering the extent of orders placed by Harrah's. This is an abuse of the discovery process and a violation of the Court's order and for such Harrah's should rightfully be sanctioned.

                                                  Respectfully (and regretfully) submitted,

                                                  SIDNEY L. SHUSHAN, #12055
                                                  BRIAN L. GLORIOSO, #27226
                                                  GUSTE, BARNETT & SHUSHAN, L.L.P.
                                                  639 Loyola Avenue, Suite 2500
                                                  New Orleans, Louisiana 70113
                                                  Telephone (504) 529-4141
                                                  Facsimile   (504) 561-0326
                                                  Attorneys for Plaintiffs
                                                  Jane Galiano and Gianna, Inc

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO, AND GIANNA, INC. | * | CIVIL ACTION NO. 00-0071 |
| *Plaintiffs* | * | |
| | * | SECTION " E " " (5) |
| VERSUS | * | |
| | * | JUDGE MARCEL LIVAUDAIS, JR. |
| HARRAH'S OPERATING CO., INC., | * | |
| AND | * | MAGISTRATE JUDGE CHASEZ |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| *Defendants* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Plaintiffs' Reply Brief to Defendant's Opposition to Plaintiffs' Motion for Sanctions has been served upon:

Mr. Joseph W. Looney, T.A.
Ms. Melissa S. LaBauve
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Attorney for Defendants,
Harrah's Operating Co., Inc. and
Harrah's Entertainment, Inc.

by hand delivery of a copy of same this _____ day of January, 2004

BRIAN L. GLORIOSO

SEE RECORD FOR

EXHIBITS

OR

ATTACHMENTS

NOT SCANNED