FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 MAY 10 PM 4: 56

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JANE GALIANO and GIANNA, INC.                    CIVIL ACTION

versus                                           No.  00-0071

HARRAH'S OPERATING CO., INC.,                    SECTION: E/5
and HARRAH'S ENTERTAINMENT, INC.

## ORDER AND REASONS

The parties' cross motions for partial summary judgment as to plaintiffs' copyright infringement claim are before the court. Record documents 238 and 264.  Plaintiffs ("Gianna") also filed a motion for summary judgment or partial summary judgment as to Harrah's counterclaim against plaintiffs alleging fraud and misuse of the Copyright Office.  Record document 239.  The motions were orally argued on March 3, 2004.  For the reasons that follow, Harrah's motion for partial summary judgment on the copyright infringement claim is granted, Gianna's motion for partial summary judgment on the copyright infringement claim is denied, and Gianna's motion for summary judgment or partial summary judgment as to Harrah's counterclaim is denied.

## BACKGROUND

Gianna, Inc., ("Gianna") is a minority (female) owned company formed by plaintiff Jane Galiano ("Galiano") to seek design consulting work with Harrah's when Harrah's first opened its New

DATE OF ENTRY

MAY 1 1 2004

Fee_____
Process____
X  Dktd____
CtRmDep.____
Doc. No. 278

Orleans casino. Galiano was president of Gianna. In August, 1995, Gianna and Harrah's entered into a "Design Consulting Agreement" (the "Agreement") pursuant to which Gianna was to provide design services for uniforms for employees of various Harrah's casinos.[1]

Pursuant to the Agreement, Galiano met with several of Harrah's employees to discuss designs for the uniforms. The meeting resulted in the creation of several sketches of proposed uniforms.[2] Gianna did not have the capability to produce patterns of the sketched designs or to manufacture the finished garments. It entered into a contract with Uniform Ideas, Inc., during the period from September 1, 1995, to August 31, 1996, to manufacture Gianna designed uniforms selected by Harrah's. Additionally, Gianna approached another of Harrah's suppliers, All-Bilt Uniform Fashion ("All-Bilt"), about constructing and manufacturing some of its uniform designs for Harrah's. No contract was signed, but All-Bilt produced some prototypes of Gianna designed uniforms for Harrah's approval, and sold some of the uniforms to Harrah's.

The Agreement between Gianna and Harrah's expired by its own

---

[1]The written Agreement consisted of two letters: a letter from Gianna to Harrah's dated August 28, 1995, and a letter from Harrah's to Gianna dated September 14, 1995, in which Harrah's accepted Gianna's proposed agreement with modifications which were accepted in turn by Gianna.

[2]Apparently, the sketches were drafted by an artist that accompanied Galiano to the meeting. Defendants allege that the uniform designs depicted in the sketches were the result of a collaboration of ideas among Galiano and the Harrah's employees, Connie Albright, Jan Starnes and Ellen Dixon.

terms on December 31, 1995.  By that time several disputes had
arisen between the parties.  Negotiations for an extension of the
Agreement, or creation of a new one, failed.  The parties reached
a purported settlement agreement on May 6, 1996.

Several years later, on October 28, 1999, Gianna sought and
received a Certificate of Registration, No. VAu 456-437, from the
U.S. Copyright Office for a collection of sketches entitled
"Uniform and Costume Collection submitted to Harrah's Operating
Company, Inc." ("the Collection").  Rec. doc. 18, Annex G.  The
Certificate of Registration identifies the nature of the Collection
as "Artwork for Wearing Apparel", and classifies the work as "2-
dimensional artwork."  Jane Galiano is identified as the author of
the copyrighted work.  The Collection includes over fifty colored
and numbered illustrations. Rec. doc. 18, Annex E.  Most of the
illustrations depict uniform style shirts, blouses, vests, jackets,
pants, skirts, shorts and ensembles.  The Collection also includes
several illustrations of elaborate masquerade type costumes
identified as "environmental entertainers", about a dozen pages of
silkscreen artwork and one or two illustrations of unique head
gear.[3]

---

[3]It is difficult to tell if all of the sketches submitted to the court are
actually included in the copyrighted Collection because some of the sketches,
although numbered, dated and signed by Galiano, do not have the copyright
identification stamp affixed on the page containing the sketch.

Three months after the Certificate of Registration was issued, Gianna filed this complaint for damages arising from defendants' alleged breach of the purported settlement agreement[4] and copyright infringement pursuant to 17 U.S.C. § 101 et seq.[5] In Count I of the complaint Gianna alleges that within the three years prior to filing the complaint, Harrah's (1) reproduced the copyrighted work in copies; and (2) prepared derivative works based upon the copyrighted work. Complaint, ¶9. Harrah's counterclaimed against plaintiffs for fraud and misuse of the Copyright Office alleging that plaintiffs failed to disclose to the Copyright Office that the alleged copyrighted work was not entirely original. Rec. doc. 86.

In December, 2003, Harrah's filed this motion for partial summary judgment to dismiss the copyright infringement claim.[6]

---

[4]The settlement agreement set a lump sum payment and confirmed a scheme of royalties and to be made by the defendants to the plaintiffs in the event of the use of certain specified designs. The court granted defendants' motion for partial summary judgment dismissing plaintiffs' claim for breach of the May 6th settlement agreement and denied plaintiffs' cross motion for partial summary judgment on plaintiffs' claim to enforce the settlement agreement. Rec. doc. 189. The Fifth Circuit affirmed the district court's judgment on May 14, 2003, at C.A. No. 02-30587. Rec. doc. 199.

[5]Plaintiffs subsequently amended their complaint twice, first to add claims for breach of the original Design Consulting Agreement and for unjust enrichment, and second, for unfair trade practices.

[6]On September 29, 2000, rec. doc. 18, Gianna filed a motion for a partial summary judgment holding that plaintiffs' copyright is valid, that Harrah's had infringed on some of the "copyrighted designs", and had breached the settlement agreement dated May 6, 1996. The motion was denied. Rec. doc. 45. On April 20, 2001, plaintiffs filed a motion to dismiss Harrah's counterclaim or for a more definite statement. Rec. doc. 97. The motion was denied. Rec. doc. 101.

4

Harrah's argues (1) that it has not infringed on the copyright because it has not manufactured or produced any uniforms or costumes copied from or based on Gianna's designs, but merely purchased finished uniforms from a third party manufacturer; and (2) that Gianna's copyright does not extend to the designs for wearing apparel even if it is valid as to the "artwork" in the Collection depicting the wearing apparel designs.

In its cross motion for partial summary judgment on its copyright infringement claim, Gianna argues (1) that Harrah's did copy Gianna's designs when it ordered and purchased uniforms based on those designs from its suppliers, and (2) that the "substantial similarity" test proves copying of three groups of designs.

## ANALYSIS

I.                          **Summary Judgment**

A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 3d 265 (1986); Bridgmon v. Array Systems Corp., 325 F.3d 572, 576 (5th Cir. 2003); Fed. R. Civ. P. 56(c). An issue is material if its resolution could affect the outcome of the action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.

5

2d 202 (1986).  In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the  light  most  favorable  to  the  nonmoving  party.   *See* Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).  However, once a moving party properly supports a motion for summary judgment, the nonmoving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 311-12 (5th Cir. 1999), *quoting* Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047-48 (5th Cir. 1996).  The nonmoving party cannot satisfy its burden with "unsubstantiated assertions" or "conclusory allegations."  Id.

**II.**                    **Copyright Law**

The applicable provision of the United States Code provides that:

> Copyright protection subsists... in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.  Works of authorship include... pictorial, graphic, and sculptural works...."

17 U.S.C. § 102(a).  Furthermore, "[i]n no case does copyright protection for an original work of authorship extend to any idea... [or] concept..., regardless of the form in which it is described,

6

explained, illustrated, or embodied in such work." 17 U.S.C. §

102(b). Hence, at a very minimum an author must produce a work,

excluding ideas and concepts, that is both original and fixed in a

tangible medium in order to obtain copyright protection for the

work.

In particular, pictorial, graphic, and sculptural works can be

"two-dimensional and three-dimensional works of fine, graphic, and

applied art, photographs, prints and art reproductions, maps,

globes, charts, diagrams, models, and technical drawings, including

architectural plans." 17 U.S.C. § 101. Although facially broad in

scope, this category of copyrightable works is subject to one

exception - the copyrightable artwork must be separable from the

utilitarian aspects of the work. The statute specifically provides

that:

> Such works shall include works of artistic
> craftsmanship insofar as their form but not
> their mechanical or utilitarian aspects are
> concerned; the design of a useful article, as
> defined in this section, shall be considered
> a pictorial, graphic, or sculptural work only
> if, and only to the extent that, such design
> incorporates pictorial, graphic, or sculptural
> features that can be identified separately
> from, and are capable of existing
> independently of, the utilitarian aspects of
> the article.

17 U.S.C. § 101.

7

Section 106 enumerates the "exclusive rights" of the copyright

owner. The rights relevant here are:

> (1) To reproduce the copyrighted work in copies or phonorecords;
>
> (2) To prepare derivative works based upon the copyrighted work.

17 U.S.C. §106(1) & (2). Section 501 of the Copyright Act provides

the remedy for copyright infringement as follows:

> Anyone who violates any of the exclusive rights of the copyright owner as provided by Sections 106 through 122, or the author has provided in Section 106A(a) or who imports copies or phonorecords into the United States in violation of Section 602, is an infringer of the copyright or right of the author, as the case may be.

17 U.S.C. §501.

In <u>Teleprompter Corp. v. Columbia Broadcasting Sys. Inc.</u>, 415

U.S. 394 (1974), the United States Supreme Court addressed the

issue of copyright infringement as follows:

> Although the Copyright Act does not contain an explicit definition of infringement, it is settled that unauthorized use of copy-righted material inconsistent with the "exclusive rights" enumerated in § 1, constitutes copyright infringement under federal law. See 1 M. Nimmer, Copyright § 100, p. 376 (1973). Use of copyrighted material not in conflict with a right secured by § 1, however, no matter how widespread, is not copyright infringement.

8

Id. at 398 n.2. A decade later, the Supreme Court reaffirmed that "fair use" of copyrighted works, that is, use that does not trespass on any of the copyright owner's exclusive rights enumerated in the statute, is not infringement. Sony Corp. v. Universal City Studios, 464 U.S.417, 433 (1984).

**III.     Cross Motions for Partial Summary Judgment**

A.   Proof of Copyright Infringement

In order to prove copyright infringement, the plaintiffs must prove (1) ownership of a valid copyright; and (2) actionable copying, which is the copying of constituent elements of the work that are copyrightable. Bridgmon, 325 F.3d at 576 (citations omitted).

"Copyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with the applicable statutory formalities." Engineering Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1340 (5th Cir. 1994)(citation omitted); Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 47 (5th Cir. 1993). However, the Copyright Office can register only works where "the material deposited constitutes copyrightable subject matter." 17 U.S.C. § 410(a).

Not all copying is copyright infringement. Engineering

9

Dynamics, Inc., 26 F.3d at 1340-41, *citing* Feist Publications, Inc., v. Rural Tel. Service Co., 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991). A determination of whether actionable copying has occurred requires two inquiries: (1) whether the alleged infringer copied, or "actually used the copyrighted material in his own work"; and (2) whether there is "substantial similarity" between the copyrighted work and the allegedly infringing work. Id. (citations omitted); Bridgmon, 325 F.3d at 576. "Copying is generally established by proving that the defendant had access to the copyrighted material and that there is a substantial similarity between the two works." Norma Ribbon & Trimming, Inc., 51 F.3d at 47. In this circuit, a finding of copyright infringement requires a finding of substantial similarity based on actual side-by-side comparison of the two works. Bridgmon, 325 F.3d at 577.

The issue of copyrightability is for the Court to decide, not the trier of fact. *Nimmer*, §12[10][B][3]; Hoeling v. Universal City Studios, Inc., 618 F.2d 972, (2nd Cir.), *cert. denied*, 449 U.S. 841 (1980). Because of the complex factual scenario present in this case, the Court will address both prongs of the infringement analysis.

10

1. Does Gianna Own a Valid Copyright on its Uniform Designs?

It is undisputed that Gianna complied with the applicable statutory formalities. For the purposes of its analysis of these cross motions for partial summary judgment as to Gianna's copyright infringement claim, the court assumes at a minimum that Gianna owns a valid copyright on the two dimensional "artwork for wearing apparel" included in the Collection.

*(a) Are the clothing designs depicted in the Collection copyrightable?*

Harrah's argues that clothing designs are not copyrightable, citing <u>Knitwaves, Inc. v. Lollytogs Ltd., Inc.</u>, 71 F.3d 996, 1002 (2nd Cir. 1995); <u>Eve of Milady v. Impression Bridal, Inc.</u>, 957 F.Supp. 484, 487 (S.D.N.Y. 1997); <u>Whimsicality Inc. V. Rubies' Costume Co., Inc.</u>, 891 F.2d 452 (2nd Cir. 1989), and 17 U.S.C. § 411. It contends that only the "artwork", that is, the illustrations themselves, are entitled to copyright protection, not the uniform designs depicted in the illustrations.

Gianna argues that its copyright extends to the uniform designs depicted by the illustrations in the copyrighted Collection.[7] The threshold question is: Does Gianna's copyright

---

[7] The court notes that the copyright notice stamped on each illustration in the Collection, signed and dated by Galiano, states: "Illustration may not be reproduced in whole or in part in any form whatsoever."

11

extend to the designs for the uniforms and costumes depicted in the artwork included in the Collection?

Clothing designs are not copyrightable. Whimsicality, 891 F.2d at 454, *citing* 17 U.S.C. §410(c)(1982); Fashion Originators Guild v. FTC, 114 F.2d 80, 84 (2ⁿᵈ Cir. 1940)(L. Hand, J.), *aff.d* 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941); 1 Nimmer on Copyright, § 2.08[H], at 2-138.8; *see also* Jack Adleman, Inc. v. Sonners & Gordon, Inc., 112 F.Supp. 187, 188 (S.D.N.Y. 1934). In Jack Adleman, as in this case, the plaintiff alleged that the defendant infringed plaintiff's copyright of a drawing of a dress by making and selling a dress like the one depicted in plaintiff's drawing. Id. The court observed that it was the drawing which is assumed to be the copyrighted work of art, not the dress, and while the copyright gives plaintiff the exclusive right to make copies or reprints of the drawing only, "it gives the copyright owner no monopoly of the article illustrated." Id.

Over fifty years after the Adelman case was decided, in 1991, the Copyright Office expressly addressed the Whimsicality case, along with several other recent cases addressing the copyrightability of costumes. The Copyright Office noted that in Whimsicality, the Second Circuit had denied a copyright action

12

alleging infringement of the designs of six costumes based on the plaintiff's misrepresentation to the Copyright Office that the registered works were "soft sculptures", and failure to disclose that the works were actually wearable costumes. 56 FR 56350-02, *56351 (Nov. 5, 1991), Copyright Office Notice [Docket No. RM 91-5A] Registrability of Costume Design. The Copyright office explained as follows:

> The Copyright Office has generally refused to register claims to copyright in three-dimensional aspects of clothing or costume design on the ground that articles of clothing and costumes are useful articles that ordinarily contain no artistic authorship separable from their overall utilitarian shape. A two-dimensional design applied to the surface of the clothing may be registered....
>
> The 1976 House Report confirms that "ladies' dress" and other clothing cannot be protected by copyright merely on the ground that the appearance of the useful article is determined by aesthetic considerations.

Id.

Nevertheless, Gianna insists that Whimsicality is no longer good law because the more recent Segrets and Knitwaves cases held that the clothing designs at issue in those cases, both involving sweaters, were given copyright protection. In particular, Gianna argues that its motion for partial summary judgment "follows

13

closely the blueprint of the First Circuit" in <u>Segrets, Inc. v.</u> <u>Gilman Knitwear</u>, 207 F.3d 56, (1st Cir. 2000),[8] and claims that <u>Knitwaves, Inc. v. Lollytogs Ltd., Inc.</u>, 71 F.3d 996 (2nd Cir. 1995) further supports its argument. Gianna interprets the following language from both cases as supporting its contention that clothing and costume designs are copyrightable: "Since ... we compare *the designs of Knitwaves' sweaters and Lollytogs' sweaters as a whole, we need not rule here on [the] contention that the background stripes of Knitwaves' Leaf Sweater, taken alone, would be uncopyrightable.*" [ <u>Knitwaves</u>,] 71 F.3d 996, 1003, n.1; "*[t]he overall look of the sweater ...* remained substantially the same." [<u>Segrets</u>, 42 F.Supp.2d 58] at 66; [... [T]he defendant] succeeded in its desire to retain the *overall look and feel of the Christie I sweater*". Id. at 67; ..."[t]he *design of the Christie II sweater* is also *strikingly similar in its overall look* to the design of the Blanket Stitch Sweater notwithstanding the difference in color..." <u>Id.</u> at 68. *Quotations from* Gianna's Reply Brief in Support of Plaintiffs' Motion for Partial Summary Judgment on Three Specific Groups of Designs ("Gianna's Reply Brief") at p. 5 [Emphasis in

---

[8] Gianna cites both <u>Segrets, Inc. v. Gilman Knitwear Co., Inc.</u>, 207 F.3d 56, (1st Cir. 2000), and the district court case, <u>Segrets, Inc. v. Gilman Knitwear</u>, 42 F.Supp.[2d] 58, (D.Mass. 1998), in its memoranda.

14

Gianna's Reply Brief.]

At oral argument, Gianna's counsel cited the following language from the <u>Knitwaves</u> case: "Given the overwhelming similarity of the sweaters' 'total concept and feel,' we are not convinced by Lollytogs' lengthy recitation of differences." 71 F.3d at 1003-4. His argument is that the Court's reference to the "total concept and feel" constitutes a new statement of the law to the effect that when an article of clothing contains both copyrightable and uncopyrightable elements, the separability analysis is not necessary. In such cases, as in this case, the court must examine only the "total concept and feel" of the article of clothing to determine if the defendant's work is "substantially similar" to the plaintiff's work to determine if the copyright has been infringed.

The fallacy of Gianna's argument is that it fails to make the analytical distinction between the "separability" analysis and the "substantial similarity" analysis. The "separability" analysis goes to the question of whether a plaintiff owns a valid copyright, the first prong of the infringement analysis. The "substantial similarity" analysis assumes that a plaintiff owns a valid copyright, and goes to the question of whether a defendant has, in

15

fact, copied the protected work, the second prong of the infringement analysis. In both the <u>Segrets</u> and <u>Knitwaves</u> cases, the language cited by Gianna's counsel was used in the Courts' "substantial similarity" analysis. These cases do not support Gianna's statement of the law, and both are distinguishable from this case on their facts.

In <u>Segrets</u>, the validity of the copyrights at issue was not in dispute. <u>Segrets</u>, 207 F.3d at 60. Segrets' copyrights covered knitwork fabric designs consisting of unique color combinations and patterns, and patterns of knit stitching with a distinctive "southwestern" and "primitive" motif used in constructing the sweaters. <u>Id.</u> at 59. It was the "Blanket Stitch" and the "Primitive Patterns" fabric designs that received copyright protection, not the design of the sweaters themselves as Gianna claims.[9]

---

[9] Some blame for confusion must be laid at the feet of courts which sometimes tend to refer casually to a copyrighted "sweater design" or "clothing design" rather than identifying with more linguistic precision that it is the artwork applied to or the fabric design from which the article of clothing is constructed that is protected by a copyright, not the design of the article of clothing itself. However, in <u>Segrets, Inc. v. Gilman Knitwear Co., Inc.</u>, 42 F.Supp.2d 58, 75 (D.Mass. 1998), the court observed that it was the expression of the idea, not the idea itself, of creating a "sweater patterned with a southwestern feel or look" that is protected by a copyright. <u>Id.</u> "Thus, Segrets selection and arrangement of particular patterns placed in rows of colors using particular stitches in the Blanket Stitch and Primitive Patterns designs receives copyright protection...." <u>Id.</u> At note 37, the court further explained as follows: "More explicitly, it is the arrangement and placement of the stitches and patterns into rows of various sizes and widths as opposed to the actual use

16

The issue on appeal in Segrets was whether defendant Gillman's use of Segrets' "Blanket Stitch" and "Primitive Patterns" sweaters as models for its sweaters infringed on the Segrets' copyrights. Id. at 60. Gillman admitted that its designer purchased both a "Blanket Stitch" and a "Primitive Patterns" sweater and sent them to its overseas manufacturer to use in creating "knock-off" sweater designs. It argued on appeal that it did not infringe on the copyrights because "referring to a copyrighted garment during the design of another garment does not create an inference of infringement." Id. at 61. Moreover, Gillman argued that its designers altered some of the Segrets' sweaters' color combinations and changed some buttons on the Gillman sweaters. The First Circuit, however, concluded that there was direct evidence that Gillman had indeed copied Segrets' copyrighted "sweater designs" and infringed on Segrets' copyrights. Id. In reaching its decision, the First Circuit applied the "ordinary observer"[10] test to determine whether the original and the copied sweaters were

---

of a particular stitch which receives protection."    Id., n. 37, citations omitted. Gillman did not appeal the district court's summary judgment holding that the copyrights on the fabric designs were valid. 207 F.3d at 61.

[10]"The test is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." Segrets, 207 F.3d at 62, quoting Concrete Mach. Co. V. Classic Lawn Ornaments, Inc., 843 F.2d 600, 607 (1st Cir. 1988).

17

"substantially similar."

Like Segrets, the plaintiff in <u>Knitwaves</u> had obtained copyright registration not on its "sweater designs", but on the artwork used on two of its sweaters, the Squirrel Cardigan and the Leaf Sweater. <u>Knitwaves</u>, 71 F.3d at 1000.  Again, the distinction is crucial. Knitwaves' two sweaters were part of its "Ecology Group" collection of children's clothing presenting "ecology" themes in "fall" colors, unusual in children's clothing.  <u>Id.</u> at 999.  The copyrighted artwork on the Leaf Sweater consisted of multicolored stripes with puffy leaf appliques applied to the sweater front.  The "Squirrel Cardigan" copyrighted artwork consisted of a squirrel and autumn leaves appliqued onto the sweater's multipaneled front.  <u>Id.</u>

In <u>Knitwaves</u>, the Second Circuit stated the law as follows:

> As "'useful article[s]' ... having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information," 17 U.S.C. § 101, clothes are not copyrightable.  <u>Whimsicality, Inc., v. Ruby's Costume Co.</u>, 891 F.2d 452, 455 (2nd Cir. 1989).  In contrast, fabric designs, such as the artwork on Knitwaves' sweaters, are considered "writings" for purposes of copyright law and are accordingly protectible.  <u>Folio Impressions, Inc. V. Byer California</u>, 937 F.2d 1991); [other citations omitted].

<u>Id.</u> at 1002.  Lollytogs did not dispute the validity of Knitwaves' copyrights on the sweaters' artwork or that it copied Knitwaves'

artwork designs. Instead, it argued that it had altered the copyrighted artwork enough so that the artwork on its sweaters was not "substantially similar" to that on Knitwaves' sweaters. The Second Circuit disagreed.

To reiterate, pursuant to the statute and the jurisprudence interpreting the statute, as well as the Copyright Office's own publications, clothing designs are not copyrightable.

*(b) Are the artistic design elements of the clothing designs depicted in the Collection separable from the utilitarian aspects of the article of clothing, therefore copyrightable?*

Gianna next argues that the uniform designs are copyright protected because the designs incorporate artistic expressions which can be separated conceptually from the utilitarian aspects of the useful article of clothing. See 17 U.S.C. § 101. It cites National Theme Productions, Inc. v. Jerry B. Beck, Inc., 696 F.Supp. 1348 (S.D.Cal. 1988), in support of its argument.

In Beck, the designer and manufacturer of masquerade costumes brought a copyright infringement action against a competitor. Unlike the Knitwaves and Segrets cases, the defendant challenged the validity of plaintiff's copyright registration, as has Harrah's in this case. The plaintiff, NTP, had deposited the packaging inserts for four masquerade costumes with the copyright office. Beck, 696

19

F.Supp. at 1352.  The inserts served as labels for the costumes and each contained a photograph of a model wearing the costume. According to the inserts, "the copyrights allegedly protect: 'Text, Graphics[,] Photographs, and Original Artistic Expression of Accessory Items Shown in Photographs - No claim is made on designs of clothing, but in designs of artwork on clothing[.]'"  Id.

The defendant, Beck, argued that the costumes contained no separable artistic elements which would entitle the costumes to copyright protection.  Id.  The district court addressed the issue as follows:

> The costumes are copyrightable, if at all, to the extent that they have features which can be identified separately and are capable of existing independently as a work of art. Fabrica, Inc. v. El Dorado Corp., 697 F.2d 890, 893 (9th Cir. 1983).  The features only need be conceptually separable from the utilitarian functions of the garments to be entitled to protection under copyright law.  Kieselstien-Cord v. Accessories by Pearl, Inc., 632 F.2d 989, 993 (2nd Cir. 1980).
>      The objective behind the conceptual separability test is to distinguish copyrightable applied art from uncopyrightable industrial design.  See H.R.Rep. No. 1467, 94th Cong., 2d. Sess. 54, reprinted in 1976 U.S.Code Cong. & Admin. News 5659, 5667.

Id. at 1352-53.

Four costume designs were at issue in Beck: the Tigress,

Rabbit-In-Hat, Magic Dragon and Pampered Pup. Each was comprised of garments and/or accessory items.    Id. at 1353.    The court observed that the costumes "lie on the margin of utility", and that their "primary purpose is to permit the wearer to masquerade."  Id. "The costumes' design and form have little to do with their suitability as wearing apparel."    Id.    The court noted that the costumes did not function particularly well as articles of clothing to such an extent that the wearer was advised to remove the accessory headgear and footwear for the Magic Dragon and the Pampered Pup before trying to sleep in the underlying pajamas, and that the other two costumes actually required the masquerader to wear other more conventional garments under the costume or "to risk indecent exposure."  Id.  The Beck court held that the costumes were entitled to copyright protection as applied art after concluding that "[t]he costumes' artistic features simply do not advance their utilitarian purpose as clothing or accessories."  Id. at 1354.  See also,  Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502 (7th Cir. 1994) (silkscreen animal designs on duffel bags given copyright protection); and Animal Fair, Inc. v. Amfesco Industries, Inc., 620 F.Supp. 175 (D.C.Minn. 1985) (slipper resembling a bear's paw given copyright protection).

21

Gianna relies on the opinion of its expert, Bonnie D. Belleau, Ph.D.,[11] for its argument that its uniform designs are entitled to copyright protection because they contain elements of design which are purely aesthetic and which are conceptually separable from the utilitarian aspects of the design. Dr. Belleau's Report, in the section entitled "Assessment of Designs", identifies and describes "unique design features [that] are artistic characteristics that are not critical to the functional aspect of the garments[.]" Based on her assessment, Dr. Belleau opines that the collection qualifies for a copyright.[12]    Report, p. 22 of 56.

Dr. Belleau identifies artistic design features of the garments at issue such as the logo cuff, a piped mandarin collar with a notch at center front, the inverted center back pleat with a star at the top, jacquard fabric trim on a concealed button or snap placket, jacquard fabric stripes down either side, piped cuff trim, princess lines in front and back, star buttons, a flange at the shoulder, concentric flanges on the jacket front, asymmetric closures, button

---

[11]Professor of Apparel Design/Production, School of Human Ecology, Louisiana State University, Baton Rouge, Louisiana.

[12]The court relied on Dr. Belleau's report dated January 7, 2002. Harrah's objects to an Addendum to that report dated February 11, 2004, first produced as an exhibit to its motion for partial summary judgment on the copyright infringement claim dated February 13, 2004. Because the Addendum to the expert report was first produced long after the cut off date for production of expert reports, the Addendum dated February 13, 2004, is stricken from the record.

22

designs, bib front, placement of buckle closures, color blocking, and combinations of fabrics, style lines, trim, and silhouette. While not denying the aesthetic value of these artistic design features, they are still just that - design features of useful wearing apparel. None of these artistic design features has intrinsic value as a work of art that can exist independently of the wearing apparel on which it is used. For example, the inverted pleat with a star at the top has no intrinsic artistic value independent of the shirt on which it is used. Nor do the concentric flanges on the front of the Gold Card jacket, the piped mandarin collar with the notch at center front of the Change/Slot Host shirt, or the buckle closures on the Range Vest, as attractive as they may be as used on the articles of clothing.

To again quote the Copyright Office, "clothing cannot be protected by copyright merely on the ground that the appearance of the useful article is determined by aesthetic considerations." Notice, 56 FR 56350-02, *56351. The fact that a shirt is just like any other shirt without the particular artistic design features does not help Gianna. While the unique pleats, collars, closures, etc., are not critical to the functional aspect of a garment, they nevertheless do advance the utilitarian purpose of the garment.

23

Moreover, Gianna cannot copyright the idea to use a particular design feature in a particular way on a particular article of clothing. See 17 U.S.C. § 102(b). It cannot copyright the idea to embroider Harrah's logo (on which Harrah's owns a copyright) on the cuff of a shirt, or to use that logo on doubloons or beads, or in any other application. Nor can it copyright the idea to use design features such as princess seams, concentric flanges, asymmetrical closures, buckle closures, inverted pleats, a special braid, or particular color combinations in a particular application on a particular garment, no matter how artistically unique or aesthetically pleasing those design features may be.

The artistic design features of the uniforms depicted in the Collection illustrations cannot be conceptually separated from their function to advance the utilitarian purpose of the clothing.[13] There is no genuine issue of material fact at issue, and as a matter of law, Gianna's copyright of the Collection of "Artwork for Wearing Apparel" does not extend to the designs for the wearing apparel

---

[13]On November 21, 2000, the court denied Gianna's motion for partial summary judgment to confirm the validity of its copyright. Rec. doc. 45. The court concluded at that time that "[a] genuine issue of material fact exists with regard to whether separable, artistic elements of the clothing are present which were copyrightable." The court also noted that the copyright registration was for the sketches themselves, not the actual garments. Order and Reasons, p. 10. Over three years of extensive and intensive discovery has been accomplished since that time, and the court now has before it cross motions for summary judgment on the issue rather than only Gianna's motion for summary judgment on the issue.

24

depicted in the illustrations.[14]

However, copyright protection has been extended to designs and
silkscreen artwork affixed to or applied to clothing or other items,
and to fabric designs.    Knitwaves, 71 F.3d at 1000; Segrets, 207
F.3d at 59; Blue Fish Clothing, Inc., v. Kat Prints, 1991 WL 71113,
*2 (E.D.Pa.), *citing* Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,
274 F.2d 487 (2nd Cir. 1960).    Protection has also been extended to
some masquerade costume artwork and accessories which can be
identified separately and are capable of existing independently of
the wearable costumes.    Beck, 696 F.Supp. at 1352.    To the extent
that Gianna's copyright registration is valid on the two dimensional
artwork, that is, the illustrations themselves that comprise the
copyrighted  Collection,  the  silkscreens  may  be  copyright
protected.[15]    The Court therefore moves to the second prong of the
infringement analysis.

    2.    Did Harrah's Commit Actionable Copying of Copyrightable
        Works in the Collection?

---

[14]It is therefore not necessary for the court to address at this time
Harrah's contention that it did not copy or manufacture any of the wearing
apparel, or Gianna's argument that the court should apply the "ordinary observer"
test which would prove that some of Harrah's uniforms are substantially similar
to Gianna's designs.

[15]In its counterclaim, addressed *infra* at Part IV, Harrah's challenges the
underlying validity of the copyright registration based on Gianna's alleged fraud
or misuse of the Copyright Office.

"The Copyright Act does not expressly render anyone liable for infringement committed by another." Sony, 464 U.S. at 434. Nevertheless, the Supreme Court observed that "vicarious liability is imposed in virtually all areas of the law, and the concept of contributory infringement is merely a species of the broader problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another." Id. at 435. Noting that "the lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn....", quoting the District Court at 480 F.Supp, at 457-458, the Court explained that "an infringer is not merely one who uses a work without authorization by the copyright owner, but also one who authorizes the use of a copyrighted work without actual authority from the copyright owner." Id. at n. 17. Nevertheless, direct infringement, contributory infringement and vicarious liability are separate causes of action and each requires separate elements of proof. See Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc., 982 F.Supp. 503, 513 (N.D.Ohio 1997)("There would be no reason to bifurcate copyright liability into the separate categories of direct and contributory if any remote causal connection to copyright infringement could be analyzed under theories of direct

26

infringement.")

Gianna appears to argue that Harrah's "use" of its copyrighted work consitutes a sort of "general" copyright infringement, and that even if Harrah's did not directly infringe on Gianna's copyrighted work, it is still liable for "contributory infringement", or is vicariously liable for All-Bilt's infringement. It asserts that its complaint alleging direct infringement and its two amended complaints sufficiently plead these related causes of action, and if not, that it should be allowed to amend its complaint to specifically plead them.

Harrah's argues that Gianna's original and two supplemental and amending complaints allege only direct infringement and are insufficient to plead contributory infringement or vicarious liability. It further argues that now, nearly four and one half years after its original complaint, after two supplemental and amended complaints and three years of exhaustive discovery, it is too late for Gianna to amend its complaint yet again to add new causes of action, and that any such amendment would be highly prejudicial to Harrah's.

In its original complaint, Gianna claims that Harrah's (1) reproduced the copyrighted work in copies and (2) prepared

27

derivative works based on the copyrighted works throughout its gambling empire.[16] Complaint, ¶9A & B. Gianna's first Supplemental and Amended Complaint alleges, at ¶ 3., that it is entitled "to damages for the unjust enrichment of defendants, by reason of defendants' appropriation and use of plaintiff's designs." Gianna's second Supplemental and Amended Complaint alleges, at ¶¶ 2 and 3, that Harrah's "ordered from manufacturers designs which are either exact copies, derivatives, or substantially similar" to Gianna's designs, which constitutes a violation of the Louisiana Unfair Trade Practices and Consumer Protection Law.

### a. Direct Infringement

In order to prove the second prong of the copyright infringement analysis, that is, copying of copyrighted work, a plaintiff must prove both that the defendant (1) copied the plaintiff's copyrighted work as a factual matter (either through

---

[16]Gianna's second allegation that Harrah's prepared derivative works based upon the copyrighted work "throughout its gambling empire" (Complaint, ¶9B) is based on its claim that Harrah's produced and used variations of the uniform designs included in the Collection. Because copyright protection does not extend to designs for the uniforms, and Gianna does not allege that Harrah's prepared derivations of its silkscreen artwork, this allegation is moot.

Although the issues are not presently before the court, it also appears that the court's holding that Gianna does not have a monopoly on the uniform designs in the Collection effectively moots Gianna's unjust enrichment claim, which is based on Harrah's alleged "appropriation and use" of Gianna's designs but does not indicate how Harrah's was enriched at Gianna's expense, as well as Gianna's unfair trade practices claim, which is based on the allegation that Harrah's simply "ordered" designs that were copied from Gianna's designs.

direct or indirect evidence), and (2) that the copying of the copyrighted work was so extensive that it rendered the infringing and copyrighted works "substantially similar." Segrets, 207 F.3d at 60. A direct infringer must actively engage in one of the statutorily proscribed activities to violate the statute. Russ Hardenburgh, Inc., 982 F.Supp. at 512.

Harrah's argues that after more than three years of discovery which produced hundreds of pages of deposition testimony and thousands of pages of documents, Gianna has produced no evidence that Harrah's itself ever reproduced, manufactured or prepared derivative copies of any of Gianna's copyrighted work, therefore its "use" of any copyrighted work is not proscribed by § 601 of the Copyright Act. According to Harrah's, neither its ordering and purchase of finished uniforms or any other items from its suppliers, nor its "use" of those uniforms or other items in its casinos, constitute direct infringement.

Gianna has not alleged that Harrah's used any of the elaborate "environmental entertainer" masquerade costumes or headgear depicted in the Collection illustrations, but has produced the following as

29

evidence:[17] (1) photographs of plastic cups bearing silkscreen illustration H-1020 of the Collection; (2) copies of All-Bilt production documents showing a shirt bearing a cascading coin design depicted on the shirt at illustration H-1055 of the Collection; and (3) photographs of a cocktail server's uniform (illustration H-1016) bearing a silkscreen illustrations H-1017 and H-1018. Rec. docs. #241, Ex. 5; # 264 Exs. 11-13; #18 Ex. "K". Again, Gianna's argument skips over the first prong of the analysis and relies on the "substantial similarity" of Harrah's uniforms to the uniforms depicted in its Collection. It offers no evidence that Harrah's itself copied any of the silkscreen artwork, only that All-Bilt may have.

Even assuming, for purposes of this analysis, that the

_____

[17]Gianna's memoranda and argument rely heavily on an in-house Harrah's magazine entitled "Harrah's People", published for Winter/Spring 1996, which details a national uniform campaign to develop a portfolio of uniform styles from which any Harrah's casino could select uniforms that would be appropriate for that particular casino's theme, but still be coordinated with all other Harrah's casinos. Rec. Doc. # 241, Ex. 3. While the magazine mentioned only Harrah's employees Jan Starnes and Connie Albright, in included photographs of prototype uniforms taken from Gianna's Collection. The magazine states that prior to 1984, Harrah's had its own manufacturing plant and manufactured its own uniforms. It sold the plant in the mid 1980s, and thereafter purchased uniforms from suppliers who supplied the rest of the casino industry. Gianna argues that this publication is proof that Harrah's selected various of Gianna's uniform designs from the Collection and directed All-Bilt to produce those uniforms for Harrah's. However, the contents of the magazine do not provide any evidence that Harrah's directly reproduced copies of Gianna's silkscreen artwork. The national uniform campaign was terminated as unworkable in 1998. Since the uniform designs themselves are not copyright protected, the magazine cannot be evidence that Harrah's directly infringed on a copyright of those uniforms.

silkscreen artwork included in the Collection is copyright protected, Gianna has not produced any evidence that Harrah's itself actually copied or reproduced any silkscreens on any uniforms or other items. Gianna has not shown that Harrah's "appropriation and use" of, or its ordering of any silkscreen artwork from third party manufacturers, was the result of its violation of any of the owner's exclusive rights enumerated in the Copyright Act.

   b. *Contributory Infringement and Vicarious Liability*

"[C]ontributory infringement occurs when a defendant induces, causes, or materially contributes to the infringing conduct of another, with knowledge of the infringing activity." Gordon v. Nextel Communications and Mullen Advert., 345 F.3d 922, 925 n.1 (6th Cir. 2003); Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2nd Cir. 1971). To prevail on a claim of contributory infringement, a plaintiff need not name the actual infringer in the complaint, but must nevertheless prove the direct infringement. Sony, 464 U.S. at 434. The plaintiff must also prove that the contributory infringer was in a position to control the infringing party's use of the copyrighted works, and authorized the use of the copyrighted works without permission from the copyright owner. Id. at 437, *citing* Kalem Co. v. Harper

31

Brothers, 222 U.S. 55 (1911) (J. Holmes); Gershwin Publishing Corp., 443 F.2d at 1163. A plaintiff must therefore prove (1) that the defendant had knowledge of the infringing activity, and (2) that the defendant's participation in the infringing activity was substantial. Gershwin Publishing Corp., 443 F.2d at 1162.

Vicarious liability requires proof that a defendant (1) has the right and ability to supervise the infringing conduct, and (2) has an obvious and direct financial interest in the infringement. Gordon, 345 F.3d at 925; *citing* Shapiro, Bernstien & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2nd Cir. 1963). Both of the two independent requirements must be shown, and a defendant's lack of knowledge of the infringement is irrelevant. Id.

Gianna's original and amended complaints are clearly addressed to Harrah's alleged "use" of the uniform designs, which are not copyright protected. There is no allegation of contributory infringement or vicarious liability. Gianna did not sue All-Bilt (or any of Harrah's other suppliers) for copyright infringement, nor has it alleged that All-Bilt copied any of its silkscreen artwork when it manufactured and sold uniforms to Harrah's. Assuming that All-Bilt copied the cascading coin design and the mermaid or shell design, Nowhere in the pleadings does Gianna allege that Harrah's,

All-Bilt, or any other supplier or manufacturer knew that the silkscreen artwork may have been copyright protected when it was reproduced.    Nor does Gianna's complaint allege how Harrah's directed or participated in the infringing actions; how Harrah's had the right and ability to control All-Bilt's actions; or how Harrah's had any direct financial participation in or received any direct financial benefit from any third party's infringing acts.    It merely alleges that Harrah's "ordered" and "appropriated and used" the designs.

Gianna's complaint and amended complaints failed to allege facts supporting the necessary elements of contributory infringement or vicarious liability.    While F.R.Civ.P. 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief", it must nevertheless "allege all of the elements of a right to recover against a defendant."    <u>Tuchman v. DSC Commincations Corp.</u>, 14 F.3d 1061, 1067 (5th Cir. 1994); <u>Religious Technology Center</u>, 907 F.Supp. at 1382 ("[P]laintiffs' failure to allege a financial benefit is fatal to their claim for vicarious liability."); <i>see also</i> <u>Conley v. Gibson</u>, 355 U.S. 41 (1974).

Gianna amended its complaint twice to add new causes of action,

33

the last time on February 27, 2002, two years after the original complaint was filed. By Court Order, the time for amendments to pleadings expired on April 10, 2002. Rec. Doc. 172. In the intervening years, numerous depositions have been taken generating hundreds of pages of testimony, and discovery has produced literally thousands of pages of exhibits, most of which are apparently from All-Bilt's production and sales records. Harrah's has spent the last four years litigating, and filed this motion for partial summary judgment, based on Gianna's complaints as they were filed. This litigation and the accompanying discovery has proceeded too far along, and there have been no changes in the law or in the relevant facts, that would justify allowing Gianna to add at this late date new causes of action that could have been added long ago. Such an amendment is untimely and would be unfairly prejudicial to Harrah's.

## IV. **Gianna's Motion for Summary Judgment on Harrah's Counterclaim**

Harrah's counterclaim alleges that Gianna misused and perpetrated a fraud on the Copyright Office when Galiano claimed to be the sole author of all illustrations in the Collection, and when it represented that the copyright was for the artwork. Gianna filed a motion for summary judgment dismissing the counterclaim or, in the alternative, partial summary judgment dismissing the

34

allegation of fraud.

Possession of a copyright registration certificate creates a rebuttable presumption that the work in question is copyrightable. Whimsicality, 891 F.2d at 454, *citing* 17 U.S.C. §410(c)(1982); Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45 (5th Cir. 1993). While the presumption generally is not overcome by an "innocent misstatement", it can be overcome by proof of deliberate misrepresentation. Id. at 454-455, *citing* M. Nimmer & D. Nimmer, 2 Nimmer on Copyright § 7.20, at 7-198 (1989). It can also be overcome by proof that the copyrighted work is not original. Norma Ribbon, 51 F.3d at 47. "'Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.'" Id., *quoting* Fiest Publications, Inc., v. Rural Tel. Serv. Co., 499 U.S. 340, 345, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991)(citing 1 M. Nimmer & D. Nimmer, *Copyright* §§ 2.01[A], [B] (1990).

Harrah's argues that Gianna deliberately misrepresented facts to the Copyright Office in order to obtain copyright registration on the sketches referred to as "artwork for wearing apparel" when the intention was to gain copyright protection for clothing designs

35

which are not copyrightable, and then use that copyright to justify this lawsuit. Harrah's also argues that Galiano's claim to original authorship of the entire Collection was deceptive because the "Smuggler's Cove" silkscreen design (illustration H-1113) was derivative of a prior work by another artist created for Harrah's New Orleans Casino interior (see rec. doc. # 239, Ex. B), and that Harrah's logo, on which Harrah's owns a copyright, was included in the designs for which she claims original authorship.

Gianna argues that Harrah's counterclaim fails because Harrah's identifies only two instances among the over fifty illustrations in which Gianna's artwork may be derivative. Moreover, Gianna contends that these designs and artwork were created pursuant to the Design Consulting Agreement between Gianna and Harrah's and that the derivative artwork, if it is derivative, was the result of the contractual relationship.

More importantly, Gianna argues that its claim of copyright protection for all of the uniforms and costumes depicted in the Collection is not a misuse of the copyright office because it did not deliberately misrepresent the nature of the work to the Copyright Office. It contends that on the application the work is titled "Uniform and Costume Collection Submitted to Harrah's

36

Operating Co., Inc.", and the nature of the work is identified as "Artwork **for** Wearing Apparel", therefore "[t]he application is plainly clear that plaintiff is copyrighting her designs for uniforms and costumes."[18]  Rec. doc. # 239, Gianna's Memorandum of Law in Support of Motion for Summary Judgment on Counterclaim, p. 3.  Gianna's memorandum also states that the Copyright Office corrected one minor problem during the registration process, but never raised the issue of whether "two dimensional artwork of costumes is copyrightable." Memorandum, p. 5.  The memorandum also refers to "notes of discussion with Copyright Office by Brian Glorioso" at Annex 4.[19]

Gianna again misses the point.  Two dimensional <u>artwork</u> for costumes is copyrightable. As addressed *supra*, the clothing/uniform designs depicted by that artwork in the Collection is <u>not</u> copyrightable.  Gianna's own argument in support of its motion for summary judgment on the Counterclaim raises a genuine issue of material fact as to whether Gianna's admitted attempt to do so was

---

[18]In its memorandum, Gianna repeatedly claims that it intended to and did copyright the uniform and costume designs illustrated in the two dimensional artwork that comprises the Collection.

[19]Annex 4 is not attached to the memorandum.  The court, however, located what appeared to be Mr. Glorioso's notes as an exhibit to Gianna's motion to strike Mr. Glorioso as a witness. Rec. doc. 225.

an "innocent misstatement" or a deliberate misrepresentation to the Copyright Office. If the facts show that Gianna, or more precisely, Gianna's counsel, who has practiced law for many years in this District, knew that the Copyright Office would not have given a registration certificate on the Collection if the nature of the work had been accurately described as "designs for uniforms and costumes" rather than two dimensional "artwork for wearing apparel", then the copyright may be invalid.    *See* Whimsicality, 891 F.2d at 456 ("[K]nowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action.")

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that the motion of JANE GALIANO and GIANNA, INC. for summary judgment dismissing Harrah's counterclaim or for partial summary judgment dismissing the allegation of fraud in Harrah's counterclaim (rec. doc. #239) be and is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the motion of JANE GALIANO and GIANNA, INC. for partial summary judgment on its copyright infringement claim as to three specific groups of designs (rec. doc. # 264) be and is hereby **DENIED**; and

38

**IT IS FURTHER ORDERED** that the motion of HARRAH'S OPERATING
CO., INC., for summary judgment as to JANE GALIANO and GIANNA,
INC.'s copyright infringement claim (rec. doc. #238) be and is
hereby **GRANTED**.

New Orleans, Louisiana, this _10th_ day of _May_ , 2004.


_____
**MARCEL LIVAUDAIS, JR.**
United States District Judge