

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 MAY 25  PM 5: 00

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| **Plaintiffs** | * | |
| | * | No. 00-0071 |
| versus | * | |
| | * | SECTION "E"(5) |
| HARRAH'S OPERATING CO., INC. | * | |
| and | * | JUDGE LIVAUDAIS |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| **Defendants** | * | MAGISTRATE CHASEZ |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MOTION FOR ATTORNEY'S FEES UNDER 17 U.S.C. §505

NOW COMES Harrah's Operating Co., Inc. and Harrah's Entertainment, Inc., defendants herein, and showing this court that they are the prevailing parties on a copyright claim asserted against them in the premise against them in the premises, that they are entitled to and pray for attorney's fees pursuant to 17 U.S.C. §505 in the amounts and for the reasons set forth in the accompanying Memorandum and Affidavit of their counsel of record.

Fee
Process
X Dktd
CtRmDep
Doc. No.

1

Movant's also ask for the costs and fees associated with bringing this motion.

Respectfully submitted,

**ADAMS AND REESE LLP**

Joseph W. Looney, T.A. (8773)
4500 One Shell Square
New Orleans, Louisiana 70139
Tel: (504) 581-3234

*Attorneys for Defendants, Harrah's Operating*
*Co., Inc. and Harrah's Entertainment, Inc.*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 25th day of May, 2004, I have served a copy of the foregoing pleading on counsel for all parties to this proceeding via facsimile and by hand delivery of same.

Joseph W. Looney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| **Plaintiffs** | * | |
| | * | No. 00-0071 |
| versus | * | |
| | * | SECTION "E"(5) |
| HARRAH'S OPERATING CO., INC. | * | |
| and | * | JUDGE LIVAUDAIS |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| **Defendants** | * | MAGISTRATE CHASEZ |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF HEARING

TO:    Sidney L. Shushan Esq.
       Guste, Barnett & Shushan, LLP
       639 Loyola Ave., Suite 2500
       New Orleans, LA 70113-7103

PLEASE TAKE NOTICE that Harrah's Operating Co., Inc. and Harrah's Entertainment, Inc. will bring on their Motion for Attorney's Fees as prevailing party under 17 U.S.C. §505 on _June 9_, 2004 at _10_ m. before the Honorable Marcel Livaudais, judge, United States District Court.

New Orleans, Louisiana this ___ day of May, 2004.

_____
JUDGE

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANE GALIANO and GIANNA, INC. | * | CIVIL ACTION |
| **Plaintiffs** | * | |
| | * | No. 00-0071 |
| versus | * | |
| | * | SECTION "E"(5) |
| HARRAH'S OPERATING CO., INC. | * | |
| and | * | JUDGE LIVAUDAIS |
| HARRAH'S ENTERTAINMENT, INC. | * | |
| **Defendants** | * | MAGISTRATE CHASEZ |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR AWARD OF ATTORNEY'S FEES

NOW COME, Harrah's Entertainment, Inc. and Harrah's Operating Co., Inc.

("Harrah's"), and file this their Memorandum in support of Motion for Award of Attorney's

Fees, and as grounds therefor would respectfully show the following:

**I.**

**CONSISTENT WITH THE PURPOSE OF THE COPYRIGHT ACT, THE DEFENDANTS ARE ENTITLED TO REIMBURSEMENT FROM PLAINTIFFS OF FULL COSTS AND ATTORNEY'S FEES.**

Harrah's prevailed on summary judgment as to Plaintiffs' copyright infringement and

related claims. Consistent with the purpose of the Copyright Act, Harrah's now moves for an

award of their attorneys' fees and costs pursuant to federal copyright law.

1

Under the Copyright Act of 1976, a district court has discretion to "allow the recovery of full costs by or against any party" in a copyright infringement action and, as a part of those costs, may award reasonable attorneys' fee to the prevailing party. *See* 17 U.S.C. § 505. In exercising its discretion regarding the award of attorneys' fees under the Copyright Act, a district court must treat prevailing defendants just as it would treat prevailing plaintiffs. *See Fantasy v. Fogerty*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed. 2d 455 (1994) (rejecting the "dual standard" approach to attorneys' fees awards adopted by some circuits whereby prevailing plaintiffs were generally awarded attorneys' fees as a matter of course but prevailing defendants were required to show that the original suit was frivolous or brought in bad faith), *appeal after remand*, 94 F.3d 553 (9th Cir. 1996) (affirming district court's award of $1,374,519 in attorneys' fees after grant of summary judgment in favor of defendants). An award of attorneys' fees to the prevailing party in a copyright infringement action is the rule rather than the exception. *See McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994) (attorneys' fees awarded to defendants who prevailed on summary judgment); *Micromanipulator Co., Inc. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985).

The United States Supreme Court has approved a list of several nonexclusive factors that district courts may use to guide their fee award analysis, "so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Fogerty*, 510 U.S. at 534 n.19, 114 S.Ct. at 1033 n.19. Those factors include "frivolousness, motivation, objective unreasonableness (both in factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3rd Cir. 1986)). A "successful defense of a copyright infringement action may further the policies of

2

the Copyright Act every bit as much as [a] successful prosecution of an infringement claim by the holder of a copyright." *Id.; see also, Lumiere (Rights), Ltd. v. Baker & Taylor, Inc.*, 116 F.3d 484 (9th Cir. 1997) (upholding an award of fees to defendants in hopes of "deter[ring] other such suits" where, although copyright infringement plaintiff was deemed not to have been in bad faith, defendants had nevertheless obtained "total success" on claims that, if not frivolous, were at least factually unsupported).

When the factors set forth in *Fogerty* and *Lieb* are applied to the facts of this case, an award of attorneys' fees and costs to the prevailing defendants is warranted under section 505 of the Copyright Act.

**A.    An award of attorneys' fees is proper because Plaintiffs' copyright infringement claims were objectively unreasonable both factually and legally.**

**1.    Objectively Unreasonable Conduct – Legally**

In this case the objective unreasonableness of Gianna's case is evident from the facts that also justify Harrah's counter-claim of misuse.  A copyright cannot be used "to secure an exclusive right or limited monopoly not grated by the [Copyright] Office, and a monopoly which it is contrary to public policy to grant." *Alcatel USA, Inc., v. DGI Tech., Inc.*, 166 F. 3d 772 (5th Cir. 1999).  Yet such strategy lies at the heart of and explains the purpose of this litigation. Plaintiffs' misuse here renders the claims an improper and prohibited distortion of the Copyright Act and objectively unreasonable.

The concept of copyright misuse grew out of an analogy to patent misuse.  The Supreme Court found patent misuse in a case that involved Morton Salt Company's suit to prevent a third party from selling salt tablets by relying on a patent it held for a salt-tablet dispensing machine. *Morton Salt Co. v. G.S. Suppiger,* 314 U.S. 488, 62 S. Ct. 402, 86 L. Ed 363 (1942).  Only the

3

machine was a patented item; the tablets were not within the scope of the patent. The Supreme Court found that *Morton* was misusing its patent to unlawfully restrain competition.

The Fourth Circuit was first to apply similar reasoning in the copyright context, in *Lasercomb America, Inc., v. Reynolds*, 911 F. 2d 970 (1990), recognizing that the monopoly power conveyed by a copyright must be restricted to the property covered by the copyright.

The Fifth Circuit held in *Alcatel* that the plaintiff "DSC has used its copyrights to indirectly gain commercial control over products DSC does not have copyrighted." *Id.* at 793. The court would not allow the plaintiff to gain a monopoly over microprocessing cards over which it had no patent or copyright. The plaintiff's copyrighted software was necessary to test any card, thus precluding the freedom to test the card. The plaintiff would have used that software copyright to prevent the defendant from developing its product, thereby securing for the plaintiff a limited monopoly over its uncopyrighted microprocessor cards. The Fifth Circuit threw out the plaintiff's infringement claim based on copyright misuse, reversing the district court's injunction.

Galiano's counsel's conduct of this case and her expert's focus on licensing makes clear that Galiano has been trying to corner the market on numerous fashions that are prevalent today in the casino industry. Galiano did not ever deny that she seeks to obtain a limited monopoly. As her counsel argued:

> [P]laintiffs do not claim a monopoly on casino style costumes, shirts, jackets or skirts, as defendants content. Rather, plaintiffs are entitled to protection of the original works of authorship expressed in their costume designs. Thus, while defendants are free to create their own casino uniforms, they cannot simply copy plaintiffs' designs. * * * [P]laintiffs have the exclusive right to produce derivative works for their designs. Thus, only plaintiffs can make patterns and/or actual garments from their designs.

4

(Page 8 and 9 Plaintiffs' Reply to Defendants' Opposition to the Motion for Partial Summary Judgment, filed October 16, 2000.)

This case was never one to protect a legitimate and limited copyright. It was an effort to get as vague and broad a judgment over commonly used fashion ideas and use that judgment as a sword against defendants, Trump Casinos and other gaming companies, and even Cintas and other uniform companies (who, unlike All-Bilt had not negotiated a non-aggression pact with Plaintiffs' counsel). Their expert submitted with her report 258 shirt fashions and 105 blazer fashions, the vast majority of which are alleged to be the "same design" as Plaintiffs! Thus, the net Plaintiffs were trying to cast using their supposed "artwork" copyright was not reasonably capable of limitation. Whatever Plaintiffs' counsel and Plaintiffs' expert would have declared the "same design" would have become the subject of a license demand from the Plaintiffs.

Thus, unquestionably Plaintiffs were seeking to get the "exclusive right over the clothing designs," AND a judgment holding that "only plaintiffs can make patterns and/or actual garments from their designs." And the use of the designs were said to encompass, in All Bilt's case alone, hundreds of different garments.

Plaintiffs unreasonably pursued this case despite their lack of legal and factual support for their claims. The law is clear; clothing designs are not generally copyrightable. Indeed, Plaintiffs recognize the distinction between fashion designs and artwork. In their brief they state: "Plaintiffs' collection contains both garment designs and artwork designed to be used on garments," and referred to "artwork (a beach scene) used on a promotional cup." *Id.* page 10.

Nevertheless, they argued unreasonably against the settled law. They misrepresented that the *Adelman* case was "superceded notwithstanding its continued use as precedent even today. And they misstated case holdings that stood for and reiterated the established law on clothing

5

designs. In one critical passage from *Segrets* for example, they misquote in a very serious way, stating: "The court held that ,"[t]ogether with the strong similarity in color, the **similarities in form or marling**, the patterns in certain rows and the various stitches create an overall impression of substantial similarity to the ordinary observer." *Id.* Page 8. They use this quote to support the proposition that "The court in Segrets did not grant copyright protection only to the intricate embroidery and rows of jacquard patterns, as defendants content; but rather, considered the sweaters in question as a whole. . ." *Id.* Page 8. Thus by saying the court considered the "forms" (i.e., as "shape" or "structure") they conveyed their hoped-for but wrong interpretation. The real language refers to the "form OF marling," meaning the manner in which the marling ropes were interwoven.

They knew prior to filing their suit that they had no reasonable basis for which to assert a copyright infringement claim, having retained a law firm, Pugh & Pugh, that specializes in copyright matters. They terminated Pugh and Pugh and retained a general commercial firm instead. Had the Plaintiffs retained their copyright specialist lawyers they would have more directly presented this case and addressed the district court's early decision setting forth the nature of proof their case would require – i.e., a separability analysis.

Instead of acting in an objectively reasonable manner to determine the validity of their claims, Plaintiffs unreasonably increased the cost of the litigation by unreasonably conducting discovery and pursuing their claims in disregard of controlling legal precedent, even that pointed out by this court itself in its ruling denying Plaintiffs' first motion for summary judgment. Under the facts and circumstances of this case, and under the applicable law, an award of reasonable attorneys' fees and costs to Defendants based on Plaintiffs' conduct of this litigation is consistent with the purpose of the Copyright Act.

6

**2.    Objectively Unreasonable Conduct - Factually**

Plaintiffs' pursuit of a copyright infringement claim against Defendants in the face of the mounting and undeniable evidence from All-Bilt was objectively unreasonable from a factual standpoint. Each time Plaintiffs solicited All-Bilt for more documents or re-took its employees' depositions, the lack of any evidence of copying by Harrah's was more prominently underscored. All-Bilt's witnesses (all of whom Galiano knew before this suit was filed) made clear that they, not Harrah's, designed the garments they sold Harrah's. Yet Plaintiffs continued taking their depositions over and over, requiring Harrah's to bear the expense of its counsel's travel three times to New York for Gunnerson's three depositions, two New York depositions of John Spordone, and a deposition of Howard Wecksler in New York, followed by another in San Francisco after Mr. Wecksler moved to the West Coast. In none of those depositions did any witness say Harrah's designed or manufactured any of the allegedly offending All-Bilt garments.

Finally, confronted by a definitive summary judgment citing the complete lack of evidence of copying by Harrah's, Plaintiffs attempted to change their case and assert new theories of contributory negligence and vicarious liability. When Harrah's objected that these changes came too late, Plaintiffs reversed course and claimed they had already raised these claims in their amended pleadings. This court correctly noted in its Reasons for Judgment entered May 11, 2004, that the amendments related to unjust enrichment and unfair trade practice, and had nothing to do with the new claims of contributory infringement or vicarious liability, or copyright at all.

7

This studied disregard of the facts throughout discovery amounts to an objectively unreasonable approach from a factual standpoint. Moreover, the evidence that some of the key factual points in Plaintiffs' case – the Mandarin collar, the braided casino shirt, and the tunic coat – were fashion conventions designed long ago. (See Affidavit of Harvey Klein marked Exhibit A and attached hereto; Klein shirt and Galiano comparison marked Exhibit B). Indeed, it is hard to believe Galiano did not notice the use of a trimmed, center-notched Mandarin collar on a tunic jacket at one of the more publicized weddings of the past few years. See Exhibit C.

Plaintiffs' own expert admitted in deposition that designers and clothiers are "free to use" all of the principal fashion ideas Plaintiffs' claim to have been original to her designs. Still, Plaintiffs persisted in seeking a monopoly over those ideas for casino uniforms, and consistently refused to identify any but a smattering of artwork Galiano claimed was wrongly used by her associates at All-Bilt.

The Court has observed the enormous amount of testimony and documents Plaintiffs have spent the past four-plus years collecting. Plaintiffs must be taken to task for not paying attention to its exculpatory character. Plaintiffs' dogged pursuit of its impermissible monopoly was thus objectively unreasonable on the facts as well.

**B.    Considerations of compensation and deterrence weigh heavily in favor of awarding fees and costs to Harrah's.**

The Defendants have incurred more than $282,990 defending against Plaintiffs' copyright infringement claims. *See Affidavit of Joseph W. Looney* attached hereto and incorporated for all purposes as Exhibit D. As between Defendants and Plaintiffs, clearly Plaintiffs must bear the burden of the expense for irresponsibly pursuing claims that lacked a legitimate basis in fact and law.

The Copyright Act is not intended to discourage the creation and development of clothing, clothing designs, or casino clothing. Plaintiffs' conduct in irresponsibly pursuing their copyright infringement claims has a chilling effect on the development of new designs and should be deterred. Moreover, Plaintiffs must accept responsibility for the actions of their attorneys in the manner in which this case was pursued. In *Tuff N' Rumble Management, Inc. v. Profile Records, Inc.*, the court awarded fees and costs to prevailing defendants on grant of summary judgment where plaintiffs' conduct unnecessarily multiplied the amount it cost the defendants to defend the litigation. 1997 WL 470114, at *2(S.D.N.Y. 1997). The court rejected plaintiffs' claim that his attorney rather than plaintiff was to blame for the manner in which the case was concluded:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which charged upon the attorney."

*Id.* The *Tuff N' Rumble* court further warned that "[f]uture litigants should be discouraged from comparable behavior." *Id.*

In *Fogerty v. Fantasy*, attorneys' fees were awarded to the prevailing defendants despite the fact that the litigation went on for ten years and proceeded through a trial on the merits. *See Fogerty v. Fantasy*, 1995 WL 261504, *10 n.7 (N.D. Cal. 1995), *aff'd*, 94 F.3d 553 (9th Cir. 1996). In *Maljack Productions, Inc. v. Goodtimes Home Video Corp.*, the plaintiff who, after having his copyright infringement claims against a third-party licensee dismissed on summary judgment, was faced with a motion seeking an award of substantial attorneys' fees. 81 F.3d 881, 889 (9th Cir. 1996). The *Maljack* panel found "meritless" plaintiff's argument that "the nature

and amount of [defendant's] requested fees 'belie[d] its contention' that there were no complex or novel issues involved in the litigation," and noted that "[t]he time spent defending an action is not necessarily related to the complexity of legal issues involved." *Id.*; *see also, Cohen v. Virginia Elec. Power Co.,* 617 F. Supp. 619, 623 (E.D. Va. 1985) (finding "[P]laintiff caused defendant considerable expense and trouble in plaintiff's losing cause. In other words, plaintiff lost and deserved to lose and there is no reason why the discretion of the Court should not be exercised to award fees in accordance with the provisions of the statute"), *aff'd in part and appeal dismissed in part,* 788 F.2d 247 (4th Cir. 1986).

The same result should obtain here. In this case, this Court should grant the requested award of costs and fees because an award is consistent with the purpose of the Copyright Act, it will deter other potential litigants from pursuing baseless claims that have a chilling effect on the creation and development of new technology, and it will encourage these Plaintiffs to cease and desist from the pursuit of baseless claims. After this Court entered its Order granting summary judgment to the Defendants, Plaintiffs filed motion after motion asserting the same grounds previously addressed by the Court causing Defendants to respond time and time again. *See infra part I.A.* Plaintiffs' conduct was not the result of reasonable advocacy skills but was intended, and succeeded, in significantly increasing the costs of this litigation. Accordingly, Defendants are entitled to an award of attorneys' fees and costs consistent with the purpose of the Copyright Act.

## II.

**THE FEES AND COSTS THAT WERE CHARGED TO HARRAH'S ARE REASONABLE**

Once a court has decided that fees should be awarded, the district court must then determine what amount is reasonable under the circumstances. *See Lieb*, 708 F.2d at 156. To determine whether the amount of attorney fees requested in a copyright infringement case is reasonable, the court must consider twelve factors:

1.  The time and labor required;

2.  The novelty and difficulty of the questions;

3.  The skill requisite to perform the legal service properly;

4.  The preclusion of other employment by the attorney due to acceptance of the case;

5.  The customary fee for similar work in the community;

6.  Whether the fee is fixed or contingent;

7.  Time limitations imposed by the client or the circumstances;

8.  The amount involved and the results obtained;

9.  The experience, reputation, and ability of the attorneys;

10. The "undesirability" of the case;

11. The nature and length of the professional relationship with the client; and

12. Awards in similar cases.

*See Micromanipulator Co., Inc.*, 779 F.2d at 259. The Fifth Circuit Court of Appeals has held that a district judge is required to explain the findings and reasons upon which the award is based, including an indication of how <u>each</u> of the twelve factors affected the award. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575,581 (5th Cir. 1980)(emphasis added). Moreover,

11

the district court must pay "special heed" to four of the twelve factors:  (1) the time and labor required, (2) the customary fee, (3) the amount involved and the results obtained, and (4) the experience, reputation, and ability of the attorneys. *Id*. at 583.

In applying all twelve factors to this case, and paying "special heed" to (1) the time and labor required, (2) the customary fee, (3) the amount involved and the results obtained, and (4) the experience, reputation, and ability of the attorneys, the fees charged and requested are reasonable under the circumstances of this case.

### 1.    Time And Labor Required

The amount of time and labor spent defending Plaintiffs' copyright infringement and related claims is evidenced by the summary exhibit attached to Exhibit D reflecting the number of hours expended by partners, associates, paralegals, and/or law clerks.  The total number of hours dedicated over a four-year period to defending Plaintiffs' copyright infringement and related claims was $282,990. *See* Exhibit D.

### 2.    Novelty And Difficulty Of The Questions

This case dealt with important and far-reaching issues regarding copyright infringement; specifically, the use and application of concepts of utility, idea and expressions, and copyrightable subject matter.  Those issues go to the heart of copyright law in this country.  The factual and legal issues were difficult and complex ones because Plaintiffs sought to undermine and ultimately defeat existing law.  The task of defense counsel was made more complex and burdensome by the enormous amount of material Plaintiffs relied on in each of their discovery motions and substantive motions brought before the court.

3.    **Skill Requisite To Perform The Legal Service Properly**

Due to the complex nature of the legal issues presented and the litigation experience this case called for, the skill required to properly perform the legal services rendered was well beyond that of a general practitioner.   Head counsel for Harrah's happens to have the specialized background demanded by both the copyright law and federal litigation practice.

4.    **Preclusion Of Other Employment By The Attorney Due To Acceptance Of The Case**

The amount of hours required to properly defend this case necessarily made the engagement of other clients much more difficult.  *See* Exhibit D.  The amount of time expended on this case was made necessary by Plaintiffs' strategy of keeping their claims as vague and far-reaching as possible to cast their wide net of monopoly.  The impact on the casino and uniform industries, and possibly others had Plaintiffs' prevailed, would have been devastating.  Thus, this case had to be taken seriously and given very high priority.

5.    **Customary Fee For Similar Work In The Community**

The fees charged in this case are customary fees for similar work in this work in the Fifth Circuit.  Indeed, Galiano herself charges $300 per hour, *See Exhibit E,* and Bonnie Belleau, the expert and professor charged between $225 and $275 per hour on this case. *Exhibit F.*

6.    **Whether The Fee Is Fixed Or Contingent**

The fees charged by Adams and Reese LLP are on an hourly basis depending upon the experience level of the attorney or paralegal providing services.  The fees range from $60.00 per hour to $250.00 per hour. *See* Exhibit D.

7.    **Time Limitations Imposed By The Client Or The Circumstances**

No unusual time limitations were imposed.  However, that was not necessarily a benefit to the Defendants.  Plaintiffs continued to conduct discovery through mid-December of 2003.  They would have opened discovery of Cintas, a new supplier, at that time, but the court denied their request.

8.    **Amount Involved And The Results Obtained**

Plaintiffs' originally estimated their recovery to be in the **millions of dollars** based on their copyright infringement and related claims.  Indeed, their new monopoly was intended to generate many millions more in future royalties.  Plaintiffs did not recover based on copyright infringement and related claims, nor did they succeed in establishing their monopoly.  Rather, Plaintiffs copyright and related claims were dismissed by the Court.

9.    **Experience, Reputation, And Ability Of The Attorneys**

Adams and Reese LLP was established 50 years ago and has a reputation for quality work.  The attorneys who provided their legal services ranged in experience from law clerk to partner.  The level of experience and ability is reflected in the summary attached to Exhibit D.

10.    **The "Undesirability" Of The Case**

Because of the length of this case and the vast reach of evidence Plaintiffs sought, it was undesirable from the standpoint of any hope of a clear, quick resolution.  Plaintiffs amended their complaint three times and sought unsuccessfully to do so twice more.  Plaintiffs' repeated efforts to change the case after dispositive motions had been filed made it difficult to manage and organize the defense.

11. **The Nature And Length Of The Professional Relationship With The Client**

Adams and Reese LLP represents Harrah's in a limited number of other litigation matters. This was the first major piece of litigation the firm handled for Harrah's.

12. **Awards In Similar Cases**

In *Fantasy v. Fogerty*, the Ninth Circuit Court of Appeals affirmed the district court's award of $1,374,519 in attorneys' fees after the defendants prevailed on summary judgment. 94 F.3d 553 (9th Cir. 1996). The Fifth Circuit Court of Appeals has made it clear that the award of attorneys' fees in copyright infringement cases to the prevailing party is the rule rather than the exception and should be awarded routinely. *See McGaughey v. Twentieth Century Fox Film Corp.* 12 F.3d 62 (5th Cir. 1994); *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60 (5th Cir. 1992); *Micromanipulator Co. v. Bough*, 779 F.2d 225 (5th Cir. 1985); *Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1241 (5th Cir. 1984);

Based on the twelve factors set forth above and in consideration of the circumstances of this case as described in Section I, the fees charged and requested are reasonable. Accordingly, the Defendants request this Court grant their fees and costs in the amount of defending Plaintiffs' copyright infringement and related claims.

**III.**

**CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, the Defendants respectfully request this Court assess attorneys' fees and costs against Plaintiffs and in favor of the Defendants in an amount commensurate with actual fees and costs incurred and paid, which costs and fees are supported by the Affidavit of Joseph W. Looney attached as Exhibit D and incorporated herein for all purposes.

15

Respectfully submitted,

**ADAMS AND REESE LLP**

Joseph W. Looney, T.A. (8773)
4500 One Shell Square
New Orleans, Louisiana 70139
Tel: (504) 581-3234

*Attorneys for Defendants, Harrah's Operating Co., Inc. and Harrah's Entertainment, Inc.*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 25th day of May, 2004, I have served a copy of the foregoing pleading on counsel for all parties to this proceeding via facsimile and by hand delivery of same.

Joseph W. Looney

16

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED