

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   JUL 1 3 2006

LORETTA G. WHYTE
CHARLES R. FULBRUGE III
CLERK

# United States Court of Appeals

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

TEL. 504-310-7700
600 CAMP STREET
NEW ORLEANS, LA 70130

January 11, 2005

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

      No. 04-30806   Galiano v. Harrah's Oprt Co Inc
          USDC No.  2:00-CV-71-E

The court has granted appellees' unopposed motion to supplement the record with the transcript of the July 7, 2004, hearing on their motion for attorneys fees.

          Sincerely,

          CHARLES R. FULBRUGE III, Clerk

By: _____
          Nancy Dolly, Deputy Clerk
          504-310-7683

Mr Jonathan Marks Shushan
Mr Sidney L Shushan
Mr Joseph W Looney
Mr Robert N Markle

MOT-2

___ Fee _____
___ Process _____
_X_ Dktd _____
___ CtRmDep _____
___ Doc. No. _____

U. S. COURT OF APPEALS

**FILED**

DEC 2 7 2004

CHARLES R. FULBRUGE III
CLERK

No. 04-30806

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JANE GALIANO AND GIANNA, INC.,

**Plaintiffs-Appellants,**

The Opposed / Unopposed
Motion to *[handwritten]*

Is Granted in Part   Denied

*[handwritten signature and date]*

v.

**HARRAH'S OPERATING CO., INC. AND
HARRAH'S ENTERTAINMENT, INC.,**

**Defendants-Appellees.**

## Defendants-Appellees' Motion to Supplement Record on Appeal

Under Rules 10(e)(3) and 27 of the Federal Rules of Appellate Procedure, the undersigned Defendants-Appellees respectfully move to supplement the record on appeal. Undersigned counsel represents that counsel for Plaintiffs-Appellants does not oppose this motion.

Under Federal Rule of Appellate Procedure 10 the transcript constitutes a portion of the record on appeal, and where as here the appellant urges on appeal that the court's conclusion is unsupported by the evidence, the appellants must include the transcript. FRAP 10(b)(2). Appellants failed to do so. Defendants-Appellees wish to supplement the record on appeal to include the transcript of the July 7, 2004, hearing on their motion for attorneys' fees (a copy of the transcript is

attached to this motion). The transcript of the hearing at which the district court judge awarded the attorneys' fees is vital to the appellate court's consideration of the issue on appeal.

**WHEREFORE**, the undersigned Defendants-Appellees move that the Court grant their motion to supplement the record and that the record be supplemented accordingly.

Respectfully submitted,

**JOSEPH W. LOONEY, ESQ. (#8773)**
**ROBERT N. MARKLE, ESQ. (#22111)**
**Adams and Reese LLP**
**4500 One Shell Square**
**New Orleans, Louisiana 70139**
**Telephone: 504-581-3234**
**Facsimile: 504-566-0210**
**Attorneys for Defendants-Appellees**

## CERTIFICATE OF SERVICE

I, Joseph W. Looney, hereby certify that on the 27th day of December, 2004, a true and correct copy of the above and foregoing Motion to Supplement Record on Appeal was served on Sidney L. Shushan, Esq., 639 Loyola Avenue, Suite 2500, New Orleans, LA 70113 by hand delivery.

Joseph W. Looney

RECEIVED 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JUL 2 8 2004

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEPUTY CLERK

JANE GALIANO AND GIANNA, INC.,  *   Civil Action
                                *   No. 00-0071
      Plaintiff,                *
                                *   Section "E"
         v.                     *
                                *   New Orleans, Louisiana
HARRAH'S OPERATING, INC.,       *   July 7, 2004
ET AL,                          *
                                *
      Defendant.                *
* * * * * * * * * * * * * * * *


MOTION
BEFORE THE HONORABLE MARCEL LIVAUDAIS, JR.,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:              Guste, Barnett & Shushan, LLP
                                By:  JONATHAN M. SHUSHAN, ESQ.
                                639 Loyola Avenue, Suite 2500
                                New Orleans, Louisiana 70113


For the Defendant:              Adams & Reese, LLP
                                By:  JOSEPH W. LOONEY, ESQ.
                                701 Poydras Street, Suite 4500
                                New Orleans, Louisiana 70139


Court Audio Operator:           Cynthia Crawford

Transcriptionist:               Dorothy Bourgeois
                                c/o U.S. District Court
                                500 Poydras Street, Room C151
                                New Orleans, Louisiana 70130
                                (504) 589-7720


Proceedings recorded by electronic sound recording,

transcript produced by transcription service.

2

P R O C E E D I N G S

(Wednesday, July 7, 2004)

(Call to Order of the Court)

THE COURT:  We have Civil Action 00-0071, *Galiano v Harrah's*.  Would Counsel make their appearance for the record, please?

MR. LOONEY:  Your Honor, Joe Looney from Adams & Reese on behalf of the Movants, Harrah's Operating Company, Inc., and Harrah's Entertainment, Inc.

MR. SHUSHAN:  Jonathan Shushan of Guste, Barnett & Shushan for Plaintiffs Gianna, Inc. and Jane Galiano.

THE COURT:  It's your motion, go right ahead.

MR. LOONEY:  Thank you, Your Honor.

THE COURT:  I don't plan to quantify it today.

MR. LOONEY:  No.  In fact, I was going to point out to Your Honor that we have already had our meeting with Ms. White and it was discussed at that point that some of the what we had characterized as "expenses" related to the motions, which include travel and computer assisted legal research, should more appropriately be brought before Your Honor.  So, we probably will ask the Court to set a hearing, should the Court decide we would be entitled to attorney's fees, set a hearing in which we can introduce that and perhaps get some guidance from Your Honor about actually seeing our computerized records of fees.  But, those things, the way we've done them in the

3

1  past, typically they're done after the Court decides whether

2  it's worth going forward with that.

3          THE COURT:  My ruling is not final yet.

4          MR. LOONEY:  No.

5          THE COURT:  So, Mr. Shushan.

6          MR. SHUSHAN:  If I'm reading the Court correctly,

7  Your Honor, what Your Honor wants to do this morning is decide

8  whether or not the Defendants are entitled to attorney's fees

9  for the dismissed copyright action, and the exact numbers, and

10 exactly what would constitute the attorney's fees it sounds

11 like Your Honor doesn't want to address this morning, that we

12 seem to be here on a separate issue of the fees.

13         THE COURT:  Well, like I say, I'm not going to

14 quantify it, I'm just going to decide whether you're entitled

15 to them or not.

16         MR. SHUSHAN:  My only question would be:  What about

17 various elements of the fees; i.e., are they entitled to get

18 their WestLaw cost back, are they entitled to get their travel

19 expenses back as fees?

20         THE COURT:  That will have to come later.

21         MR. SHUSHAN:  Okay.  So, we're just going on the

22 basic issue of fees this morning.

23         THE COURT:  We'll see what happens in the Fifth

24 Circuit, but go ahead.

25         MR. LOONEY:  Right.  Well, Your Honor, thank you.

1    And that's a good point.

2          We had to file our motion within a certain period of

3    time to be timely, so we've done that.  I appreciate Your Honor

4    setting it for argument while it's still more or less fresh in

5    all of our minds.

6          Let me first of all point out to the Court that the

7    comprehensive Order and Reasons that the Court has rendered in

8    connection with the copyright infringement issue serves as a

9    basis for our -- certainly will serve as the issue on appeal,

10   serves as the basis for our argument today, but we go somewhat

11   beyond that and we point out to Your Honor some of the things

12   that more likely will come up on the remaining issue, that is

13   copyright misuse that constitute our counterclaim against the

14   Plaintiffs.

15         So, first of all, in summary, the copyright law does

16   not give the prevailing party a right to attorney's fees, but

17   it gives the prevailing party a right to claim attorney's fees,

18   and then it's a matter of the Court's discretion.  What the

19   Supreme Court has said in *Fantasy v Fogarty*, it's just that we

20   have to be dealt with evenhandedly.  So the deference that

21   might be given to a plaintiff for having to come in to assert

22   their rights that's normally given in a case, they won't

23   normally be charged with attorney's fees; that doesn't exist

24   here.  This is truly a fee shifting statute.

25         So, the factors that the Court would look at have

1   been set forth, or some of the factors, they're not exclusive,

2   but *Fantasy v Fogarty,* and the Fifth Circuit in *McGaughey v*

3   *20th Century Fox* talk about frivolousness, motivation and

4   objectively reasonable, legally and factually.  But there's

5   another overriding issue and it plays in this case, and it's

6   played in a couple of other cases that have come before the

7   courts where the same kind of strategy has been used as the

8   Plaintiffs used, and that is is this case the way it was

9   brought really antithetical to the purposes of the copyright

10  law?  And we submit that that is the issue on this attorney's

11  fee motion, because we maintain it is.

12       We maintain that the copyright law is a balance

13  between, you know, the rights that an author has and the free

14  use of expression.  And in fact there is a "limited monopoly"

15  that's granted to an author, but it's limited.  And the

16  copyright registration and the courts rulings are supposed to

17  say, "Well, what is that limited right that a plaintiff has to

18  protect their authorship?"  But, where you attempt to go beyond

19  that, where you attempt to broaden that and to get a monopoly

20  that you're not entitled to, the Fifth Circuit addresses that

21  and we'll address it in later parts of this case, and that

22  certainly the courts have recognized first of all in the patent

23  context and later in the copyright context, when somebody

24  attempts to do that, that is misuse of the copyright law.  And,

25  remember, there's a copyright clause in the Constitution, too.

1    So, it comes close to being a constitutional issue.

2             What the Plaintiffs here, Jane Galiano and her

3    company attempted to do was cast a net over fashion ideas and

4    conventions common to the casino industry.  What we've seen in

5    this case exhibit, after exhibit, after exhibit submitted by

6    the Plaintiffs are shirts, jackets, chef's jackets, vests,

7    things of this nature that you'll see in any casino.  And what

8    the expert has done, and the expert is the key to what this

9    strategy is, the expert has gone through and said, "Okay, I've

10   looked at numerous, numerous pictures of manufactured things

11   and I find 258 different shirt fashions that are substantially

12   similar, that's the same design as Plaintiff's.  I find 105

13   blazer fashions."

14            So, if the Court had ruled the other way, if it had

15   ruled against Harrah's arguments here and ruled that the

16   Plaintiff can in fact cover these design conventions that she

17   drew, if the Court had ruled that, then the Plaintiffs and

18   their expert would have been sending out demand letters for

19   licenses to the casino industry and probably beyond, because at

20   the last hour Plaintiffs even sought to take discovery from

21   Cintas and Cintas is a uniform manufacturer that makes uniforms

22   for chefs, for example.

23            So, what we're looking at here is a very broad net.

24   Had Plaintiff's theory prevailed, it would have gone, we

25   submit, well beyond the very carefully balanced and limited

7

1    protected offered by the Copyright Act.

2        Now, Plaintiffs maintain in respond to that, and

3    we've laid that out in our briefs and I really won't go into

4    enormous detail on it except to show we can prove it,

5    Plaintiffs have come back and said, "No, from the beginning

6    we've always relied on established law." And they state that,

7    and this is mainly at Pages 3 and 4 of their brief, "The

8    copyright law is broad enough to provide protection…" and this

9    carefully worded, "…to apparel which has esthetic elements

10   which are conceptually separable for utilitarian purposes."

11       So, they're saying you can protect and obtain a

12   monopoly over apparel that has esthetic elements that are

13   subject to the separability test.

14       Now, we battled back and forth about the fact they

15   never did a separability test. The only thing they've

16   separated is general concepts like a Mandarin collar, or a

17   princess cut on a tunic. They've never really gotten down to

18   the specific expression of those things in Galiano's drawings.

19       And then they go on to say they were not seeking

20   monopoly on any particular design element as a separate element

21   of clothing. Rather, their contention was if the ordinary

22   observer were to view the two designs side by side, they would

23   see similarities. And the Plaintiffs were not seeking to claim

24   rights to a design element, but of Galiano's particular

25   arrangement of those elements into a work of art.

1          So, we have a claim of, well, they're separable

2    elements there, but we really haven't told you what they are,

3    but because there are some, therefore, the whole work of art,

4    the whole collection, the whole 130 sketches would be

5    protectable because they are a particularized arrangements.

6          So, it's a complicated analysis that they tried to

7    put forward, but where it failed was what was clear in the law

8    and still is clear is these are garments and garments designs

9    or dress designs are not copyrightable.  What may be

10   copyrightable is some artwork that might be put on those

11   designs, but that's not what was claimed here.  It's all these

12   drawings of garments in all of Galiano's drawings.  So, that's

13   what they were after.

14         Secondly, what they were after was not simply to

15   prevent people from making copies of those drawings in other

16   copies, but in fact to keep them from actually fabricating,

17   manufacturing, and selling clothes.  And in Harrah's case,

18   Harrah's didn't manufacture or sell clothes, it just bought

19   clothes.  So, what they're trying to do was to pin Harrah's

20   with a copyright infringement for simply buying clothes made by

21   somebody else, and "using" them in its casinos.  As we pointed

22   out on summary judgment, that's not a copyright infringement

23   "using."  There's no general use violation.

24         So, we would maintain, Your Honor, that the effort to

25   get this monopoly over Mandarin collars and jacquard plackets

1   that run down the front of the shirt, and a pleat in the back

2   of the shirt, which are used all over in casinos, and used in a

3   lot of other industries where uniforms are de rigueur, in these

4   kind of situations it would open up an unjustified and

5   unreasonable, objectively unreasonable right or protection for

6   the Plaintiffs.

7           Now, the issue about, well, what about the fact that

8   they have an arrangement, they have all these drawings, and

9   they have these unprotectable elements all in there in a

10  certain way.  The analysis of comparing two arrangements or two

11  collections requires there be the Plaintiff's collection with

12  the elements in it protectable and unprotectable, and then the

13  Defendant's collection.  Well, where's the Defendant's

14  collection?  There never was one.  All there are are uniforms

15  that Harrah's purchased in actual clothing, and you can't make

16  that arrangement comparison with the clothing that Harrah's

17  bought.  When you're protecting a collection like that as a

18  compilation, there have to be two collections.

19          Now, the Court dealt with all that and the Court

20  properly resolved that, and the way the Court did it was to

21  say, although they argue for the ordinary observe test for

22  substantial similarity, they first have to show they have

23  something protectable.  They have to show they have a

24  copyright, and they haven't done that, because they claim

25  clothes and they failed to do a separability of artwork, even

1   though *artwork is what* their registration was for.

2        The Court said years ago in this case that when it

3   denied Plaintiff's initial Motion for Summary Judgment, you

4   have to do a separability analysis, and they've never done it.

5        We went through in our brief all the elements of the

6   *Johnson* case too, and the *Johnson* case sets forth questions

7   about what did the case involve, what level of expertise did

8   the lawyering involve, how much did the lawyer who is seeking

9   the fees, how much did that firm have to give up in order to

10  maintain this case.  We pointed out to Your Honor the fact that

11  we have gone back over, and over, and over to take depositions

12  of the same people, All-Bilt being the key party.

13       And remember this, the record shows Jane Galiano knew

14  All-Bilt before this suit was ever filed.  She had dealt with

15  those people in New York, actually gone to New York and knew

16  them.  So, under a Rule 11 context, when she was doing her due

17  diligence, she could have gone to them and said, "What evidence

18  is there here that Harrah's ever did anything taking my

19  protected elements, whatever they are?"

20       So, even before we took these three sets of

21  depositions of the same people, she knew them; she had that

22  available.  We maintained, Your Honor, that's objectively

23  unreasonable from the factual standpoint, that when you keep

24  *going back* and taking depositions and all those depositions

25  show is All-Bilt did all the designing, All-Bilt did all the

1    manufacturing specifications.  Harrah's didn't do it.  And it

2    came out that way after every one of the depositions, every one

3    without exception, that that becomes objectively unreasonable

4    to maintain your case, and particular to go into a summary

5    judgment and argue the case.

6          When the Plaintiffs were confronted finally with the

7    summary judgment after discovery, what was their response?

8    They came in and attempted to amend again.  They attempted to

9    come in and state, "Well, wait a minute, wait, a minute.

10   Harrah's maybe didn't do it, but vicariously they should be

11   liable."  And the Court properly declined to allow them to

12   amend at that late date, primarily because as the case law

13   said, the Defendant is entitled to rely on the pleadings and

14   the record at the time of the cutoff and go ahead and file the

15   motions that way.

16         An interesting point is made in their brief that

17   says, look, this was a matter that was subject to substantial

18   difference of opinion, and because of that there shouldn't be

19   an award of fees, because of that their case is reasonable.

20   And they say, "This Court found that when it issued a

21   Rule 54(b) Order," and as Your Honor knows, that's not the

22   test.  That was a 1292(b) test that talks about the issue of

23   whether there's substantial ground for difference of opinion.

24   So, that can be ignored.

25         The same thing was raised, by the way, when we went

1    to the *Fifth Circuit* on the breach issue earlier.  The same

2    argument was made trying to confound the two tests, and the

3    Fifth Circuit said we're not going to do that.

4           So, that's basically where we are, Your Honor.

5    Summarizing our involvement in this, this was a case that did

6    involve a knowledge of copyright law.  I have been involved in

7    copyright law since I began.  I've taught at Tulane as adjunct

8    faculty member in courses that substantially were copyright

9    courses, and continue to give lectures in CLE on copyright and

10   content, and have personally have handled -- and what

11   Your Honor will find when we submit our records is that most of

12   this work is mine, that I stayed on the case because of that,

13   that, hopefully, efficiencies and economies were reached

14   because I knew something about the area.

15          We would point out to Your Honor that we would like

16   to submit this motion.  We have a couple of exhibits that we've

17   attached that we will submit to Your Honor.  One of them is a

18   picture of Prince Charles and Lady Diana with Prince Charles

19   wearing a tunic with a Mandarin collar with piping on the top.

20   We're not going to submit that, that's Exhibit C, but we will

21   submit the other exhibits attached to the brief.

22          And, finally, I would ask the Court for leave should

23   the Court decide this is a proper case for attorney's fees for

24   the prevailing party being Harrah's at this juncture, if the

25   Court decides to have a hearing on the amount now rather than

1   wait for the appeal --

2          THE COURT:  No, not now.

3          MR. LOONEY:  Okay.  Well, all we would ask is for

4   leave to at that point introduce possibly in camera some of the

5   more detailed records we have and to show the Court and satisfy

6   the Court that --

7          THE COURT:  That will come out at a hearing, if there

8   is one.

9          MR. LOONEY:  Yes, yes.  All right, thank you very

10  much.

11         THE COURT:  Thank you.

12         MR. SHUSHAN:  Good morning, Your Honor.

13         With respect to Counsel, I think I'm going to try to

14  limit my remarks to the specific issue that Your Honor said you

15  wanted to talk about this morning, which is entitlement to

16  attorney's fees.

17         The copyright claim isn't in front of the Court this

18  morning.  What I think Defendant leaves out is the case law

19  directs the Court to look at the larger effect of a ruling

20  awarding attorney's fees.  What effect would it have on the

21  next small businessperson who wants to try to take on this

22  enormous gambling empire?

23         THE COURT:  Well, that's part of the -- that would

24  come out at a hearing.  It will be, if there is one, it will be

25  my obligation to look at the wherewithal of the Plaintiff as

1    opposed to the wherewithal of the Defendant.

2         MR. SHUSHAN:  Yes, Your Honor.  But whether or not

3    fees --

4         THE COURT:  That's part of the game.

5         MR. SHUSHAN:  Excuse me, Your Honor?  I'm sorry.

6         THE COURT:  Go on.

7         MR. SHUSHAN:  I just don't think I heard the last

8    thing Your Honor said.

9         THE COURT:  If there is a hearing, it's my obligation

10   to consider the whole matter, the wherewithal of the parties.

11   I understand Ms. Galiano is not wealthy.  That's a factor.

12        MR. SHUSHAN:  Yes, Your Honor.  I agree, Your Honor,

13   there is case law from the Supreme Court and from *Fogarty*

14   talking about the purpose of the Copyright Act is to encourage

15   the production of original artistic works.  And again to quote

16   *20th Century Music Company v Aiken*, "The immediate effect is to

17   secure a fair return for the author's creative labor, but the

18   ultimate aim on the Copyright Act is to stimulate artistic

19   creativity for the general public good," to quote from the

20   Supreme Court.

21        The award of attorney's fees would have a chilling

22   effect and an inequitable burden.  All the *Fogarty* decisions

23   talk about how the awarding attorney's fees, against an

24   impecunious plaintiff when you have an extremely rich

25   defendant, is going to deter the next plaintiff from ever

1   filing suit.  And whether or not the copyright claim should be

2   granted is the law of the case.  Whether or not fees should be

3   granted, I submit the Court needs to look at the bigger picture

4   in terms of what effect this will have on any other small

5   business people who attempt to do business with Harrah's.

6          THE COURT:  Well, yes.

7          MR. SHUSHAN:  And if the Court mandates that, also I

8   believe -- referring the Court to my brief -- litigation is in

9   a certain extent encouraged when there are close cases of

10  copyright law and whether or not you can copyright something,

11  someone shouldn't be penalized for litigating in an attempt to

12  essentially settle a very narrow question; i.e., you can't copy

13  a uniform, but can you copy artistic elements that have nothing

14  to do with the utilitarian use the uniform.  It's a close

15  question.

16          Fees can be denied in a copyright case if the overall

17  effect would be to discourage the next potential plaintiff from

18  litigating a close case of copyright law.

19          To quote from the First Circuit, "A court should not

20  award attorney's fees where the case is novel or close, because

21  such litigation clarifies the boundaries of copyright law."

22  And an enormous award of attorney's fees is a club that the

23  next person who sues Harrah's is going to see over their head

24  if it's a close question of copyright law and they're not going

25  to litigate it.

1        I simply submit in addition to our brief that the

2   Court has a duty to look at the larger effect on small business

3   people and clothing designers who do business with any large

4   corporation, be it Harrah's, be it Hyatt, be it Hilton, all of

5   *whom own casinos all over the world.*

6        And I do want to respond to what Defendant said.

7   Plaintiff was not attempting to get a monopoly on anything.

8   Plaintiff submitted some written designs to Harrah's and there

9   was an issue as to whether or not Harrah's was using those

10  designs without paying her.  *The Court ruled on the copyright*

11  issue that the Plaintiff wasn't, but I don't think it was

12  unreasonable when to any objective observer the Plaintiff's

13  designs and the uniforms looked similar.  So, the Plaintiff

14  sought out this Court.  And the Court shouldn't effectively

15  penalize the Plaintiff by bankrupting her for trying to assert

16  rights that were decided on summary judgment, but weren't the

17  subject of Rule 12 motion, meaning there was a legal issue for

18  the Court to decide.

19        And I think everything that the Court sees from

20  *Fogarty* and *RCA* from the Southern District in New York is that

21  the Court should look at the message that awarding attorney's

22  fees, especially awarding attorney's fees, you know, a large

23  amount of attorney's fees would have on the next small business

24  person who tries to sue Harrah's.  When Harrah's comes to them

25  and says the last person who tried this I bankrupted and, you

1  know, had to pay me a quarter of a million dollars even though

2  it was a close question.

3       All I would ask the Court to do would be to take a

4  look at the larger effect of copyright law, because copyright

5  decisions aren't particular frequent and anything this Court

6  does is likely to have an effect beyond the law of this case,

7  especially as I would ask the Court to take judicial notice of

8  the fact that the U.S. Judicial Conference is at the moment

9  about to get rid of unreported decisions.  Everything every

10  federal court does is going to be reported and become

11  precedent.

12       Therefore, what I think the case law mandates is in

13  deciding whether or not to award attorney's fees at, all

14  independent of the amount, that isn't before the Court; the

15  Court needs to look at the effect on other artists, on other

16  clothing designers, and the Court needs to look at a big

17  picture, not simply the specific facts of this case in deciding

18  whether or not an award of attorney's fees is appropriate.  And

19  I would argue that it isn't because it was a close question and

20  because the Court actually clarified an unclear point of

21  copyright law with its summary judgment decision.

22       Regardless of whether I agree with the Court's

23  decision or not, I think both sides would agree that the Court

24  clarified a point on which there wasn't really any case law

25  that was on all four legs.  And people shouldn't be discouraged

1   by the potential award of a quarter of a million dollars, or a

2   hundred thousand dollars, or how ever much in attorney's fees

3   from trying to make some law where there really isn't any law

4   on point.  And somebody shouldn't be penalized for filing a

5   suit when there isn't any law on point.

6          And at this point unless the Court has any questions,

7   I think I can leave it at that.

8          THE COURT:  Thank you.

9          MR. LOONEY:  A very brief rejoinder, Your Honor?

10         THE COURT:  Go ahead.

11         MR. LOONEY:  I think the Court's decision shows there

12  is a lot of law on point, first of all, so we think that law

13  that the Court applied, it applied correctly; it's just law

14  that Plaintiffs have never been willing to recognize because it

15  didn't support their case.  And I'll address one other point

16  and that is whether or not there was any attempt to monopolize

17  these conventions.

18         I've already mentioned the effort to bring in Cintas

19  at the end.  There's another interesting point and, again, the

20  Court will see this is a later part of the trial.  The last

21  time we took depositions of All-Bilt in New York, questioning

22  by Counsel's firm started going into designs that All-Bilt made

23  for Trump, for Donald Trump's casinos, which has absolutely

24  nothing to do this case.  It was clearly a fishing

25  expedition to find out, well, what was it that was made for

19

1   Trump.  We're going to submit to Your Honor it looks like Trump

2   would be next.  We don't think there's any doubt what was

3   taking place here.  We think it was a very ambitious project.

4   We think it was a very creative approach.  It was an approach

5   that would have made everybody very wealthy on the Plaintiff's

6   side had they been able to claim and enforce licenses for all

7   of these, but that's not what the copyright law is for, in fact

8   it is a wrongful use of the copyright.

9         And with that, Your Honor, we tender the motion.

10        THE COURT:  Thank you.

11        MR. LOONEY:  Thank you.

12        THE COURT:  Well, you have a Motion for Attorney's

13  Fees under Title 17 U.S. Code Section 505.  I think you've got

14  the better side of the picture.  I've reviewed the briefs;

15  however, I'm not going to quantify it now.  The Motion for

16  Entitlement to Attorney's Fees is granted.

17        The Fifth Circuit law, as I appreciate it, indicates

18  that it's the rule rather than the exception that in cases of

19  this nature fees be awarded.  So, if my ruling is upheld by the

20  Fifth Circuit, we'll schedule a hearing to quantify reasonable

21  attorney's fees.  So, the motion is granted.

22        On the 21st, I believe, of this month, is your

23  motion, Mr. Shushan --

24        MR. SHUSHAN:  To review the cost award, Your Honor,

25  yes.

1      THE COURT:  Yes.  Shouldn't I just defer that until

2  -- save you all another trip over here.  I don't see any reason

3  to do that right now.  It can all be done at the same time.

4  So, I'm going to defer ruling on that motion.

5      MR. SHUSHAN:  Might I ask the Court for some

6  clarification?  I just want to make sure the Defendants aren't

7  going to try to collect the costs in the interim.

8      THE COURT:  Do what?

9      MR. SHUSHAN:  The Defendants aren't going to try to

10  collect from my client next week.  Can we stay the enforcement

11  of the cost award that I've appealed pending the Court's ruling

12  on it?

13      THE COURT:  I'll do that.

14      MR. SHUSHAN:  So, we'll stay that.  And my other

15  question, Your Honor, is in terms of the cost award, Your Honor

16  said that if the Fifth Circuit upholds Your Honor, does that

17  mean Your Honor wants us to take the award of the costs -- I

18  means of the attorney's fees to the Fifth Circuit now or are we

19  going to defer it until the whole case ends up in the Fifth

20  Circuit again?

21      THE COURT:  We'll have a hearing to determine what

22  reasonable attorney's fees and costs Harrah's might be entitled

23  to.

24      So, for now the Motion for Attorney's Fees is

25  granted.

21

```
1           MR. SHUSHAN:  Is granted.  With leave I can submit a

2    54(b) to go to the Fifth Circuit?

3           THE COURT:  You want to appeal that.  We'll do that,

4    yes.

5           MR. SHUSHAN:  Thank you, Your Honor.

6           THE COURT:  Okay, thank you, gentlemen.

7           MR. LOONEY:  Thank you, Your Honor.

8                    (Hearing is Concluded)

9                 *      *      *      *      *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# C E R T I F I C A T E

      I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_Dorothy M. Bourgeois_                                7/28/04

Dorothy M. Bourgeois                                    Date

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

July 12, 2006

Ms Loretta Whyte, Clerk
Eastern District of Louisiana, New Orleans
United States District Court
Room C-151
500 Poydras Street
New Orleans, LA 70130

   No. 04-30806 Galiano v. Harrah's Oprt Co Inc
    USDC No.  2:00-CV-71-E

The following is (are) returned:

Supplemental Record,  ( 1 ) Vols.

     Sincerely,

     CHARLES R. FULBRUGE III, Clerk

     By: _____
       Timothy E. Phares, Jr., Deputy
Clerk

      504-310-7665

REC-3